UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK, et al.,<br><br>　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>UNITED STATES DEPARTMENT<br>OF HOMELAND SECURITY, et al.,<br><br>　　　　　　　Defendants. | 19 Civ. 7777 (GBD) |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR STAY PENDING APPEAL**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii
INTRODUCTION ...........................................................................................................................1
ARGUMENT ...................................................................................................................................3
    I.      Defendants are unlikely to prevail on the merits. ..............................................................3
    II.     Defendants have not shown that they will be irreparably injured absent a stay ..................4
    III.    Plaintiffs and the public will be substantially harmed by a stay..........................................5
CONCLUSION................................................................................................................................11

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Am. Civil Liberties Union v. U.S. Dep't of Homeland Sec.*,
  No. 11 Civ. 3786, 2013 WL 6912685 (S.D.N.Y. Dec. 19, 2013)..............................................2

*California v. U.S. Dep't of Health & Human Servs.*,
  941 F.3d 410 (9th Cir. 2019) ...................................................................................................10

*Casa de Maryland v. Trump*,
  No. 19 Civ. 2222 (4th Cir. Dec. 9, 2019).................................................................................10

*Catskill Mts. Chapter of Trout Unlimited, Inc. v. U.S. Envtl. Prot. Agency*,
  630 F. Supp. 2d 295 (S.D.N.Y. 2009)........................................................................................2

*Chevron Corp. v. Salazar*,
  No. 11 Civ. 3718, 2011 WL 2326893 (S.D.N.Y. June 14, 2011)..............................................2

*City & Cty. of San Francisco v. U.S. Citizenship & Immigration Servs.*,
  Nos. 19 Civ. 4717, *et al.*, 2019 WL 5100718 (N.D. Cal. Oct. 11, 2019) .................................3

*City & Cty. of San Francisco v. U.S. Citizenship & Immigration Servs.*,
  Nos. 19 Civ. 17213, *et al.*, 2019 WL 6726131 (9th Cir. Dec. 5, 2019)..................................3, 9

*Cook Cty. v. McAleenan*,
  No. 19 Civ. 6334, 2019 WL 5110267 (N.D. Ill. Oct. 14, 2019)................................................3

*Grand River Enters. Six Nations, Ltd. v. Pryor*,
  No. 02 Civ. 5068, 2004 WL 2480433 (S.D.N.Y. Nov. 3, 2004) ......................................2, 8, 9

*Kappel v. Comfort*,
  914 F. Supp. 1056 (S.D.N.Y. 1996)...........................................................................................2

*LaSala v. Needham & Co., Inc.*,
  399 F. Supp. 2d 421 (S.D.N.Y. 2005).......................................................................................9

*League of Women Voters of U.S. v. Newby*,
  838 F.3d 1 (D.C. Cir. 2016).......................................................................................................9

*Make the Road New York v. Cuccinelli*,
  No. 19 Civ. 7993, 2019 WL 6498283 (S.D.N.Y. Dec. 2, 2019).....................................1, 3, 10

*McCue v. City of New York*,
  503 F.3d 167 (2d Cir. 2007).......................................................................................................1

*Nat. Res. Defense Council, Inc. v. U.S. Food & Drug Admin.*,
　884 F. Supp. 2d 108 (S.D.N.Y. 2012) .................................................................................. 8

*New York v. U.S. Dep't of Commerce*,
　339 F. Supp. 3d 144 (S.D.N.Y. 2018) .................................................................................. 1

*New York v. U.S. Dep't of Commerce*,
　345 F. Supp. 3d 444 (S.D.N.Y. 2018) .................................................................................. 4

*New York v. U.S. Dep't of Homeland Sec.*,
　No. 19 Civ. 7777, 2019 WL 6498250 (S.D.N.Y. Dec. 2, 2019) .................................. 1, 3, 5, 10

*Nken v. Holder*,
　556 U.S. 418 (2009) ......................................................................................................... 2, 5

*Puerto Rico Pub. Hous. Admin. V. U.S. Dep't of Hous. & Urban Dev.*,
　59 F. Supp. 2d 310 (D. P.R. 1999) ................................................................................ 10-11

*Renegotiation Bd. v. Bannercraft Clothing Co.*,
　415 U.S. 1 (1974) ................................................................................................................ 4

*Royal Park Investments SA/NV v. U.S. Bank Nat'l Ass'n*,
　No. 14 Civ. 2590, 2018 WL 3830921 (S.D.N.Y. Aug. 13, 2018) ....................................... 11

*Royal Park Invs.SA/NV v. Bank of Am. Corp.*,
　941 F. Supp. 2d 367 (S.D.N.Y. 2013) .................................................................................. 2

*Rydeen v. Quigg*,
　748 F. Supp. 900 (D.D.C. 1990) ........................................................................................ 11

*SST Global Tech., LLC v. Chapman*,
　270 F. Supp. 2d 444 (S.D.N.Y. 2003) .................................................................................. 2

*Strougo v. Barclays PLC*,
　194 F. Supp. 3d 230 (S.D.N.Y. 2016) ............................................................................. 1, 4

*Torres v. Faxton St. Lukes Healthcare*,
　No. 16 Civ. 439, 2017 WL 11317906 (N.D.N.Y. Jan. 26, 2017) ......................................... 2

*U.S. Sec. Exch. Comm'n v. Citigroup Global Mkts. Inc.*,
　673 F.3d 158 (2d Cir. 2012) ................................................................................................ 1

*V.S. v. Muhammad*,
　No. 07 Civ. 213, 2008 WL 5068877 (E.D.N.Y. Nov. 24, 2008) .......................................... 2

*Volmar Distributors, Inc. v. New York Post Co., Inc.*,
　152 F.R.D. 36 (S.D.N.Y. 1993) ........................................................................................... 2

*Washington v. U.S. Dep't of Homeland Sec.*,
 No. 19 Civ. 5210, 2019 WL 5100717 (E.D. Wash. Oct. 11, 2019) ........................................... 3

*Webster v. Doe*,
 486 U.S. 592 (1988) ........................................................................................................ 10-11

**FEDERAL REGULATIONS**

*Inadmissibility on Public Charge Grounds*, 84 Fed. Reg. 41,292 (Aug. 14, 2019) .............. passim

## INTRODUCTION

Just days ago, the Court denied Defendants' motion to stay the Court's preliminary injunction pending resolution of Defendants' appeal of the Court's October 11, 2019 order. *See New York v. U.S. Dep't of Homeland Sec.*, No. 19 Civ. 7777, 2019 WL 6498250, at *1-2 (S.D.N.Y. Dec. 2, 2019); *Make the Road New York v. Cuccinelli*, No. 19 Civ. 7993, 2019 WL 6498283 (S.D.N.Y. Dec. 2, 2019).[1] As the Court recognized, Defendants' motion to stay the preliminary injunction "largely reiterate[ed] the same arguments made in their opposition to Plaintiffs' motion for a preliminary injunction and stay—all of which [the Court] rejected." *New York*, 2019 WL 6498250, at *2; *Make the Road New York*, 2019 WL 6498238, at *2 (same). Defendants now seek a third bite at the apple by advancing similar arguments in support of a stay of proceedings pending resolution of Defendants' appeal. *See* Defs.' Mot. For Stay Pending Appeal, 19 Civ. 7777, Docket No. 121, 19 Civ. 7993, Docket No. 158 ("Defs.' Mot.").

Contrary to Defendants' assertion, the factors a court considers in determining whether to stay a district court proceedings pending interlocutory appeal are the same factors it considers—and that this Court *has* considered—in deciding whether to stay a preliminary injunction: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of the stay will substantially injure the other parties in the proceeding; and (4) where the public interest lies." *U.S. Sec. Exch. Comm'n v. Citigroup Global Mkts. Inc.*, 673 F.3d 158, 162-63 (2d Cir. 2012) (internal quotation marks omitted); *see also McCue v. City of New York*, 503 F.3d 167, 170 (2d Cir. 2007) (same); *New York v. U.S. Dep't of Commerce*, 339 F. Supp. 3d 144, 147-48 (S.D.N.Y. 2018) (same); *Strougo v. Barclays PLC*, 194 F. Supp. 3d 230, 233 (S.D.N.Y. 2016)

---

[1] The Plaintiffs in the *New York* and *Make the Road* cases submit identical briefs in opposition to Defendants' motion.

1

(same); *Torres v. Faxton St. Lukes Healthcare*, No. 16 Civ. 439, 2017 WL 11317906, at *2 (N.D.N.Y. Jan. 26, 2017) (considering same factors in deciding request for stay of discovery); *Chevron Corp. v. Salazar*, No. 11 Civ. 3718, 2011 WL 2326893, at *1 (S.D.N.Y. June 14, 2011) (same); *V.S. v. Muhammad*, No. 07 Civ. 213, 2008 WL 5068877, at *1 (E.D.N.Y. Nov. 24, 2008) (applying four-factor test to motion "to stay all proceedings . . . , including discovery on the claims that are not at issue in the pending interlocutory appeal").[2] The first two factors are "the most critical," and all of the factors substantially overlap with "the factors governing preliminary injunctions." *Nken v. Holder*, 556 U.S. 418, 434 (2009). Because "a stay of a civil case is an extraordinary remedy," *Grand River Enters. Six Nations, Ltd. v. Pryor*, No. 02 Civ. 5068, 2004 WL 2480433, at *3 (S.D.N.Y. Nov. 3, 2004), Defendants bear a "heavy burden," *Am. Civil Liberties Union v. U.S. Dep't of Homeland Sec.*, No. 11 Civ. 3786, 2013 WL 6912685, at *2 (S.D.N.Y. Dec. 19, 2013).

Defendants' position, if accepted by the Court, would turn the traditional analysis for granting a stay pending interlocutory appeal on its head. Defendants suggest that the mere existence of an injunction obviates any need for continued district court proceedings; but this argument applies to virtually all cases in which a court grants preliminary relief. The notion that a preliminary injunction weighs in favor of a stay is at odds with the rare and "extraordinary" nature of the stay that Defendants seek. *Grand River Enters.*, 2004 WL 2480433, at *3.

---

[2] Defendants are wrong that "the five factor test described in *Kappel v. Comfort*, 914 F. Supp. 1056 (S.D.N.Y. 1996)" applies to their motion to stay proceedings pending appeal. Defs.' Mot. 3-4. The *Kappel* test—which notably omits the movant's likelihood of success on the merits—applies to a court's determination of whether to stay proceedings in light of pending decisions in *separate*, ongoing litigation. *See Kappel*, 914 F. Supp. at 1056, 1058; *see also SST Global Tech., LLC v. Chapman*, 270 F. Supp. 2d 444, 455 (S.D.N.Y. 2003) ("The test used in *Kappel* has been applied to stay a federal action in light of a concurrently pending federal action (either because the claim arises from the same nucleus of facts or because the pending action would resolve a controlling point of law) . . . ." (emphasis omitted)); *Royal Park Invs.SA/NV v. Bank of Am. Corp.*, 941 F. Supp. 2d 367, 370 (S.D.N.Y. 2013); *Catskill Mts. Chapter of Trout Unlimited, Inc. v. U.S. Envtl. Prot. Agency*, 630 F. Supp. 2d 295, 304 (S.D.N.Y. 2009); *Volmar Distributors, Inc. v. New York Post Co., Inc.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993). In any event, under either test, Defendants' motion for a stay should be denied for the reasons described below.

Defendants cannot meet their heavy burden for such an extraordinary remedy here because, for substantially the same reasons the Court has twice explained, each of the factors weighs against a stay of the proceedings in this case.

## ARGUMENT

**I.      Defendants are unlikely to prevail on the merits.**

Far from making the requisite "strong showing" of success, *Nken*, 556 U.S. at 434, Defendants do not even argue that they are likely to succeed on the merits of their appeal to warrant a stay of the proceedings in this case. *See* Defs.' Mot. 3-4 (erroneously omitting likelihood of success as a factor to consider in deciding a motion to stay the proceedings). At most, Defendants "maintain that the preliminary injunction is improper because Plaintiffs lack standing and their claims are not ripe, and therefore this Court has no jurisdiction to hear their claims." *Id.* at 6. This Court, however, has twice considered and rejected these exact justiciability arguments. *See New York*, 2019 WL 5100372, at *4 ("Plaintiffs have standing to assert their claims."); *id.* at *5 ("One can conceive of no issue of greater ripeness than that presented here."); *Make the Road New York v. Cuccinelli*, No. 19 Civ. 7993, 2019 WL 5484638, at *5 (S.D.N.Y. Oct. 11, 2019) (same); *Make the Road New York*, 2019 WL 6498283, at *5 ("Plaintiffs . . . have standing to bring this action on their own behalf."); *see also New York*, 2019 WL 6498250, at *1-2; *Make the Road New York*, 2019 WL 6498283, at *1-2.[3] Moreover, this Court has held that Plaintiffs are likely to succeed on the merits of their claims that the rule, *Inadmissibility on Public Charge Grounds*, 84 Fed. Reg. 41,292, 41,307, 41,463 (Aug. 14, 2019)

---

[3] Indeed, every court that has considered the justiciability of the claims brought by State and local governments challenging the Final Rule has held that plaintiffs have standing, and that the claims are reviewable. *See City & Cty. of San Francisco, et al.*, Nos. 19-17213, *et al.*, 2019 WL 6726131 (9th Cir. Dec. 5, 2019), at *8-10; *Washington v. U.S. Dep't of Homeland Sec.*, No. 19 Civ. 5210, 2019 WL 5100717, at *4-11 (E.D. Wash. Oct. 11, 2019); *Cook Cty. v. McAleenan*, No. 19 Civ. 6334, 2019 WL 5110267, at *3-7 (N.D. Ill. Oct. 14, 2019); *City & Cty. of San Francisco v. U.S. Citizenship & Immigration Servs.*, Nos. 19 Civ. 4717, *et al.*, 2019 WL 5100718, at *46-49 (N.D. Cal. Oct. 11, 2019).

3

(to be codified at 8 C.F.R. pt. 103, 212, 213, 214, 245, 248) (the "Final Rule") exceeds Defendants' statutory authority, is contrary to law, is arbitrary and capricious, *New York*, 2019 WL 5100372, at *3-9, and for the Non-Profit Plaintiffs, violates the equal protection clause, *Make the Road New York*, 2019 WL 5484638, at *10, and hence that Defendants are not likely to succeed on the merits of their appeal. *See New York*, 2019 WL 6498250, at *3 ("In short, to stay the injunction would be inconsistent with this Court's underlying findings of Plaintiffs' success on the merits . . . ."); *Make the Road New York*, 2019 WL 6498283, at *3 (same).

Accordingly, and for the additional reasons raised in Plaintiffs' motion for preliminary relief and opposition to Defendants' motion for a stay of the preliminary injunction, Defendants are unlikely to succeed on the merits.

**II.    Defendants have not shown that they will be irreparably injured absent a stay.**

"To establish irreparable injury [warranting a stay pending appeal], Defendants have the burden of showing injury that is not remote or speculative but actual and imminent." *Strougo*, 194 F. Supp. 3d at 234. Defendants entirely fail to make such a showing here.

The only burden that Defendants identify is the resources expended in defending against Plaintiffs' claims during the pendency of their appeal. Defs.' Mot. at 6-7. "It is well-established by courts in the Second Circuit, however, that the prospect of incurring litigation costs, even if substantial, is not sufficient to constitute irreparable injury." *Strougo*, 194 F. Supp. 3d at 234; *see also New York v. U.S. Dep't of Commerce*, 345 F. Supp. 3d 444, 448 (S.D.N.Y. 2018) ("[I]t is black-letter law that '[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury.'") (quoting *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974)). Accordingly, Defendants fail to identify any irreparable injury warranting a stay of these proceedings.

4

**III.     Plaintiffs and the public will be substantially harmed by a stay.**

As a threshold matter, because "the first two factors—the movant's likelihood of success on appeal and prospect of suffering irreparable harm—are the most critical and [Defendants] have failed to make the required showing on these two prongs, little more needs to be said as to the second two, which ask whether a stay is likely irreparably to harm Plaintiff[s] and whether a stay is in the public interest." *Strougo*, 194 F. Supp. 3d at 234 (alterations and internal quotation marks omitted); *see also New York*, 345 F. Supp. 3d at 453 (explaining that given that "Defendants fail to carry their burden on either of the first two, and most critical factors . . . [t]he Court could stop there" (internal quotation marks omitted)).  In any event, a stay of these proceedings pending appeal will substantially injure Plaintiffs and the public. *See Nken*, 556 U.S. at 435 ("[T]he traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest.  These factors merge when the Government is the opposing party.").

Defendants argue that "Plaintiffs cannot articulate any concrete way in which they would be prejudiced by a temporary stay of the proceedings in this case." Defs.' Mot. at 6.  This is false.  The preliminary injunctions currently in place are the best relief available to Plaintiffs at this stage in the litigation.  Nonetheless, until the Final Rule is vacated permanently, the fear and uncertainty that immigrants must endure with respect to the Final Rule's possible implementation is real, and any delay in these proceedings works substantial injury on those immigrants and their families.  As several declarants testified, even the *possibility* of the implementation of the Final Rule has caused many immigrants and family members to avoid or disenroll from critical public benefit programs, including Medicaid, the Supplemental Nutrition Assistant Program ("SNAP"), and the Special Supplemental Nutrition Program for Woman,

5

Infants, and Children ("WIC").[4]  Indeed, the chilling effect extends to those who would not even be subject to the Final Rule.[5]  The impact from disenrollment or foregoing these critical services can be devastating and enduring.  For example, even before the Final Rule was finalized, an infant girl was hospitalized with severe anemia and malnutrition; her parents told hospital staff that they had avoided SNAP and WIC for their citizen children because of fear that receipt of these benefits would jeopardize their status in the United States.[6]

The chilling effect that potential implementation of the Final Rule has had on immigrants and their families has and will continue to inflict direct economic harm on the Governmental and Non-Profit Plaintiffs.  Specifically, as immigrants and their families disenroll from or forgo public benefits, States lose federal funding; costs to the Governmental Plaintiffs of providing for the health and well-being in their jurisdictions increase; the Governmental Plaintiffs and their healthcare institutions shoulder uncompensated costs; and economic productivity in those

---

[4] *See* 19 Civ. 7777, Docket No. 34, Ex. 9 (Kallick Decl.) ¶ 28 (explaining that "even the proposed rule caused some immigrants and their families to avoid public benefits programs"; that "[f]ourteen percent of adults in immigrant families reported that they or a family member have avoided SNAP, Medicaid/CHIP, and/or housing subsidies, "for fear of risking future green card status"; and that "[t]wenty-one percent of adults in low-income families—the ones who would likely meet income eligibility requirements for most of these programs—reported that someone in their family avoided benefits"); *see also id.* Ex. 2 (Banks Decl.) ¶ 11 (explaining that New York City has experienced a "striking and dramatic drop in non-citizen SNAP cases" in every borough since 2017); *id.* Ex. 3 (Barbot Decl.) ¶ 12 ("Even before the Final Rule went into effect, [the New York City Department of Health and Mental Hygiene] saw that anxiety and confusion were causing some clients to withdraw from or refuse to enroll in Medicaid and CHIP."); *id.* Ex. 10 (Katz Decl.) ¶¶ 12-15 (describing examples of immigrants disenrolling from or avoiding critical public benefits); *id.* Ex. 14 (Mostofi Decl.) ¶ 9 (explaining information with respect to "New Yorkers disenrolling from, or being unwilling to enroll in . . . SNAP . . . due to fear about potential changes to public charge inadmissibility, and how they might impact their immigration status, in each case, regardless of their eligibility for those benefits"); 19 Civ. 7993, Docket No. 42 (Ku Decl.) ¶ 28 (discussing an Urban Institute study conducted after the release of the notice of proposed rulemaking that showed 13.7% of adults in immigrant families reported avoiding non-cash benefits out of fear for their or their family members' immigration status).

[5] *See, e.g.*, 19 Civ. 7993, Docket No. 47 (Yoo Decl.) ¶ 15 ("[T]he chilling effects of the proposed rule had reached populations who are not subject to the public charge inquiry, including those who are already lawful permanent residents and citizens."); 19 Civ. 7993, Docket No. 43 (Oshiro Decl.) ¶ 38 ("The effect of the Rule, like so many of the Administration's immigration-related policies, is to spread fear and anguish in our communities . . . Many of our members, including those not directly impacted by the Rule, have expressed concern that participating in benefit programs may endanger their loved ones.  Some members who plan to petition and sponsor family members for adjustment fear that efforts at keeping the family stable and unified may in fact lead to removal and deportation of the applicant for adjustment.").

[6] 19 Civ. 7777, Docket No. 34, Ex. 10 (Katz Decl.) ¶ 12.

jurisdictions declines.  *See* 19 Civ. 7777, Pls.' Mem. of Law in Supp. of Pls.' Mot. For Prelim. Inj. & Stay Pending Judicial Review, Docket No. 35 at 9-13 (citing declarations).

The Non-Profit plaintiffs will similarly continue to suffer harm until and unless they are afforded permanent relief.[7]  The Court has already recognized these harms, including diversion of resources and obstruction of their core missions.  *See* 19 Civ. 7993, Mem. and Order, Docket No. 147, at 21–22 ("The irreparable injury to Plaintiffs by forcing them to divert resources and by shifting the burden of providing services to those who can no longer obtain federal benefits without jeopardizing their status in the United States, and the immediate response that is necessary by this shift of burden to Plaintiffs, is a direct and inevitable consequence of the impending implementation of the rule.").  Until permanent relief is granted, these harms will continue.

Ongoing delay in litigation and continued uncertainty as to the ultimate status of the Final Rule impose significant direct and irreparable costs on plaintiffs and the public.  There is substantial confusion about when and whether the preliminary injunction could be lifted, and whether noncitizens could be penalized for benefits used in the interim.  As a result, the Final Rule's chilling effect has endured.[8]  Plaintiffs must continue to expend valuable financial and

---

[7] For example, prior to filing this action, plaintiff Make the Road New York held 29 workshops on public charge, and 10 since the Rule was published.  19 Civ. 7993, Docket No. 43  (Oshiro Decl.) ¶¶ 21, 25.  Catholic Charities Community Services redirected staff resources to address public charge concerns, including increasing community outreach to overcome the chilling effect caused by the Rule that has disrupted its client-base.  19 Civ. 7993, Docket No. 44 (Russell Decl.) ¶¶ 19–22, 34–35, 41.  African Services Committee dedicated significant resources to communications about the Rule, including buying airtime for public service announcements at the cost of 8 percent of its annual communications budget.  19 Civ. 7993, Docket No. 46 (Nichols Decl.) ¶ 11.  The Catholic Legal Immigration Network, Inc. saw a "tripling in volume" of client questions about the Rule, and diverted resources to address the increased need for information at both an individual and community level.  19 Civ. 7993, Docket No. 48 (Wheeler Decl.) ¶¶ 10–12.

[8] As observed in a recent article addressing the Rule's effect on immigrant communities, "[e]ven after the [preliminary injunctions], city officials and immigration advocates found themselves scrambling to stem a tide of fear and uncertainty. Families have needlessly dropped out of Supplemental Nutrition Program for Women, Infants, and Children . . . pulled their children out of school lunch programs, and have avoided public hospitals over concerns of hurting their immigration prospects [according to an immigration advocate from the New York

human resources to respond to the fears concerning the Final Rule, including through media and communications efforts, community outreach and education, and the provision of legal and technical advice and services.[9]

Accordingly, any delay in reaching the merits of this case substantially harms Plaintiffs and the public because of the ongoing uncertainty, confusion, and fear of possible implementation of the Final Rule.  *See Grand River Enters.,* 2004 WL 2480433, at \*3 (rejecting a motion to stay when "the pending antitrust claim cloud[ed] the validity of New York public health legislation" and a stay would "only exacerbate this problem, which jointly affect[ed] the [nonmovant] and the public interest").  Moreover, where, as here, an administrative agency "fail[s] to follow statutory procedures, the public suffers."  *Nat. Res. Defense Council, Inc. v. U.S. Food & Drug Admin.*, 884 F. Supp. 2d 108, 126 (S.D.N.Y. 2012) (denying a stay in a challenge to the federal Government's actions under the APA) (internal quotation marks omitted); *see also League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) ("[T]here is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." (internal quotation marks omitted)).

In addition, as the Court has already explained, Defendants' arguments with respect to the effect of the preliminary injunctions issued in other jurisdictions, Defs.' Mot. 5, 8, "are unavailing."  *New York*, 2019 WL 6498250, at \*3 n.3; *Make the Road New York*, 2019 WL 6498283, at \*3 n.3 (same).  Indeed, the Ninth and Fourth Circuits' recent stays of the preliminary injunctions issued by the Northern District of California, the Eastern District of Washington, and

---

Immigration Coalition]."  *See* Eileen Grench and Josefa Velasquez, Immigrant New Yorkers in Limbo after Courts Halt 'Public Charge' Rule, The City (Oct. 15, 2019); *accord* Massarah Mikati, Public Charge Confusion Continues, HudsonValley360 (Dec. 2, 2019) ("Nearly two months after a federal judge blocked the Trump administration's public charge rule, a widespread chilling effect is still taking place among immigrant communities across the nation and state.").

[9] *See* 19 Civ. 7777, Docket No. 34, Ex. 14 (Mostofi Decl.) ¶ 15; *see also id.* Ex. 7 (Gonzalez-Murphy Decl.) ¶¶ 14-21.

8

the District of Maryland reflect that contrary to Defendants' representations, Plaintiffs cannot rely on orders in other jurisdictions. *See City & Cty. of San Francisco, et al.*, Nos. 19-17213, *et al.*, 2019 WL 6726131 (9th Cir. Dec. 5, 2019), at *26; *Casa de Maryland v. Trump*, No. 19 Civ. 2222 (4th Cir. Dec. 9, 2019). Rather, such injunctions, "like all preliminary injunctions[,] . . .[are] of limited duration," and thus cannot fully protect Plaintiffs' or the public's interests here. *California v. U.S. Dep't of Health & Human Servs.*, 941 F.3d 410, 423 (9th Cir. 2019).

Moreover, as set forth in more detail in Plaintiffs' request for a pre-motion conference, *see* 19 Civ. 7777, Docket No. 125; 19 Civ. 7993, Docket No. 162, a stay would delay discovery and could degrade the evidence available to Plaintiffs. Defendants are wrong that discovery in this case is limited to the administrative record. Defs.' Mot. at 5. *See e.g.*, *Webster v. Doe*, 486 U.S. 592, 604 (1988) (noting that discovery was available against the CIA in a case alleging both APA and constitutional claims); *Puerto Rico Pub. Hous. Admin.*, 59 F. Supp. 2d at 328 ("[A] plaintiff who is entitled to judicial review of its constitutional claims under the APA is entitled to discovery in connection with those claims." (citing *Webster*, 486 U.S. at 604)); *Rydeen v. Quigg*, 748 F. Supp. 900, 905-06 (D.D.C. 1990) (considering extra-record affidavits because "[w]hen reviewing constitutional challenges to agency decisionmaking, courts make an independent assessment of the facts and the law"). Granting a stay before this issue has been resolved would be premature, as the Northern District of Illinois has recognized. *See* Minute Entry, *Cook Cty. v. McAleenan*, No. 19 Civ. 6334 (N.D. Ill. Dec. 6, 2019) (denying defendants' motion to stay proceedings because it "is premature, as it has not yet been decided whether discovery will be permitted on the equal protection claim.").

Defendants' assurances with respect to their record retention policies and litigation holds

9

are insufficient to protect Plaintiffs' interests.  Discovery in this case has yet to commence, and thus there are real concerns with respect to fading memories and loss of evidence, especially with respect to Plaintiffs' allegations that Defendants were motivated by discriminatory animus towards Latinos and immigrant communities of color when they promulgated the Final Rule. *See* 19 Civ. 7777, Docket No. 1 (Compl. ¶ 298).  *Cf. Royal Park Investments SA/NV v. U.S. Bank Nat'l Ass'n*, No. 14 Civ. 2590, 2018 WL 3830921, at *2 (S.D.N.Y. Aug. 13, 2018) (holding that there was "little to no concern for fading memories and loss of evidence[ ] because all fact discovery [had] been completed.").

Accordingly, for the reasons explained above, delay in providing a clear answer with respect to the legality of the Final Rule substantially injures Plaintiffs and the public.

## CONCLUSION

Plaintiffs respectfully request that the Court deny Defendants' motion for a stay pending appeal.

DATED: December 13, 2019

Respectfully submitted,

LETITIA JAMES
*Attorney General of the State of New York*

By: */s/ Amanda Meyer*
Amanda Meyer, *Assistant Attorney General*
Elena Goldstein
  *Deputy Chief, Civil Rights Bureau*
Matthew Colangelo
  *Chief Counsel for Federal Initiatives*
Ming-Qi Chu, *Section Chief, Labor Bureau*
Abigail Rosner, *Assistant Attorney General*
Ajay Saini, *Assistant Attorney General*
Office of the New York State Attorney General
New York, New York 10005
Phone: (212) 416-6225
amanda.meyer@ag.ny.gov

*Attorneys for the State of New York*

| | |
|---|---|
| JAMES E. JOHNSON<br>*Corporation Counsel of the City of New York* | WILLIAM TONG<br>*Attorney General of Connecticut* |
| By: /s/ *Tonya Jenerette*<br>Tonya Jenerette<br>  Deputy Chief for Strategic Litigation<br>Cynthia Weaver, *Senior Counsel*<br>Hope Lu, *Senior Counsel*<br>Doris Bernhardt, *Senior Counsel*<br>Melanie Ash, *Senior Counsel*<br>100 Church Street, 20th Floor<br>New York, NY 10007<br>Phone: (212) 356-4055<br>tjeneret@law.nyc.gov<br><br>*Attorneys for the City of New York* | By: /s/ *Joshua Perry*<br>Joshua Perry<br>  *Special Counsel for Civil Rights*<br>55 Elm Street<br>Hartford, CT 06106-0120<br>(860) 808-5318<br>Joshua.perry@ct.gov<br><br>*Attorneys for the State of Connecticut* |

THOMAS J. DONOVAN, JR.
*Attorney General of Vermont*

By: */s/ Benjamin Battles*
Benjamin Battles, *Solicitor General*
Eleanor Spottswood, *Assistant Attorney General*
Julio Thompson,\* *Assistant Attorney General*
Office of the Attorney General
109 State Street
Montpelier, VT 05609-1001
(802) 828-5500
benjamin.battles@vermont.gov

*Attorneys for the State of Vermont*

\* *Admitted pro hac vice*

12