# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MAKE THE ROAD NEW YORK, *et al.*, | |
| *Plaintiffs,* | |
| v. | No. 19-07993 (GBD) |
| KENNETH CUCCINELLI, *et al.*, *Defendants*. | |
| STATE OF NEW YORK, *et al.* | |
| *Plaintiffs*, | |
| v. | No. 19-cv-07777 (GBD) |
| U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.* | |
| *Defendants*. | |

# OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND STAY OR TEMPORARY RESTRAINING ORDER PENDING NATIONAL EMERGENCY

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 2

STANDARD OF REVIEW .............................................................................................. 5

ARGUMENT ................................................................................................................... 6

I.      The Court Lacks Jurisdiction to Issue the Preliminary Relief Requested by Plaintiffs...... 6

II.     Plaintiffs Are Unlikely to Succeed on the Merits of Their Claims................................... 10

III.    Plaintiffs Fail to Demonstrate That They Will Suffer Irreparable Harm in the Absence of a Preliminary Injunction, or that the Balance of Equities Favors an Injunction .......... 12

   A.   USCIS Has Already Issued an Alert that Adequately Addresses Plaintiffs' Concerns.... 12

   B.   Plaintiffs' Claimed Harms Are Not Caused by the Rule and Would Not Be Remedied by a Preliminary Injunction ........................................................................ 14

   C.   The Remaining Equitable Factors Require Denial of Plaintiffs' Motion ........................ 19

IV.     If the Court Chooses to Grant Injunctive Relief, the Injunction Should Not Have Nationwide Effect ........................................................................................... 20

V.      The Court Should Decline to Issue an Indicative Ruling on Plaintiffs' Request for Preliminary Relief ........................................................................................ 22

CONCLUSION.............................................................................................................. 23

# TABLE OF AUTHORITIES

**Cases**

*Appalseed Prods., Inc. v. Medianet Dig., Inc*,
2012 U.S. Dist. LEXIS 93946 (S.D.N.Y. July 6, 2012) .......................................................... 17

*Broker Genius Inc. v. Seat Scouts LLC*,
No. 17-8627, 2019 U.S. Dist. LEXIS 18447 (S.D.N.Y. Feb. 5, 2019)...................................... 7

*Chevron Corp. v. Naranjo*,
667 F. 3d 232 (2d Cir. 2012)................................................................................................... 23

*City & County of San Francisco v. USCIS*,
944 F.3d 773 (2019)................................................................................................... 3, 11, 20

*Conkright v. Frommert*,
556 U.S. 1401 (2009)............................................................................................................... 11

*Dep't of Homeland Sec. v. New York*,
140 S. Ct. 599 (2020)........................................................................................................ 1, 3, 20

*Drywall Tapers & Pointers of Greater N.Y. v. Bovis Lend Lease Interiors, Inc.*,
No. 05 CV 274, 2006 U.S. Dist. LEXIS 5014 (E.D.N.Y. Feb 10, 2006) ................................... 9

*Faulkner v. Jones*,
10 F.3d 226 (4th Cir. 1993) ............................................................................................ 17, 19

*Fla. Audubon Soc'y v. Bentsen*,
94 F.3d 658 (D.C. Cir. 1996)................................................................................................... 18

*Garcia v. Bloomberg*,
No. 11 civ. 6597, 2012 U.S. Dist. LEXIS 108311 (S.D.N.Y. July 26, 2012) ........................... 6

*Gill v. Whitford*,
138 S. Ct. 1916 (2018)............................................................................................................. 21

*Huszar v. Zeleny*,
269 F. Supp. 2d 98 (S.D.N.Y. 2003)......................................................................................... 7

*Int'l Ass'n of Machinists & Aerospace Workers v. Eastern Airlines, Inc.*,
847 F.2d 1014 (2d Cir. 1988)................................................................................................... 9

*I.M. Wilson, Inc. v. Otvetstvennostyou "Grichko"*,
No. 18-5194, 2019 U.S. Dist. LEXIS 182350 (E.D. Pa. Oct. 18, 2019) ................................. 17

*Lewis v. Casey*,
518 U.S. 343 (1996)................................................................................................................. 21

*Madsen v. Women's Health Ctr. Inc.*,
  512 U.S. 753 (1994) .................................................................................... 21

*Maryland v. King*,
  567 U.S. 1301 (2012) .................................................................................. 20

*Monserrate v. New York State Senate*,
  599 F.3d 148 (2d Cir. 2010) ....................................................................... 12

*Munaf v. Geren*,
  553 U.S. 674 (2008) ...................................................................................... 5

*New York NOW v. Terry*,
  886 F.2d 1339 (2nd Cir. 1989) ..................................................................... 6

*Nken v. Holder*,
  556 U.S. 418 (2009) .............................................................................. 11, 19

*Ret. Bd. of the Policemen's Annuity and Ben. Fund of Chi. v. Bank of N.Y. Mellon*,
  297 F.R.D. 218 (S.D.N.Y. 2013) ........................................................... 22, 23

*Salinger v. Colting*,
  607 F.3d 68 (2d Cir. 2010) .......................................................................... 17

*Satcom Int'l Group PLC v. Orbcomm Int'l Partners, L.C.*,
  55 F. Supp. 2d 231 (S.D.N.Y. 1999) ............................................................. 7

*Sea Shore Corp. v. Sullivan*,
  158 F.3d 51 (1st Cir. 1998) ......................................................................... 18

*Sierra Club v. United States DOE*,
  825 F. Supp. 2d 142 (D.D.C. 2011) ............................................................ 17

*Simon v. E. Ky. Welfare Rights Org.*,
  426 U.S. 26 (1976) ...................................................................................... 18

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009) .................................................................................... 21

*Texas v. EPA*,
  829 F.3d 405 (5th Cir. 2016) ........................................................................ 5

*United States v. Rodgers*,
  101 F.3d 247 (2d Cir. 1996) .......................................................................... 9

*United States v. Salerno*,
  868 F.2d 524 (2d Cir. 1989) .......................................................................... 9

*United States v. Walker*,
  7 F.3d 26 (2d Cir. 1993).................................................................................................. 18

*VIP of Berlin v. Town of Berlin*,
  593 F.3d 179 (2d Cir. 2010)........................................................................................ 5, 11

*Webb v. GAF Corp.*,
  78 F.3d 53 (2d Cir. 1996).................................................................................................. 9

*Winter v. NRDC*,
  555 U.S. 7 (2008)................................................................................................................ 5

*Wolf v. Cook County*,
  140 S. Ct. 681 (2020).......................................................................................................... 3

**Statute**s

5 U.S.C. 705......................................................................................................................... 3, 21

8 U.S.C. § 1182(a)(4)................................................................................................................ 2

8 U.S.C. § 1641(b).................................................................................................................. 15

8 U.S.C. § 1642(b).................................................................................................................. 15

**Rules**

Federal Rule of Civil Procedure 62.1 ................................................................................. 22

Federal Rule of Appellate Procedure 28(j) ......................................................................... 23

**Other Authorities**

*Inadmissibility on Public Charge Grounds*,
  84 Fed. Reg. 41292 (Aug. 14, 2019) ...................................................................... *passim*

Proclamation No. 9994, 85 Fed. Reg. 15,337 (Mar. 18, 2020)...................................... 4

## INTRODUCTION

The Supreme Court has twice rejected Plaintiffs' attempts to halt implementation of the Department of Homeland Security rule *Inadmissibility on Public Charge Grounds*, 84 Fed. Reg. 41292 (Aug. 14, 2019) ("Rule").  First, on January 27, 2020, the Supreme Court stayed, over Plaintiffs' objections, this Court's October 11, 2019 orders preliminarily enjoining the Rule.  *See Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599 (2020).  Then, in April, Plaintiffs asked the Supreme Court to temporarily lift or modify its stay because of the COVID-19 pandemic, arguing, as they do in the instant motion, that "the Rule is now causing additional irreparable harms to the public—citizens and noncitizens alike—that were not present when the Court initially considered defendants' motion for a stay."  *See Dep't of Homeland Sec. v. New York*, No. 19A785, Mot. by Gov't Pls. to Temporarily Lift or Modify the Ct.'s Stay of the Orders Issued by the U.S. Dist. Ct. for S.D.N.Y. ("Mot. to Lift Stay"), at 2.[1]  The Supreme Court denied that motion.  Plaintiffs now turn to this Court to seek a new preliminary injunction.  But their motion – which merely replicates their most recent unsuccessful Supreme Court filing – fails to establish a basis for a different outcome in this Court.

Accordingly, the Court should deny Plaintiffs' motion.  First and foremost, as Plaintiffs themselves recognized in their Supreme Court motion, there is "substantial doubt as to whether the lower courts could provide any meaningful relief given the [Supreme] Court's stay."  Mot. to Lift Stay, at 16.  Indeed, that was an understatement.  According to well-settled principles, this Court lacks jurisdiction over issues that are currently under review by the Second Circuit Court of Appeals.  Plaintiffs' request here – which asks the Court to either issue a duplicative injunction or

---

[1] Available at https://www.supremecourt.gov/DocketPDF/19/19A785/141515/2020041315301 4307_19A785%20Motion%20to%20Temporarily%20Lift%20or%20Modify%20Stay.pdf.

simply "modify" the injunction that was already issued (and stayed) – clearly comes within that rule.

Even if this Court determines that it has the authority to issue a new injunction, it should find that the prerequisites for such relief are not met here.  On the merits, the Supreme Court, in staying the injunctions, has already necessarily decided that Defendants have a fair prospect of success.  Plaintiffs also fail to show that any irreparable harm would result in the absence of a preliminary injunction where (1) Defendants have already issued guidance to address concerns that individuals may not seek medical services for COVID-19 and (2) a preliminary injunction would not likely remedy Plaintiffs' alleged harms.  The balance of equities, too, weighs against entry of another injunction.  For these reasons, as discussed further below, the Court should reach the same result as the Supreme Court did when it reviewed the same evidence that is now before this Court, and deny Plaintiffs' requested relief.

## BACKGROUND

On August 14, 2019, the Department of Homeland Security ("DHS") published the Rule in the Federal Register.  84 Fed. Reg. 41292 (Aug. 14, 2019).  This final rule is the culmination of an extensive, multi-year process to adopt regulations that prescribe how DHS will determine whether an alien applying for admission or adjustment of status is inadmissible under section 212(a)(4) of the Immigration and Nationality Act ("INA") because he or she is "likely at any time to become a public charge."  8 U.S.C. § 1182(a)(4).

The Rule defines "public charge" – which the statute itself does not define – to mean "an alien who receives one or more [designated] public benefits . . . for more than 12 months in the aggregate within any 36-month period (such that, for instance, receipt of two benefits in one month counts as two months)."  Rule at 41501.  The designated public benefits include federal, state,

local, and tribal cash assistance for income maintenance (excluding tax credits) and certain federally funded or administered non-cash benefits, including most Medicaid benefits, Supplemental Nutrition Assistance Program benefits, and federal housing assistance. *Id*. They do not, however, include emergency medical services under Medicaid. *Id*. at 41363, 41482-83. Nor do they include non-cash benefits that are not federally funded or administered, such as state and local non-cash benefits. *Id*. at 41312. Receipt of those benefits therefore will not be considered in making a public-charge inadmissibility determination under the Rule.

On October 11, 2019, the Court granted Plaintiffs' motions for a nationwide preliminary injunction and stay under 5 U.S.C. 705 barring DHS from implementing the Rule. *See New York*, ECF Nos. 109, 110; *Make the Road New York*, ECF Nos. 146, 147. On January 27, 2020, the Supreme Court stayed the nationwide injunctions in their entirety, "pending disposition of the Government's appeal in the United States Court of Appeals for the Second Circuit and disposition of the Government's petition for a writ of certiorari, if such writ is timely sought." *New York*, 140 S. Ct. at 599.

Four other district courts also issued injunctions against the Rule. The U.S. Court of Appeals for the Ninth Circuit granted the government's motions for stays pending appeal in the cases pending in that circuit. *See City & County of San Francisco v. USCIS*, 944 F.3d 773 (2019). The U.S. Court of Appeals for the Fourth Circuit also granted a stay pending appeal of the nationwide injunction entered by a district court in Maryland. *See* Order, *Casa de Maryland, Inc. v. Trump*, No. 19-2222 (4th Cir. Dec. 9, 2019). After the U.S. Court of Appeals for the Seventh Circuit denied the government's renewed motion for a stay pending appeal of an injunction against the Rule issued by a district court in Illinois, the Supreme Court stayed that injunction. *See Wolf v. Cook County*, 140 S. Ct. 681 (2020).

On March 13, 2020, the President issued a proclamation stating "that the COVID-19 outbreak in the United States constitutes a national emergency."  Proclamation No. 9994, 85 Fed. Reg. 15,337 (Mar. 18, 2020).  That same day, Defendant U.S. Citizenship and Immigration Services ("USCIS") issued guidance explaining that it "encourages all those, including aliens, with symptoms that resemble Coronavirus Disease 2019 (COVID-19) (fever, cough, shortness of breath) to seek necessary medical treatment or preventive services.  Such treatment or preventive services will not negatively affect any alien as part of a future Public Charge analysis."  Pls' Ex. 4.  The guidance specifically states that "[t]o address the possibility that some aliens impacted by COVID-19 may be hesitant to seek necessary medical treatment or preventive services, USCIS will neither consider testing, treatment, nor preventative care (including vaccines, if a vaccine becomes available) related to COVID-19 as part of a public charge inadmissibility determination, nor as related to the public benefit condition applicable to certain nonimmigrants seeking an extension of stay or change of status, even if such treatment is provided or paid for by one or more public benefits, as defined in the rule (e.g. federally funded Medicaid)."  *Id*.

On April 13, 2020, Plaintiffs filed a motion in the Supreme Court to temporarily lift or modify its stay of this Court's injunctions.  *See* Mot. to Lift Stay.  Plaintiffs argued that "the Rule is now causing additional irreparable harms to the public" by "deterring immigrants from accessing publicly funded healthcare, including programs that would enable immigrants to obtain testing and treatment for COVID-19" and by deterring access to public benefits "that are critical for both immigrants and the country as a whole to weather the economic crisis triggered by COVID-19." *Id*. at 2.  According to Plaintiffs, "[t]hese irreparable harms have tipped the balance of the equities decidedly against maintaining the stay during the national emergency concerning COVID-19." *Id*. As evidentiary support, Plaintiffs offered nineteen declarations, all of which it has filed in support

of its motion in this Court as well.  On April 24, 2020, the Supreme Court denied Plaintiffs' motion and stated that the Court's "order does not preclude a filing in the District Court as counsel considers appropriate."  *See* Pls' Ex. 2.[2]

## STANDARD OF REVIEW

Preliminary injunctions are "extraordinary and drastic remed[ies]" that are "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008). A party seeking to enjoin "government action taken in the public interest pursuant to a statutory or regulatory scheme" in a way that would "alter, rather than maintain, the status quo . . . must demonstrate irreparable harm and a clear or substantial likelihood of success on the merits," *VIP of Berlin v. Town of Berlin*, 593 F.3d 179, 185-86 (2d Cir. 2010) (internal quotation marks omitted), and must also show that the balance of equities tips in their favor and that an injunction is in the public interest.  *Winter v. NRDC*, 555 U.S. 7, 20 (2008).  Where, as here, there are serious questions as to the Court's jurisdiction, it is "more *unlikely*" that the plaintiff can establish a "likelihood of success on the merits." *Munaf*, 553 U.S. at 690.  In the alternative, Plaintiffs seek a stay of the effective date of the Rule under Section 705 of the APA.  As they correctly observe, "[t]he standard for a stay under § 705 is the same as the standard for a preliminary injunction."  Mem. of Law in Supp. of Pls.' Mot. for Prelim. Inj. and Stay or TRO Pending National Emergency at 12-13, ECF No. 169 ("Mot.") (citing *Texas v. EPA*, 829 F.3d 405, 435 (5th Cir. 2016)).

---

[2] The Court also denied a similar motion by the plaintiffs in litigation pending in the U.S. District Court for the Northern District of Illinois.  Pls' Ex. 3.  To date, those plaintiffs have not filed a new motion for a preliminary injunction.

**ARGUMENT**

**I.     The Court Lacks Jurisdiction to Issue the Preliminary Relief Requested by Plaintiffs**

Plaintiffs contend that the district court retains jurisdiction to issue a second preliminary injunction based on legal issues identical to those that are currently before the Second Circuit on appeal and despite the Supreme Court's stay of the Court's first preliminary injunction.  But just weeks ago, Plaintiffs conceded in their Supreme Court filing that there is "substantial doubt as to whether the lower courts could provide any meaningful relief given the [Supreme] Court's stay." Mot. to Lift Stay at 16.  That is why Plaintiffs sought relief initially in the Supreme Court rather than in this Court.  Because this Court lacks authority to modify its first injunction, it follows that the Court also may not issue a new injunction that would effectively undo the Supreme Court's stay of that injunction.  Such a "new" injunction would for all intents and purposes be identical to the injunctions that the Supreme Court already has stayed – but simply issued based on this Court's "new" evaluation of the applicable factors.

It is well-settled that an interlocutory appeal "divests the district court of jurisdiction respecting the questions raised and decided in the order that is on appeal."  *New York NOW v. Terry*, 886 F.2d 1339, 1350 (2nd Cir. 1989); *see also Garcia v. Bloomberg*, No. 11 civ. 6597, 2012 U.S. Dist. LEXIS 108311, at *2-3 (S.D.N.Y. July 26, 2012) ("An interlocutory appeal, unless frivolous, generally divests the district court of jurisdiction respecting the issues raised and decided in the order on appeal; but the district court retains jurisdiction over 'collateral' matters not involved in the appeal.").  It is true, as Plaintiffs note, *see* Mot. at 13-14, that a notice of interlocutory appeal does not entirely divest a district court of jurisdiction "to proceed with other phases of the case," but that narrow exception does not apply here.  Plaintiffs cannot plausibly contend that the substance of their successive motion for preliminary relief is independent of the

questions of law and fact raised and decided in the previous preliminary injunction motion and which are now under consideration by the Second Circuit.  Indeed, Plaintiffs expressly admit that the instant injunction request is premised, at least in part, on the same considerations as the prior injunction that is on appeal.  Mot. at 16 ("Plaintiffs have already demonstrated that they are likely to succeed on the merits of their claims and that the Rule is contrary to law and arbitrary and capricious in violation of the APA – issues that the Second Circuit is currently considering and that the Plaintiffs do not seek to relitigate here.").  In other words, Plaintiffs ask the Court to rely on the Court's prior legal and factual determinations in order to satisfy the standard, Mot. at 24, even though those determinations are currently under review by the Second Circuit.  *See Broker Genius Inc. v. Seat Scouts LLC*, No. 17-8627, 2019 U.S. Dist. LEXIS 18447, at *7 (S.D.N.Y. Feb. 5, 2019) (court lacked jurisdiction to change the amount of a bond because the amount of the bond was set in the order granting a preliminary injunction, which was still on appeal).  Plaintiffs have not withdrawn their first motion for preliminary injunction, but instead they are continuing to pursue that motion in the Second Circuit while simultaneously seeking a new injunction in this Court.[3]

Plaintiffs attempt to distinguish their instant motion from their earlier motion by insisting that the new motion "seeks new relief based upon new facts and circumstances that were not—and could not have been—before the Court when it issued its prior order."  Mot. at 14.  Even if

---

[3] Plaintiffs are not asking the Court to proceed to the merits or take any other action collateral to the issues on appeal.  Instead, contrary to their assertions, they are transparently seeking "a second bite at the apple" in the form of a preliminary nationwide injunction of the Rule as a whole. *Cf., e.g.*, *Satcom Int'l Group PLC v. Orbcomm Int'l Partners, L.C.*, 55 F. Supp. 2d 231, 234 (S.D.N.Y. 1999) ("[T]he district court may proceed with those matters not involved in the appeal."); *Huszar v. Zeleny*, 269 F. Supp. 2d 98, 102 (S.D.N.Y. 2003) ("Here the interlocutory appeal involves the Court's denial of a preliminary injunction and is unrelated to the merits of the case . . . Therefore the Court has jurisdiction over . . . the defendants' motion to dismiss.").

Plaintiffs could show that *one* issue presented by their current motion was not tied up with the issues already pending on appeal, that would not change the fact that their current motion necessarily implicates other, distinct issues that are indisputably wrapped up in the appeal. *See supra* at 6-7. That by itself means that this Court lacks jurisdiction to grant their present motion. And in any event, the types of harms that Plaintiffs describe in the instant motion were indeed raised in their earlier motion – the COVID-19 situation simply presents a new example of those previously identified harms. Plaintiffs argued at length in their first motion that the Rule would cause individuals to disenroll from Medicaid and other public benefits and thereby harm public health. *See New York*, No. 19-7777, Mem. of Law in Supp. of Pls' Mot. for Prelim. Inj. And Stay Pending Judicial Review, ECF No. 35, at 6-17. For example, Plaintiffs claimed that the Rule "will impair Plaintiffs' ability to safeguard public health in their jurisdictions," "will cause irreparable harm to public health," and that the Rule "jeopardizes Plaintiffs' ability to reduce the spread of communicable diseases" because "uninsured adults and children are more likely to skip immunizations and vaccinations, increasing the likelihood that communicable diseases will spread throughout Plaintiffs' jurisdictions." *Id.* at 9, 13, 14. The Court agreed with those arguments when it enjoined the Rule, *see, e.g., New York*, No. 19-7777, ECF No. 110, at 20 (discussing "economic and public health harms" including "[i]ncreased prevalence of communicable diseases"), and the Second Circuit is now considering those same arguments on appeal, *see New York v. DHS*, No. 19-3591, Brief for Appellees, at 29-31 (2d Cir.). Moreover, Plaintiffs raised those arguments, unsuccessfully, before the Supreme Court when they opposed Defendants' application for a stay.

*See DHS v. New York*, No. 19A785, Opp'n of Gov't Pls to Defs' Application for a Stay of the

Orders Issued by the U.S. District Ct. for S.D.N.Y., at 19-20 (Jan. 22, 2020).[4]

The divestiture of jurisdiction rule is "designed to 'avoid confusion or waste of time

resulting from having the same issues before two courts at the same time'" – the exact problem

that Plaintiffs' instant motion creates.  *United States v. Rodgers*, 101 F.3d 247, 251 (2d Cir. 1996)

(quoting *United States v. Salerno*, 868 F.2d 524, 540 (2d Cir. 1989)).  The Court has been divested

of jurisdiction to make decisions based on elements that are on appeal.  *See, e.g., Webb v. GAF

Corp.*, 78 F.3d 53, 55 (2d Cir. 1996); *Drywall Tapers & Pointers of Greater N.Y. v. Bovis Lend

Lease Interiors, Inc.*, No. 05 CV 274, 2006 U.S. Dist. LEXIS 5014, at *9 (E.D.N.Y. Feb 10, 2006)

("Whether [the court] has jurisdiction to decide [party's motion] essentially depends on whether

the issues raised by that motion overlap with the issues 'involved in' the [interlocutory] appeal[.]").

Therefore, Plaintiffs' successive motion for preliminary injunction should be denied for lack of

jurisdiction.

The Plaintiffs' secondary argument, that the Court is empowered to take action to maintain the

status quo at the time of the injunction, is also unavailing.  Mot. at 14 n.47.  Rule 62(c) "has been

narrowly interpreted to allow the district court to grant only such relief as may be necessary to

preserve the status quo pending an appeal."  *Int'l Ass'n of Machinists & Aerospace Workers v.

Eastern Airlines, Inc.*, 847 F.2d 1014, 1018 (2d Cir. 1988).  The circumstances that would have

pertained under the preliminary injunction cannot be the status quo for purposes of this rule

because the Supreme Court's stay of the injunction prevents the injunction from having any effect.

Indeed, given that the Supreme Court has stayed that existing injunction, modifying that injunction

---

[4] Available at https://www.supremecourt.gov/DocketPDF/19/19A785/129483/2020012213472
4605_No.19A785%20StayOpposition.pdf.

would have no effect while the Supreme Court's stay remains in place – further highlighting the fact that what Plaintiffs are effectively doing is asking this Court to overrule the Supreme Court's stay decision.

Plaintiffs seek to avoid the effect of the well-settled precedent described above by pointing to the Supreme Court's statement that "[t]his order" – *i.e.*, the order denying Plaintiffs' request to lift the stay of injunction – "does not preclude a filing in the District Court as counsel considers appropriate." Pls' Ex. 2. But that statement merely clarified that the Supreme Court's order on their motion to modify the stay did not purport to predetermine the effect of the underlying stay itself (and the pending appeal) on this Court's jurisdiction over a yet-to-be-filed motion that Plaintiffs themselves had suggested this Court would likely not be able to consider. The limited scope of the Court's statement about the "preclu[sive]" effect of its "order" on a "filing" by counsel, Pls' Ex. 2, moreover, is especially notable because it differs in important ways from the alternative relief Plaintiffs had asked for – that "the Court should clarify that its *stay* does not preclude the *district court* from considering whether changed circumstances from the COVID-19 outbreak warrant temporary relief from implementation of the Public Charge Rule." Mot. to Lift Stay at 27 (emphasis added). Plaintiffs simply ignore the limited language of the Court's order, suggesting – incorrectly – that the Court gave them exactly what they had requested. *See*, *e.g.*, Mot. at 15.

## II.    Plaintiffs Are Unlikely to Succeed on the Merits of Their Claims

Even if the Court determines it has jurisdiction over Plaintiffs' second motion for preliminary injunction, it should deny that motion. Plaintiffs argue that this Court's prior rulings on the merits in connection with Plaintiffs' first preliminary injunction motion "are dispositive under the law of the case doctrine." Mot. at 24. But that argument ignores the Supreme Court's

stay.  In staying this Court's preliminary injunction, the Supreme Court necessarily concluded that the government had a fair prospect of success on the merits.  *Conkright v. Frommert*, 556 U.S. 1401, 1402 (2009) (Ginsburg, J., in chambers); *see Nken v. Holder*, 556 U.S. 418, 434 (2009) (explaining that a stay applicant must "ma[k]e a strong showing that he is likely to succeed on the merits").  And Plaintiffs identify nothing in their present motion – which deals exclusively with events that occurred after the finalization of the Rule – that would undermine the Supreme Court's assessment of the merits.  Accordingly, they have failed to demonstrate the "'clear' or 'substantial' likelihood of success on the merits" that their application for a preliminary injunction requires. *VIP of Berlin*, 593 F.3d at 185-86 (citation omitted).  Accordingly, the law of the case doctrine favors Defendants, not Plaintiffs.

Even if the Court could reconsider the merits question that was necessarily decided in Defendants' favor by the Supreme Court, the authority in support of Defendants' position is even stronger now than it was at the time of the first preliminary injunction motion.  In particular, in staying materially similar preliminary injunctions against the Rule's enforcement, the Ninth Circuit has issued a detailed opinion concluding that Defendants are likely to succeed on their claim that the Rule falls well within the Executive Branch's discretion to interpret and implement the public charge inadmissibility provision in the Immigration and Nationality Act. *San Francisco*, 944 F.3d at 773.  Particularly in light of that decision, Plaintiffs cannot show a likelihood of success on the merits.  *See New York*, No. 19-7777, Mem. of Law in Supp. of Defs' Mot. to Dismiss, ECF No. 141; *Make the Road New York*, No. 19-7993, Mem. of Law in Supp. of Defs' Mot. to Dismiss,

ECF No. 177.  If this Court determines that it has jurisdiction to consider Plaintiffs' motion at all, it can deny the motion on this basis alone.[5]

### III.   Plaintiffs Fail to Demonstrate That They Will Suffer Irreparable Harm in the Absence of a Preliminary Injunction, or that the Balance of Equities Favors an Injunction

#### A.   USCIS Has Already Issued an Alert That Adequately Addresses Plaintiffs' Concerns

Plaintiffs also cannot satisfy the irreparable harm and balance of equities requirements for preliminary injunctive relief.  On March 13, 2020—the same day that President Trump declared that the COVID-19 outbreak constitutes a national emergency—USCIS issued an alert to ensure that the Rule would not deter aliens from seeking medical treatment or preventive services related to COVID-19. *See* USCIS, Public Charge Alert, https://www.uscis.gov/green-card/green-card-processes-and-procedures/public-charge  (last visited May 12, 2020) (hereinafter, "Alert"). The Alert categorically states that "treatment or preventive services" for COVID-19 "will not negatively affect any alien as part of a future public charge analysis." *Id.*  The alert further clarifies:

> To address the possibility that some aliens impacted by COVID-19 may be hesitant to seek necessary medical treatment or preventive services, USCIS will neither consider testing, treatment, nor preventative care (including vaccines, if a vaccine becomes available) related to COVID-19 as part of a public charge inadmissibility determination, nor as related to the public benefit condition applicable to certain nonimmigrants seeking an extension of stay or change of status, *even if such treatment is provided or paid for by one or more public benefits, as defined in the rule (e.g. federally funded Medicaid).*

---

[5] Although the Second Circuit has suggested that a moving party may make a lesser showing of "sufficiently serious questions going to the merits of its claims to make them a fair ground for litigation," to obtain a preliminary injunction, that alternative standard is unavailable to a party challenging "governmental action taken in the public interest pursuant to a statutory or regulatory scheme." *Monserrate v. New York State Senate*, 599 F.3d 148, 154 (2d Cir. 2010).

*Id.* (emphasis added). Thus, if an alien enrolls in Medicaid to receive COVID-19-related care, that enrollment will not be a negative factor in a public-charge inadmissibility determination, so long as the alien disenrolls from Medicaid once he or she no longer needs COVID-19-related care, or provides evidence of a request to disenroll. *See* Declaration of Joseph P. Edlow ¶ 12.  Thus, the Alert adequately addresses Plaintiffs' concerns about disenrollment from public benefits used for testing or treatment of COVID-19.

Plaintiffs argue that the Alert sows confusion since although it states that COVID-19 related treatment and preventive services will not be considered, it states that Medicaid enrollment is generally considered a factor in the public charge analysis.[6]  But the Alert clearly states that COVID-19-related medical services, "even if . . . provided or paid by" public benefits covered by the Rule including Medicaid, will not be considered for the purpose of the Rule.  To the extent that this unequivocal language left any uncertainty, moreover, the government eliminated it by confirming before the Supreme Court that "if any alien enrolls in Medicaid to receive COVID-19-related care, that enrollment will not be a negative factor in a public-charge inadmissibility determination, so long as the alien disenrolls from Medicaid once he or she no longer needs COVID-19-related care, or provides evidence of a request to disenroll."  *See DHS v. New York*, Resp. in Opp'n to Respondents' Mot. to Temp. Lift or Modify the Ct's Stay, at 13, No. 19A785 (April 20, 2020).[7]

---

[6] Plaintiffs refer to the segment of the Alert which states: "The rule requires USCIS to consider the receipt of certain cash and non-cash public benefits, including those that may be used to obtain testing or treatment for COVID-19 in a public charge inadmissibility determination, and for purposes of a public benefit condition applicable to certain nonimmigrants seeking an extension of stay or change of status." *See* Alert.

[7] Available at  https://www.supremecourt.gov/DocketPDF/19/19A785/142030/2020042011211 2348_19A785%20Govt%20oppn%20to%20NY%20motion%20FILE.pdf

In an attempt to obtain broader relief from this Court, Plaintiffs suggest that the government's interpretation is inconsistent with "the text of the alert." Mot. 22. But outside of the litigation context, other entities have had no issue interpreting USCIS's Alert. For example, the District of Columbia government notes on its website that "for the purposes of COVID-19 testing, diagnosis, and treatment, *Medicaid enrollment will not be considered a negative factor in a public charge analysis*, according to USCIS guidance issued on March 19, 2020." *See* Government of the District of Columbia, Public Notice: Public Charge Rule FAQs with COVID-19 Information, (Mar. 26, 2020), https://coronavirus.dc.gov/release/public-notice-public-charge-rule-faqs-covid-19-information (emphasis added). The New York City Mayor's Office website similarly states that "USCIS posted an alert clarifying that seeking or using medical treatment or preventive healthcare services related to COVID-19 will NOT be considered under the public charge rule, *even if the services are Medicaid-funded.*" NYC Mayor's Office of Immigrant Affairs, Public Charge Rule, Mar. 16, 2020, https://www1.nyc.gov/site/immigrants/help/legal-services/public-charge.page (emphasis added).

Thus, the USCIS Alert assures aliens that they may access COVID-19-related treatment and preventive services, even if financed through Medicaid or other public benefit as defined in the Rule, without risking an adverse determination based on that receipt. To the extent a discrete set of aliens still find the Alert ambiguous, Plaintiffs could use their resources to properly inform them of its content and scope, rather than pursuing a preliminary injunction which, if anything, *creates* ambiguity by suggesting that the Alert should be read to impose the very sorts of effects Plaintiffs are ostensibly seeking to avoid.[8]

---

[8] Contrary to Plaintiffs' assertion that the Alert was published "only in English," Mot. at 22, a Spanish language version is available by clicking "Version en espanol" on the USCIS website. *See* https://www.uscis.gov/green-card/green-card-processes-and-procedures/public-charge.

**B.  Plaintiffs' Claimed Harms Are Not Caused by the Rule and Would Not Be Remedied by a Preliminary Injunction**

Putting aside that USCIS has issued guidance to clarify that the very harms that Plaintiffs fear will not materialize, Plaintiffs' theory of irreparable harm (and their related argument on the balance of the equities) suffers from more fundamental problems.  As their own evidence makes clear, the harms Plaintiffs allege stem not from the Rule itself, but rather from misunderstandings about how the Rule works.  Plaintiffs' argument is that, because of the Rule, some individuals will avoid using public benefits, such as Medicaid, and thereby fail to obtain testing or treatment for COVID-19, which will cause Plaintiffs harm.  Mot. at 16-21.  But the Rule does not prohibit anyone from accessing public benefits, and aliens who voluntarily choose to disenroll from public benefits because of the Rule will typically have done so because they mistakenly believe they are subject to the Rule when, in fact, they are not.  This is because most aliens to whom the Rule could potentially apply are not presently eligible for federal means-tested benefits like Medicaid.  *See* Rule at 41313 (explaining that classes of aliens who are eligible for the noncash benefits covered by the Rule are, except in rare circumstances, not subject to a public charge inadmissibility determination); *see also* 8 U.S.C. § 1642(b) (limiting receipt of federal public benefits to eligible qualified aliens); *id.* § 1641(b) ("qualified alien" includes, *inter alia*, lawful permanent residents, asylum recipients, and refugees).  The Rule cannot possibly prevent or deter aliens from using public benefits for which they are not eligible.

Plaintiffs assert that notwithstanding USCIS's COVID-19-related guidance and the limited relevance of the Rule to aliens who are actually eligible for benefits, the Rule is "deterring immigrants from accessing publicly funded healthcare, including programs that would enable immigrants to obtain testing and treatment for COVID-19[.]"  Mot. at 1.  But their accompanying declarations make clear that this asserted effect is not the result of the Rule itself, but rather of

"mistaken beliefs" about the Rule's application and content.  Pls' Ex. 14 ¶ 9; Pls' Ex. 27 ¶ 7.

Plaintiffs' declarations repeatedly describe aliens who incorrectly believe that they are subject to

the Rule, or who express concerns about using public benefits that are not considered by the Rule.

*See, e.g.*, Pls' Ex. 8 ¶ 4 ("two patients receiving outpatient treatment reported concerns about going

to the hospital for COVID-19 care because they worried that any benefits that they might use to

access that care—including even the Yale Freecare Program, which I understand is not subject to

the Public Charge Rule—might negatively impact their immigration status"); Pls' Ex. 10 ¶ 12

(describing concerns that enrollment in public benefits "including for their U.S. citizen children,

will subject them to the public charge rule"); Pls' Ex. 14 ¶ 5 ("some families that organizers speak

with have withdrawn their U.S. citizen children from healthcare coverage out of a mistaken fear

that their children's coverage will trigger immigration consequences related to public charge"); *id.*

¶ 6 ("classes of immigrants to whom the public charge rule does not apply, such as Lawful

Permanent Residents, have also disenrolled from services out of the mistaken fear that they could

face immigration consequences for receiving benefits); Pls' Ex. 17 ¶ 5 ("My patients' fears and

concerns about the risks associated with use of public benefits, however, apply even to services

exempted by the rule."); Pls' Ex. 18 ¶ 8 ("nine callers to the hotline were so insistent on

disenrolling from public benefits—even though they were entitled to the benefits and not subject

to a public charge test"); *id.* ¶ 9 (discussing "calls . . . from immigrants with legal permanent

resident status" which "demonstrate the continued confusion about and chilling effect of the Rule,

even amongst those to whom it does not apply"); Pls' Ex. 21 ¶ 13 (discussing "five families [that]

did not want to apply for Medicaid for their children due to the fear of the Rule" where "[a]ll

family members were green card holders and were looking into applying for citizenship"); *id.* ¶ 21

(asylee parent "called and requested that the [benefits] applications for all three children be

withdrawn due to concern with the Rule"); Pls' Ex. 23 ¶ 11 ("A lawful permanent resident who lost his job recently called the LegalHealth public charge hotline with concerns that receiving Medicaid and applying for unemployment would impact his permanent residency."); Pls' Ex. 24 ¶ 10 ("The clients expressing these fears include people to whom public charge is not applicable because they are LPRs or hold other status not affected."); *see also* Mot. at 10 ("The Rule's deterrent effects have not been limited to the LPR applicants or public-benefit programs that are directly subject to the Rule.").

Plaintiffs cite no authority holding that a federal policy may be enjoined because some subset of the public misunderstands its legal effects. But even if harms that may result from misunderstandings of the Rule were somehow relevant to the irreparable harm analysis, those harms still would be insufficient to justify a preliminary injunction here. Preliminary injunctive relief "inherently requires a causal connection between the injunction and harm." *I.M. Wilson, Inc. v. Otvetstvennostyou "Grichko"*, No. 18-5194, 2019 U.S. Dist. LEXIS 182350, at *9 (E.D. Pa. Oct. 18, 2019). In other words, to obtain a preliminary injunction, "plaintiffs must show that, on the facts of their case, the failure to issue an injunction would actually cause irreparable harm." *Appalseed Prods., Inc. v. Medianet Dig., Inc.*, 2012 U.S. Dist. LEXIS 93946, at *29 (S.D.N.Y. July 6, 2012) (quoting *Salinger v. Colting*, 607 F.3d 68 (2d Cir. 2010)); *see also Faulkner v. Jones*, 10 F.3d 226, 235-36 (4th Cir. 1993) (Hamilton, J., dissenting; emphasis in original) ("[A]ny inquiry into the irreparable harm resulting from the denial of interim relief *must* necessarily *begin* with an analysis of the degree to which that particular relief remedies the alleged injuries."); *Sierra Club v. United States DOE*, 825 F. Supp. 2d 142, 153 (D.D.C. 2011) ("A plaintiff may be irreparably harmed by all sorts of things, but the irreparable harm considered by the court must be

caused by the conduct in dispute and *remedied by the relief sought*.") (emphasis added; citing cases).

Here, Plaintiffs have not shown that their alleged harms would be remedied by a preliminary injunction. On the contrary, as discussed above, Plaintiffs' Motion is premised on the idea that various individuals misunderstand the Rule, including basic questions such as to whom it applies and which public benefits are relevant, and that this confusion persists even after the implementing agency issued guidance specifically clarifying that COVID-19-related testing and treatment will not be treated as a negative factor in public charge determinations. Against that backdrop, it is utter speculation to conclude that these same individuals – who mistakenly believe themselves to be subject to the Rule when they are not, or who for some reason cannot be informed about the government's policy with respect to COVID-19-related testing and treatment – will (1) learn about a preliminary injunction that may be issued by this Court, (2) understand what it means for a court to preliminarily enjoin a rule, and (3) change their behavior and begin using public benefits based on that understanding. Accordingly, Plaintiffs' irreparable harm argument requires speculative assumptions about the future behavior of third parties, though it is widely recognized that "predicting . . . the behavior of third parties is usually suspect." *Sea Shore Corp. v. Sullivan*, 158 F.3d 51, 56 (1st Cir. 1998); *United States v. Walker*, 7 F.3d 26, 30 (2d Cir. 1993) ("future actions of third parties are not easily predicted."). "The Supreme Court itself has noted the improbability of establishing the necessary likelihood of some result when that result depends on predicting the acts of even a single 'interest group' who is unrepresented in the instant litigation, especially when that group . . . is actually composed of dozens of individual actors[.]" *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 670 (D.C. Cir. 1996) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 42-46 (1976)).

Moreover, Plaintiffs' own declarations undermine the inference that a preliminary injunction would remedy Plaintiffs' alleged harms.  Those declarations suggest that aliens who are avoiding public benefits based on mistaken beliefs about the Rule would ***not*** adjust their behavior on the basis of an interim court ruling.  The declarations describe individuals' refusals to utilize public benefits even after they are assured that the benefits are outside the scope of the Rule.  *See, e.g.*, Pls' Ex. 15 ¶ 4 ("Another client recently refused to sign up to use IRIS's own food pantry because of the Public Charge Rule. I could not convince this client—who is currently unemployed because of the COVID-19 epidemic—to access this necessary food resource, even though use of the food pantry is totally outside of the scope of the Rule."); Pls' Ex. 21 ¶ 11 ("Even when outreach workers try to assure families that it is ok to apply for Medicaid/FAMIS, outreach workers are seeing an increasing number of families who ultimately decide not to apply and in some cases, withdraw from coverage.").  The declarations also describe "widespread" "[c]onfusion . . . among immigrants as to how public charge applies," Pls' Ex. 14 ¶ 6, and explain that immigrants "are extremely unlikely to receive accurate information about who public charge applies to and how" unless they "actively reach out" or are located "through outreach services," Pls' Ex. 27 ¶ 7, suggesting that these individuals are unlikely to learn about and understand the legal significance of a preliminary injunction in this case.  Accordingly, Plaintiffs have failed to show that their requested preliminary injunction would dispel the alleged confusion about the Rule, much less that it would remedy *Plaintiffs'* claimed injuries from that confusion.  *See Faulkner*, 10 F.3d at 236 ("If the relief requested does little, if anything, to alleviate the alleged injuries, it is difficult to comprehend how the refusal to grant that relief could cause irreparable harm.").

### C.  The Remaining Equitable Factors Require Denial of Plaintiffs' Motion

Lastly, the Court should find that the equitable balance favors Defendants.  Plaintiffs contend that it would be in "the public interest" to enjoin the Rule, in its entirety, nationwide.  Mot. at 23.  But the public has an interest in both addressing the COVID-19 crisis and enforcing lawful immigration policy – and it is the Executive Branch that is charged with determining how best to do both.  *See Nken*, 556 U.S. at 435-36. The Executive Branch has considered the arguments Plaintiffs advance, and has concluded that Plaintiffs' preferred outcome – a wholesale suspension of the Rule, just as they sought before the COVID-19 crisis – is not warranted.  Plaintiffs provide no basis for this Court to overrule that judgment about how the nation's lawful immigration policies should be implemented during the COVID-19 crisis.

Furthermore, there is no serious question that Defendants and the public would be irreparably harmed by an injunction.  The federal government sustains irreparable injury whenever it "is enjoined by a court from effectuating statutes enacted by representatives of its people." *Maryland v. King*, 567 U.S. 1301 (2012) (Roberts, C.J., in chambers).  That injury is particularly acute here because an injunction would require DHS, on a nationwide basis, to grant lawful permanent resident status to aliens who are likely at any time to become public charges under the Rule.  DHS currently has no practical means of revisiting these determinations if the injunction were later stayed or vacated.  *See* Declaration of Daniel Renaud, ECF No. 113, ¶ 4.  In granting a stay of the first preliminary injunction, the Supreme Court necessarily concluded that the government would suffer irreparable harm in the absence of a stay, and that no other equitable considerations rendered a stay inappropriate.  And the Ninth Circuit expressly did so.  *See San Francisco*, 944 F.3d at 805-06.[9]

---

[9] Plaintiffs incorrectly claim that "green card processing has been suspended[.]"  Mot. at 24.  In fact, processing has not been suspended to the extent that processing does not require face-to-face contact.  *See* https://www.uscis.gov/about-us/uscis-response-covid-19.

**IV.     If the Court Chooses to Grant Injunctive Relief, the Injunction Should Not Have Nationwide Effect**

Although Plaintiffs contend that the relief they seek is substantively different from the previously stayed preliminary injunction, it is in fact identical in geographic scope and merely limited to an unspecified future point in time.  When the first injunction was stayed, Justice Gorsuch, joined by Justice Thomas, issued a concurring opinion specifically to highlight the impropriety of nationwide injunctions. *See New York*, 140 S. Ct. at 600 (Gorsuch, J., concurring) ("[T]he routine issuance of universal injunctions is patently unworkable, sowing chaos for litigants, the government, courts, and all those affected by these conflicting decisions."). Plaintiffs' motion provides no response to any of the concerns raised by this opinion.  Moreover, Plaintiffs provide only self-serving, speculative, and conclusory statements in support of their argument that the injunction they now seek must have nationwide effect. Mot. at 25.

Plaintiffs seek relief that is not necessary to redress any allegedly cognizable, irreparable injuries to the parties in the case, and they therefore lack standing to obtain such relief.  *See Madsen v. Women's Health Ctr. Inc.*, 512 U.S. 753, 765 (1994) (holding that injunctive relief must "be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs."). The remedy sought "must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established." *Gill v. Whitford*, 138 S. Ct. 1916, 1921 (2018) (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996)).  Furthermore, a plaintiff does not retain standing to challenge a regulation in the abstract when its application to that plaintiff has been resolved.  *See Summers v. Earth Island Inst.*, 555 U.S. 488, 494-97 (2009).

Consequently, in order to justify an injunction of broader application, Plaintiffs would have to have made a satisfactory showing that they would face harms sufficient to satisfy the preliminary injunction standard even if a geographically limited injunction were in place, a showing they have

not meaningfully attempted to make.  Instead, Plaintiffs simply note that individuals travelling from other states may spread COVID-19 into the government Plaintiffs' jurisdictions.  Mot. at 25. But that is true regardless of whether a preliminary injunction is issued.  Not even Plaintiffs contend that a preliminary injunction would end the pandemic or stop infected persons from travelling into the plaintiff jurisdictions.[10]

## V.   The Court Should Decline to Issue an Indicative Ruling on Plaintiffs' Request for Preliminary Relief

"[I]n addition to" a new preliminary injunction, Plaintiffs are also seeking an indicative ruling pursuant to Federal Rule of Civil Procedure 62.1.  Mot. at 15.  Plaintiffs are correct that, in general, when a district court has been divested of jurisdiction by an appeal, Rule 62.1 allows the court to notify the Court of Appeals "either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue."  Fed. R. Civ. P. 62.1(a)(3). However, the purpose of an indicative ruling is to allow for "the timely resolution of motions which may further the appeal or obviate its necessity," and not for the district court to "reconsider[] the same question being reviewed by the court of appeals."  *Ret. Bd. of the Policemen's Annuity and Ben. Fund of Chi. v. Bank of N.Y. Mellon*, 297 F.R.D. 218, 221 (S.D.N.Y. 2013).

As discussed above, Plaintiffs' second motion for preliminary injunction requests the identical relief, but with a time limitation, on primarily identical legal and factual questions.  "[A]n indicative ruling on the very issue on appeal," however, "only interrupts the appellate process."

---

[10] Plaintiffs have also moved again for an order postponing the effective date of the Rule pursuant to 5 U.S.C. § 705.  That request is governed by the same legal standard as the motion for preliminary injunction, and it therefore fails for the same reasons as discussed above.  Indeed, Section 705 authorizes courts to postpone an agency's action only "to the extent necessary to prevent irreparable injury."  The Court should also deny Plaintiffs' request for a temporary restraining order for the same reasons and because the Court's hearing on the preliminary injunction will be held in a matter of days.

*Id.* If Plaintiffs are correct that their two motions for preliminary injunction are sufficiently unrelated to allow the Court jurisdiction, which they are not, *see supra*, a ruling on the instant motion would not obviate the need to resolve the appeal on the first. Because Plaintiffs' current request seeks to limit their otherwise identical proposed nationwide injunction to the duration of the national emergency, and the previous injunction was not so limited, it would still be necessary to resolve the appeal.

It is also clear that "[a]n indicative ruling would do little to aid the Second Circuit's consideration of the appeal." *Id.* at 222. The Court of Appeals' review of the legal issues in a preliminary injunction is *de novo* and its consideration of the district court's analysis of the applicable standard is based on the information that was available to the court at the time of the decision. *See, e.g., Chevron Corp. v. Naranjo*, 667 F. 3d 232, 239 (2d Cir. 2012). In any event, Plaintiffs submitted their evidence concerning the COVID-19 pandemic to the Second Circuit through a letter pursuant to Federal Rule of Appellate Procedure 28(j), so that Court is already aware of Plaintiffs' position. *See New York v. DHS*, No. 2019-3591, No. 534 (2d Cir.).

## CONCLUSION

Defendants respectfully request that the Court deny Plaintiffs' motion.


Dated: May 12, 2020                          Respectfully submitted,


  GEOFFREY S. BERMAN                   JOSEPH H. HUNT
  United States Attorney                       Assistant Attorney General

                                                        ALEXANDER K. HAAS
                                                        Director, Federal Programs Branch

                                                        /s/ *Joshua M. Kolsky*
                                                        ERIC J. SOSKIN
                                                        Senior Trial Counsel
                                                        KERI L. BERMAN

KUNTAL V. CHOLERA
JOSHUA M. KOLSKY, DC Bar No. 993430
U.S. Dept. of Justice, Civil Division,
Federal Programs Branch
1100 L Street, N.W., Rm. 12002
Washington, DC 20001
Phone: (202) 305-7664
Fax: (202) 616-8470
Email: joshua.kolsky@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on May 12, 2020, I electronically filed a copy of the foregoing.

Notice of this filing will be sent via email to all parties by operation of the Court's electronic

filing system. Parties may access this filing through the Court's CM/ECF System.

/s/ *Joshua M. Kolsky*
JOSHUA M. KOLSKY