UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK, CITY OF NEW YORK, STATE OF CONNECTICUT, and STATE OF VERMONT,<br>　　　　Plaintiffs,<br>　v.<br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY; KEVIN K. McALEENAN, *in his official capacity as Acting Secretary of the United States Department of Homeland Security*; UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES; KENNETH T. CUCCINELLI II, *in his official capacity as Acting Director of United States Citizenship and Immigration Services*; and UNITED STATES OF AMERICA,<br>　　　　Defendants. | **CIVIL ACTION NO.**<br>**19 Civ. 07777 (GBD)** |
| MAKE THE ROAD NEW YORK, AFRICAN SERVICES COMMITTEE, ASIAN AMERICAN FEDERATION, CATHOLIC CHARITIES COMMUNITY SERVICES, and CATHOLIC LEGAL IMMIGRATION NETWORK, INC.,<br>　　　　Plaintiffs,<br>　v.<br>KEN CUCCINELLI, in his official capacity as Acting Director of United States Citizenship and Immigration Services; UNITED STATES CITIZENSHIP & IMMIGRATION SERVICES; KEVIN K. McALEENAN, in his official capacity as Acting Secretary of Homeland Security; and UNITED STATES DEPARTMENT OF HOMELAND SECURITY,<br>　　　　Defendants. | **CIVIL ACTION NO.**<br>**19 Civ. 07993 (GBD)** |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND STAY OR TEMPORARY RESTRAINING ORDER PENDING NATIONAL EMERGENCY**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ........................................................................................................................ 1

    A.    This Court has jurisdiction to issue a new injunction. ........................................ 1

    B.    A targeted injunction is necessary to mitigate the harms of the Rule during the COVID-19 emergency. ............................................................................................. 3

    C.    DHS's Alert does not remedy the Rule's harms during this crisis. .................... 6

    D.    The remaining factors strongly favor temporary injunctive relief during the pendency of the national emergency. ............................................................................. 8

    E.    Nationwide relief is necessary and appropriate .................................................. 9

CONCLUSION ................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abimbola v. Ashcroft*,
  378 F.3d 173 (2d Cir. 2004) ................................................................................................... 3

*Amarin Pharm. Ireland Ltd. v. Food & Drug Admin.*,
  139 F. Supp. 3d 437 (D.D.C. 2015) ........................................................................................ 3

*Appalseed Prods., Inc. v. MediaNet Digital, Inc.*,
  No. 11 Civ. 5922 (PGG), 2012 WL 2700383 (S.D.N.Y. July 6, 2012) .................................... 5

*Brenntag Int'l Chems., Inc. v. Bank of India*,
  175 F.3d 245 (2d Cir.1999) ..................................................................................................... 5

*California v. Azar*,
  911 F.3d 558 (9th Cir. 2018) ................................................................................................... 2

*Dep't. of Commerce v. New York*,
  139 S. Ct. 2551 (2019) ............................................................................................................ 4

*Drywall Tapers & Pointers of Greater NY v. Bovis Lend Lease Interiors, Inc.*,
  No. 05 Civ. 2746 (JG), 2006 WL 322384 (E.D.N.Y. Feb. 10, 2006) ...................................... 2

*Friends of Merrymeeting Bay v. NextEra Energy Res., LLC*,
  No. 2:11 Civ. 38 (GZS), 2013 WL 145733 (D. Me. Jan. 14, 2013) .................................... 5, 6

*Harmon v. Thornburgh*,
  878 F.2d 484 (D.C. Cir. 1989) ................................................................................................ 9

*I.M. Wilson, Inc. v. Grichko*,
  Civil Action No. 18-, 2019 WL 5394113 (E.D. Pa. Oct. 22, 2019) ......................................... 5

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*,
  886 F.3d 803 (9th Cir. 2018) .............................................................................................. 5, 6

*Ret. Bd. of Policemen's Annuity & Ben. Fund of City of Chicago v. Bank of New York Mellon*,
  297 F.R.D. 218 (S.D.N.Y. 2013) ............................................................................................ 3

*Sierra Club v. U.S. Dep't of Energy*,
  825 F. Supp. 2d 142 (D.D.C. 2011) .................................................................................... 4, 5

*Webb v. GAF Corp.*,
  78 F.3d 53 (2d Cir. 1996) ........................................................................................................ 2

*Wolf v. Cook Cty., Illinois*,
  140 S. Ct. 681 (2020)......................................................................................................8

**RULES**

Federal Rules of Civil Procedure
  Rule 62.1..................................................................................................................3, 10

*Inadmissibility on Public Charge Grounds*, 84 Fed. Reg. 41,292, 41,463 (Aug. 14,
  2019) ..............................................................................................................................4

**MISCELLANEOUS AUTHORITIES**

Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*
  (3d ed. Aug. 2019 update).............................................................................................1

## **PRELIMINARY STATEMENT**

The fundamental purpose of a stay is "to balance the equities as the litigation moves forward" rather than to "conclusively determine the rights of the parties." *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017) ("*IRAP*"). Here, as Plaintiffs' motion explained, the unprecedented COVID-19 crisis has so drastically altered the balance of the equities that Plaintiffs require new, temporary relief during the pendency of the national emergency.

Defendants do not seriously dispute that there is a direct connection between the COVID-19 crisis and the Public Charge Rule at issue here—indeed, they have already been forced to limit the Rule in light of the COVID-19 crisis, and they have announced further changes for the first time in their response to Plaintiffs' motion in the Supreme Court. Their arguments against the narrow relief that Plaintiffs request are meritless.

## **ARGUMENT**

### A. **This Court has jurisdiction to issue a new injunction.**

This Court retains authority to make new factual findings and issue new, temporary relief in response to the unprecedented changed circumstances presented by the COVID-19 pandemic. Defendants' contention that *any* overlap between this motion and issues implicated in Plaintiffs' prior injunction divests this Court of jurisdiction, Defs.' Mem. in Opp'n. to Pls.' Mot. for Preliminary Injunction, Dkt. No. 176 ("Defs.' Mem.") at 8, has no basis in law.

Defendants do not dispute that the district court may proceed with adjudicating the underlying case while the appeal of a preliminary injunction is pending. *See* Pls.' Mot. for Preliminary Injunction, Dkt. No. 169 ("Pls.' Mem.") at 13-14; Defs.' Mem. at 6. Jurisdiction to "continue with proceedings," Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 3949.1 (3d ed. Aug. 2019 update), will frequently require the district court to rule

1

on matters that may relate to—but do not perfectly overlap with—issues on appeal. For example, Defendants do not contend that the district court lacks jurisdiction to consider Defendants' motion to dismiss, though that motion rehashes arguments about standing and justiciability that Defendants are also pressing on appeal. Defs.' Mem. at 8.[1] District courts regularly consider the merits of disputes on motions for summary judgment, even where the same issues are presented by a pending appeal of a preliminary injunction. *See, e.g.*, *California v. Azar*, 911 F.3d 558, 583 (9th Cir. 2018) ("We have repeatedly admonished district courts not to delay trial preparation to await an interim ruling on a preliminary injunction"). As Plaintiffs have explained, *see* Pls.' Mem. at 16-19, the public health and global economic crisis engendered by the COVID-19 pandemic has shifted the balance of equities, requiring new determinations to be made by the court best situated to make factual findings—this Court—and the issuance of new, narrowly tailored relief to stave off those harms.

    To the extent that there was doubt concerning this Court's jurisdiction to make new factual findings and issue new relief, the Supreme Court has obviated those concerns. In Plaintiffs' application to the Supreme Court, Plaintiffs acknowledged potential uncertainty regarding this Court's jurisdiction to provide relief and, accordingly, requested that the Supreme Court "clarify that its stay order does not preclude the lower court from considering whether the new circumstances arising out of the COVID-19 pandemic warrant temporary relief" enjoining the Rule. *Dep't Homeland Sec. v. New York*, No. 19A785, Mot. by Gov't Pls. to Temporarily Lift

---

[1] Defendants' cases are not to the contrary, but instead involve materially different situations. *See Webb v. GAF Corp.,* 78 F.3d 53, 55–56 (2d Cir. 1996) (holding appeal of preliminary injunction moot where district court issued a permanent injunction). *Drywall Tapers & Pointers of Greater NY v. Bovis Lend Lease Interiors, Inc.*, No. 05 Civ. 2746 (JG), 2006 WL 322384, at *2 (E.D.N.Y. Feb. 10, 2006) (where union filed a non-party appeal of the district court's consent judgment and "placed the question of its rightful role in this case plainly at the door of the court of appeals," district court lacked jurisdiction consider union's intervention motion). In contrast, Plaintiffs' instant request would not undermine or moot the pending appeal.

of Modify the Court's Stay, at 16 (Jan. 22, 2020).[2] While the Court could have denied Plaintiffs' request, or ignored it altogether, it chose not to; instead, it explained that while it was denying Plaintiffs' application to modify its stay, it did "not preclude a filing in the District Court." *See* Dkt. No. 170-2 (Supreme Court Order). It is a "basic canon" of textual interpretation that there is "a purpose for each sentence, clause or phrase"; this Court should reject any attempt to render the text of the Supreme Court's order meaningless. *Abimbola v. Ashcroft*, 378 F.3d 173, 179 (2d Cir. 2004). That is, even if the Supreme Court's stay somehow divested this Court of jurisdiction to consider a new request for an injunction—which it did not—the Supreme Court's order clarified that this Court is the proper forum to resolve these new and urgent problems.

Moreover, Rule 62.1 of the Federal Rules of Civil Procedure is designed to ameliorate any lingering concerns about this Court's jurisdiction. Rule 62.1(a)(3) authorizes this Court to make factual findings and in issue an indicative ruling that "promote[s] judicial efficiency and fairness by providing a mechanism for the district court to inform the parties and the court of appeals how it would rule on a motion." *Amarin Pharm. Ireland Ltd. v. Food & Drug Admin.*, 139 F. Supp. 3d 437, 447 (D.D.C. 2015). Issuance of both new, temporary injunctive relief *and* an indicative ruling allows the Circuit maximum flexibility in the event of a subsequent appeal.[3]

**B.  A targeted injunction is necessary to mitigate the harms of the Rule during the COVID-19 emergency.**

A temporary halt on the Rule's implementation during the pendency of this national

---

[2] *Available at* https://www.supremecourt.gov/DocketPDF/19/19A785/141515/20200413153014307_19A785%20Motion%20to%20Temporarily%20Lift%20or%20Modify%20Stay.pdf.

[3] Defendants' reliance on *Bank of New York Mellon* is misplaced, as that case involved a party that sought an indicative ruling on an *identical* matter that it had lost in the district court and already appealed. *See Ret. Bd. of Policemen's Annuity & Ben. Fund of City of Chicago v. Bank of New York Mellon*, 297 F.R.D. 218, 223 (S.D.N.Y. 2013) (declining to issue an indicative opinion where party contended that the district court "wrongly decided" underlying issue and by appealing and seeking an indicative ruling improperly "placed the same issue in front of two courts at the same time").

3

emergency is necessary to remedy the widespread deterrent effects of the Rule. It will allow Governmental Plaintiffs to better mitigate the spread of disease and combat the devastating impacts of the pandemic, and the *MRNY* Plaintiffs to better address the needs of immigrant communities they serve. Defendants do not dispute that the Governmental Plaintiffs are suffering from unprecedented public health and economic harms, or that the Rule is in fact deterring immigrants in the Plaintiffs' jurisdictions and client communities from accessing crucial medical and nutritional benefits. Defendants contend that a temporary suspension of the Rule would not redress the irreparable harms that Plaintiffs identify. But Defendants' position is without support in either the law or the factual record.

As an initial matter, the Court should not, as Defendants urge, ignore evidence of the Rule's harms simply because they may result from immigrants' "mistaken beliefs about the Rule's application and content." Defs.' Mem. at 15-16. The Supreme Court has recognized that cognizable injury can be based on the "predictable effect[s]" of a challenged government action—including the effects on individuals who are not directly subject to the government's action and who react based on purportedly "unfounded fears." *Dep't. of Commerce v. New York*, 139 S. Ct. 2551, 2566 (2019). Defendants have cited no case that would preclude the Court from similarly considering such predictable harms—particularly when the Rule's deterrent effects, and their resulting harms to both the parties and the public interest, are not only predictable but are *actually happening* now. Indeed, Defendants do not deny that, as they anticipated during the rulemaking, the Rule is *in fact* causing immigrants and their families to forgo and disenroll even from benefits "not directly regulated by this [R]ule." *Inadmissibility on Public Charge Grounds*, 84 Fed. Reg. 41,292, 41,463 (Aug. 14, 2019); *id.* at 41,300.

Plaintiffs will "suffer irreparable harm 'but for' the issuance of an injunction." *Sierra

*Club v. U.S. Dep't of Energy*, 825 F. Supp. 2d 142, 153 (D.D.C. 2011) (citing *Brenntag Int'l Chems., Inc. v. Bank of India,* 175 F.3d 245, 249 (2d Cir.1999)). While there "must be a 'sufficient causal connection' between the alleged irreparable harm and the activity to be enjoined. . . a plaintiff 'need not further show that the action sought to be enjoined is the exclusive cause of the injury.'" *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803, 819 (9th Cir. 2018) (internal citations omitted); *see also Friends of Merrymeeting Bay v. NextEra Energy Res., LLC*, No. 2:11 Civ. 38 (GZS), 2013 WL 145733, at *7 (D. Me. Jan. 14, 2013), (plaintiffs need only establish that "an injunction could redress [p]laintiffs' injuries by decreasing the [alleged harms]"), *vacated on other grounds*, 759 F.3d 30 (1st Cir. 2014). [4]

Here, Plaintiffs have supplied ample, uncontroverted evidence that the implementation of the Rule is deterring participation in public benefits programs that are integral to Plaintiffs' efforts to mitigate the economic and public health harms of the pandemic. Enrollment in benefits programs declined when the Rule took effect in February 2020, not during the period that the Rule was enjoined.[5] And doctors and other frontline service providers aver that immigrants have been refusing COVID-related testing and treatment since March 2020 *specifically* because of

---

[4] The cases Defendants cite, which support the general proposition that a causal connection must exist between an injunction and an alleged harm, are not to the contrary. *See I.M. Wilson, Inc. v. Grichko*, Civil Action No. 18-, 2019 WL 5394113, at *5 (E.D. Pa. Oct. 22, 2019) (causal nexus insufficient where injunction would not halt conduct that plaintiff alleged caused irreparable harm); *Appalseed Prods., Inc. v. MediaNet Digital, Inc.*, No. 11 Civ. 5922 (PGG), 2012 WL 2700383, at *8-9 (S.D.N.Y. July 6, 2012) (injunction not proper remedy where plaintiffs' harms could be compensated by monetary damages); *Sierra Club*, 825 F. Supp. 2d at 153 (causal nexus insufficient where plaintiff failed to show that it would suffer comparable harm absent an injunction). Here, Plaintiffs have shown that the Rule causes irreparable harms and that an injunction will ameliorate those harms.

[5] *See* Dkt. No. 170-10 (Benito Decl.) ¶ 5; Dkt. No. 170-11 (Chavez Decl.) ¶ 5; Dkt. No. 170-13 (Heinrich Decl.) ¶¶ 3-4; Dkt. No. 170-14 (Kennedy Decl.) ¶¶ 7, 9; Dkt. No. 170-15 (Kritzman Decl.) ¶ 2; Dkt. No. 170-18 (Mostofi Decl.) ¶¶ 7 -8; Dkt. No. 170-19 (Newstrom Decl.) ¶ 14; Dkt. No. 170-20 (Newton Decl.) ¶ 26; Dkt. No. 170-21 (Pyror Decl.) ¶¶ 13, 15-17; Dkt. No. 170-22 (Voit Decl.) ¶ 22; Dkt. No. 170-24 (Oshiro Decl.) ¶ 5; Ex. 27 (Aguilar Decl.) ¶¶ 9-13.

concerns about how these services will affect any public charge determination under the Rule.[6] A targeted injunction halting implementation of the Rule—far from resting on "speculative assumptions" about the "behavior of third parties," Defs.' Mem. at 18—would directly redress the Rule's deterrent effects and allow Plaintiffs to better combat the harms of COVID-19.

Furthermore, that some immigrants continue to avoid benefits, even after receiving advice that they need not do so, does not cast doubt on whether an injunction is appropriate. *See* Defs.' Mem. at 16-17. Instead, it underscores that any remedy short of an injunction would be insufficient to alleviate the confusion surrounding the complex public charge and benefits schemes at issue. Where an injunction would reduce the irreparable harms attendant to the Rule, speculation that some immigrants may, regardless of the Rule's status, continue to avoid benefits does not weigh against granting relief. *See Nat'l Wildlife Fed'n*, 886 F.3d at 823 (it is permissible for a court to "issue an injunction that does not completely prevent the irreparable harm that it identifies"); *see also Friends of Merrymeeting Bay*, 2013 WL 145733, at *7 (to demonstrate that injunction would remedy damage, "[p]laintiffs need not establish that their requested relief will bring about" full or complete recovery).[7] Temporary injunctive relief will permit Plaintiffs and frontline advocates to send a clear message that the Rule is not operative during the national emergency, and that immigrants and their families need not choose between accessing health care or nutritional benefits and remaining in the country.

### C. DHS's Alert does not remedy the Rule's harms during this crisis.

Contrary to Defendants' unsupported assertion, DHS's Alert does not meaningfully

---

[6] Dkt. No. 170-8 (Almasude Decl.) ¶¶ 4-8; Dkt. No. 170-18 (Mostofi Decl.) ¶¶ 13, 15; Dkt. No. 170-17 (Moreno Decl.)¶ 4; Dkt. No. 170-22 (Voit Decl.) ¶¶ 27-28, 30; Dkt. No. 170-21 (Pryor Decl.) ¶ 19; Dkt. No. 170-14 (Kennedy Decl.) ¶ 13.
[7] Indeed, the Court has rejected similar arguments in the past and should do so again here. *See* Transcript of October 7, 2019 Hearing at 123-125, *New York v. Dep't of Homeland Sec*. (No. 19 Civ. 7777 (GBD)) (rejecting the argument that evidence that disenrollment by some people before the Rule went into effect was evidence that the "harm [would not be] ameliorated by a preliminary injunction").

address fears about benefits use during the pandemic. Defendants' assurance that DHS will not penalize immigrants for receiving COVID-related testing, treatment, or preventative services misses the mark. *See* Defs.' Mem. at 12. Plaintiffs have already explained why Defendants' Alert is inadequate and thus no substitute for the relief requested here. *See* Pls.' Mem. at 21-23. Indeed, Defendants acknowledge the "uncertainty" attendant to the Alert, Defs.' Mem. at 13, but purport to have "eliminated" that uncertainty by stating for the first time in their opposition papers in the Supreme Court that for enrollment in Medicaid "to receive COVID-19-related care, that enrollment will not be a negative factor in a public-charge inadmissibility determination," *id.* As Plaintiffs have explained, however, Defendants' substantial modification to the Alert—which appears nowhere in DHS guidance materials, on its website, or elsewhere other than in its Supreme Court briefing, which is not reasonably calculated to reach the general public—is not only an improper attempt to conduct rulemaking through opposition brief, but also contradicts the Alert's express text. *See* Pls.' Mem. at 22-23.[8]

Although the confusion over the application of the Rule during the pandemic is largely the product of Defendants' own actions, Defendants argue, remarkably, that Plaintiffs are responsible for "creat[ing] ambiguity" by identifying the obvious defects of the Alert. *See* Defs.' Mem. at 14. But Plaintiffs do not "create" ambiguity merely by pointing out that ambiguity exists. And contrary to Defendants' contention, *id.*, officials and agencies in the Governmental Plaintiffs' jurisdictions, as well as many other state and local officials and private organizations across the country, are expending significant resources to educate the public and clarify the

---

[8] Defendants' examples of the differing interpretations of the Alert from the District of Columbia and New York City highlights the potential for confusion. While the District of Columbia interprets the Alert to mean that Medicaid enrollment will not be penalized if used for COVID-19 testing and treatment, New York City states only that the testing and treatment itself will not be penalized. *See* Defs.' Mem. at 14. And as the factual record makes clear, Plaintiffs' efforts to encourage testing and treatment are inadequate so long as the Rule remains in effect.

scope of the Rule.[9]

Defendants fail to rebut Plaintiffs' showing of the numerous ways in which DHS's equivocal and ambiguous Alert is patently inadequate to redress the irreparable harms at issue. *See* Pls.' Mem. at 21-23. Given these ambiguities, the Alert cannot provide—and as demonstrated by the uncontroverted evidence, *has not* provided[10]—adequate assurance to immigrants that they may use public benefits to address COVID-19-related needs without consequence. Accordingly, absent immediate, temporary equitable relief from this Court, the Rule will continue to undermine Plaintiffs' efforts to mitigate the spread of COVID-19 and economic devastation resulting from the pandemic. *See* Pls.' Mem. at 22-23.

### D. The remaining factors strongly favor temporary injunctive relief during the pendency of the national emergency.

As this Court has previously recognized, Plaintiffs are likely to succeed on the merits of their claims. The Supreme Court stay opinion, which was silent on the merits, does not alter that conclusion. *See IRAP*, 137 S. Ct. at 2087 (recognizing that a stay is "often dependent as much on the equities of a given case as the substance of the legal issues it presents"); Dkt. No. 170-1; *see also Wolf v. Cook Cty., Illinois*, 140 S. Ct. 681, 682 (2020) (Sotomayor, J., dissenting) ("No Member of the Court discussed the application's merit [in the *Department of Homeland Security*

---

[9] *See* Dkt. No. 170-11 (Chavez Decl.) ¶ 7; Dkt. No. 170-14 (Kennedy Decl.) ¶¶ 5-7; Dkt. No. 170-15 (Kritzman Decl.) ¶¶ 3-4; Dkt. No. 170-27 (Aguilar Decl.) ¶ 6; Dkt. No. 170-18 (Mostofi Decl.) ¶¶ 5-9, 11; Dkt. No. 170-19 (Newstrom Decl.) ¶¶ 19, 23-27; Dkt. No. 170-20 (Newton Decl.) ¶¶ 9, 11-13; Dkt. No. 170-22 (Voit Decl.) ¶¶ 22-24; 27-28; Dkt. No. 17023 (Nolan Decl.) ¶¶ 5-6, 8; Dkt. No. 170-24 (Oshiro Decl.) ¶ 3; Dkt. No. 170-25 (Russell Decl.) ¶¶ 5-6.

[10] Dkt. No. 170-10 (Benito Decl.) ¶ 7; Dkt. No. 170-11 (Chavez Decl.) ¶ 9; Dkt. No. 170-13 (Heinrich Decl.) ¶ 8; Dkt. No. 170-14 (Kennedy Decl.) ¶ 14; Dkt. No. 170-17 (Moreno Decl.) ¶ 8; Dkt. No. 170-18 (Mostofi Decl.) ¶¶ 13, 15, and 18; Dkt. No. 170-20 (Newton Decl.) ¶ 20 (explaining that guidance issued by USCIS "has not offered any comfort or clarity . . . [and] [i]f anything, it only introduced more fear among noncitizen communities . . ."); Dkt. No. 170-21 (Pryor Decl.) ¶ 10; Dkt. No. 170-22 (Voit Decl.) ¶¶ 27-30; Dkt. No. 170-24 (Oshiro Decl.) ¶ 12 (noting that the guidance "has not helped us to alleviate client concerns about benefits use during the COVID-19 pandemic and public charge inadmissibility. In fact, it has only created more confusion for our clients and required us to expend additional resources to adequately provide counsel") and ¶¶ 13-14; Dkt. No. 170-27 (Aguilar Decl.) ¶ 17.

*v. New York* case] apart from its challenges to the injunction's nationwide scope.").[11]

And the balance of equities favors an injunction. Defendants will not be harmed by temporarily continuing to enforce a standard that has been in place for the past century. *See* Pls.' Mem. at 24-25; Pls.' Opp'n. to Defs.' Mot. to Dismiss, Dkt. No. 145, at 3-12. By contrast, the COVID-19 pandemic is the largest public-health and economic disaster that the United States has faced in at least a century. And the Public Charge Rule is impeding Plaintiffs' efforts to halt the virus's spread in our communities and to stabilize the economy. The temporary and targeted relief that Plaintiffs request is warranted by the severe problems that we face; lives depend on it.

### E. Nationwide relief is necessary and appropriate

"[T]he ordinary result" of a determination that an agency's regulation is unlawful under the Administrative Procedure Act ("APA"), as the Rule is here, "is that the rules are vacated— not that their application to the individual petitioners is proscribed." *Harmon* v. *Thornburgh*, 878 F.2d 484, 495 n.21 (D.C. Cir. 1989). Moreover, nationwide relief is necessary to remedy the harm caused by the Rule for the simple reason that the spread of the coronavirus is not geographically limited. COVID-19 "knows no bounds" and "doesn't respect state lines."[12] COVID-19 has been reported to have originally spread across the country through interstate

---

[11] Nor should the Ninth Circuit's stay of the injunctions in California and Washington sway the assessment of merits in this case. Defendants notified of the Court of the Ninth Circuit's decision in December 2019, Dkt. No. 127, and cited to the decision in their motion to stay the injunction, Dkt. No. 130. The Court properly declined to adopt the Ninth Circuit's analysis. *See* Dkt. No. 136.

[12] *See, e.g.*, Homeland Security Council, *National Strategy for Pandemic Influenza, Homeland Security Council*, 2 (Nov. 2005), available at https://www.cdc.gov/flu/pandemic-resources/pdf/pandemic-influenza-strategy-2005.pdf; Bart Jansen, Maureen Groppe, and William Cummings, *Fauci warns of 'needless suffering' if US fumbles reopening procedures*, USA Today (May 12, 2020), *available at* https://www.usatoday.com/story/news/politics/2020/05/12/coronavirus-dr-anthony-fauci-testify-senate-panel-reopening/3108593001/ (Dr. William Schaffner, a professor of preventive medicine in the Department of Health Policy at Vanderbilt University, stating that "[t]he virus knows no bounds"); @CNNPolitics, Twitter (Apr. 24, 2020, 4:50 PM), *available at* https://twitter.com/CNNPolitics/status/1253788494255849476 ("North Carolina Gov. Roy Cooper says he's concerned about how quickly neighboring state Georgia is reopening some businesses: 'The virus doesn't respect state lines.'").

travel,[13] and interstate travel will continue to be a primary means by which the virus crosses state lines, particularly as jurisdictions begin to lift stay-at-home restrictions.[14]

Defendants do not dispute that immigrants are at particular risk of exposure to the virus as a significant number work in essential industries and must continue to work outside of their homes and interact with others, whether or not stay-at-home orders are in place. *See* Pls.' Mem. at 18. In turn, the nature of "community spread" of the virus means that new infections put *everyone* at risk.[15] Discouraging noncitizens nationwide, including essential workers, from obtaining medical care undermines efforts by Plaintiffs and others to combat the pandemic and mitigate its devastating harms. A nationwide injunction is necessary and appropriate.[16]

## CONCLUSION

For the reasons stated above and in Plaintiffs' opening memorandum, Plaintiffs respectfully request that the Court make factual findings recognizing the harmful effects of the Rule during this crisis, issue a new preliminary injunction forbidding implementation of the Rule during the national emergency declared on March 13, 2020, a stay of the effective date of the Rule pursuant to Section 705 of the APA, and, in addition, issue an indicative ruling pursuant to Fed. R. Civ. P. 62.1 confirming that that the Court would grant Plaintiffs' motion.

---

[13] *See* Benedict Carey and James Glanz, *Travel From New York City Seeded Wave of U.S. Outbreaks*, N.Y. Times (May 7, 2020), *available at* https://www.nytimes.com/2020/05/07/us/new-york-city-coronavirus-outbreak.html.
[14] *See* Gabriel J.X. Dance and Lazaro Gamio, *As Coronavirus Restrictions Lift, Millions in U.S. Are Leaving Home Again*, N.Y. Times (May 12, 2020), *available at* https://www.nytimes.com/interactive/2020/05/12/us/coronavirus-reopening-shutdown.html.
[15] *See* Dkt. No.170-12 (Fong Decl.) ¶¶ 12−13; Dkt. No.170-15 (Kennedy Decl.) ¶ 15; Dkt. No.170-16(Ku Decl.) ¶¶ 9, 11−12, 20; Dkt. No.170-17 (Moreno Decl.) ¶ 9; Dkt. No.170-21 (Pryor Decl.) ¶¶ 10, 12; *Coronavirus Disease 2019 (Covid-19)*, Centers for Disease Control and Prevention (updated Apr. 19, 2020), https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/summary.html. *See also* Dkt. No. 170-8 (Almasude Decl.) ¶ 9; Dkt. No. 170-9 (Barbot Decl.) ¶ 10; Dkt. No. 170-14 (Kennedy Decl.) ¶¶ 13, 15; Dkt. No. 170-16 (Ku Decl.) ¶ 20; Dkt. No. 170-17 (Moreno Decl.) ¶¶ 4, 9; Dkt. No. 170-19 (Newstrom Decl.) ¶ 27.
[16] At the very least, any injunction should cover states in the Second Circuit and New Jersey, in order to minimize the risk of regional spread of the virus. *See Testing, Coronavirus News:Tri-State cooperation will be keys to restarting life*, ABC News (Apr. 7, 2020), *available at* https://abc7ny.com/health/how-do-we-restarting-life-after-coronavirus/6083892/.

| | |
|---|---|
| DATED: May 15, 2020 | Respectfully submitted, |
| | **LETITIA JAMES** |
| | *Attorney General of the State of New York* |
| | |
| | By: */s/ Elena Goldstein* |
| | Elena Goldstein, |
| | *Deputy Bureau Chief, Civil Rights Bureau* |
| | |
| | Matthew Colangelo |
| | *Chief Counsel for Federal Initiatives* |
| | Ming-Qi Chu, *Section Chief, Labor Bureau* |
| | Amanda Meyer, *Assistant Attorney General* |
| | Abigail Rosner, *Assistant Attorney General* |
| | Office of the New York State Attorney General |
| | New York, New York 10005 |
| | Phone: (212) 416-6201 |
| | elena.goldstein@ag.ny.gov |
| | |
| | *Attorneys for the State of New York* |

| | |
|---|---|
| **JAMES JOHNSON** | **WILLIAM TONG** |
| *Corporation Counsel of the City of New York* | *Attorney General of Connecticut* |
| | |
| By: /s/ *Tonya Jenerette* | By: /s/ *Joshua Perry* |
| Tonya Jenerette | Joshua Perry* |
| Deputy Chief for Strategic Litigation | *Special Counsel for Civil Rights* |
| Cynthia Weaver, Senior Counsel | 165 Capitol Avenue |
| Doris Bernhardt, *Senior Counsel* | Hartford, CT 06106-0120 |
| Melanie Ash, *Senior Counsel* | (860) 808-5318 |
| 100 Church Street, 20th Floor | Joshua.perry@ct.gov |
| New York, NY 10007 | |
| Phone: (212) 356-4055 | *Attorneys for the State of Connecticut* |
| tjeneret@law.nyc.gov | |
| | |
| *Attorneys for the City of New York* | |

**THOMAS J. DONOVAN, JR.**
*Attorney General of Vermont*

By: */s/ Benjamin Battles*
Benjamin Battles, *Solicitor General*
Eleanor Spottswood, *Assistant Attorney General*
Julio Thompson,* *Assistant Attorney General*
Office of the Attorney General
109 State Street
Montpelier, VT 05609-1001
(802) 828-5500
benjamin.battles@vermont.gov

*Attorneys for the State of Vermont*

*Application for admission pro hac vice forthcoming

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Andrew J. Ehrlich
Jonathan H. Hurwitz
Elana R. Beale
Robert J. O'Loughlin
Daniel S. Sinnreich
Amy K. Bowles

1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000
aehrlich@paulweiss.com
jhurwitz@paulweiss.com
ebeale@paulweiss.com
roloughlin@paulweiss.com
dsinnreich@paulweiss.com
abowles@paulweiss.com

**CENTER FOR CONSTITUTIONAL RIGHTS**
Ghita Schwarz
Brittany Thomas
Baher Azmy

666 Broadway
7th Floor

New York, New York 10012
(212) 614-6445
gschwarz@ccrjustice.org
bthomas@ccrjustice.org
bazmy@ccrjustice.org


**THE LEGAL AID SOCIETY**
Susan E. Welber, Staff Attorney, Law Reform Unit
Kathleen Kelleher, Staff Attorney, Law Reform Unit
Susan Cameron, Supervising Attorney, Law Reform Unit
Hasan Shafiqullah, Attorney-in-Charge, Immigration Law Unit

199 Water Street, 3rd Floor
New York, New York 10038
(212) 577-3320
sewelber@legal-aid.org
kkelleher@legal-aid.org
scameron@legal-aid.org
hhshafiqullah@legal-aid.org


*Attorneys for Plaintiffs Make the Road New York, African Services Committee, Asian American Federation, Catholic Charities Community Services (Archdiocese of New York), and Catholic Legal Immigration Network, Inc.*