**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MAKE THE ROAD NEW YORK, *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>KENNETH CUCCINELLI, *et al.*,<br><br>*Defendants*. | No. 19-07993 (GBD) |
| STATE OF NEW YORK, *et al.*<br><br>*Plaintiffs*,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*<br><br>*Defendants*. | No. 19-cv-07777 (GBD) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION FOR STAY OF INJUNCTION PENDING APPEAL**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 3

    I.     Defendants are Likely to Succeed on the Merits ................................................. 3

        A.    The Court Lacked Jurisdiction to Issue the Second Preliminary Injunction ................ 3

        B.    Plaintiffs Lack Standing and Are Outside the Zone of Interests Regulated by the Rule ........................................................................................................... 5

        C.    Plaintiffs' Claims Are Likely to Fail on the Merits ....................................... 7

    II.    The Remaining Factors Favor A Stay ................................................................. 8

    III.   The Court Should At Least Stay the Injunction in Part ................................... 11

CONCLUSION ................................................................................................................. 11

i

# TABLE OF AUTHORITIES

**Cases**

*Bostock v. Clayton Cnty.*,

140 S. Ct. 1731 (2020) ................................................................................................ 8

*Catskill Mountains Chapter of Trout Unlimited, Inc. v. Envtl. Prot. Agency*,

846 F.3d 492 (2d Cir. 2017) ......................................................................................... 7

*City & Cty. of S.F. v. United States Citizenship & Immigration Servs.*,

944 F.3d 773 (9th Cir. 2019) .................................................................................... 8, 9

*City & Cty. of S.F. v. USCIS*,

408 F. Supp. 3d 1057 (N.D. Cal. 2019) .................................................................. 6, 11

*City of Milwaukee v. Illinois & Michigan*,

451 U.S. 304 (1981) ...................................................................................................... 8

*Clapper v. Amnesty Int'l USA*,

568 U.S. 398 (2013) ...................................................................................................... 6

*Conkright v. Frommert*,

556 U.S. 1401 (2009) ................................................................................................ 1, 5

*Cook Cty., Illinois v. Wolf*,

962 F.3d 208 (7th Cir. 2020) ....................................................................................... 6

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,

140 S. Ct. 1891 (June 18, 2020) .............................................................................. 8, 11

*East Bay Sanctuary Covenant v. Barr*,

934 F.3d 1026 (9th Cir. 2019) ................................................................................... 11

*Faulkner v. Jones*,

10 F.3d 226 (4th Cir. 1993) ....................................................................................... 10

*National Taxpayers Union, Inc. v. United States*,

68 F.3d 1428 (D.C. Cir. 1995) ..................................................................................... 6

*New York NOW v. Terry*,

    886 F.2d 1339 (2nd Cir. 1989)...................................................................... 3

*Nken v. Holder*,

    556 U.S. 418 (2009)....................................................................... 1, 3, 7, 9

*Trump v. Hawaii*,

    138 S. Ct. 2392 (2018)................................................................................ 8

*Wolf v. Cook County*,

    140 S. Ct. 681 (2020)............................................................................. 1, 5

**Statutes**

8 U.S.C. § 1182(a)(4)................................................................................. 6, 7

8 U.S.C. § 1601.............................................................................................. 7

8 U.S.C. § 1642(b).................................................................................... 10

**Regulations**

84 Fed. Reg. 41292 (Aug. 14, 2019)........................................................ 1, 9

## INTRODUCTION

The federal government respectfully moves to stay pending appeal the Court's July 29, 2020 order granting a nationwide preliminary injunction of the Department of Homeland Security's rule *Inadmissibility on Public Charge Grounds*, 84 Fed. Reg. 41292 (Aug. 14, 2019) ("Rule"). The Supreme Court's stay of this Court's prior preliminary injunctions demonstrates that a stay of this injunction is appropriate as well. Contrary to this Court's suggestion in its Memorandum Decision and Order, Civil Action No. 19-7777, ECF No. 195, ("Op."), the Supreme Court necessarily concluded that the federal government has a fair prospect of success on the merits of their appeal of the first injunctions. *See Conkright v. Frommert*, 556 U.S. 1401, 1402 (2009) (Ginsburg, J., in chambers); *see Nken v. Holder*, 556 U.S. 418, 434 (2009). And the Supreme Court's subsequent stay of an Illinois-specific injunction of the same DHS rule confirms that the Supreme Court's stay of this Court's injunctions was not based solely on its nationwide scope. *See Wolf v. Cook County*, 140 S. Ct. 681 (2020).

A stay of this Court's July 29, 2020 injunction is appropriate because there have been no developments that would change the Supreme Court's analysis of the stay factors. As to the merits, Plaintiffs identified nothing in their second motion for preliminary injunction – which dealt exclusively with events that occurred *after* the finalization of the Rule – that could undermine the Supreme Court's assessment of the merits of Plaintiffs' claims. In particular, Plaintiffs' allegations regarding the COVID-19 pandemic could not possibly bear upon whether the Rule violated any law when it was promulgated months *before* the pandemic began.

As to the additional stay factors, the Supreme Court has already necessarily concluded that the government would suffer irreparable harm in the absence of a stay, and that no other equitable considerations rendered a stay inappropriate. That analysis only tilts further in favor of a stay now, where the government has been implementing the Rule for several months and an injunction will disrupt the status quo, creating needless confusion and uncertainty for both the government and the aliens Plaintiffs claim to support. The COVID-19 pandemic, moreover, does not change the Supreme Court's conclusions. The federal government has already made clear that treatment or

1

preventative services for COVID-19 will *not* negatively affect any alien as part of a public charge inadmissibility determination or as part of adjudicating applications and petitions for extension of stay and change of status. Also, Plaintiffs' alleged COVID-19-related harms stem not from the Rule, but from misunderstandings about how the Rule operates. And because there is no basis to conclude that the Court's preliminary injunction will correct those misunderstandings, the necessary connection between Plaintiffs' claimed harm and the relief ordered is missing.

Indeed, the Supreme Court confirmed that the COVID-19 pandemic did not change its conclusion that a stay is appropriate when it denied Plaintiffs' motion to lift or modify its stay. That motion relied on the same evidence and arguments that Plaintiffs presented to this Court. The Supreme Court's statement that its decision "does not preclude a filing in the District Court as counsel considers appropriate," merely clarified that its order did not purport to predetermine the effect of the underlying stay itself (and the pending appeal) on this Court's jurisdiction over Plaintiffs' then yet-to-be-filed motion.

Lastly, a stay is appropriate because this Court lacked jurisdiction to enter another preliminary injunction due to the Supreme Court's stay and the ongoing appeal of the Court's first injunctions. Even this Court, in issuing a Rule 62.1 indicative ruling in the alternative, acknowledged the potential that a higher court might "determine that this Court does not presently have jurisdiction to issue this injunction[.]" Op. at 31. The recognized uncertainty over this Court's jurisdiction to enjoin the Rule only underscores why the injunction should be stayed pending appeal.

For these reasons, as discussed in greater detail below, Defendants believe that no preliminary injunction should have been issued and that this stay motion should be granted. Given the Court's opinion, however, Defendants recognize that the Court may disagree. Under these circumstances in which Defendants are suffering irreparable harm every day that the Rule is enjoined, Defendants respectfully request that the Court rule on this motion quickly. If the Court, upon reviewing this motion, concludes that a stay is inappropriate, Defendants respectfully ask that the Court summarily deny the motion without awaiting a response from Plaintiffs, so that

Defendants can seek relief from the Second Circuit without further delay. In any event, Defendants respectfully request a ruling on this motion no later than August 6, 2020, at which time Defendants intend to seek relief in the Second Circuit.

<strong>ARGUMENT</strong>

In considering whether to grant a stay pending appeal, the Court must consider four factors: (1) the applicant's likelihood of success on the merits; (2) whether the applicant will suffer irreparable injury; (3) the balance of hardships to other parties interested in the proceeding; and (4) the public interest. *Nken*, 556 U.S. at 434. All four factors favor a stay here.

**I.      Defendants are Likely to Succeed on the Merits**

The government respectfully submits that notwithstanding the Court's decision, it is likely to succeed on the merits of its appeal. As Defendants explained in their Opposition to Plaintiffs' Motion for a Preliminary Injunction and Stay or Temporary Restraining Order Pending National Emergency, Civil Action No. 19-7777, ECF No. 176 ("PI Opp'n"), the Supreme Court has already determined that Defendants have a fair prospect of success on the merits.  Plaintiffs' allegations regarding the COVID-19 crisis do not affect that determination.

**A.  The Court Lacked Jurisdiction to Issue the Second Preliminary Injunction**

At the outset, Defendants are likely to prevail on appeal because the Court lacked jurisdiction to issue its second preliminary injunction while the first preliminary injunctions were stayed by the Supreme Court and under review by the Second Circuit.  Even Plaintiffs conceded that there is "substantial doubt as to whether the lower courts could provide any meaningful relief given the [Supreme] Court's stay." *Dep't of Homeland Sec. v. New York*, No. 19A785, Mot. by Gov't Pls. to Temporarily Lift or Modify the Ct.'s Stay of the Orders Issued by the U.S. Dist. Ct. for S.D.N.Y, at 16.

As the Court correctly noted, an interlocutory appeal "divests the district court of jurisdiction respecting the questions raised and decided in the order that is on appeal."  Op. at 19 (quoting *New York NOW v. Terry*, 886 F.2d 1339, 1350 (2nd Cir. 1989)). The Court determined, however, that it could issue a new injunction because Plaintiffs allegedly sought relief based on

3

"new facts and circumstances" that were not previously before the Court. Op. at 20. Even if Plaintiffs could show that *one* issue presented by their second motion was not tied up with the issues already pending on appeal, that would not change the fact that their second motion necessarily implicated other, distinct issues that were addressed by the now-stayed injunctions and are indisputably wrapped up in the appeal of those injunctions. *See, e.g*, Mem. of Law in Supp. of Pls' Mot. for Prelim. Inj. & Stay or T.R.O. Pending National Emergency, Civil Action No. 19-7777, ECF No. 169, at 16 ("Plaintiffs have already demonstrated that they are likely to succeed on the merits of their claims and that the Rule is contrary to law and arbitrary and capricious in violation of the APA – issues that the Second Circuit is currently considering and that the Plaintiffs do not seek to relitigate here.").

In any event, the types of harms that Plaintiffs described in their second motion for preliminary injunction were indeed raised in their earlier motion – the COVID-19 situation simply presents a new example of those previously alleged harms. Plaintiffs argued at length in their first motion that the Rule would cause individuals to disenroll from Medicaid and other public benefits and thereby harm public health. *See* Mem. of Law in Supp. of Pls' Mot. for Prelim. Inj. And Stay Pending Judicial Review, Civil Action No. 19-7777, ECF No. 35, at 6-17. For example, Plaintiffs claimed that the Rule "will impair Plaintiffs' ability to safeguard public health in their jurisdictions," "will cause irreparable harm to public health," and that the Rule "jeopardizes Plaintiffs' ability to reduce the spread of communicable diseases" because "uninsured adults and children are more likely to skip immunizations and vaccinations, increasing the likelihood that communicable diseases will spread throughout Plaintiffs' jurisdictions." *Id*. at 9, 13, 14. The Court agreed with those arguments when it enjoined the Rule, *see, e.g.,* Mem. Decision & Order, Civil Action No. 19-7777, ECF No. 110 ("NY PI"), at 20 (discussing "economic and public health harms" including "[i]ncreased prevalence of communicable diseases"), and the Second Circuit is now considering those same arguments on appeal, *see New York v. DHS*, No. 19-3591, Brief for Appellees, at 29-31 (2d Cir.). Moreover, Plaintiffs raised those arguments, unsuccessfully, before the Supreme Court when they opposed Defendants' application for a stay. *See DHS v. New York*,

No. 19A785, Opp'n of Gov't Pls to Defs' Application for a Stay of the Orders Issued by the U.S. District Ct. for S.D.N.Y., at 19-20 (Jan. 22, 2020). Accordingly, the proper course was to allow the Rule to remain in effect during the pendency of the first appeal – as the Supreme Court determined it may – not to issue a new injunction that effectively overrides the Supreme Court's stay.

As this Court observed, when the Supreme Court denied Plaintiffs' motion to lift or modify the Supreme Court's stay, it noted that its decision "does not preclude a filing in the District Court as counsel considers appropriate." Op. at 19. But that statement merely clarified that the Supreme Court's order did not purport to predetermine the effect of the underlying stay itself (and the pending appeal) on this Court's jurisdiction over a yet-to-be-filed motion that Plaintiffs themselves had suggested this Court would likely not be able to consider. The limited scope of the Court's statement about the "preclu[sive]" effect of its "order" on a "filing" by counsel, moreover, is especially notable because it differs in important ways from the alternative relief Plaintiffs had asked for – that "the Court should clarify that its *stay* does not preclude the *district court* from considering whether changed circumstances from the COVID-19 outbreak warrant temporary relief from implementation of the Public Charge Rule." *Dep't of Homeland Sec. v. New York*, No. 19A785, Mot. by Gov't Pls. to Temporarily Lift or Modify the Ct.'s Stay of the Orders Issued by the U.S. Dist. Ct. for S.D.N.Y., at 2.

### B.  Plaintiffs Lack Standing and Are Outside the Zone of Interests Regulated by the Rule

The Court stated it "has already found that Plaintiffs are likely to succeed on the merits of their claims." Op. at 22. But, as noted, the Court's prior injunctions based on that finding have been stayed. In staying those injunctions, the Supreme Court necessarily concluded that the government had a fair prospect of success on the merits of its appeal. *Conkright*, 556 U.S. at 1402; *see also Wolf v. Cook County*, 140 S. Ct. 681 (2020) (staying Illinois-specific preliminary injunction of the Rule). None of Plaintiffs' new COVID-19-related allegations provides any basis for this Court to reach a contrary conclusion.

First, Plaintiffs' COVID-19-related allegations do not change the analysis regarding standing. The Court previously concluded that the Government Plaintiffs have suffered a cognizable injury—and have ripe claims—on the theory that the Rule will have various downstream effects on their fiscs based on the independent decisions of nonparty aliens affected by the Rule. *See* NY PI at 7-9. Defendants respectfully submit that that conclusion remains incorrect today. The Supreme Court has repeatedly "decline[d] to abandon [its] usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors," and that reluctance should apply with even more force where, as here, such a theory "relies on a highly attenuated chain of possibilities." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410, 414 (2013). Likewise, the Organizational Plaintiffs' standing theory fares no better now than it did at the time of the Court's first injunctions. *See* Mem. Decision & Order, Civil Action No. 19-7993, ECF No. 147 ("MTRNY PI") at 9-11. "The mere fact that an organization redirects some of its resources to litigation and legal counseling in response to actions or inactions of another party is insufficient to impart standing upon the organization." *E.g.*, *National Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1434 (D.C. Cir. 1995). Rather, such spending decisions are the sort of "self-inflicted" costs that the Supreme Court has rejected as a basis for standing. *Clapper*, 568 U.S. at 418.

In any event, even if Plaintiffs had Article III standing, they would fall outside the zone of interests governed by 8 U.S.C. § 1182(a)(4), for the same reasons as Defendants explained previously. Indeed, another district court adjudicating a related challenge to the Rule concluded that materially indistinguishable organizations to the Organizational Plaintiffs here had failed to raise even "serious questions" on this issue. *City & Cty. of S.F. v. USCIS*, 408 F. Supp. 3d 1057, 1117-18 (N.D. Cal. 2019) ("*San Francisco I*"). Likewise, the Seventh Circuit recently expressed doubt over whether the organizational plaintiff there fell within the relevant zone of interests. *See Cook Cty., Illinois v. Wolf*, 962 F.3d 208, 221 (7th Cir. 2020). Nor do the Government Plaintiffs fall within § 1182(a)(4)'s zone of interests simply due to their role as "administrators of . . . public benefits programs." NY PI at 10. Even if Plaintiffs somehow had standing on this theory—which

they do not—they have identified no provision of the INA that protects them from bureaucratic inconvenience.

### C.  Plaintiffs' Claims Are Likely to Fail on the Merits

In staying this Court's prior injunctions, the Supreme Court necessarily found that Defendants have a fair prospect of success on the merits of their defense of the Rule, including the various arguments – raised by Plaintiffs and previously endorsed by this Court – that the Rule is contrary to the Immigration and National Act and is arbitrary and capricious, that the Rule violates the Rehabilitation Act, and that the Rule violates the constitutional guarantee of equal protection. *Nken*, 556 U.S. at 434. Nothing in Plaintiffs' COVID-19-related allegations provides any basis to reconsider those issues.

For instance, this Court has held that the Rule exceeds Defendants' statutory authority primarily on the ground that the government had not used the 12/36 standard in the past. NY PI at 13. But the COVID-19 pandemic does not change the fact that, as the government has showed, Congress delegated interpretive authority concerning the meaning of the statutory term "public charge" to DHS. That delegation permits DHS to adopt different interpretations of the same statutory language over time, so long as those interpretations are "based on a permissible construction of the statute." *Catskill Mountains Chapter of Trout Unlimited, Inc. v. Envtl. Prot. Agency*, 846 F.3d 492, 507 (2d Cir. 2017). Here, the new 12/36 standard implements the general "principle of United States immigration law" of "[s]elf-sufficiency," 8 U.S.C. § 1601—and the specific requirement that "[a]ny alien who . . . is likely at any time to become a public charge is inadmissible," 8 U.S.C. § 1182(a)(4)—by better ensuring that aliens who seek to come to the United States are self-sufficient and rely on their own capabilities and the resources of family members, sponsors, and private organizations rather than on public resources. That determination is well within Defendants' delegated interpretive authority, and Plaintiffs' allegations regarding COVID-19 do not change that fact.

The Court also observed that Congress had rejected proposed expansions of the statutory term public charge in 1996 and 2013. NY PI at 13-14. As Defendants explained previously,

7

however, "unsuccessful attempts at legislation are not the best of guides to legislative intent" as a general matter, and "the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." *City of Milwaukee v. Illinois & Michigan*, 451 U.S. 304, 332 n.24 (1981) (citations omitted). Indeed, this principle is even more firmly-established now than it was at the time of the Court's first injunctions, as the Supreme Court recently reaffirmed that "speculation about why a later Congress declined to adopt new legislation offers a 'particularly dangerous' basis on which to rest an interpretation of an existing law a different and earlier Congress did adopt." *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1747 (2020). And the Ninth Circuit examined the same legislative history considered by this Court and found that it supported Defendants' position. *See City & Cty. of S.F. v. United States Citizenship & Immigration Servs.*, 944 F.3d 773, 797-98 (9th Cir. 2019) ("*San Francisco II*") ("If this legislative history is probative of anything, it is probative only of the fact that Congress chose not to codify a particular interpretation of 'public charge.'").

Next, the Court incorrectly held that the Rule may violate the Rehabilitation Act on an as-applied basis. NY PI at 19-20. In an analogous case, the Ninth Circuit concluded that Defendants showed "a strong likelihood that the Final Rule does not violate the Rehabilitation Act." *San Francisco II*, 944 F.3d at 800. The same analysis is appropriate here, and it is not impacted by the COVID-19 pandemic. Likewise, the Court's ruling that the Organizational Plaintiffs' equal protection claim was likely to succeed, MTRNY PI at 20-21, is incompatible with the highly deferential standard of review applicable to that claim, *see Trump v. Hawaii*, 138 S. Ct. 2392, 2419-20 (2018), and the COVID-19 pandemic does not alter that conclusion. If anything, intervening Supreme Court authority further undermines the equal protection claim. *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1916 (June 18, 2020) (rejecting equal protection challenge to DACA rescission).

## II.    The Remaining Factors Favor A Stay

Both the government and the public will be irreparably harmed if the nationwide injunction is not stayed. In granting a stay of the first preliminary injunctions, the Supreme Court necessarily concluded that the government would suffer irreparable harm in the absence of a stay, and that no

other equitable considerations rendered a stay inappropriate.[1]  The COVID-19 crisis does not alter that balance.

The Court determined that the equities favored Plaintiffs because it found that the Rule "impedes public health efforts in the Governmental Plaintiffs' jurisdictions to stem the spread of disease." Op. at 23. It therefore concluded that it would be in the "public interest" to enjoin the Rule in its entirety, nationwide. *Id.* at 28. But the public has an interest in both addressing the COVID-19 crisis and enforcing lawful immigration policy – and it is the Executive Branch that is charged with determining how best to do both. *See Nken*, 556 U.S. at 435-36. The Executive Branch has considered these arguments and has concluded that a wholesale suspension of the Rule is not warranted. Rather than a wholesale suspension, the Executive Branch has instead opted to take more targeted steps to ensure that the Rule is being administered in an appropriate way in light of current conditions. Specifically, USCIS's March 2020 alert makes clear that the government will exclude from consideration the receipt of any public benefits related to COVID-19 care – including testing, treatment, preventive care, and vaccinations – when making public charge inadmissibility determinations under the Rule. PI Opp'n at 12-14. The Court's dismissal of that alert as "unlikely to remedy Plaintiffs' harms" because of alleged "ambiguity" in it, Op. at 25-26, ignores the evidence showing that various entities have had no difficulty understanding the alert. PI Opp'n at 14. And the Court's suspicion that USCIS might someday change its policy is simply speculation with no factual basis in the record. Op. at 27-28.

Even if USCIS had not issued the alert, the Rule's effects on current benefits usage during the COVID-19 crisis still would have been modest. That is because most aliens to whom the Rule could potentially apply are not presently eligible for federal means-tested benefits like Medicaid. *See* Rule at 41313 (explaining that classes of aliens who are eligible for the noncash benefits

---

[1] The Ninth Circuit expressly held that Defendants would face irreparable harm absent a stay of the preliminary injunctions of the Rule issued by district courts within that circuit. *See San Francisco II*, 944 F.3d at 805-06 ("[T]he preliminary injunctions will force DHS to grant status to those not legally entitled to it. DHS has satisfied its burden to show irreparable harm to the government absent a stay of the injunctions.").

covered by the Rule are, except in rare circumstances, not subject to a public charge inadmissibility determination); *see also* 8 U.S.C. § 1642(b) (limiting receipt of federal public benefits to eligible qualified aliens); *id*. § 1641(b) ("qualified alien" includes, *inter alia*, lawful permanent residents, asylum recipients, and refugees).  The Rule cannot possibly prevent or deter aliens from using public benefits for which they are not eligible.

Notwithstanding USCIS's COVID-19-related guidance and the limited relevance of the Rule to aliens who are actually eligible for benefits, the Court stated that the Rule "deters immigrants from seeking testing and treatment for COVID-19." Op. at 23. But Plaintiffs' declarations make clear that this asserted effect is not the result of the Rule itself, but rather of "mistaken beliefs" about the Rule's application and content.  PI Opp'n at 15-17. Accordingly, Plaintiffs' theory of injury is premised on the idea that various individuals misunderstand the Rule, including basic questions such as to whom it applies and which public benefits are relevant, and that this confusion persists even after the implementing agency issued guidance specifically clarifying that COVID-19-related testing and treatment will not be treated as a negative factor in public charge determinations. PI Opp'n at 15-19.

Yet the remedy Plaintiffs sought and obtained was not to correct that misunderstanding, but to enjoin the implementation of the Rule altogether. Although "any inquiry into the irreparable harm resulting from the denial of interim relief *must* necessarily *begin* with an analysis of the degree to which that particular relief remedies the alleged injuries," *Faulkner v. Jones*, 10 F.3d 226, 235-36 (4th Cir. 1993) (Hamilton, J., dissenting; emphasis in original), here the Court did not explain how Plaintiffs' alleged harm (which allegedly stems from public confusion about the Rule) could be remedied by the relief sought (a preliminary injunction of the Rule's implementation). PI Opp'n at 17-18 (citing cases). It is utter speculation to conclude that individuals who mistakenly believe themselves to be subject to the Rule when they are not, or who for some reason cannot be informed about the government's policy with respect to COVID-19-related testing and treatment will (1) learn about this Court's preliminary injunction, (2) understand what it means for a court to preliminarily enjoin a rule, and (3) change their behavior and begin using public benefits based

10

on that understanding.

Accordingly, the COVID-19 crisis does not alter the Supreme Court's analysis regarding the irreparable harm and balance of the equities factors.

## III.   The Court Should At Least Stay the Injunction in Part

At a minimum, the Court should stay its injunction insofar as it sweeps more broadly than necessary to redress Plaintiffs' alleged injuries. *See* PI Opp'n 29-30. Although related challenges are pending in district courts around the nation, those cases have been rendered largely academic by the scope of this Court's injunction. Also, as Justice Gorsuch, joined by Justice Thomas, explained when the Supreme Court stayed this Court's first preliminary injunction, "the routine issuance of universal injunctions is patently unworkable, sowing chaos for litigants, the government, courts, and all those affected by these conflicting decisions." *New York*, 140 S. Ct. at 600 (Gorsuch, J., concurring).

Although the Court sought to justify its injunction's scope on the theory that immigration enforcement requires uniformity, Op. at 29-30, "a nationwide injunction is not 'appropriate simply because this case presents a rule that applies nationwide,'" even when the rule is "an immigration policy." *San Francisco I*, 408 F. Supp. 3d at 1130 (quoting *East Bay Sanctuary Covenant v. Barr*, 934 F.3d 1026, 1029 (9th Cir. 2019)). Nor can the mere possibility that infected individuals may travel to the Government Plaintiffs' jurisdictions, Op. at 30, justify extending an injunction to every alien affected by the Rule. Plaintiffs did not make any showing that a preliminary injunction against the Rule would limit the spread of the COVID-19 virus caused by individuals travelling into New York, Connecticut, or Vermont.

## CONCLUSION

Defendants respectfully request that the Court stay its preliminary injunction either in whole or in part pending final resolution of Defendants' appeal.

Dated:  August 3, 2020                                    Respectfully submitted,

AUDREY STRAUSS
Acting United States Attorney

ETHAN P. DAVIS
Acting Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

/s/ *Joshua M. Kolsky*
ERIC J. SOSKIN
Senior Trial Counsel
KERI L. BERMAN
KUNTAL V. CHOLERA
JOSHUA M. KOLSKY, DC Bar No. 993430
U.S. Dept. of Justice, Civil Division,
Federal Programs Branch
1100 L Street, N.W., Rm. 12002
Washington, DC 20001
Phone: (202) 305-7664
Fax: (202) 616-8470
Email: joshua.kolsky@usdoj.gov

*Counsel for Defendants*

12

**CERTIFICATE OF SERVICE**

I hereby certify that on August 3, 2020, I electronically filed a copy of the foregoing. Notice of this filing will be sent via email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

<u>/s/ *Joshua M. Kolsky*</u>
JOSHUA M. KOLSKY