UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK, CITY OF NEW YORK, STATE OF CONNECTICUT, and STATE OF VERMONT,<br>            Plaintiffs,<br>    v.<br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY; KEVIN K. McALEENAN, *in his official capacity as Acting Secretary of the United States Department of Homeland Security*; UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES; KENNETH T. CUCCINELLI II, *in his official capacity as Acting Director of United States Citizenship and Immigration Services*; and UNITED STATES OF AMERICA,<br>            Defendants. | **CIVIL ACTION NO.**<br>**19 Civ. 07777 (GBD)** |
| MAKE THE ROAD NEW YORK, AFRICAN SERVICES COMMITTEE, ASIAN AMERICAN FEDERATION, CATHOLIC CHARITIES COMMUNITY SERVICES, and CATHOLIC LEGAL IMMIGRATION NETWORK, INC.,<br>   Plaintiffs,<br>   v.<br>KEN CUCCINELLI, in his official capacity as Acting Director of United States Citizenship and Immigration Services; UNITED STATES CITIZENSHIP & IMMIGRATION SERVICES; KEVIN K. McALEENAN, in his official capacity as Acting Secretary of Homeland Security; and UNITED STATES DEPARTMENT OF HOMELAND SECURITY,<br>   Defendants. | **CIVIL ACTION NO.**<br>**19 Civ. 07993 (GBD)** |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR STAY OF
TEMPORARY INJUNCTION PENDING APPEAL**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii
INTRODUCTION ..................................................................................................................... 1
ARGUMENT .............................................................................................................................. 2
    A.   Defendants cannot show likelihood of success on the merits of the appeal. ...................... 3
        1.   This Court retains jurisdiction to issue new and targeted relief. ..................................... 3
        2.   Defendants cannot show likelihood of success on justiciability or the merits of Plaintiffs' claims. .................................................................................................................. 5
    B.   Defendants fail to show irreparable harm. ......................................................................... 5
    C.   Defendants fail to show that the balance of equities or the public interest weigh in their favor. ...................................................................................................................................... 6
    D.   The Court should not modify the scope of the injunction. ................................................. 8
CONCLUSION ........................................................................................................................ 10

# **TABLE OF AUTHORITIES**

Page(s)

CASES

*Abimbola v. Ashcroft*,
   378 F.3d 173 (2d Cir. 2004) ...................................................................................................5

*Batalla Vidal v. Nielsen*,
   279 F. Supp. 3d 401 (E.D.N.Y. 2018) .....................................................................................8

*Citigroup Glob. Mkts. Inc. v. VCG Special Opportunities Master Fund, Ltd.*,
   598 F.3d 30 (2d Cir. 2010) .................................................................................................2, 3

*City & Cty. of San Francisco v. Trump*,
   897 F.3d 1225 (9th Cir. 2018) .................................................................................................8

*Dep't of Homeland Sec. v. New York*,
   No. 19A785 (2020) ..................................................................................................................4

*Golden Gate Rest. Ass'n v. City & Cty. of San Francisco*,
   512 F.3d 1112 (9th Cir. 2008) .................................................................................................7

*Make Rd. New York v. Cuccinelli*,
   No. 19 Civ. 7993 (GBD), 2019 WL 6498283 (S.D.N.Y. Dec. 2, 2019) ...............................5, 6

*Make the Rd. New York v. Cuccinelli*,
   419 F. Supp. 3d 647 (S.D.N.Y. 2019) ..................................................................................4, 5

*New York v. Dep't of Commerce*,
   345 F. Supp. 3d 444 (S.D.N.Y. 2018) .....................................................................................6

*New York v. Dep't of Homeland Sec.*,
   408 F. Supp. 3d 334 (S.D.N.Y. 2019) ................................................................................. 4-5

*New York v. Dep't of Homeland Sec.*,
   No. 19 Civ. 7777 (GBD), 2019 WL 6498250 (S.D.N.Y. Dec. 2, 2019) ............................. 5-6

*New York v. Dep't of Homeland Sec.*,
   No. 19-3591, 2020 WL 4457951 (2d Cir. Aug. 4, 2020) ............................................. passim

*New York v. Dep't of Labor*,
   No. 20 Civ. 3020 (JPO), (S.D.N.Y. Aug. 3, 2020) ..................................................................1

*Nken v. Holder*,
   556 U.S. 418 (2009) ........................................................................................................... 1-2, 6

*Ruckelshaus v. Monsanto Co.*,
    463 U.S. 1315 (1983) ..................................................................................................1

*Strougo v. Barclays PLC*,
    194 F. Supp. 3d 230 (S.D.N.Y. 2016).................................................................5, 6

**INTRODUCTION**

The COVID-19 pandemic has swept every corner of the nation since Plaintiffs filed their motion for a new and targeted preliminary injunction. In the process, the pandemic has radically altered the harms and balance of equities in this case. The rapid spread of the virus has "visited unforeseen and drastic hardship" on Americans. *New York v. Dep't of Labor*, No. 20 Civ. 3020 (JPO), at 1 (S.D.N.Y. Aug. 3, 2020). Across the country, over 4.6 million people have been infected and over 150,000 have died.[1] In ordering Defendants to temporarily halt the implementation of their new Rule, the Court properly recognized the critical need for a narrowly tailored injunction during the national public health emergency, to ensure that Plaintiffs could effectively combat the spread of the virus and reduce its economic impacts, among citizens and noncitizens alike. And since this Court found that these changed conditions merited new, emergency relief, the Second Circuit has issued a decision affirming this Court's earlier conclusions regarding the Rule's manifest defects. *See New York v. Dep't of Homeland Sec.*, No. 19-3591, 2020 WL 4457951 (2d Cir. Aug. 4, 2020).

Defendants cannot overcome the heavy burden of showing that "circumstances justify" the "extraordinary" remedy of a stay of the Court's injunction pending appeal. *Nken v. Holder*, 556 U.S. 418, 428, 433-34 (2009); *see also, e.g.*, *Ruckelshaus v. Monsanto Co.*, 463 U.S. 1315, 1316 (1983) (Blackmun, J., in chambers) (a stay pending appeal may be granted "only under extraordinary circumstances"). Defendants' motion seeks to relitigate the issues that the Court has resolved against them and parrots many of the arguments that the Court has rejected time and

---

[1] Center for Disease Control & Prevention, Coronavirus Disease 2019 (COVID-19): Cases in U.S., https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last updated Apr. 28, 2020). Plaintiffs' jurisdictions, infections total over 400,000 in New York (and 230,000 in New York City alone), over 50,000 in Connecticut, and over 1,400 in Vermont. *Id.*

1

again. The instant motion, which barely acknowledges the pressing need for unfettered access to medical care and supplemental economic benefits during the pandemic, further demonstrates that Defendants fail to understand the magnitude of the Rule's harms and are unable to properly assess the balance of the equities here. Defendants do not once address the millions of immigrants, who have been intentionally deterred from seeking life-saving treatment and supplemental nutritional support for fear that they will lose a path to permanent residency and citizenship; nor do Defendants acknowledge the herculean task that the Governmental Plaintiffs face in seeking to mitigate the spread of this deadly virus. Defendants are not entitled to the extraordinary remedy of a stay.[2]

## ARGUMENT

In deciding whether a stay should issue, a court considers: (1) whether the issuance of a stay would substantially harm the other parties to the proceeding; (2) whether the moving party will suffer irreparable harm without a stay; (3) where the public interest lies; and (4) whether the moving party has made a strong showing of likelihood of success on the merits. *Nken*, 556 U.S. at 434. These factors "overlap substantially with the preliminary injunction standard." *Citigroup Glob. Mkts. Inc. v. VCG Special Opportunities Master Fund, Ltd.*, 598 F.3d 30, 37 (2d Cir. 2010). For the reasons stated in the Court's well-reasoned decision, Defendants cannot satisfy any of the factors that would weigh in favor of a stay.

---

[2] Defendants' efforts to impose an arbitrary three-day deadline on the Court to decide the motion, *see* Defs.' Mot. to Stay the Prelim. Inj., Dkt. No. 198 ("Defs.' Mem.") at 1-2, are unwarranted and inappropriate. Defendants previously argued that a schedule requiring response within 72 hours was "blatantly unreasonable." *See* Defs.' Opp'n to Mot. to Expedite, Dkt. No. 172 at 2. Without any attempt to identify emergency circumstances that would justify an expedited decision, Defendants now request a deadline that would require the Court to decide the motion in the same timeframe. Indeed, Defendants, facing the same harms in October 2019, waited almost three weeks to file their motion to stay the first injunction. *See* Mem. of Law in Supp. Defs.' Mot. to Stay Inj. Pending Appeal, Dkt. No. 112. Because Defendants have "failed to demonstrate good cause to expedite the existing motion deadlines" and "have provided no reasoning whatsoever to support their specific request," Defs.' Opp'n to Mot. to Expedite, at 1, their request for disposition of the motion to stay by August 6, 2020, should be denied.

A. <u>Defendants cannot show likelihood of success on the merits of the appeal.</u>

The Court should not permit Defendants to revive their failed arguments that the Supreme Court's stay and appeal of the injunction issued in October 2019 divest this Court of jurisdiction to enter a new injunction based on materially different facts. The Court should also decline to consider, for the fourth time, whether Plaintiffs have standing or whether Defendants are likely to succeed on the merits of Plaintiffs' claims.

1. <u>This Court retains jurisdiction to issue new and targeted relief.</u>

This Court properly rejected Defendants' misguided jurisdictional arguments in issuing new, time-limited relief. As the Court concluded, neither the appeal of its prior injunction nor the Supreme Court's stay strip this Court of authority to address radically altered circumstances. Or. Granting Prelim. Inj. dated July 29, 2020, Dkt. No. 195 ("Op.") at 20-21. To the contrary, this Court is "best-suited to make factual findings and issue concordant, narrowly tailored relief." *Id.*

The new injunction does not "disturb [the Court's] prior orders or interfere with particular questions presented by Defendants' pending appeal."[3] Op. at 20. Defendants fail to acknowledge that an interlocutory appeal "*only* divests the district court of jurisdiction respecting the *questions raised and decided* in the [prior] order." *Id.* at 19 (citing *New York State Nat. Org. for Women v. Terry*, 886 F.2d 1339, 1350 (2d Cir. 1989)) (emphasis added); *see also Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). The prior order enjoined the Rule's general application after considering Governmental Plaintiffs' steep losses in federal benefits funding and increase in healthcare and administrative costs as well as the burdensome changes in

---

[3] The new injunction plainly does not interfere with or undermine the Second Circuit's recent decision, which affirmed this Court's assessment of Plaintiff's likelihood of success on the merits on their claims and countervailing harms to Defendants in halting implementation of the Rule. *See generally New York*, 2020 WL 4457951. But for the reasons set forth above, the Court's jurisdiction to issue new relief remains the same pending any application for certiorari before the Supreme Court.

3

Organizational Plaintiffs' programmatic work. *See New York v. Dep't of Homeland Sec.*, 408 F. Supp. 3d 334, 342-45 (S.D.N.Y. 2019); *Make the Rd. New York v. Cuccinelli*, 419 F. Supp. 3d 647, 656-58 (S.D.N.Y. 2019). Plaintiffs continue to seek relief without temporal limitation on that basis. But the instant injunction raised issues and evidence relating to the Rule's interference with Plaintiffs' efforts to contain the spread of COVID-19 and to reduce the pandemic's economic toll that was not—and could not have been—previously raised or considered.

Defendants attempt to downplay these new pandemic-related harms as duplicative of the harms supporting the first injunction, which included the increase in spread of common ailments and reduction in access to existing vaccines. Defs.' Mem. at 4. But this argument wholly ignores the magnitude and reality of the COVID-19 crisis, the Governmental Plaintiffs' urgent need to mitigate the spread of disease, and the stark impact of the virus on immigrant communities, who constitute a significant proportion of the essential workforce and face the largest risk of exposure. *See* Op. at 24. These circumstances create a "significantly different factual record." *Id.* at 21.

The Court has likewise rejected Defendants' contentions that the Supreme Court stay precludes the district court from deciding Plaintiffs' new motion.[4] Defs.' Mem. at 4-5; Op. at 21 n. 10. Indeed, the Supreme Court's order stated the opposite. *See* Declaration of Elena Goldstein dated Apr. 28, 2020, Dkt. No. 170, Exhibit (hereinafter "Ex.") 2. Defendants' interpretation of this order renders the language in the order addressing Plaintiffs' recourse in the district court meaningless—simply because it did not repeat verbatim Plaintiffs' articulation of the relief

---

[4] Because Governmental Plaintiffs recognized the unusual posture of this case, they first sought from the Supreme Court a modification of the stay or clarification that the stay did not preclude Plaintiffs from seeking relief in the district court based on materially different harms. *Dep't of Homeland Sec. v. New York*, No. 19A785, Mot. by Gov't Pls. to Temporarily Lift or Modify the Ct.'s Stay of the Orders Issued by the U.S. Dist. Ct. for S.D.N.Y. ("Mot. to Lift Stay"), at 2 *available at* https://www.supremecourt.gov/DocketPDF/19/19A785/141515/2020041315301 4307_19A785%20Motion%20to%20Temporarily%20Lift%20or%20Modify%20Stay.pdf.

sought—and disregards established principles of textual interpretation. *See Abimbola v. Ashcroft*, 378 F.3d 173, 179 (2d Cir. 2004).

    2. <u>Defendants cannot show likelihood of success on justiciability or the merits of Plaintiffs' claims.</u>

The Court may easily dispense with Defendants' arguments regarding justiciability and the Plaintiffs' likelihood of success on the merits. Defendants' arguments about standing and the zone of interests have been rejected numerous times, most recently by the Second Circuit. *New York*, 408 F. Supp. 3d at 343-45 (Plaintiffs' harms are neither speculative nor self-inflicted and all Plaintiffs fall within the APA's zone of interests); *New York v. Dep't of Homeland Sec.*, No. 19 Civ. 7777 (GBD), 2019 WL 6498250, at *1 (S.D.N.Y. Dec. 2, 2019) (same); *Make the Rd. New York*, 419 F. Supp. 3d 647 at 658-59 (same); *Make Rd. New York v. Cuccinelli*, No. 19 Civ. 7993 (GBD), 2019 WL 6498283, at *1 (S.D.N.Y. Dec. 2, 2019) (same); *New York*, 2020 WL 4457951, at *9-12 (same).

Defendants' hollow suggestion that Plaintiffs' claims fail on the merits has likewise been roundly rejected by this Court—at least three times—and now by the Second Circuit. *See* Op. at 22; *New York*, 408 F. Supp. 3d at 346-50; *New York*, 2019 WL 6498250 at *1; *Make the Rd. New York*, 419 F. Supp. 3d 647 at 661-65; *Make Rd. New York*, 2019 WL 6498283, at *1; *New York*, 2020 WL 4457951, at *12-29. The Court should, for a fourth time, decline to revisit its well-reasoned views as to the merits of this dispute.

B. <u>Defendants fail to show irreparable harm.</u>

"To establish irreparable injury [warranting a stay pending appeal], Defendants have the burden of showing injury that is not remote or speculative but actual and imminent." *Strougo v. Barclays PLC*, 194 F. Supp. 3d 230, 234 (S.D.N.Y. 2016). Defendants fail entirely to identify any irreparable harms that would result absent a stay. As the Court has observed, the Supreme

5

Court's and the Ninth Circuit's stays do not require this Court to find irreparable harm to Defendants in these circumstances. *See* Op. at 9-10. Even if Defendants had provided anything beyond conclusory allegations that it would be harmed by a temporary halt to implementation of the Rule, the Second Circuit has observed that these harms are "inevitable in the preliminary injunction context" and that "[a]ny time the government is subject to a preliminary injunction, it necessarily suffers the injury of being prevented from enacting its preferred policy." *New York*, 2020 WL 4457951, at *32. This Court has already found that Defendants' purported injuries are insufficiently substantial to satisfy the irreparable harm requirement. *See New York*, 2019 WL 6498250, at *2 (Defendants have not adequately established irreparable harm); *Make Rd. New York*, 2019 WL 6498283, at *2 (same).

C. <u>Defendants fail to show that the balance of equities or the public interest weigh in their favor.</u>

The remaining factors also favor denial of the stay. Because "the first two factors—the movant's likelihood of success on appeal and prospect of suffering irreparable harm—are the most critical and [Defendants] have failed to make the required showing on these two prongs, little more needs to be said as to the second two, which ask whether a stay is likely irreparably to harm Plaintiff[s] and whether a stay is in the public interest." *Strougo*, 194 F. Supp. 3d at 234 (alterations and internal quotation marks omitted); *New York v. Dep't of Commerce*, 345 F. Supp. 3d 444, 453 (S.D.N.Y. 2018) (explaining that given that "Defendants fail to carry their burden on either of the first two, and most critical factors . . . [t]he Court could stop there") (internal quotation marks omitted).

The balance of equities and the public interest overwhelmingly favor Plaintiffs. *Nken*, 556 U.S. at 435 ("[T]he traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest. These factors merge when the Government is the opposing

6

party."). The Court has already found that Plaintiffs would suffer "pressing and substantial" harm absent an injunction.[5] Op. at 22-23. The Rule impedes Plaintiffs' efforts to slow infection rates, preserve hospital capacity and equipment, and save lives. *Id.* at 23. Plaintiffs have provided "ample" and uncontested evidence—from doctors, government health officials, and local advocates—that the Rule deters immigrants from seeking testing and treatment out of concern about the Rule's application.[6] *Id.* "Any policy that deters residents from seeking [these services] increases the risk of infection for such residents and the public." *Id.* at 24. And the Rule also interferes with Plaintiffs' capacity to ensure that individuals in their jurisdictions have access to nutritional supplements, as millions of workers face temporary and permanent layoffs. As Plaintiffs' uncontroverted evidence reflects, the Rule caused immigrants who had their lost their jobs to go hungry, avoiding food stamps and even food pantries, because they feared adverse immigration consequences stemming from the Rule.[7] *See id.* at 26-27.

A stay of the injunction would undermine Plaintiffs' ability to manage the most catastrophic public health and economic emergency they have faced in recent history. When weighed against any alleged harm to Defendants from temporarily enforcing a standard that has been in place for the past century, *see supra* at 5-6, the magnitude of "preventable human suffering" that would result from a stay tips the balance of hardships and public interest sharply in Plaintiffs' favor. *Golden Gate Rest. Ass'n v. City & Cty. of San Francisco*, 512 F.3d 1112,

---

[5] The Court should decline to revisit Defendants' failed arguments about whether the Rule caused these harms and whether an injunction would remedy these harms. Contrary to Defendants' contentions, Defs.' Mem. 10, the Court's conclusion that a new injunction would mitigate these direct and predictable chilling effects, as the prior injunction did, does not require leaps of logic.

[6] Ex. 8 (Almasude Decl.) ¶¶ 4-8; Ex. 18 (Mostofi Decl.) ¶¶ 13, 15; Ex. 17 (Moreno Decl. ¶ 4); Ex. 22 (Voit Decl.) ¶¶ 27-28, 30; Ex. 21 (Pryor Decl.) ¶ 19; Ex. 14 (Kennedy Decl.) ¶ 13.

[7] *See* Ex. 8 (Almasude Decl.) ¶ 6; Ex. 20 (Newton Decl.) ¶ 11, Ex. 17 (Moreno Decl.) ¶ 6; Ex. 15 (Kritzman Decl.) ¶ 4; Ex. 13 (Heinrich Decl.) ¶¶ 4-5.

7

1126 (9th Cir. 2008) (internal quotation marks omitted); *see also Batalla Vidal v. Nielsen*, 279 F. Supp. 3d 401, 434 (E.D.N.Y. 2018) (irreparable harm where residents' loss of health insurance would "impose tremendous burdens on the State Plaintiffs' public health systems" and policy would have "staggering adverse economic impacts").

In response, Defendants recycle their previous arguments that USCIS's March 13, 2020 Alert about the impact of COVID-19 testing and treatment is sufficient to remedy the harms caused by the Rule's widespread chilling effect. Defs.' Mem. at 9-10. However, the Court properly weighed the evidence and concluded that the Alert causes further ambiguity and is "unlikely to remedy Plaintiffs' harms." Op. at 25; *see id.* 25-28. Defendants also misunderstand the Court's analysis of the uncertainty inherent in the Alert. *See* Defs.' Mem. at 9. The Court's observation that USCIS could change or rescind the Alert at any time was not a prediction that such a change would occur but rather served to illustrate how little assurance the Alert provided for immigrants deciding whether to receive testing or treatment. *See* Op. at 28. Indeed, Plaintiffs have provided evidence that the Alert has not, in fact, mitigated immigrants' fear and confusion about the application of the Rule.[8] Defendants are unable to show that the Alert shifts the balance of equities toward granting a stay.

D.  <u>The Court should not modify the scope of the injunction.</u>

Temporarily enjoining Defendants from implementing the Rule without geographic restriction during the pendency of a pandemic caused by an airborne virus that "knows no artificial boundaries" is not only appropriate but necessary. Op. at 30. Far from a case where "the record is not sufficiently developed on the nationwide impact of the [agency action]," *City &*

---

[8] *See, e.g.*, Ex. 22 (Voit Decl.) ¶¶ 27-28; Ex. 21 (Pryor Decl.) ¶¶ 18-19; Ex. 11 (Chavez Decl.) ¶ 9; Ex. 14 (Kennedy Decl.) ¶ 14; Ex. 24 (Oshiro Decl.) ¶¶ 7, 15.

*Cty. of San Francisco v. Trump*, 897 F.3d 1225, 1244 (9th Cir. 2018), Plaintiffs have described irreparable harms that are geographically expansive in scope due to the national implementation of the Rule, and an unprecedented global pandemic afflicting over 1.5 million people in the United States. As the Court acknowledged, the harms of the Rule between and among states are "interconnected." Op. at 30. Indeed, COVID-19 spread through the country via interstate travel,[9] and interstate travel will continue to be a primary means by which the virus crosses state lines, particularly as jurisdictions continue to lift stay-at-home restrictions.[10]

Defendants' contention that there is only a "mere possibility that infected individuals may travel" to New York, Vermont, and Connecticut is absurd. Defs' Mem. at 11. These jurisdictions are among the most densely populated and frequently visited in the country, and it is well-established that the virus did, in fact, spread through travel across their state lines. *See supra* at 9 n. 9.

Finally, the Second Circuit's decision about the scope of the first injunction does not change the result here. Recognizing that nationwide injunctions may remain appropriate in certain circumstances, the Second Circuit cautioned that such relief may be "less desirable" when multiple jurisdictions are deciding the same issue. *New York*, 2020 WL 4457951, at *32. This Court, however, is presently the only district court in the country that has considered whether the new harms that the Rule causes during the pandemic warrant new relief.

---

[9] *See* Benedict Carey and James Glanz, *Travel From New York City Seeded Wave of U.S. Outbreaks*, N.Y. Times (May 7, 2020), *available at* https://www.nytimes.com/2020/05/07/us/new-york-city-coronavirus-outbreak.html.

[10] *See* Gabriel J.X. Dance and Lazaro Gamio, *As Coronavirus Restrictions Lift, Millions in U.S. Are Leaving Home Again*, N.Y. Times (May 12, 2020), *available at* https://www.nytimes.com/interactive/2020/05/12/us/coronavirusreopening-shutdown.html. Indeed, the more than 2.2. million travelers landing in the New York metropolitan area between the end of January and March 16, 2020, "combined with the density and crowding of [the tri-state area's] population, caused New York to have the highest infection rate in the country." New York Dep't of Health, *Interim Guidance for Quarantine Restrictions on Travelers Arriving in New York State Following Out of State Travel* (June 24, 2020), *available at* https://coronavirus.health.ny.gov/system/files/documents/2020/06/interimguidance_traveladvisory.pdf.

Furthermore, the Court's order is consistent with the Second Circuit's directive to consider "the form of limiting language" in order to "anticipate the possibility of conflicts with other courts and provide for such a contingency." *New York*, 2020 WL 4457951, at *32. By issuing a temporary and limited injunction only for the duration of the national health emergency, the Court properly "considered the equitable and constitutional concerns regarding nationwide injunctions," Op. at 30 n. 13, and balanced these concerns against the dangers of a "patchwork public charge framework" that "would only contribute to the spread of COVID-19," *id.* at 30.[11]

## CONCLUSION

For the foregoing reasons, Defendants' motion to stay the temporary injunction pending appeal should be denied.

DATED: August 5, 2020

Respectfully submitted,

**LETITIA JAMES**
*Attorney General of the State of New York*

By: */s/ Ming-Qi Chu*
Ming-Qi Chu, *Section Chief, Labor Bureau*
Matthew Colangelo
  *Chief Counsel for Federal Initiatives*
Elena Goldstein
  *Deputy Chief, Civil Rights Bureau*
Abigail Rosner, *Assistant Attorney General*
Office of the New York State Attorney General
New York, New York 10005
Phone: (212) 416-8689
ming-qi.chu@ag.ny.gov

*Attorneys for the States of New York, Connecticut, and Vermont and the City of New York*

---

[11] If the Court decides that reconsideration of the scope of the injunction is appropriate, the Court retains inherent power to narrow it.

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Andrew J. Ehrlich
Jonathan H. Hurwitz
Elana R. Beale
Robert J. O'Loughlin
Daniel S. Sinnreich
Amy K. Bowles

1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000
aehrlich@paulweiss.com
jhurwitz@paulweiss.com
ebeale@paulweiss.com
roloughlin@paulweiss.com
dsinnreich@paulweiss.com
abowles@paulweiss.com


**CENTER FOR CONSTITUTIONAL RIGHTS**
Ghita Schwarz
Brittany Thomas
Baher Azmy

666 Broadway
7th Floor
New York, New York 10012
(212) 614-6445
gschwarz@ccrjustice.org
bthomas@ccrjustice.org
bazmy@ccrjustice.org

11

**THE LEGAL AID SOCIETY**
Susan E. Welber, Staff Attorney, Law Reform Unit
Kathleen Kelleher, Staff Attorney, Law Reform Unit
Susan Cameron, Supervising Attorney, Law Reform Unit
Hasan Shafiqullah, Attorney-in-Charge, Immigration Law Unit

199 Water Street, 3rd Floor
New York, New York 10038
(212) 577-3320
sewelber@legal-aid.org
kkelleher@legal-aid.org
scameron@legal-aid.org
hhshafiqullah@legal-aid.org

*Attorneys for Plaintiffs Make the Road New York, African Services Committee, Asian American Federation, Catholic Charities Community Services (Archdiocese of New York), and Catholic Legal Immigration Network, Inc.*