# Exhibit A

September 1, 2020

Josh Kolsky
U.S. Department of Justice
1100 L Street NW
Washington, D.C. 20005

      RE:    *Make the Road New York, et al.* v. *Ken Cuccinelli, et al.*, 19-cv-7993 (GBD) ("*MRNY*"); *State of New York, et al.* v. *U.S. Dep't of Homeland Security, et al.*, 19-cv-7777 (GBD) ("*State of New York*")

Dear Josh:

      Plaintiffs in these actions write regarding deficiencies in the partial privilege logs produced by defendants, including numerous documents inappropriately withheld on the basis of the deliberative process privilege ("DPP") and the attorney-client privilege ("ACP"). If these deficiencies are not cured by September 8, 2020, plaintiffs intend to request a pre-motion discovery conference with the Court pursuant to Local Rule 37.2 to resolve these issues.

      Defendants have produced six partial privilege logs purporting to identify documents withheld from the administrative record in *Washington* v. *United States Department of Homeland Security*, No. 4:19-cv-5210 (RMP) (E.D. Wash.) ("*Washington*"), pursuant to the *Washington* court's May 13, 2020 decision ordering production of a privilege log on a rolling basis. Defendants have provided copies of the partial privilege logs to plaintiffs in these actions on a rolling basis, and as recently as August 21, 2020. The partial privilege logs produced to date are purportedly based on a review of 14.7% of the documents on defendants' document review platform.[1]

      The partial privilege logs produced to date are deficient in several respects. *First*, many of the entries on the partial privilege logs provide insufficient information to determine whether the DPP has been properly asserted. *Second*, the DPP cannot be invoked to withhold documents where, as here, the agency's decision-making process itself is squarely at issue in the litigation. *Third*, numerous entries on the partial privilege logs provide insufficient information to determine whether the ACP has been properly invoked, and several documents purportedly withheld under the ACP were not made for the purpose of obtaining or providing legal advice. *Fourth*, numerous documents have been withheld to protect personal information of government employees that could simply be redacted in any production.

I.    <u>The partial privilege logs do not contain sufficient information to determine whether the DPP is properly asserted.</u>

      The partial privilege logs produced to date do not contain enough information for plaintiffs—and, ultimately, the Court—to determine whether defendants have met their burden of establishing that the DPP applies. "An inter- or intra-agency document may be withheld pursuant to the [DPP] if it is: (1) 'predecisional,' *i.e.*, 'prepared in order to assist an agency

---

[1] Defendants have explained that additional documents may be added to the review platform. *Washington*, ECF No. 246.

1

decisionmaker in arriving at his decision,' and (2) 'deliberative,' *i.e.*, 'actually . . . related to the process by which policies are formulated.'" *Nat'l Council of La Raza* v. *Dep't of Justice*, 411 F.3d 350, 356 (2d Cir. 2005) (citation omitted). A document is predecisional if the agency can "(i) pinpoint the specific agency decision to which the document correlates [] and (ii) verify that the document precedes, in temporal sequence, the decision to which it relates." *Grand Cent. P'ship, Inc.* v. *Cuomo*, 166 F.3d 473, 482 (2d Cir. 1999) (citation and quotation marks omitted). A document is deliberative if it "(i) formed an essential link in a specified consultative process, (ii) reflects the personal opinions of the writer rather than the policy of the agency, and (iii) if released, would inaccurately reflect or prematurely disclose the views of the agency." *Nat'l Day Laborer Org. Network*, 811 F. Supp. 2d 713, 736 (S.D.N.Y. 2011) (quoting *Grand Cent. P'ship, Inc.*, 166 F.3d at 482).

   The government bears the burden of showing that a document is protected by the DPP and must "submit specific information identifying each document and its contents" to justify the privilege. *Resol. Tr. Corp. v. Diamond*, 137 F.R.D. 634, 642 (S.D.N.Y. 1991). Thus, "a log of documents withheld on the basis of the deliberative process privilege should provide various pieces of information, including, but not limited to, a description of the decision to which the documents relate, the date of the decision, the subject-matter of the documents in issue, the nature of the opinions and analyses offered, the date that documents were generated, the roles of the agency employees who authored or received the withheld documents and the number of employees among whom the documents were circulated." *Auto. Club of N.Y., Inc.* v. *Port Auth. Of N.Y. & N.J.*, 297 F.R.D. 55, 60 (S.D.N.Y. 2013). This information "would provide the receiving party with sufficient facts to assess whether the documents were related to the process by which policies are formed." *Id.*

   The partial privilege logs come nowhere near providing enough information for plaintiffs to determine whether the DPP was properly invoked. Several entries provide only vague descriptions of the subject matter of the withheld documents that fail to establish whether the documents are predecisional and deliberative. *E.g.*, AR_380288; AR_380289 (withholding documents purporting to contain "recommendations regarding the public charge rule"); AR_380290; AR_380291 (withholding documents allegedly "regarding various draft immigration rulemakings, including the public charge rule" ); AR_380292; AR_380297; AR_380357 (withholding documents purporting to contain unspecified "opinions, recommendations, and advice about agency decisions that have not yet been finalized"). Relatedly, numerous entries simply describe the withheld information as "predecisional" and "deliberative" without providing the information necessary to determine whether these conclusory assertions are justified. *E.g.*, AR_380326 ("Predecisional, deliberative document from Civil Rights and Civil Liberties Officer containing predecisional, deliberative recommendations regarding the public charge rule.").

   The partial privilege logs are also deficient because numerous entries identify individuals in the "To," "From," and "Cc" fields using vague and generic descriptions, such as "USCIS Employee," "DOS Employee," and "DHS Attorney Advisor." *E.g.*, AR_380377 (withholding draft summary of the "public charge totality of the circumstances framework" sent from "USCIS Employee" to numerous individuals, including 17 individuals identified only as "USCIS Employee" or "DOS Employee"). Plaintiffs and the Court cannot assess the applicability of the DPP without additional information about the role of these government

employees, including "some specificity as to where the 'Authors' and 'Recipients' fall on the [agency's] hierarchy." *Auto. Club of N.Y.*, 297 F.R.D. at 63. "An author or recipient's role is relevant because it is more likely that a relatively senior-level employee, as opposed to a more junior staffer, would be offering opinions and analyses to assist the agency official responsible for the formulation of significant public policy—the very process the privilege protects." *Id.*; *see In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig.*, 643 F. Supp. 2d 439, 443 (S.D.N.Y. 2009) (explaining that "a high-level agency official is more likely to be involved in the decisionmaking process"). Plaintiffs are entitled to know the names of these employees, in addition to their roles. *See Auto. Club of N.Y.*, 297 F.R.D. at 63 (ordering government to supplement privilege log by "specifically identify[ing]" the "authors" and "recipients" of challenged categories of documents when there were fewer than ten individuals, and to "identify, by name and title, the most highly placed individual" when there were more than ten authors and recipients); *see also Families for Freedom* v. *U.S. Customs & Border Prot.*, 797 F. Supp. 2d 375, 399 (S.D.N.Y. 2011) (explaining that "information that merely identifies the names of government officials who authored documents and received documents" are typically not exempted from FOIA disclosure).

II. <u>The DPP does not apply because the agency's decision-making process itself is the subject of the litigation.</u>

The partial privilege logs produced to date indicate that 161 documents have been withheld from the administrative record on the basis of the DPP. Although the DPP generally prevents disclosure of records that reveal a government agency's internal decision-making process, the privilege is a "qualified privilege" and may be overcome when the agency's interest in nondisclosure is outweighed by the "interest of the litigants, and ultimately of society, in accurate judicial fact finding and the public interest in opening for scrutiny the government's decision making process." *Diamond*, 137 F.R.D. at 642 (quotation marks omitted).

The interest of litigants and the public in disclosure is greatest when an agency's decision-making process itself is the subject of the litigation. Accordingly, the "historical and overwhelming consensus and body of law within the Second Circuit is that when the decision-making process itself is the subject of the litigation, the deliberative process privilege cannot be a bar to discovery and the privilege evaporates." *Burbar* v. *Incorporated Village of Garden City*, 303 F.R.D. 9, 14 (E.D.N.Y. 2014) (citation and quotation marks omitted) (determining DPP was "inapplicable" in malicious prosecution case where the "decision making process of the County Defendants are unquestionably at the heart of these claims"); *New York* v. *Salazar*, 701 F. Supp. 2d 224, 237−38 (N.D.N.Y. 2010) (determining DPP did not apply when central theme of APA claim was that the "deliberative process itself was fatally flawed and infected by arbitrary conduct and abuse of discretion"); *Children First Found., Inc.* v. *Martinez*, 2007 WL 4344915, at *7 (N.D.N.Y. Dec. 10, 2007) (determining DPP "must . . . disappear" when "the crux of the [plaintiffs'] case" was "the process by which Defendants made their decision . . [and their] subjective motives"); *Azon* v. *Long Island R.R.*, 2001 WL 1658219, at *3 (S.D.N.Y. Dec. 26, 2001) ("[W]hen the subject of the litigation, as here, is the very nature of the decision-making process, the privilege should not foreclose the production of critical information."); *Burka* v. *New York City Transit Auth.*, 110 F.R.D. 660, 667 (S.D.N.Y. 1986) ("Where the decision-making process itself is the subject of the litigation, the deliberative privilege may not be raised as a bar against disclosure of critical information."). Additionally, the Second Circuit has

3

explained that, even where the DPP is properly applied to claims asserted under the Administrative Procedure Act (the "APA"), "the Government [cannot] rely on such privilege to avoid all discovery with respect to plaintiffs' constitutional claims." *In re Nielsen*, No. 17-3345, Order Denying Mandamus Petition at 3 n.2 (2d. Cir. Dec. 27, 2017).

Here, defendants' decision-making process is squarely at issue in this litigation in at least two respects. *First*, plaintiffs allege that the Rule[2] violates the Equal Protection guarantee of the Fifth Amendment because it was motivated by racial animus against nonwhite immigrants. *MRNY* Compl. ¶¶ 201−34; *State of New York* Compl. ¶¶ 174−78. The Court found that plaintiffs are likely to succeed on the merits of their equal protection claim. *Make the Road N.Y.* v. *Cuccinelli*, 419 F. Supp. 3d 647, 664 (S.D.N.Y. 2019). The Court also recently found that plaintiffs state an equal protection claim based, in part, on the "extensive evidence of statements that may evince discriminatory intent made by high-level officials who were allegedly the decision-makers behind the Rule or influenced such decision-makers." *New York* v. *U.S. Dep't of Homeland Security*, 19-cv-7777, 2020 WL 4347264, at *6 (S.D.N.Y. July 29, 2020). Plaintiffs also allege that the process for promulgating the Rule was highly irregular, *MRNY* Compl. ¶ 218, which further demonstrates discriminatory purpose under *Village of Arlington Heights* v. *Metropolitan Housing. Development Corp.*, 429 U.S. 252, 267–68 (1977).

*Second*, plaintiffs allege that defendants' process for promulgating the Rule was procedurally deficient in violation of the APA in numerous respects, including, among other things, that the promulgating agency failed to provide public notice of the stacking scheme for counting multiple benefits received in a single month, and failed to respond to significant comments. *MRNY* Compl. ¶¶ 184–200; *State of New York* Compl. ¶¶ 123−25, 294. The Court recently denied defendants' motion to dismiss plaintiffs' procedural APA claims. *New York*, 2020 WL 4347264, at *6.

Because plaintiffs' claims challenge defendants' decision-making process in promulgating the Rule, the DPP does not apply, and defendants should promptly produce all documents withheld on the basis of the DPP. *See In re Subpoena Duces Tecum Served on Office of Comptroller of Currency*, 145 F.3d 1422, 1424 (D.C. Cir. 1998) ("If the plaintiff's cause of action is directed at the government's intent . . . it makes no sense to permit the government to use the [deliberative process] privilege as a shield.").

III.   <u>The partial privilege logs do not contain sufficient information to determine whether the attorney-client privilege is properly asserted</u>.

In civil suits between private litigants and government agencies, "a party invoking the attorney-client privilege must show (1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." *New York* v. *Wolf*, 20-cv-1127, 20-cv-1142, 2020 WL 3073294, at *2 (S.D.N.Y. June 10, 2020) (citation and quotation marks omitted). Confidential communications with government counsel are not protected by the ACP unless the "predominant purpose" of the communication is to render or solicit legal advice. *In re County of Erie*, 473 F.3d 413, 420 (2d Cir. 2007). The privilege "ought to be strictly confined within the narrowest

---

[2] Inadmissibility on Public Charge Grounds, 84 Fed. Reg. 41,292 (Aug. 14, 2019).

4

possible limits consistent with the logic of its principle." *United States* v. *Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 119 F.3d 210, 214 (2d Cir. 1997) (quoting *In re Horowitz*, 482 F.2d 72, 81 (2d Cir. 1973)). The burden is on the party asserting attorney-client privilege to establish that the privilege applies to each document withheld on that basis. *See Davis*, 2012 WL 612794, at *11.

As with documents withheld on the basis of the DPP, the partial privilege logs do not provide sufficient information for plaintiffs or the Court to determine whether documents have been appropriately withheld under the ACP. Several documents withheld on the basis of the ACP do not explicitly identify any attorneys in the "To," "From," or "CC" fields, do not explain what role, if any, attorneys played in disseminating the withheld document, and do not state (even in conclusory terms) that the withheld document was made for the purpose of obtaining or providing legal advice. *E.g.*, AR_380290; AR_380291; AR_280391.[3] Additionally, although several entries indicate that withheld documents were sent to or from "agency counsel" or the "DHS Office of General Counsel," they cannot satisfy defendants' burden of showing that the ACP applies because they do not indicate that the document or communication was sent to obtain or provide legal advice. *E.g.*, AR_380291; AR_380392. Some entries clearly indicate that the withheld document *did not* concern legal advice. *E.g.*, AR_380411 (document withheld on ACP grounds described as "[p]redecisional deliberative email chain between DHS/USCIS counsel and HHS discussing benefits program to be included in the final rule, so that DHS could respond to public comments on the proposed rule"); AR_380444 (document withheld on ACP grounds described as "[d]eliberative, pre-decisional draft insert for notice of proposed rulemaking, prepared by counsel"). Documents and correspondence are not protected by the ACP simply because they were prepared by or sent to a government attorney. *See County of Erie*, 473 F.3d at 420; *American Civil Liberties Union* v. *Dep't of Defense*, 15-cv-9317, 2017 WL 4326524, at *9 (S.D.N.Y. Sept. 27, 2017) ("Even accepting that a lawyer authored this cable, the contents of the cable indicates that the lawyer gave policy advice, which is not protected by the attorney-client privilege.").

IV.     Personal identifying information can be redacted.

The partial privilege logs indicate that 116 documents have been withheld to protect the "personal privacy" of government employees, including their phone numbers and email addresses. This information can simply be redacted and should not prevent production of the underlying documents.

\*     \*     \*

Plaintiffs request that defendants promptly produce all documents withheld on the basis of the DPP by September 8, 2020. Plaintiffs also request that defendants supplement the partial privilege logs by September 8, 2020 with the information necessary for plaintiffs and the Court to determine whether any documents identified by the deficient entries enumerated in Appendix A were properly withheld. If defendants fail to do so, plaintiffs intend to raise these issues with the Court by requesting a pre-motion discovery conference pursuant to Local Rule

---

[3] To the extent any individuals identified in the partial privilege logs are attorneys, the privilege log should clearly indicate who those individuals are.

37.2.  Plaintiffs also request that defendants provide an estimate of when they expect to complete their privilege review and rolling privilege log production.

Respectfully,

By: */s/ Daniel S. Sinnreich*

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Andrew J. Ehrlich
Jonathan H. Hurwitz
Elana R. Beale
Robert J. O'Loughlin
Daniel S. Sinnreich
Amy K. Bowles
Leah J. Park

1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000
aehrlich@paulweiss.com
jhurwitz@paulweiss.com
ebeale@paulweiss.com
roloughlin@paulweiss.com
dsinnreich@paulweiss.com
abowles@paulweiss.com
lpark@paulweiss.com

**CENTER FOR CONSTITUTIONAL RIGHTS**
Ghita Schwarz
Brittany Thomas
Baher Azmy

666 Broadway
7th Floor
New York, New York 10012
(212) 614-6445
gschwarz@ccrjustice.org
bthomas@ccrjustice.org
bazmy@ccrjustice.org

**THE LEGAL AID SOCIETY**
Susan E. Welber, Staff Attorney, Law Reform Unit

6

Kathleen Kelleher, Staff Attorney, Law Reform Unit
Susan Cameron, Supervising Attorney, Law Reform Unit
Hasan Shafiqullah, Attorney-in-Charge, Immigration Law Unit

199 Water Street, 3rd Floor
New York, New York 10038
(212) 577-3320
sewelber@legal-aid.org
kkelleher@legal-aid.org
scameron@legal-aid.org
hhshafiqullah@legal-aid.org

*Attorneys for Plaintiffs Make the Road New York, African Services Committee, Asian American Federation, Catholic Charities Community Services (Archdiocese of New York), and Catholic Legal Immigration Network, Inc.*

**LETITIA JAMES**
*Attorney General of the State of New York*

By: */s/ Ming-Qi Chu*
Ming-Qi Chu
   *Section Chief, Labor Bureau*
Matthew Colangelo
   *Chief Counsel for Federal Initiatives*
Elena Goldstein
   *Deputy Bureau Chief, Civil Rights*
Amanda Meyer, *Assistant Attorney General*
Abigail Rosner, *Assistant Attorney General*
Office of the New York State Attorney General
New York, New York 10005
Phone: (212) 416-8689
Ming-qi.chu@ag.ny.gov

*Attorneys for the States of New York, Connecticut, and Vermont and the City of New York*