# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK, CITY OF NEW YORK, STATE OF CONNECTICUT, and STATE OF VERMONT,<br><br>     Plaintiffs,<br><br>  v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY; CHAD F. WOLF, *in his official capacity as Acting Secretary of the United States Department of Homeland Security*; UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES; KENNETH T. CUCCINELLI II, *in his official capacity as Senior Official Performing the Duties of Director of the United States Citizenship and Immigration Services and of the Deputy Secretary of United States Department of Homeland Security*; and UNITED STATES OF AMERICA,<br><br>     Defendants. | **CIVIL ACTION NO. 19 Civ. 07777 (GBD)** |
| MAKE THE ROAD NEW YORK, AFRICAN SERVICES COMMITTEE, ASIAN AMERICAN FEDERATION, CATHOLIC CHARITIES COMMUNITY SERVICES, and CATHOLIC LEGAL IMMIGRATION NETWORK, INC.,<br><br>     Plaintiffs,<br><br>  v.<br><br>KEN CUCCINELLI, *in his purported official capacity as Senior Official Performing the Duties of the Director, United States Citizenship and Immigration Services*; UNITED STATES CITIZENSHIP & IMMIGRATION SERVICES; CHAD F. WOLF, *in his purported official capacity as Acting Secretary of Homeland Security*; and UNITED STATES DEPARTMENT OF HOMELAND SECURITY,<br><br>     Defendants. | **CIVIL ACTION NO. 19 Civ. 07993 (GBD)** |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND ............................................................................................................... 3

   A.  The FVRA and the HSA establish a framework for the order of succession for Senate-confirmed roles at the Department of Homeland Security.......................................... 3

   B.  The succession order in Executive Order 13753 governs for vacancies due to the Secretary of Homeland Security's resignation, death, or inability to perform the functions of the office.  5

   C.  McAleenan's performance of the Secretary's functions has no force or effect because he assumed the position in violation of Executive Order 13753. .................................... 8

   D.  Congress and courts have questioned the legality of McAleenan's appointment. ............. 9

   E.  Defendants unsuccessfully attempt to cure McAleenan's improper issuance of the Rule. 12

ARGUMENT .................................................................................................................. 13

   A.  Legal Standards......................................................................................................... 13

   B.  McAleenan's exercise of the Secretary's authority is void under the FVRA and the APA. . ................................................................................................................................. 14

      1.  Nielsen did not confer authority on McAleenan to serve in the event of her resignation.. ............................................................................................................................ 14

      2.  McAleenan did not have authority to promulgate the Public Charge Rule. .................. 15

      3.  There is no merit to DHS's arguments that McAleenan properly became Acting Secretary. ....................................................................................................................... 20

         a.  The April Memorandum supports Plaintiffs' interpretation of the succession order. 21

         b.  Nielsen's invocation of her authority under 113(g) of the HSA does not change the result.................................................................................................................... 22

         c.  The April Delegation is binding. ........................................................................ 24

   C.  McAleenan's unlawful issuance of the Rule cannot be ratified by Wolf. ........................ 25

      1.  McAleenan's promulgation of the Rule may not be ratified......................................... 25

      2.  An Acting Secretary may not amend the order of succession....................................... 26

      3.  Gaynor never lawfully assumed the position of Acting Secretary................................ 28

CONCLUSION............................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Air India v. Brien,*
    No. 00-cv-1707, 2002 WL 34923740 (E.D.N.Y. Feb. 14, 2002) ...........................................20

*Bowen v. Mich. Acad. of Family Physicians,*
    476 U.S. 667 (1986)...........................................................................................................13

*Bullock v. United States Bureau of Land Mgmt.,*
    No. 4:20-cv-00062-BMM, 2020 WL 5746836 (D. Mont. Sept. 25, 2020) ...........................27

*Casa de Maryland, Inc. v. Wolf,*
    No. 8:20-cv-02118 (PX), 2020 WL 5500165 (D. Md. Sept. 11, 2020).......................... passim

*Casa de Maryland, Inc. v. Wolf,*
    No. 8:20-cv-2118 (D. Md. Aug. 3, 2020) .............................................................................24

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)...........................................................................................................13

*Cook v. New York State Div. of Parole,*
    321 F.3d 274 (2d Cir. 2003)................................................................................................23

*Don't Shoot Portland v. Wolf,*
    No. 1:20-cv-2040 (D.D.C. July 27, 2020) ...........................................................................10

*Freytag v. Comm'r of Internal Revenue,*
    501 U.S. 868 (1991).............................................................................................................3

*Guertin v. United States,*
    743 F.3d 382 (2d Cir. 2014)................................................................................................14

*Immigrant Legal Res. Ctr. v. Wolf,*
    No. 20-cv-05883 (JSW), 2020 WL 5798269 (N.D. Cal. Sept. 29, 2020).......................passim

*L.M.-M. v. Cuccinelli,*
    442 F. Supp. 3d 1 (D.D.C. 2020) ..........................................................................4, 18-19, 27

*La Clinica De La Raza et al v. Trump et al,*
    No. 4:19-cv-04717 (May 20, 2020) .....................................................................................10

*La Clinica De La Raza et al v. Trump et al,*
    No. 4:19-cv-04780 (Sept. 24, 2020) ....................................................................................22

*La Clinica De La Raza v. Trump*,
    No. 19-cv-04980 (PJH), 2020 WL 4569462 (N.D. Cal. Aug. 7, 2020) ......................... passim

*Maracich v. Spears*,
    570 U.S. 48 (2013) ..................................................................................................27

*NLRB v. SW Gen., Inc.*,
    137 S. Ct. 929 (2017) ................................................................................................3

*Nw. Immigrant Rights Project v. USCIS*,
    No. 19-cv-3283 (RDM), 2020 WL 5995206 (D.D.C. Oct. 8, 2020) .............................. passim

*R.I. Dep't of Envtl. Mgmt. v. United States*,
    304 F.3d 31 (1st Cir. 2002) ......................................................................................13

*RadLax Gateway Hotel, LLC v. Amalgamated Bank*,
    566 U.S. 639 (2012) ................................................................................................23

*State of New York et al v. Donald Trump et al.*,
    No. 1:17-cv-05228 (E.D.N.Y. Aug. 28, 2020) ........................................... 10, 20-21

*SW Gen., Inc. v. NLRB*,
    796 F.3d 67 (D.C. Cir. 2015) ..................................................................................15

*United States v. Harris*,
    838 F.3d 98 (2d Cir. 2016) ......................................................................................23

*United States v. Mingo*,
    340 F.3d 112 (2d Cir. 2003) ....................................................................................21

**CONSTITUTION**

U.S. Const.
    art. II, § 2, cl. 2 ......................................................................................................28

**FEDERAL STATUTES**

5 U.S.C.
    § 706(2) ..............................................................................................................13, 19
    § 3345 .................................................................................................................. passim
    § 3346 ...............................................................................................................4, 29, 30
    § 3347 .................................................................................................................4, 27
    § 3348 .................................................................................................................. passim
    § 3349 .................................................................................................................29

6 U.S.C.
    § 112 ........................................................................................................... 18, 22-23
    § 113 .................................................................................................................. passim

§ 652.............................................................................................................................6

8 U.S.C.
  § 1103...............................................................................................................8, 13, 17

28 U.S.C.
  § 1331.......................................................................................................................13
  § 2201.......................................................................................................................13

**FEDERAL REGULATIONS**

*Amending the Order of Succession in the Department of Homeland Security*,
  Exec. Order No. 13753, 81 Fed. Reg. 90,667 (Dec. 9, 2016)..................................15

*Inadmissibility on Public Charge Grounds*, 84 Fed. Reg. 41,292 (Aug. 14, 2019) ......................1

*Ratification of Actions Taken by the Acting Secretary of Homeland Security*, 85
  Fed. Reg. 59,651 (Sept. 23, 2020) ...........................................................................12

*Ratification of Department Actions*, 85 Fed. Reg. 65,653 (Oct. 16, 2020)............................12, 25

## PRELIMINARY STATEMENT

Plaintiffs challenge a U.S. Department of Homeland Security ("DHS") regulation that dramatically altered the criteria for admissibility into the United States under the Immigration and Nationality Act ("INA"). The Public Charge Rule upends the process for determining who constitutes a "public charge" excludable from entry and permanent residency in this country. On August 14, 2019, DHS published the Rule in the Federal Register under the signature of then-Acting Secretary Kevin McAleenan ("McAleenan"), acting pursuant to the Secretary's authority under the INA. *Inadmissibility on Public Charge Grounds*, 84 Fed. Reg. 41,292, 41,295, 41,508 (Aug. 14, 2019).

DHS's changes to the public charge analysis irrationally penalize working-class immigrants by expanding the meaning of the term public charge to include any individual who is likely at any point in his or her lifetime to use even a modest amount of supplemental benefits. Not only do these changes disproportionately exclude immigrants from predominately non-white countries and immigrants with disabilities, they triggered a mass chilling in benefits enrollment across the country. This Court has twice held, and the Second Circuit has agreed, that Plaintiffs are likely to succeed on their claims that the Rule is both contrary to law and arbitrary and capricious under the Administrative Procedure Act ("APA"). This Court has further held that the Rule likely violates the equal protection guarantee of the Fifth Amendment.

The Court should likewise invalidate DHS's attempt to effectuate a radical shift in national immigration policy through the actions of an unlawfully-appointed Acting Secretary. Plaintiffs move for partial summary judgment on the basis that McAleenan promulgated the Rule while serving in violation of the Federal Vacancies Reform Act ("FVRA") and the Homeland Security Act ("HSA"). As the Government Accountability Office ("GAO") recently found,

1

McAleenan was ineligible to serve in the Acting Secretary role under either the FVRA or the

HSA. Following the GAO report, multiple district courts have enjoined DHS rulemakings issued

after the resignation in April 2019 of the last Senate-confirmed Secretary of Homeland Security,

Kirstjen Nielsen ("Nielson"). *Casa de Maryland, Inc. v. Wolf*, No. 8:20-cv-02118 (PX), 2020

WL 5500165, at *23 (D. Md. Sept. 11, 2020) (enjoining rule that overhauls the criteria for

issuing work authorization to asylum applicants); *Immigrant Legal Res. Ctr. v. Wolf*, No. 20-cv-

05883 (JSW), 2020 WL 5798269, at *22 (N.D. Cal. Sept. 29, 2020) (enjoining rule that increases

immigration-related fees that United States Customs and Immigration Services collects); *Nw.

Immigrant Rights Project v. USCIS* ("*Northwest*"), No. 19-cv-3283 (RDM), 2020 WL 5995206,

at *17-24 (D.D.C. Oct. 8, 2020) (same).

      In light of this overwhelming authority finding that McAleenan assumed his role

improperly, DHS has unsuccessfully attempted to remedy the defects of the rulemaking process.

In September 2020, DHS purportedly re-appointed Chad Wolf ("Wolf") as Acting Secretary—

through the supposed authority of the most senior Senate-confirmed officer in the agency, Peter

Gaynor ("Gaynor")—and Wolf attempted to ratify McAleenan's actions.

      Yet the FVRA prohibits the *ex post facto* ratification of any functions of the Secretary

that an improperly-serving acting official performs. *See* 5 U.S.C. § 3348(d)(1). To ensure that the

President obtains the advice and consent of the Senate in appointing senior Executive officials,

and to preserve the oversight that Senate confirmation entails, the statute sets strict limits on who

may discharge the duties of a vacant office and for how long. Because McAleenan's appointment

contravened this framework, the Court should find that the duties he performed as Acting

Secretary have no force or effect and may not be ratified. In addition to granting relief under the

FVRA, the Court should also, under the APA, vacate McAleenan's actions and Wolf's attempted

ratification as ultra vires.

## BACKGROUND

### A. The FVRA and the HSA establish a framework for the order of succession for Senate-confirmed roles at the Department of Homeland Security.

"Article II of the Constitution requires that the President obtain 'the Advice and Consent

of the Senate' before appointing 'Officers of the United States.'" *NLRB v. SW Gen.*, *Inc.*, 137 S.

Ct. 929, 934 (2017) (quoting U.S. Const. art. II, § 2, cl. 2). "The Senate's advice and consent

power is a crucial structural safeguard [] of the constitutional scheme," *id.* at 935, given that

"[t]he manipulation of official appointments had long been one of the American revolutionary

generation's greatest grievances against executive power." *Freytag v. Comm'r of Internal*

*Revenue*, 501 U.S. 868, 883 (1991) (quotation marks omitted). "Since President Washington's

first term, Congress has given the President limited authority to appoint acting officials to

temporarily perform the functions of a vacant . . . office without first obtaining Senate approval."

*SW Gen.*, 137 S. Ct. at 935. The FVRA establishes a default framework for authorizing acting

officials to fill Senate-confirmed roles, with three options for who may serve as an acting

official:

1. Without affirmative action from the President, "the first assistant to the office of such officer [who has died, resigned, or is otherwise unable to perform the functions and duties of the office] shall perform the functions and duties of the office temporarily in an acting capacity";

2. "[T]he President (and only the President) may direct a person who serves in an office for which appointment is required to be made by the President, by and with the advice and consent of the Senate, to perform the functions and duties of the vacant office"; and

3. "[T]he President (and only the President) may direct an officer or employee of" the agency experiencing the vacancy "to perform the functions and duties of the vacant office," but only if that individual served in a senior position in that agency

for at least 90 days "during the 365-day period preceding" the occurrence of the vacancy.

5 U.S.C. §§ 3345(a)(1), (2), (3); *see also L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1, 24 (D.D.C. 2020). The FVRA further provides that a position may be occupied by an acting official only for a maximum of 210 days. *See* 5 U.S.C. § 3346. Section 3347 of the FVRA explains that this framework is the "exclusive means" for authorizing acting officials unless a specific statute designates one or authorizes "the President, a court, or the head of an Executive department" to designate one. 5 U.S.C. § 3347.

DHS has such a statute: the HSA establishes an order of succession for the Acting Secretary, and provides an alternative to the FVRA's default options for who may serve as Acting Secretary of Homeland Security. 6 U.S.C. § 113(g). First in line under the HSA is the Deputy Secretary, and then the Under Secretary for Management. 6 U.S.C. §§ 113(a)(1)(A), 113(g)(1). After these two offices, the order of succession may be set by the Secretary of Homeland Security. *Id.* at § 113(g)(2).[1]

In recognition of the constitutional importance of the Senate's advice-and-consent role in appointing "Officers of the United States," the FVRA makes clear that only actions taken by lawfully-serving officials have the effect of law. Section 3348(d) of the FVRA (the "Enforcement Provision") provides that any functions or duties of a vacant office performed by unlawfully serving acting officials "shall have no force or effect" and "may not be ratified" after the fact. 5 U.S.C. §§ 3348 (d)(1), (2). The Enforcement Provision applies regardless of whether an appointment was made pursuant to the FVRA or an agency-specific statute. *Id.* at § 3348(d)(1) (the provision applies to applies to "any person who is not acting under section 3345,

---

[1] For reference, a diagram of the relationship among the FVRA, the HSA, and the Secretary's regulatory authority to set the order of succession is attached as Exhibit 19 to the Decl. of Ming-Qi Chu (hereinafter "Ex.___").

4

3346, or 3347). Put another way, the HSA may displace the FVRA's order of succession for

Acting Secretary, but it does not supersede the Enforcement Provision; the FVRA determines the

consequences of an official's serving as Acting Secretary in violation of the HSA.

**B.  The succession order in Executive Order 13753 governs for vacancies due to the Secretary of Homeland Security's resignation, death, or inability to perform the functions of the office.**

Secretary Nielsen was the most recent Senate-confirmed Secretary of Homeland Security.

Throughout her tenure, she adopted and revised four separate times the existing order of

succession for Acting Secretary and other sub-secretary positions—Delegation 00106[2]—that had

been issued by then-Secretary Jeh Johnson in 2016.[3]

In her revision dated February 15, 2019, Nielsen preserved two paths for the accession of

an Acting Secretary that had been in place since 2016: (1) the Secretary's death, resignation, or

inability to perform the functions of the office (Section II.A); and (2) the Secretary's

unavailability to act during a disaster or catastrophic emergency (Section II.B). Ex. 2 (Dep't of

Homeland Security, *DHS Orders of Succession and Delegations of Authorities for Named*

*Positions*, Delegation No. 00106, Revision No. 08.4 (Feb. 15, 2019) ("February Delegation") at

1; Ex. 3 (U.S. Gov't Accountability Off., B-331650, *Department of Homeland Security—*

*Legality of Service of Acting Secretary of Homeland Security and Service of Senior Official*

---

[2] The term "Delegation" refers to the Secretary's delegation of her authority to perform her functions and duties should the Secretary leave her position or otherwise be unavailable to act for the reasons outlined in the Delegation.

[3] In May 2018, she revised Annex G to Delegation 00106 (Revision 08.2 to Delegation 00106), which sets the succession order for the Counting Weapons of Mass Destruction Office. *See* Ex. 1 (Dep't of Homeland Security, *DHS Orders of Succession and Delegations of Authorities for Named Positions*, Delegation No. 00106, Revision No. 08.5 (Apr. 10, 2019)) ("April Delegation") at 4 (noting Revision 08.3's issue date at May 21, 2018). In October 2018, Nielsen revised Annex Z to Delegation 00106, which sets the succession order for the Transportation Security Administration (Revision 08.3 to Delegation 00106). *Id.* (noting Revision 08.3's issue date as Oct. 23, 2018). In February 2019, she revised Annex U to Delegation 00106, which sets the succession order for the Office of Strategy, Policy, and Plans (Revision 08.4 to Delegation 00106). *Id.* (noting Revision 08.4's issue date as Feb. 15, 2019). And, lastly, in April 2019, Nielsen amended Annex A to Delegation 00106. *Id.* (noting Revision 08.5's issue date as Apr. 10, 2019)

*Performing the Duties of Deputy Secretary of Homeland Security* (Aug. 14, 2020)) (the "GAO Report") at 5; Pls.' 56.1 Stmt. ¶¶ 6-7. Each ground sets forth the order of succession that would govern under those circumstances. In the case of the Secretary's death, resignation, or inability to perform the functions of office, Section II.A specified that the order of succession in Executive Order 13753—issued by President Obama in 2016—would govern. Ex. 2 (February Delegation) at 1; Ex. 4 (*Amending the Order of Succession in the Department of Homeland Security*, Exec. Order No. 13753, 81 Fed. Reg. 90,667 (Dec. 9, 2016)) ("Executive Order 13753"). If the Secretary were unavailable to act during a disaster or catastrophic emergency, Section II.B specified that the order of succession would be governed by Annex A to the February Delegation. Ex. 2 (February Delegation) at 1; Pls.' 56.1 Stmt. ¶¶ 6-7.

At the time of the February Delegation, the orders of succession found in Executive Order 13753 and Annex A were identical; the first four positions in the order of succession for both were as follows: (1) Deputy Secretary, (2) Under Secretary for Management, (3) Administrator of the Federal Emergency Management Agency ("FEMA"), and (4) Director of Cybersecurity and Infrastructure Security Agency ("CISA")[4]. Pls.' 56.1 Stmt. ¶ 8; Ex. 2 (February Delegation) at 1, 5. The February Delegation further provided that officials who were only acting in the listed positions (rather than confirmed to those positions) were ineligible to serve as Acting Secretary of Homeland Security, such that the position of Acting Secretary would pass to the next Senate-confirmed official. Pls.' 56.1 Stmt. ¶ 10; Ex. 2 (February Delegation) at 2.

---

[4] When Executive Order 13753 was issued in 2016, the Director of CISA was called the Under Secretary for National Protection and Programs; the position was renamed in 2018. Pub. L. No. 115-278, § 2(a), 132 Stat. 4168, 4169 (Nov. 16, 2018), *codified at* 6 U.S.C. § 652(a), (b). Pls.' 56.1 Stmt. ¶ 9.

Nielsen originally announced her resignation from the Secretary position effective April 7, 2019, but remained in office until April 10, 2019. Pls.' 56.1 Stmt. ¶¶ 11, 13. Under the order of succession, in view of the vacancy in the Deputy Secretary position, the Acting Secretary position would have been assumed by Claire Grady, the Under Secretary for Management. *See* 6 U.S.C. §§ 113(a)(1)(A), 113(g)(1). Grady, however, resigned on April 9, 2019. Pls.' 56.1 Stmt. ¶ 12.

Immediately before leaving office on April 10, 2019, Nielsen made a partial amendment to DHS's order of succession. *See* Ex. 1 (April Delegation). The April Delegation confirms that Executive Order 13753 continued to govern the order of succession in the event of a vacancy created by the Secretary's death, resignation or inability to perform the functions of the office. Pls.' 56.1 Stmt. ¶ 14; Ex. 1 (April Delegation) at 1. But the Delegation did amend Annex A, which set forth the order of succession for when the Secretary is unavailable to act during a disaster or catastrophic emergency; the new order of succession was as follows: (1) Deputy Secretary; (2) Under Secretary for Management; (3) Commissioner of Customs and Border Protection ("CBP"), and (4) Administrator of FEMA. Ex. 1 (April Delegation) at 4, 5. The April 9, 2019 memorandum explaining the changes to the succession order (the "April Memorandum") confirmed that Nielsen's changes to the order of succession were limited to Annex A. The April Memorandum stated, "By the authority vested in me as Secretary of Homeland Security, including the Homeland Security Act of 2002, 6 U.S.C. § 113(g)(2), I hereby designate the order of succession for the Secretary of Homeland Security as follows: Annex A of DHS Orders of Succession and Delegations of Authorities for Named Positions, Delegation No. 00106, is hereby amended by striking the text of such Annex in its entirety and inserting the following in lieu thereof." Ex. 16 (Memorandum for the Secretary from John M. Mitnick, General Counsel, U.S.

Dep't of Homeland Security (Apr. 9, 2019)) ("April Memorandum") at 2. The amendment to the

succession order in Annex A followed. *Id.*

### C. McAleenan's performance of the Secretary's functions has no force or effect because he assumed the position in violation of Executive Order 13753.

Because there was no Deputy Secretary or Under Secretary for Management at the time

of Nielsen's April 10, 2019 departure, CBP Commissioner Kevin McAleenan assumed the role

of Acting Secretary, supposedly pursuant to Annex A. Pls.' 56.1 Stmt. ¶ 17. Yet Executive Order

13753 rather than Annex A governed the relevant order of succession because the vacancy in the

position of Secretary was created by Nielsen's resignation, not through the Secretary's

unavailability during a disaster or catastrophic emergency. Under that Executive Order, because

the first three positions in the succession order were vacant, Christopher Krebs ("Krebs"),

Director of CISA, not McAleenan, should have assumed the position. *See* Pls.' 56.1 Stmt. ¶ 27;

Ex. 3 (GAO Report) at 8 n.11.

On August 14, 2019, DHS published the Rule in the Federal Register. 84 Fed. Reg.

41,292. The Rule was issued pursued to McAleenan's purported authority as Acting Secretary,

*see* 84 Fed. Reg. at 41,295-96, and under his signature, *id.* 41,508. The Rule invokes the

Secretary's statutorily established authority under 8 U.S.C. § 1103, which "charge[s] the

Secretary with the administration and enforcement of the immigration and naturalization laws of

the United States." *Id.* at 41,295.

In addition to attempting to promulgate the Rule, McAleenan also attempted to make

additional changes to DHS's order of succession. On November 8, 2019, McAleenan, apparently

recognizing that the order of succession set forth in Annex A did not apply to the circumstances

in which he purportedly assumed the Acting Secretary role, substituted Annex A for Executive

Order 13753 to govern the order of succession when the Secretary dies, resigns, or is unable to

perform the functions of office. Pls.' 56.1 Stmt. ¶ 18; Ex. 9 (Dep't of Homeland Security, *DHS Orders of Succession and Delegations of Authorities for Named Positions*, Delegation No. 00106, Revision No. 08.6 (Nov. 14, 2019)) (the "November Delegation") at 1. McAleenan then directed the order of succession in Annex A to be: (1) Deputy Secretary, (2) Under Secretary for Management, (3) Commissioner of CBP, and (4) Under Secretary for Strategy, Policy, and Plans. Pls.' 56.1 Stmt. ¶ 19; Ex. 8 (Amendment to the Order of Succession for the Secretary of Homeland Security (Nov. 8, 2019)). Unlike the April Delegation, therefore, the November Delegation provided that Annex A would govern in all circumstances.[5]

Five days later, on November 13, 2019, McAleenan resigned as both Acting Secretary and Commissioner of CBP. Pls.' 56.1 Stmt. ¶ 20. Because the first three positions in the line of succession in Annex A were vacant, the Senate-confirmed Under Secretary for Strategy, Policy, and Plans—Wolf—purported to assume the role of Acting Secretary. Pls.' 56.1 Stmt. ¶ 20. Because McAleenan was not serving lawfully as Acting Secretary, however, under the FVRA's Enforcement Provision, the duties of the vacant office that he performed, including the issuance of the Rule and the November Delegation purporting change to the order of succession, had no force or effect.

## D. Congress and courts have questioned the legality of McAleenan's appointment.

On November 15, 2019, the Chairman of the House of Representatives Committee on Homeland Security and the Acting Chairwoman of the House Committee on Oversight and Reform wrote a letter to GAO to express concerns that former Acting Secretary McAleenan did not lawfully assume the Acting Secretary position, and so McAleenan had no authority to make the changes to DHS's orders of succession that purported to install Wolf as the new Acting

---

[5] For reference, a chart comparing the February, April, and November Delegations is attached as Ex. 20.

Secretary and Ken Cuccinelli as the Senior Official Performing the Duties of Deputy Secretary. Pls.' 56.1 Stmt. ¶¶ 21-22.

On August 14, 2020, GAO issued a report responding to the Chairman and Acting Chairwoman's request. Based on the amendments Secretary Nielsen made to the order of succession in April 2019, GAO concluded that the Senate-confirmed CBP Commissioner, McAleenan, "would have been the appropriate official" to serve as Acting Secretary only if Secretary Nielsen had been "unavailable to act during a disaster or catastrophic emergency." Ex. 3 (GAO Report) at 7 (citing Annex A to the April Delegation); Pls.' 56.1 Stmt. ¶ 25.

GAO concluded that because Secretary Nielsen had instead resigned, Executive Order 13753 controlled under "the plain language of the April Delegation." Ex. 3 (GAO Report) at 7; Pls.' 56.1 Stmt. ¶ 26. GAO explained that after Nielsen's resignation, then-Director of CISA, Krebs, should have assumed the position of Acting Secretary because he was the first Senate-confirmed official in the Executive Order 13753 order of succession that governed following a Secretary's resignation. Ex. 3 (GAO Report) at 8 n.11; Pls.' 56.1 Stmt. ¶ 27. GAO noted that although "McAleenan assumed the title of Acting Secretary upon the resignation of Secretary Nielsen," "the express terms of the existing [succession] designation required [Krebs] to assume that title" and so "McAleenan did not have authority to amend the Secretary's existing designation." Ex. 3 (GAO Report) at 11; Pls.' 56.1 Stmt. ¶ 28. GAO thus concluded that Wolf and Cuccinelli were improperly serving in their acting roles because they assumed those acting roles as a result of "[the] invalid order of succession" established by McAleenan in the November Delegation. Ex. 3 (GAO Report) at 11; Pls.' 56.1 Stmt. ¶ 29.

10

Multiple lawsuits have challenged the legality of McAleenan's and, in turn, Wolf's ascension to the position of Acting Secretary.[6] At least two district courts have enjoined DHS rulemakings based on findings that plaintiffs were likely to succeed on their claims that both McAleenan and Wolf were serving unlawfully in violation of the succession order set forth in Executive Order 13753, and thus, in the HSA. *See Casa de Maryland*, 2020 WL 5500165, at *23; *Immigrant Legal Res. Ctr.*, 2020 WL 5798269, at *8 ("The Court finds the reasoning set forth in *La Clinica de la Raza* and *Casa de Maryland* on the succession issue highly persuasive, and like the *Casa de Maryland* court concludes that Plaintiffs are likely to show that the appointments were not lawful and, thus, that the Final Rule is likely invalid under the APA.").[7] And at least one other decision has invalidated DHS action based on a finding that an Acting Secretary lacks authority to amend the order of succession for the Secretary position. *See Northwest*, 2020 WL 5995206, at *17-24 (enjoining rule promulgated by Wolf on grounds that McAleenan, as Acting Secretary, could not validly change the order of succession to install Wolf as Acting Secretary).

---

[6] *See, e.g.*, Amended Complaint, *La Clinica De La Raza et al v. Trump et al*, No. 4:19-cv-04717 (May 20, 2020), ECF No. 161 (challenging Public Charge Rule); Complaint, *Don't Shoot Portland v. Wolf*, No. 1:20-cv-2040 (D.D.C. July 27, 2020), ECF No. 1 (challenging conduct of DHS officers in protests in Portland, Oregon); Complaint, *Casa de Maryland, Inc. v. Wolf*, No. 8:20-cv-2118 (D. Md. July 21, 2020), ECF No. 1 (challenging rule changing work authorization requirements for asylum applicants); Complaint, *Immigrant Resource Law Center v. Wolf*, No. 4:20-cv-05883 (N.D. Cal. Aug. 20, 2020), ECF No. 1 (rule challenging increase in USCIS fees); Complaint, *Cent. Am. Res. Ctr. v. Cuccinelli*, No. 20-cv-2363 (D.D.C. Aug. 26, 2020), ECF No. 1 (alleging that Cuccinelli's designation as Principal Deputy Director of U.S. Citizenship and Immigration Services violates FVRA, HRA, and DHS's succession orders); Second Amended Complaint, *State of New York et al v. Donald Trump et al.*, No. 1:17-cv-05228 (E.D.N.Y. Aug. 28, 2020), ECF No. 271 (challenging agency's changes to Deferred Actions for Childhood arrivals program).

[7] The *La Clinica* court found that McAleenan's appointment violated the order of succession in Executive Order 13753 but granted DHS's motion to dismiss on the assumption that the President had exercised his general authority under the FVRA to revise the succession order. *La Clinica De La Raza v. Trump*, No. 19-cv-04980 (PJH), 2020 WL 4569462, at *46 (N.D. Cal. Aug. 7, 2020). DHS has since admitted, however, that the President has never exercised this authority under the FVRA to depart from the order of succession set by Nielsen in April 2019. *See* Ex. 18. And the *LaClinica* court has granted leave to reconsider plaintiffs' FVRA claims. *Id.*

11

**E.  Defendants unsuccessfully attempt to cure McAleenan's improper issuance of the Rule.**

On September 10, 2020, less than a month after the GAO report was issued—and nearly ten months after Wolf was improperly named Acting Secretary— President Trump submitted Wolf's nomination as Secretary of Homeland Security to the Senate. On the same day, Gaynor, FEMA Administrator, currently the most senior successor under Executive Order 13753, signed an order that purported to change the order of succession for Acting Secretary so that Wolf could assume the Acting Secretary role. Gaynor stated that although he disagreed with the conclusions of GAO and multiple district courts that Wolf was serving improperly, he was issuing the order in an "abundance of caution," in exercise of "any authority vested in me as Acting Secretary of Homeland Security." Ex. 12 (Order Designating the Order of Succession for the Secretary of Homeland Security signed by Peter T. Gaynor (Sept. 10, 2020)) ("Gaynor Order"); Pls.' 56.1 Stmt. ¶ 33.

On September 17, 2020, Wolf released a "ratification memorandum" that attempted to ratify each of his acts since the day he took office. Pls.' 56.1 Stmt. ¶ 34; Ex. 11, *Ratification of Actions Taken by the Acting Secretary of Homeland Security*, 85 Fed. Reg. 59,651, 59,654 (Sept. 23, 2020) (the "September 17 Memorandum") at 3-4. The memorandum asserted that "under the authority of the FVRA, 5 U.S.C. § 3345(a)(2), when the President submitted my nomination, [G]aynor . . . would have become eligible to exercise the authority of the Secretary temporarily in an acting capacity." Ex. 11 at 3. On October 7, 2020, Wolf issued another ratification memorandum that purported to ratify any and all of McAleenan's acts during his tenure as Acting Secretary, including issuance of the Rule. Pls.' 56.1 Stmt. ¶ 37; Ex. 13 (*Ratification of Department Actions*, 85 Fed. Reg. 65,653 (Oct. 16, 2020) (the "October 7 Memorandum") at 3-4.

The October 7 Memorandum contained the same justification for Wolf's authority as his

September 17 Memorandum. Ex. 13 (October 7 Memorandum) at 2-3.

### ARGUMENT

McAleenan unlawfully assumed the position of Acting Secretary of Homeland Security

in violation of the FVRA and HSA. Under the plain terms of the FVRA, all of McAleenan's

exercises of the Secretary's authority—including McAleenan's issuance of the Rule—are

therefore invalid and may not be subsequently ratified. Plaintiffs accordingly seek partial

summary judgment on the Governmental Plaintiffs' Second and Seventh Claims for Relief, and

the Organizational Plaintiffs' Counts Five and Six. *See State of New York*, Am. Compl., ECF.

No. 223, ¶¶ 180-215; *Make the Road New York*, Am. Compl. ECF No. 251, ¶¶ 338–53. Plaintiffs

also seek a declaration that McAleenan's issuance of the Rule, and Wolf's subsequent

ratification, were void *ab initio*.

### A.  Legal Standards

Plaintiffs are entitled to summary judgment on their claims that the Rule violates the

FVRA, the HSA, and the APA because "there is no genuine dispute as to any material fact and

[Plaintiffs] are entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); s*ee Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 323 (1986).

The Declaratory Judgment Act provides Plaintiffs with a cause of action to obtain judicial

review of McAleenan's ultra vires issuance of the Rule in violation of the FVRA and the HSA.

28 U.S.C. § 2201. The Supreme Court has recognized that there is a "strong presumption that

Congress intends judicial review of administrative action." *Bowen v. Mich. Acad. of Family*

*Physicians*, 476 U.S. 667, 670 (1986). Thus, courts have long exercised federal question

jurisdiction, under the Declaratory Judgment Act, to review agency action that is ultra vires. *See,*

*e.g., R.I. Dep't of Envtl. Mgmt. v. United States*, 304 F.3d 31, 41-42 (1st Cir. 2002); 28 U.S.C. § 1331 (federal question jurisdiction).

The APA also mandates that the Court "shall" "hold unlawful and set aside agency action" that is contrary to law or in excess of the agency's statutory authority. 5 U.S.C. § 706(2)(A), (C). "In the usual case, when an agency violates its obligations under the APA, [the court] will vacate a judgment and remand to the agency to conduct further proceedings." *Guertin v. United States*, 743 F.3d 382, 388 (2d Cir. 2014).

Accordingly, Plaintiffs respectfully request that the Court issue a declaration that McAleenan's issuance of the Rule was void and cannot be ratified under the FVRA and vacate the Rule because it was promulgated in excess of statutory authority under the APA.

**B. McAleenan's exercise of the Secretary's authority is void under the FVRA and the APA.**

McAleenan's promulgation of the Rule is void because his appointment as Acting Secretary was unlawful under the FVRA and HSA. Upon Nielsen's resignation, the governing succession order in Executive Order 13753 provided that the Director of CISA, Krebs, was the next in line to serve as Acting Secretary. McAleenan thus did not have the authority to exercise the Secretary's statutory duty of issuing regulations.

**1. Nielsen did not confer authority on McAleenan to serve in the event of her resignation.**

Starting in May 2018, Nielsen revised Delegation 00106—which set forth, among other things, two separate succession orders for the Secretary position—four different times, treating the Delegation itself as authoritative.[8] After Nielsen's April 2019 amendment to Delegation 00106, the provision governing the succession order when the Secretary resigned (Section II.A)

---

[8] *See supra* n. 3.

remained the same as it had in all the previous versions of Delegation 00106: the Delegation

expressly stated that "[i]n case of the Secretary's death, *resignation*, or inability to perform

functions of the Office, the orderly succession of officials is governed by Executive Order

13753, amended on December 9, 2016." Ex. 1 (April Delegation) at 1 (emphasis added). Nielson

amended only Annex A to Delegation 00106, which applied only during the Secretary's

unavailability due to disaster and emergency. *See id.* at 1, 4, 5.

Because Nielsen resigned, the order of succession set forth in Executive Order 13753

controlled. *See La Clinica*, 2020 WL 4569462, at *13 ("[W]hen Secretary Nielsen resigned,"

Executive Order 13753 governed, "not the amended Annex A, which only applied when the

Secretary was unavailable due to disaster or catastrophic emergency."). And that order of

succession clearly provided that if the Deputy Secretary, Under Secretary for Management, and

FEMA Director positions were vacant, as they were at the time, the next in line to succeed would

be the Director of CISA. *See* Ex. 4 (Executive Order 13753). Thus Krebs, the Director of

CISA—and not McAleenan—was the lawful successor to Nielsen, as GAO and several courts

correctly found. Ex. 3 (GAO Report) at 8 n.11.

### 2. McAleenan did not have authority to promulgate the Public Charge Rule.

Because McAleenan was not lawfully serving as Acting Secretary, he did not have the

authority to promulgate the Rule. Under the FVRA, when an official without lawful authority

performs a "function or duty of a vacant office," it "shall have no force or effect." See 5 U.S.C.

§ 3348(d)(1); *SW Gen., Inc. v. NLRB*, 796 F.3d 67, 71 (D.C. Cir. 2015), aff'd, 137 S. Ct. 929

(2017) ("[T]he FVRA renders actions taken by persons serving in violation of the Act void ab

initio."). The FVRA defines "function or duty" as one that "is established by statute *and* is

required by statute to be performed by the applicable officer (and only that officer)" *or* "is

15

established by regulation *and* is required by such regulation to be performed by the applicable officer (and only that officer)." 5 U.S.C. § 3348(a)(2)(A), (B) (emphasis added).

McAleenan's attempt to dramatically alter national immigration policy through regulation is an attempt to exercise a "function or duty" of the Secretary. The Immigration and Nationality Act prescribes the powers and duties of the Secretary of Homeland Security and provides that the Secretary shall "establis[h] regulation as he or she deems necessary for carrying out his or her authority under the provisions of this chapter." 8 U.S.C. § 1103(a)(3). When he issued the Rule, McAleenan invoked this statutory authority under the INA, which "charge[s] the Secretary with the administration and enforcement of the immigration and naturalization laws of the United States." 84 Fed. Reg. at 41,295 (citing 8 U.S.C. § 1103(a)(3)); *see La Clinica*, 2020 WL 4569462, at *15 ("Pursuant to the Secretary's authority [under the INA], DHS issued both the NPRM and the [Public Charge] Rule."). McAleenan's unlawful exercise of the Secretary's statutory duty thus rendered the Rule's promulgation in August 2019 void at the outset. *See Casa de Maryland, Inc.*, 2020 WL 5500165, at *23 (plaintiffs are likely to succeed on arguments that challenged rulemaking was void because the rule was promulgated by an Acting Secretary serving unlawfully under the HSA and FVRA); *Immigrant Legal Res. Ctr.*, 2020 WL 5798269, at *9 (same).

While Defendants may rely upon on the decision in *Northwest* to argue that McAleenan was not performing a "function or duty" of the Secretary when he promulgated the challenged rulemaking, this argument cannot be sustained. The district court in that case correctly found that the Enforcement Provision generally voids the unlawful acts of an improperly designated official. *See infra* at 25-26. But the court erred in concluding that the then-Acting Secretary— purportedly Wolf—was not performing a "function or duty" of the Secretary when he

promulgated the challenged rulemaking, and that the FVRA therefore did not apply. 2020 WL 5995206, at *16-17. The *Northwest* court found that the Secretary of Homeland Security lawfully delegated rulemaking authority by regulation to the Deputy Secretary in 2003,[9] and it determined on that basis alone that Wolf's actions were not a "function or duty" exclusive to the office of the Secretary within the meaning of the Enforcement Provision. *Id.* at *16. In other words, having concluded that rulemaking was not a function or duty required by regulation to be performed by the Secretary under Section 3348(a)(2)(B), the court ended its inquiry; the court did not separately assess whether it was a duty established by statute under Section 3348(a)(2)(A).[10]

But this analysis disregards the text of the FVRA and misunderstands the nature of the Secretary's rulemaking authority, which is established by statute, *not* by regulation. Under Section 3348, a regulation cannot change an office's *statutory* duties. Rather, an official's functions or duties are those established by statute and required by statute to be performed by that official only (Section 3348(a)(2)(A)), *or* those established by regulation and required by that regulation to be performed by the applicable officer only (Section 3348(a)(2)(B)). Because the INA assigns rulemaking authority to the Secretary, and the Secretary alone, *see* 8 U.S.C. 1103(a)(3) (the Secretary "shall establish . . . regulations" "as he deems necessary for carrying out his authority"), *see supra* at 16, this statutorily-established authority independently satisfies the definition of function or duty under the FVRA. Any analysis of whether rulemaking meets

---

[9] On June 23, 2003, the Secretary of Homeland Security issued a broad delegation of authority to the Deputy Secretary. The delegation permitted the Deputy to "fulfill responsibilities set forth in the Homeland Security Act of 2002 and other general duties on behalf of the Secretary." The list of delegated duties included the duty to "[act] for the Secretary to sign, approve, or disapprove any proposed final rule, regulation or related document." Ex. 15.

[10] Indeed, the *Northwest* court suggested that 3348(a)(2)(A) would only be relevant if it invalidated the 2003 delegation. 2020 WL 5995206, at *16 (plaintiffs' citation to the HSA's general vesting-and-delegation statute does not "preclud[e] delegation of authority"). The court did not consider that, even if the 2003 delegation was lawfully issued, rulemaking could still be considered a duty established by statute.

the criteria of Section 3348(a)(2)(B) is thus irrelevant because it is not a duty established by regulation.

The *Northwest* court's conclusion that all duties delegated by regulation automatically fall outside the Enforcement Provision also subverts the FVRA's statutory purpose. Under this construction, a broad delegation of authority could remove from Congressional oversight the discharge of core duties set by statute, that is, the duties that Congress affirmatively assigned to a specific officer. An agency could exercise its expansive vesting-and-delegation authority under the HSA to delegate virtually any statutorily-defined duty. *See* 6 U.S.C. § 112(b)(1). If mere delegation to a sub-office were sufficient to place the performance of that duty beyond the FVRA's reach, an agency could effectively immunize any actions of an acting official—no matter how central to the vacant office's responsibilities—from challenge. Here, a sweeping delegation of authority issued almost two decades ago would authorize an Acting Secretary serving in violation of the FVRA's terms to promulgate regulations that upend the agency's past practices. This result would wholly undermine Congress's objective, when enacting the FVRA, to limit the "frequent use of organic vesting and delegation statutes to assign the duties of [presidentially appointed, Senate-confirmed] offices to officers and employees, with little or no check from Congress." *L.M.-M.*, 442 F. Supp. 3d at 29.[11] It is implausible that Congress intended for the statute's Enforcement Provision to be so easily circumvented. *Id.* at 34 ("It was the pervasive use of [] vesting-and-delegation statutes, along with the lack of an effective

---

[11] The *L.M.-M.* court expressly rejected DHS's argument that duties included only "non-delegable duties—that is, only those duties . . . that may not be reassigned. As that court noted, "because similar vesting and delegation statutes can be found throughout the Executive Branch, the logic of this position would cover all (or almost all) departments under the FVRA," and would effectively remove any means for enforcing the FVRA." *Id.* at 31; *see id.* ("[B]ecause similar vesting and delegation statutes can be found throughout the Executive Branch, the logic of this position would cover all (or almost all) departments under the FVRA," and would effectively remove any means for enforcing the FVRA) (internal quotation omitted).

enforcement process" for enforcing the plain terms of the prior Vacancies Act, "that convinced Congress of the need to enact the FVRA.").[12]

By contrast, reading Section 3348(a)(2) as limiting the agency's ability to narrow the statutory duties of an office better reflects the FVRA's text and purposes: while an agency may have discretion to decide which duties established by regulation are subject to the statute, it may not shield from judicial review the performance of duties that Congress set for a particular office. Put another way, the delegation of a duty established by statute—and vested in the Secretary alone—does not remove it from the Secretary's functions and duties. *Cf.L.M.-M.*, 442 F. Supp. 3d at 32 ("[T]he mere fact that a department head is also vested with all functions specifically vested in other department officers and employees cannot, standing alone, defeat the enforcement mechanisms found in the FVRA's vacant-office provision"). Regardless of whether another officer had the theoretical authority to perform these duties by delegation, the FVRA ensures that only officers serving in compliance with the statute's appointment scheme can discharge a vacant office's statutorily assigned duties. Thus, only a lawfully-serving Acting Secretary may perform the Secretary's exclusive statutory duty of issuing regulations that dramatically alter national immigration policy.

Regardless of whether McAleenan was performing a duty of the Secretary, however, agency actions that are taken in violation of the FVRA's limits must also be set aside as "unlawful" under the APA. 5 U.S.C. § 706(2). *L.M.-M*, 442 F. Supp. 3d at 34; *Immigrant Legal Res. Ctr.*, 2020 WL 5798269, at *9; *Casa de Maryland*, 2020 WL 5500165, at *23 (plaintiffs are

---

[12] The *Northwest* court acknowledged that its analysis and interpretation of the FVRA departed from that of two other district courts, which both recently "accepted the argument" that "Wolf's appointment was invalid and that actions he has taken as Acting Secretary are void" because he was serving in violation of the HSA and the FVRA. *Northwest*, 2020 WL 5995206, at *13 (citing *Casa de Maryland*, 2020 WL 5500165, at *23; *Immigrant Legal Res. Ctr.*, 2020 WL 5798269, at *9).

likely to succeed on arguments that rulemaking was null and void under the APA because the

Acting Secretary "promulgated the challenged rules . . . 'in excess of . . . authority'"). An agency

action that violates the APA "'cannot be afforded the force and effect of law,' and is therefore

void." *Air India v. Brien*, No. 00-cv-1707, 2002 WL 34923740, at *14 (E.D.N.Y. Feb. 14, 2002)

(quoting *Chrysler Corp. v. Brown*, 441 U.S. 281, 313 (1979)). DHS has in fact admitted in other

litigation that, if the Acting Secretary was serving unlawfully, his action could be set aside under

the APA. *See* Ex. 17 (Defs.' Mem. in Supp. of Mot. for Summary Judgment, *State of New York*

*et al v. Donald Trump et al.*, No. 1:17-cv-05228 (E.D.N.Y. Sept. 11, 2020), ECF No. 287) at 25.

### 3. There is no merit to DHS's arguments that McAleenan properly became Acting Secretary.

DHS has argued in other cases that Nielsen's April Delegation set the order of succession

in the event of the Secretary's resignation, death, or inability to perform the functions of the

office. Specifically, DHS has argued that: a) the language in the April Delegation conflicts with

the April Memorandum, which is the controlling "order"; b) the April Memorandum necessarily

amends the succession order in all circumstances because it specifically invokes Nielsen's

authority to change the succession order under the HSA; and c) the April Delegation is a non-

binding administrative document. But these post-hoc rationalizations cannot overcome the plain

text of the April Delegation (or the April Memorandum), which expressly limited Nielsen's

changes to Annex A, which applies when the Secretary is "unavailable to act during a disaster or

catastrophic emergency." *See Casa de Maryland*, 2020 WL 5500165, at *22 (adopting plain

reading of April Delegation because "agency action 'must be viewed critically to ensure that the

rescission is not upheld on the basis of impermissible *post hoc* rationalization'").

*a. The April Memorandum supports Plaintiffs' interpretation of the succession order.*

Defendants cannot rely on the April Memorandum to demonstrate that the revisions in April Delegation set the succession order in all circumstances. According to DHS, Nielsen stated in the April Memorandum that "she was designating a new 'order of succession,' employing unqualified language." *See* Ex. 17 (Defs.' Mem. in Supp. of Mot. for Summary Judgment, *State of New York et al v. Donald Trump et al.*, No. 1:17-cv-05228 (E.D.N.Y. Sept. 11, 2020), ECF No. 287) at 8. Yet this memorandum states only that "Annex A . . . is hereby amended by striking the text of such Annex in its entirety and inserting" the new succession order "in lieu thereof." Ex. 16 (April Memorandum) at 2. The amendment does not purport to alter the succession order set out in Section II.A of Delegation 00106, which governed in the case of Nielsen's resignation. *See supra* at 14-15; *La Clinica*, 2020 WL 4569462, at *13. Moreover, as GAO correctly found, "[n]otwithstanding the General Counsel's statement in the Memorandum asserting the Secretary's intentions in amending the April Delegation, the plain language of the delegation controls and it speaks for itself." Ex. 3 (GAO Report) at 9. Nielsen "only amended Annex A" and "did not change the ground for which Annex A would apply," namely the Secretary's unavailability to act during a disaster or catastrophic emergency. *Id.; cf. United States v. Mingo*, 340 F.3d 112, 114 (2d Cir. 2003) (where text is unambiguous, "the plain language controls").

McAleenan's attempted November 2019 Delegation further demonstrates the limited scope of Nielsen's April Delegation. The November Delegation sought to revise Nielsen's April Delegation to state that "[i]n case of the Secretary's, death, resignation, or inability to perform the functions of the Office, the order of succession is governed by Annex A," rather than Executive Order 13753. *See* Pls.' 56.1 Stmt. ¶ 18. This amendment would have been superfluous

if Nielsen had already made Annex A govern the succession order in the event of the Secretary's resignation. As another court has observed, "[t]he fact that McAleenan amended Delegation No. 00106 to modify Section II.A to cross-reference Annex A but Nielsen did not, reinforces the conclusion that at the time of Nielsen's resignation, Executive Order 13753 governed the order of succession." *La Clinica*, 2020 WL 4569462, at *14; *Immigrant Legal Res. Ctr.*, 2020 WL 5798269, at *8 ("Defendants also do not provide a persuasive argument as to why it was necessary for Mr. McAleenan to amend Section II.A of Delegation 00106, if Secretary Nielsen had already accomplished that change.").

> b.  *Nielsen's invocation of her authority under 113(g) of the HSA does not change the result.*

Nielsen's invocation of Section 113(g) of the HSA, which permits the Secretary to amend the order of succession for Acting Secretary, does not change the interpretation of the April Delegation or Memorandum. DHS has observed that Nielsen's April Memorandum repeatedly referenced Nielsen's authority to change the succession order under Section 113(g)(2), instead of her authority under Section 112(b)(1)—DHS's general delegation-and-vesting statute—which permits the Secretary to "'delegate' her authority to other officials in the agency, even when the Secretary continues to occupy her office." *See* Ex. 14 (Defs.' Opp'n to Mot. to Reconsider, *La Clinica De La Raza et al v. Trump et al*, No. 4:19-cv-04780 (Sept. 24, 2020), ECF. No. 184) at 3-6. Accordingly, DHS argues that the April Memorandum necessarily amended the order of succession that governed in the event of a permanent vacancy, not the order of delegation of authority during the Secretary's temporary unavailability due to emergency or disaster.

As an initial matter, the April Memorandum states that its changes to Annex A amended the "Orders of Succession *and* Delegations." Ex. 16 (April Memorandum) at 2 (emphasis added). Moreover, Section 113(g)(2) confers the Secretary with the authority to set the order of

succession not only in the event of a permanent vacancy in the office, but also in the event that the Secretary is "absent" or "disabled" (e.g., when the Secretary unavailable to act due to a disaster or catastrophic emergency). 6 U.S.C. § 113(g)(2). Thus, Section 113(g)(2) empowers the Secretary to change the succession order that governs when the Secretary resigns and/or the succession order that governs when the Secretary is unavailable to Act. DHS entirely ignores this statutory language. *Cf. United States v. Harris*, 838 F.3d 98, 106 (2d Cir. 2016) (recognizing that it is a "basic interpretive cannon" that language should be read "so that no part will be inoperative or superfluous, void or insignificant") (internal quotation omitted).

Additionally, Section 112(b)(1) is simply a general delegation statute providing that the Secretary, "except as otherwise provided by this chapter, may delegate any of the Secretary's functions to *any* officer, employee or organizational unit of the Department." 6 U.S.C. § 112(b)(1) (emphasis added). Nothing in the text of Section 112(b)(1) purports to displace Section 113(g)'s more specific provisions regarding who may carry out the Secretary's duties when the Secretary is unavailable to do so. Nor may such a displacement be judicially inferred. A "general [statutory] provision should not be applied when doing so would undermine limitations created by a more specific provision." *Cook v. New York State Div. of Parole*, 321 F.3d 274, 279 n.4 (2d Cir. 2003) (quotation marks omitted); *see also RadLax Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (discussing the "general/specific canon" of statutory interpretation).

That Nielsen purported in the April Memorandum to exercise her authority under Section 113(g), therefore, sheds no light on whether she intended to change the order of succession for permanent or temporary vacancies. *See Casa de Maryland*, 2020 WL 5500165, at *22 (The

"memorandum applies with equal force to the changes that Nielsen *did* make to Annex A in that she made them pursuant to her authority under section 113(g).'") (emphasis in original).

### c.  The April Delegation is binding.

DHS has additionally tried to claim that the April Delegation was a mere non-binding administrative document.[13] *See* Ex. 3 (GAO Report) at 8; Ex. 7 (Mem. of Law in Support of Defs.' Opp. to Pls.' Mot. for a Prelim. Injunction at 30-31, *Casa de Maryland, Inc. v. Wolf*, No. 8:20-cv-2118 (D. Md. Aug. 3, 2020), ECF No. 41) at 26-27. But throughout her tenure as Secretary, Nielsen adopted Delegation 00106 in toto and consistently treated it as authoritative, amending the Delegation four different times.[14] Throughout each of her amendments, Nielsen consistently retained the provision of Delegation 00106 stating that the succession order set forth in Executive Order 13573 governed when the Secretary resigns, and so it was that succession order that governed when Nielsen resigned.[15] *See Casa de Maryland*, 2020 WL 5500165, at *20 (finding that throughout her amendments, Nielsen "left in place the framework set by Secretary Johnson which had provided succession orders applicable to two different scenarios").

---

[13] In other litigation, DHS has admitted that Delegation 00106 "is the only written repository that memorialized the Secretary's changes to the succession orders." *Casa de Maryland*, 2020 WL 5500165, at *22 (rejecting DHS's argument that the April Delegation was a non-binding administrative document). Indeed, the April Memorandum treated Delegation 00106 as authoritative by purporting to amend it pursuant to her authority under 6 U.S.C. § 113(g)(2). Ex. 16 (April Memorandum) at 2. In any event, even if the April Memorandum were the only binding document, it is wholly consonant with the April Delegation. *See supra* at 7.

[14] *See supra* n. 3.

[15] DHS has further attempted to argue that all versions of Delegation 00106 prior to April 2019 merely acknowledged the President's authority under the FVRA to establish the order of succession in the event of the Secretary's death, resignation, or inability to perform the duties of the office, without setting forth a succession order that would govern in such circumstances. Ex. 14 (Defs.' Opp'n to Mot. to Reconsider, La Clinica De La Raza et al v. Trump et al, No. 4:19-cv-04780 (Sept. 24, 2020), ECF. No. 184) at 5. But this interpretation ignores the plain text of Section II.A of the Delegation, which states that "[i]n case of the Secretary's death, resignation, or inability to perform the functions of the Office, the orderly succession of officials is governed by Executive Order 13753." Ex. 1 (April Delegation) at 1. And accepting DHS's reading of the provision would render the Delegation's explicit reference to Executive Order 13753 meaningless. It would require the Court to construe the words, "the orderly succession of officials is governed by Executive Order 13753," to mean that the orderly succession of officials is *not governed* by the list set forth in Executive Order 13753 because, notwithstanding that list, the President retains the general authority under the FVRA to change the succession order.

**C.  McAleenan's unlawful issuance of the Rule cannot be ratified by Wolf.**

Wolf may not ratify McAleenan's ultra vires promulgation of the Rule. On September 10, 2020, President Trump submitted Wolf's nomination as Secretary of Homeland Security to the Senate. In his September 17 and October 7 Memoranda, Wolf asserted that "under the authority of the FVRA, 5 U.S.C. § 3345(a)(2), when the President submitted my nomination, [G]aynor . . . would have become eligible to exercise the functions and duties of the Secretary temporarily in an acting capacity." Exs. 11 (September 17 Memorandum) at 3; 13 (October 7 Memorandum) at 3. Wolf's October 7 Memorandum attempted to ratify each of McAleenan's acts as Acting Secretary, including issuance of the Rule. Ex. 13 (October 7 Memorandum) at 3-4.

DHS's attempt to cure the defect in the Rule's issuance fails for a host of reasons. First, under the FVRA, duties performed by an official serving in violation of the statute may not be ratified. Second, the HSA does not permit an Acting Secretary (such as McAleenan or Gaynor, even if either were lawfully serving as Acting Secretary) to amend the order of succession so as to install Wolf as the new Acting Secretary. And finally, even if an Acting Secretary had the authority to change the succession order, Gaynor never properly assumed this position.

**1.  McAleenan's promulgation of the Rule may not be ratified.**

The FVRA's Enforcement Provision provides that duties of a vacant office performed by an official serving in violation of the statute "shall have no force or effect" and "may not be ratified." 5 U.S.C. § 3348(d)(1), (2). As explained *supra* at 4-5, the Enforcement Provision "does not by its terms apply only to acting officials designated to serve pursuant to the FVRA, but, rather, applies to '[any] vacant office to which' the FVRA applies," including an Acting Secretary's service pursuant to the HSA. *Northwest*, 2020 WL 5995206, at *15; *see also La Clinica*, 2020 WL 4569462, at *15. In other words, "if McAleenan and Wolf (in the first

instance) were not designated in conformity with the HSA, then . . . their unauthorized acting service was subject to the strictures of the FVRA['s] [Enforcement Provision]." *Northwest*, 2020 WL 5995206, at *15. Official actions that are void under the FVRA thus cannot be subsequently saved through ratification. McAleenan's promulgation of the Rule—a regulation that overhauled admissibility determinations under the INA—is thus subject to the FVRA Enforcement Provision and may not be ratified.

### 2. An Acting Secretary may not amend the order of succession.

Even if the FVRA's Enforcement Provision does not apply, the Rule must still be set aside under the APA because McAleenan was serving in violation of the HSA and his actions were not ratified. As discussed *supra* at 19-20, an action taken by an official serving in violation of the FVRA is in excess of statutory authority under the APA. While, under the APA, "a subsequent *valid* appointment, coupled with ratification, cures" the initial defects of a rule, *Immigrant Legal Res. Ctr.*, 2020 WL 5798269, at *9 (emphasis in original), Wolf was not validly appointed Acting Secretary—either in November 2019 by McAleenan or in September 2020 by Gaynor—and thus could not ratify McAleenan's prior actions.

Neither McAleenan nor Gaynor had the authority to issue the modified order of succession that purported to install Wolf as Acting Secretary. The HSA permits only a Senate-confirmed Secretary to designate the order of succession. 6 U.S.C. § 113(g)(2). Because Section 113 explicitly distinguishes between the use of "Secretary" and "Acting Secretary," *cf.* 6 U.S.C. § 113(g)(1) and (g)(2), the plain reading of the provision limits the authority to change the succession order solely to the Secretary. *See Northwest*, 2020 WL 5995206, at *17-18 ("agreeing" with plaintiffs' reasoning that "[t]he Court should 'respect Congress'[s] decision to use different terms to describe different categories of people' [under the HSA]").

Section 113(g)(2) of the HSA must be interpreted narrowly so as to cohere with the FVRA's framework, which provides an exception to the statute's default appointment scheme only where an agency-specific statute "expressly . . . authorizes the President, a court, or the head of an Executive department[ ] to designate" acting officials. 5 U.S.C. § 3347(a)(1)(A). If the HSA permitted an Acting Secretary to amend the order of succession, that would mean that "the Secretary could designate the lowest-ranking 'officer' in any office or agency within the Department to serve as Acting Secretary, and once in office, that Acting Secretary could amend the Department's order of succession to name other low-ranking 'officers' to succeed him." *Northwest*, 2020 WL 5995206, at *18. "As a result, an exception to the FVRA's requirement that the 'President (and only the President)' designate acting officers would permit any 'officer' in the Department, who is designated by the Secretary to serve in her absence, to fill the role ordinarily reserved to the 'President (and only the President).'" *Id*. Such an interpretation would conflict with the FVRA's purpose to expand Congressional oversight over the assignment of duties to officers within the agency who were not subject to Senate confirmation. *See supra* at 18-19; *L.M.-M*., 442 F. Supp. 3d at 29.

In light of the principle that "[e]xceptions ought not operate to the farthest reach of their linguistic possibilities if that result would contravene the statutory design," *Maracich v. Spears*, 570 U.S. 48, 60 (2013), the HSA cannot be read to confer an Acting Secretary with such expansive authority.[16] The agency's attempt to employ "a matryoshka doll of delegated

---

[16] In fact, the *Northwest* court cast doubt on whether even a Senate-confirmed Secretary could override a presidential order like Executive Order 13753. *Northwest*, 2020 WL 5995206, at *14 n.1 ("Nor does the DHS Secretary (much less the Acting Secretary) have authority to amend or to supersede an executive order . . . Because Plaintiffs have not challenged Wolf's designation on this ground, and because neither party has briefed the issue, the Court simply notes the oddity of an order from an Acting Secretary purporting to supplant a presidential designation"). This Court need not reach that question because, as GAO and courts have uniformly found, Nielsen's revisions to Delegation 00106 did not purport to supersede the Executive Order. *See supra* at 9-11.

authorities" to avoid proper appointment and confirmation must be set aside as unlawful. *Bullock v. United States Bureau of Land Mgmt.*, No. 4:20-cv-00062-BMM, 2020 WL 5746836, at *8-9 (D. Mont. Sept. 25, 2020) (the FVRA does not "authoriz[e] someone to exercise temporary authority via memorandum signed by two officials purportedly exercising the delegated authority").[17]

### 3.   Gaynor never lawfully assumed the position of Acting Secretary.

Even assuming that an Acting Secretary possesses authority to change the order of succession for the Secretary position, Gaynor never properly assumed the office of Acting Secretary. Wolf's September 17 and October 7 Memoranda claim that, under the FVRA, "when the President submitted [his] nomination. . . [G]aynor . . . would have become eligible to exercise the functions and duties of the Secretary temporarily in an acting capacity." Exs. 11 (September 17 Memorandum) at 3; 13 (October 7 Memorandum) at 3; *see* Pls.' 56.1 Stmt. ¶¶ 35-38. The memoranda claimed that Gaynor was authorized to serve Acting Secretary pursuant to Section 3345(a)(2) of the FVRA. Exs. 11 (September 17 Memoranda) at 3; 13 (October 7 Memoranda) at 3. Both of these assertions, however, rest on unsound premises.

Gaynor could not have properly assumed the Acting Secretary position in September 2020 because no vacancy triggering succession arose upon Wolf's nomination. The FVRA permits an acting officer to perform the duties of a vacant office only when the prior officer

---

[17] Plaintiffs' interpretation of Section 113(g) also permits the Court to avoid the constitutional question of whether inferior officers have the authority to appoint other inferior officers. Under the Excepting Clause of the Constitution, "Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const. art. II, § 2, cl. 2. Reading Section 113(g) to permit an Acting Secretary to appoint another Acting Secretary raises the "difficult constitutional question" of "whether the Heads of Departments for purposes of the Excepting Clause can include inferior officers of the United States." *Northwest*, 2020 WL 5995206, at *20. "If an inferior officer lacks the constitutional authority to appoint another inferior officer, then it seems improbable—or at least discordant—that an inferior officer may alter the order of succession in a manner that, in effect, chooses which of the many officers serving at the Department will become the Acting Secretary." *Id.* (declining to adopt DHS's reading of Section 113(g) to avoid resolving the constitutional question).

"dies, resigns, or is otherwise unable to perform the functions and duties of the office." 5 U.S.C. § 3345(a). Submission of a prior officer's nomination to the Senate, by contrast, does not create a vacancy under this provision that would allow a new officer to assume the acting position. Tellingly, despite DHS's contention that the Secretary's office became vacant on September 10, 2020, the agency failed to submit a "notification of a vacancy" to Congress or Comptroller General's office, as both the FVRA and the HSA require. *See* 5 U.S.C. § 3349(a); 6 U.S.C. § 113(g)(3) ("The Secretary shall notify the Committee on Homeland Security and Governmental Affairs of the Senate and the Committee on Homeland Security of the House of Representatives of any vacancies that require notification under [the FVRA]."). And neither the Gaynor Order nor the Wolf Memoranda claim that Gaynor ever assumed the Acting Secretary role. *See* Exs. 11 (September 17 Memorandum) at 3; 12 (Gaynor Order); 13 (October 7 Memorandum) at 3.

Additionally, the FVRA provision that DHS invokes as the basis for Gaynor's appointment, Section 3345(a)(2), does not automatically bestow Gaynor with the functions and duties of Secretary upon the office's vacancy.[18] That provision simply permits the President, in theory, to designate a Senate-confirmed agency official "to perform the duties of the vacant office temporarily in an acting capacity subject to the time limitations of section 3346." 5 U.S.C. § 3345(a)(2). But the President has never purported to exercise this authority. Pls.' 56.1 Stmt. ¶ 38. Gaynor thus never held the position of Acting Secretary and would not have possessed the authority to amend or re-issue the orders of succession contained in Delegation 00106.

DHS's attempt to ratify the Rule thus do not comply with either the text or the statutory purpose of the FVRA or the HSA. They cannot cure McAleenan's unlawful promulgation of

[18] The *Northwest* court also erred in concluding that Gaynor became Acting Secretary in January of 2020. 2020 WL 5995206, at *14. Even according to DHS, Gaynor did not become eligible to serve until the time of Wolf's nomination. *See* Exs. (September 17 Memorandum) at 3; 13 (October 7 Memorandum) at 3. In any event, DHS has never claimed that Gaynor assumed the Acting Secretary role. *See supra* at 28-29.

29

sweeping and controversial policy initiatives that continues to harm tens of millions of

immigrants and their families, the Governmental Plaintiffs' jurisdictions, and the Organizational

Plaintiffs.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant this

motion for partial summary judgment, and vacate the Rule in its entirety as void because it is

without force or effect and may not be ratified under the FVRA, and is in excess of statutory

authority under the APA.


DATED: October 27, 2020


Respectfully submitted,

**LETITIA JAMES**
*Attorney General of the State of New York*

By: */s/ Ming-Qi Chu*
Ming-Qi Chu,
  *Section Chief, Labor Bureau*
Matthew Colangelo
  *Chief Counsel for Federal Initiatives*
Elena Goldstein,
  *Deputy Bureau Chief, Civil Rights Bureau*
Abigail Rosner, *Assistant Attorney General*
Amanda Meyer, *Assistant Attorney General*
Office of the New York State Attorney
General
New York, New York 10005
Phone: (212) 416-8689
ming-qi.chu@ag.ny.gov

*Attorneys for the State of New York*

**JAMES JOHNSON**
*Corporation Counsel of the City of New York*

By: /s/ *Tonya Jenerette*
Tonya Jenerette
  Deputy Chief for Strategic Litigation
Cynthia Weaver, Senior Counsel
Doris Bernhardt, *Senior Counsel*
Melanie Ash, *Senior Counsel*
100 Church Street, 20th Floor
New York, NY 10007
Phone: (212) 356-4055
tjeneret@law.nyc.gov

*Attorneys for the City of New York*

**THOMAS J. DONOVAN, JR.**
*Attorney General of Vermont*

By: /s/ *Benjamin Battles*
Benjamin Battles, *Solicitor General*
Eleanor Spottswood, *Assistant Attorney
General*
Julio Thompson,* *Assistant Attorney General*
Office of the Attorney General
109 State Street
Montpelier, VT 05609-1001
(802) 828-5500
benjamin.battles@vermont.gov

*Attorneys for the State of Vermont*

**WILLIAM TONG**
*Attorney General of Connecticut*

By: /s/ *Joshua Perry*
Joshua Perry
  *Special Counsel for Civil Rights*
165 Capitol Avenue
Hartford, CT 06106-0120
(860) 808-5318
Joshua.perry@ct.gov

*Attorneys for the State of Connecticut*

**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**

By: /s/ *Jonathan H. Hurwitz*
Andrew J. Ehrlich
Jonathan H. Hurwitz
Elana R. Beale
Robert J. O'Loughlin
Daniel S. Sinnreich
Amy K. Bowles

31

Leah Park

1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000
aehrlich@paulweiss.com
jhurwitz@paulweiss.com
ebeale@paulweiss.com
roloughlin@paulweiss.com
dsinnreich@paulweiss.com
abowles@paulweiss.com
lpark@paulweiss.com

**CENTER FOR CONSTITUTIONAL
RIGHTS**
Ghita Schwarz
Baher Azmy

666 Broadway
7th Floor
New York, New York 10012
(212) 614-6445
gschwarz@ccrjustice.org
bazmy@ccrjustice.org

**THE LEGAL AID SOCIETY**
Susan E. Welber, Staff Attorney, Law Reform
Unit
Kathleen Kelleher, Staff Attorney, Law Reform
Unit
Susan Cameron, Supervising Attorney, Law
Reform Unit
Hasan Shafiqullah, Attorney-in-Charge,
Immigration Law Unit

199 Water Street, 3rd Floor
New York, New York 10038
(212) 577-3320
sewelber@legal-aid.org
kkelleher@legal-aid.org
scameron@legal-aid.org
hhshafiqullah@legal-aid.org

*Attorneys for Plaintiffs Make the Road New
York, African Services Committee, Asian*

32

*American Federation, Catholic Charities*
*Community Services (Archdiocese of New York),*
*and Catholic Legal Immigration Network, Inc.*