**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MAKE THE ROAD NEW YORK, *et al.*, | |
| *Plaintiffs,* | |
| v. | No. 19-07993 (GBD) |
| KENNETH CUCCINELLI, *et al.*, | |
| *Defendants.* | |
| STATE OF NEW YORK, *et al.* | |
| *Plaintiffs,* | |
| v. | No. 19-cv-07777 (GBD) |
| U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.* | |
| *Defendants.* | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**
**AND DEFENDANTS' PARTIAL MOTION TO DISMISS**

## TABLE OF CONTENTS

I.     Introduction ................................................................................................. 1

II.    Background ................................................................................................... 2

       A.  Statutory Background ........................................................................ 2

       B.  Factual Background .......................................................................... 3

III.   Legal Standard ............................................................................................ 4

IV.    Argument……… ......................................................................................... 5

       A.    At the time the Rule was promulgated, Mr. McAleenan was lawfully
             serving as the Acting Secretary under the Homeland Security Act. ...................... 5

             i.      Mr. McAleenan properly assumed the role of Acting Secretary
                     upon the resignation of Secretary Nielsen ................................... 5

       B.    Even if the FVRA applies to Mr. McAleenan's service, the Final Rule is
             not void because it was properly ratified by Acting Secretary Wolf ................... 15

             i.      Acting Secretary Wolf's ratification of Mr. McAleenan's
                     promulgation of the Final Rule cures any defect. .................................... 17

             ii.     An Acting Secretary has authority to make changes to the
                     succession order for acting officers. ......................................... 21

             iii.    If EO 13753 controls the order of succession, the Gaynor order
                     lawfully amends the order of succession. ................................. 24

       C.    Plaintiffs' APA Ultra Vires and Declaratory Judgment Claims Fail for the
             Same Reasons as their FRVA Claims .................................................. 26

V.     Conclusion ................................................................................................. 26

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...................................................................................................... 4

*Aulicino v. N.Y. Dep't of Homeless Servs.*,
   580 F.3d 73 (2nd Cir. 2009)......................................................................................... 5

*Azar v. Alina Health Serv.*,
   139 S. Ct. 1804 (2019).............................................................................................. 24

*Batalla Vidal v. Wolf*,
   Nos. 16-CV-4756 (NGG) (VMS), 17-CV-5228 (NGG) (RER), 2020 WL 6695076 (E.D.N.Y.
   Nov. 14, 2020) ................................................................................................... 14, 26

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...................................................................................................... 4

*Casa de Md., Inc. v. Wolf*,
   No. 8:20-CV-02118-PX, 2020 WL 5500165 (D. Md. Sept. 11, 2020) ............................... 2, 14

*Citizens for Responsibility & Ethics in Wash. v. Trump*,
   924 F.3d 602 (D.C. Cir. 2019)....................................................................................... 4

*Delaney v. Bank of Am. Corp.*,
   766 F.3d 163 (2d Cir. 2014)........................................................................................... 5

*English v. Trump*,
   279 F. Supp. 3d 307 (D.D.C. 2018),
   *appeal dismissed*, 2018 WL 3526296 (D.C. Cir. July 13, 2018)............................................ 11

*Fleming v. Mohawk Wrecking & Lumber Co.*,
   331 U.S. 111 (1947)...................................................................................................... 20

*CFPB v. Gordon*,
   819 F.3d 1179 (9th Cir. 2016) .................................................................................... 18

*Guedes v. ATF*,
   920 F.3d 1 (D.C. Cir. 2019),
   *cert. denied*, 140 S. Ct. 789 (2020) .............................................................. 18, 19, 21

*Hernandez v. United States*,
   939 F.3d 191 (2nd Cir. 2019)....................................................................................... 4

*Hooks v. Kitsap Tenant Support Servs.*,
   816 F.3d 550 (9th Cir. 2016) .................................................................. 2

*Immigrant Legal Res. Ctr. v. Wolf*,
   No. 20-CV-05883-JSW, 2020 WL 5798269 (N.D. Cal. Sept. 29, 2020) ........................ 2, 3, 14

*In re Grand Jury Investigation*,
   315 F. Supp. 3d 602 (D.D.C. 2018) .......................................................... 24

*In re Grand Jury Investigation*,
   916 F.3d 1047 (D.C. Cir. 2019) ........................................................ 22, 23, 24

*Keyser v. Hitz*,
   133 U.S. 138 (1890) ......................................................................... 23

*Kisor v. Wilkie*,
   139 S. Ct.  2400 (2019) ...................................................................... 14

*Kramer v. Time Warner, Inc.*,
   937 F.2d 767 (2nd Cir. 1991) ................................................................. 4

*L.M.-M. v. Cuccinelli*,
   442 F. Supp. 3d 1 (D.D.C. 2020) ............................................................ 22

*Loma Linda Univ. v. Schweiker*,
   705 F.2d 1123 (9th Cir. 1983) ............................................................... 20

*Mobley v. C.I.A.*,
   806 F.3d 568 (D.C. Cir. 2015) ............................................................... 20

*Nw. Immigrant Rts. Project v. USCIS* (*NWIRP*),
   No. CV 19-3283 (RDM), 2020 WL 5995206 (D.D.C. Oct. 8, 2020) ......... 14, 19, 20, 21, 22, 24

*Ryan v. United States*,
   136 U.S. 68 (1890) ...................................................................... 22, 23

*Schaghticoke Tribal Nation v. Kempthorne*,
   587 F. Supp. 2d 389 (D. Conn. 2008),
   *aff'd*, 587 F.3d 132 (2d Cir. 2009) ......................................................... 21

*Staehr v. Hartford Fin. Servs. Group*,
   547 F.3d 406 (2nd Cir. 2008) ................................................................. 4

*Stand Up for California! v. DOI*,
   298 F. Supp. 3d 136 (D.D.C. 2018) ..................................................... 15, 21

iii

*U.S. Telecom Ass'n v. FCC*,
   359 F.3d 554 (D.C. Cir. 2004) ............................................................... 20

*United States v. Harris Cty.*,
   No. 4:16-CV-2331, 2017 WL 7692396 n.5 (S.D. Tex. Apr. 26, 2017) ............................ 19, 21

*United States v. Smith*,
   962 F.3d 755 (4th Cir. 2020) ................................................................. 2

*Walsh v. N.Y. City Hous. Auth.*,
   828 F.3d 70 (2nd Cir. 2016) .................................................................. 5

## STATUTES

5 U.S.C. § 3345 *et seq.* ......................................................................... 11, 14

5 U.S.C. § 3347 ................................................................................. 2

5 U.S.C. § 3348 ........................................................................ 18, 19, 20, 21

5 U.S.C. § 3349 ................................................................................ 26

6 U.S.C. § 112 ........................................................................ 8, 12, 15, 20

6 U.S.C. § 113 .......................................................................... *passim*

8 U.S.C. § 1103 ............................................................................... 20

28 U.S.C. § 508 .............................................................................. 24

31 U.S.C. § 1344 ............................................................................. 20

Pub. L. No. 107-296,
   116 Stat. 2135 (Nov. 25, 2002) ............................................................. 11

Pub. L. No. 114-328,
   130 Stat. 2000 (2016) (codified at 6 U.S.C. § 113(g) (Dec. 23, 2016)) ................. 11

## RULES

Fed. R. Civ. P. 56 ............................................................................. 5

## OTHER AUTHORITIES

Exec. Order 13,753,
   81 Fed. Reg. 90,667 (December 9, 2016) ........................................... *passim*

Designation of an Order of Succession for the Secretary (Apr. 9, 2019) ...................................... 6

S. Rep. No. 105-250 (1998) .............................................................................................. 19

## I.     Introduction

On August 14, 2019, Acting Secretary McAleenan exercised his authority to promulgate the Final Rule: Inadmissibility on Public Charge Grounds (the "Rule"). The Rule was the culmination of a multi-year process to adopt regulations prescribing who may be found to be inadmissible pursuant to the public charge ground of the Immigration and Nationality Act (INA). The Rule, which was developed through an extensive notice-and-comment rulemaking process, replaced the mere interim guidance relied upon since 1999 with a detailed test that improves the predictability of the public charge assessment process for DHS officer and current and future immigrants.

Despite the extensive process devoted to the creation and implementation of the Rule, Plaintiffs have attacked its propriety again and again. Despite their efforts, Plaintiffs' attempts to preliminarily enjoin the operation of the Rule were stayed twice by higher courts. Now, more than a year after initiating their suit, Plaintiffs have added claims that attempt to invalidate the Rule by alleging that it was promulgated without authority under the Federal Vacancies Reform Act (FVRA) and the Administrative Procedure Act (APA).

Because Mr. McAleenan was serving properly under the authority of the Homeland Security Act at the time the Rule was promulgated, he was entitled to exercise all of the authority of the Office of the Secretary, including rulemaking. However, even if the Court disagrees, Mr. McAleenan's acts, including promulgation of the Rule, were later ratified by Acting Secretary Wolf, another properly appointed Acting Secretary. Consequently, Plaintiffs' motion for partial summary judgment must be denied and their claims under the FVRA, under the APA alleging ultra vires action, and for declaratory judgment should be dismissed.

## II.     Background

### A.  Statutory Background

The FVRA is generally the "exclusive means for temporarily authorizing an acting officer to perform the functions and duties" of a Senate-confirmed office. 5 U.S.C. § 3347(a). It recognizes exceptions to this general rule of exclusivity, including for statutes that "expressly designate" an acting officer, *id.* § 3347(a)(1)(B), and statutes that "authorize[] the President, a court, or the head of an Executive department, to designate" an acting officer, *id.* § 3347(a)(1)(A). When a vacancy arises in an office with an office-specific vacancy statute, that statute provides an alternate means of designating an acting officer. *See Hooks v. Kitsap Tenant Support Servs.*, 816 F.3d 550, 556 (9th Cir. 2016) (explaining the FVRA and an office-specific statute coexist as "statutory alternatives to designate" an acting officer); *see also United States v. Smith*, 962 F.3d 755, 763 n.1 (4th Cir. 2020) (same).

The HSA is one such office-specific statute. *See Casa de Md., Inc. v. Wolf*, No. 8:20-CV-02118-PX, 2020 WL 5500165, at *18 (D. Md. Sept. 11, 2020) (explaining that § 113(g)(2) "establishes its own separate mechanism for appointment to be read alongside the FVRA"). Under the HSA, when both the Office of the Secretary and the Office of the Deputy Secretary are vacant, "the Under Secretary for Management shall serve as the Acting Secretary." *See* 6 U.S.C. § 113(g)(1). In 2016, Congress amended the HSA to allow the Secretary to "designate such other officers of the Department in further order of succession to serve as Acting Secretary." *Id.* § 113(g)(2).  In so doing, Congress made clear that a Secretary's order of succession under § 113(g)(2) would apply "[n]otwithstanding" the FVRA. *Id.*; *see also Immigrant Legal Res. Ctr. v. Wolf*, No. 20-CV-05883-JSW, 2020 WL 5798269, at *10 (N.D. Cal. Sept. 29, 2020) ("The Court concludes that a more natural read [of] the notwithstanding

clause in Sections 113(g)(1) and (g)(2) is that it serves to demonstrate these sections operate as an agency-specific succession statute, superseding the FVRA as the exclusive means to fill a vacancy in the office of DHS Secretary.").

### B. Factual Background

In April 2019, then-Secretary of Homeland Security Kirstjen M. Nielsen exercised the authority granted by the HSA and designated an order of succession for the Office of the Secretary in the event of a vacancy: "By the authority vested in me as Secretary of Homeland Security, including the Homeland Security Act of 2002, 6 U.S.C. § 113(g)(2), I hereby designate the *order of succession* for the Secretary of Homeland Security as follows . . . ." *See* Decl. of Juliana Blackwell ("Blackwell Decl."), Ex. 1, Designation of an Order of Succession for the Secretary (Apr. 9, 2019) ("April 2019 Order") (emphasis added); *see also* Decl. of Neal J. Swartz ¶ 3 ("Swartz Decl."). That new order of succession, in turn, made the Commissioner of U.S. Customs and Border Protection ("CBP") third in line to serve as Acting Secretary of Homeland Security. April 2019 Order at 2.

That signed order constituted the controlling order of succession when Nielsen resigned in April 2019. *See* Swartz Decl. ¶ 6 ("[T]hen-Secretary Nielsen's signed order amending the DHS order of succession for Acting Secretary, pursuant to her authority under 6 U.S.C. § 113(g)(2), was effective when she signed the order on April 9, 2019 . . . ."). When she resigned, the first two offices in the succession order were vacant, *see* Swartz Decl. ¶ 5; *see also id.* Ex. 1, Letter from Neal J. Swartz, Associate General Counsel for General Law, DHS, to Hon. Michael R. Pence, President of the Senate (Apr. 11, 2019). Thus, as the next official in line, CBP Commissioner Kevin McAleenan began serving as Acting Secretary of Homeland Security.

In November 2019, Mr. McAleenan lawfully used his power as Acting Secretary to further amend the succession order.  Blackwell Decl., Ex. 3, Amendment to the Order of Succession for the Secretary (Nov. 9, 2019). When Mr. McAleenan resigned, Chad F. Wolf—the Senate-confirmed Under Secretary for DHS's Office of Strategy, Policy and Plans—began serving as Acting Secretary as the senior-most official listed in the November 2019 amended succession order. *See Id.* On August 27, 2020, the President formally announced his intent to nominate Acting Secretary Wolf to serve as the Secretary of Homeland Security. On September 10, 2020, the President submitted Mr. Wolf's nomination to the Senate. *See* Blackwell Decl., Ex. 6 at 1.

### III.  Legal Standard

A motion to dismiss for failure to state a claim under Rule 12(b)(6) should be granted if the allegations in a complaint do not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although well-pleaded factual allegations must be accepted as true, legal assertions devoid of factual support are not entitled to this assumption. *See, e.g., Hernandez v. United States,* 939 F.3d 191, 198 (2nd Cir. 2019). In addition to well-pleaded factual allegations, a Court "may also consider matters of which judicial notice may be taken." *Staehr v. Hartford Fin. Servs. Group*, 547 F.3d 406, 426 (2nd Cir. 2008) (quoting *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2nd Cir. 1991)); *see also, e.g., Citizens for Responsibility & Ethics in Wash. v. Trump*, 924 F.3d 602, 607 (D.C. Cir. 2019).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists "where the evidence is such that a reasonable jury could decide

in the non-movant's favor." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014). When deciding a motion for summary judgement, courts must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Walsh v. N.Y. City Hous. Auth.*, 828 F.3d 70, 74 (2nd Cir. 2016) (quoting *Aulicino v. N.Y. Dep't of Homeless Servs.*, 580 F.3d 73, 79-80 (2nd Cir. 2009)).

## IV. Argument

Acting Secretary McAleenan was serving under a valid order of succession pursuant to the HSA when he promulgated the Rule. Plaintiffs' arguments to the contrary are unpersuasive and fail as a matter of law. However, even if the Court were to agree with Plaintiffs that Mr. McAleenan's service was improper under the FVRA, then, under Plaintiffs' own theory, Acting Secretary Wolf subsequently ratified the Rule and cured any alleged defects. Consequently, Plaintiffs' claims under the FVRA and their ultra vires claims under the APA fail as a matter of law. The Court should deny Plaintiffs' motion for summary judgment and grant Defendants' motion to dismiss Counts Two and Seven of the States' Amended Complaint and Counts Five and Six of the Organizational Plaintiffs' Amended Complaint.

### A.   At the time the Rule was promulgated, Mr. McAleenan was lawfully serving as the Acting Secretary under the Homeland Security Act.

In April 2019, then-Secretary of Homeland Security Kirstjen M. Nielsen exercised her power under the HSA, 6 U.S.C. § 113(g)(2), to designate a new order of succession in the event of a vacancy: "By the authority vested in me as Secretary of Homeland Security, including the Homeland Security Act of 2002, 6 U.S.C. § 113(g)(2), I hereby designate the *order of succession* for the Secretary of Homeland Security as follows . . . ." *See* April 2019 Order (emphasis added). Her signed order states five times that she designated a succession order for the Office of the Secretary, without qualification as to the reason for the vacancy. *Id.* The April 2019 Order

5

supplied a single list of officers to control the "order of succession," and did not limit its application to only certain types of vacancies. *Id.* The April 2019 Order placed this order of succession into Annex A. *Id.* at 2.

The April 2019 Order created an order of succession under § 113(g)(2) that made the Commissioner of U.S. Customs and Border Protection third in line to serve as Acting Secretary of Homeland Security. *See* April 2019 Order at 2. Prior to the April 2019 order, the order of succession for the Office of the Secretary had been governed by Executive Order ("EO") 13753, which the President had issued pursuant to the FVRA. But because § 113(g)(2) by its terms applies "notwithstanding" the FVRA, the April 2019 succession order superseded EO 13753 as a matter of law. *See* 6 U.S.C. § 113(g)(2). Moreover, Ms. Nielsen's April 2019 succession order was not limited to vacancies for specific reasons, and thus when she resigned, Mr. McAleenan, as the Senate-confirmed CBP Commissioner, was the senior-most official in the order of succession and became Acting Secretary pursuant to the HSA. Accordingly, Mr. McAleenan was validly serving when he promulgated the Rule, and Plaintiffs' claims fail as a matter of law.

Plaintiffs do not claim that Secretary Nielsen lacked the authority to designate an order of succession applicable in the event of a Secretary's resignation, that she failed to invoke the source of that authority—§ 113(g)(2)—in her April 2019 Order, or that there is any other relevant document signed by the Secretary. Instead, they allege that, rather than designating an order of succession that applied when a Secretary resigned, the April 2019 Order amended only Annex A to § II.B of DHS Delegation 00106, setting a new order of *delegation* of the Secretary's authority "in the event of disaster or catastrophic emergency." *See* Pls. Mot. at 20-21. Accordingly, Plaintiffs claim that § II.A of DHS Delegation 00106, an administrative document that was never signed by Ms. Nielsen, EO 13753—and not the April 2019 Order signed by Ms.

Nielsen—controlled the order of succession applicable when she resigned. *See* Pls.' Mot. at 14-15. Because Mr. McAleenan was not next in line under EO 13753, Plaintiffs allege that he served without authority and that he had no authority to promulgate the Rule. *Id.* at 15-16.

As an initial matter, Plaintiffs' argument ignores the plain text and context of the April 2019 order. By its plain terms, the April 2019 Order designated an order of succession under § 113(g)(2) that would apply to all vacancies regardless of reason. The order says five times that Ms. Nielsen was designating an order of succession for the office of the Secretary, and expressly cites § 113(g)(2)—which empowers the Secretary to designate an "order of succession"–three times. *See* April 2019 Order at 1-2. And nowhere does the Order limit its application to only "catastrophic emergenc[ies]" or "disaster[s]"—the limited circumstances under which § II.B of DHS Delegation 00106 applies. Thus, there is no indication from the text of the April 2019 order that it should not control who would succeed Ms. Nielsen upon her resignation. Section II.B, on which Plaintiffs rely, is not an order of succession; by its own terms, it is a delegation of authority. *See id.* at 2, ¶ II.B ("I hereby delegate to the officials occupying the identified positions in the order listed (Annex A), my authority to exercise the powers and perform the functions and duties of my office….). And crucially, an *order of succession* is different from a *delegation of authority*. The HSA reflects this: a different provision, 6 U.S.C. § 112(b)(1), empowers the Secretary to delegate her authority to other officials in the agency even when the Secretary continues to occupy her office.

Plaintiffs state no viable reason that Ms. Nielsen would have invoked her § 113(g)(2) authority to designate an order of succession (and repeatedly state that she was doing so) if she was merely amending the order for delegated authority during an emergency. Instead, they contend that § 113(g)(2) allows the Secretary to set the order of succession in the case of both

vacancies and absence or disability and that she intended the order to apply differently in emergencies and in vacancies.  Pls.' Mot. 22-23. But Plaintiffs' suggestion that Secretary Nielsen's *unqualified* order of succession was only meant to apply in *limited* circumstances contradicts the plain text of the April 2019 Order.  Nothing in the April 2019 order nor Annex A itself ever mentioned "disaster" or "catastrophic emergency" or otherwise limited the application of the succession order.  If Secretary Nielsen intended to designate an order of succession for such limited circumstances, she would have said so.  The argument further requires adopting the baseless assumption that Secretary Nielsen implicitly invoked § 113(g)'s applicability to "absence" and "disability" in reference to "catastrophic emergency" or "disaster" specifically— words that, again, appear nowhere in the April 2019 Order.

Plaintiffs also contend that the fact that the April 2019 Order's reference to amending "Orders of Succession and Delegation," somehow shows that Secretary Nielsen intended only to amend the order of delegation, Pls.' Mot. at 22. In fact, this reference shows just the opposite; as explained *infra*, Defendants do not contest that the April 2019 Order was intended to change both the order of succession and delegation. And Plaintiffs' argument that § 112(b)(1) is more general than § 113(g)(2) and, therefore, cannot displace it is a red herring.  Delegations and succession orders are distinct authorities, and in setting a succession order in her April 2019 Order, Ms. Nielsen did more than simply amend the order of delegation, as Plaintiffs suggest.

The legal effect of the April 2019 Order is even clearer when it is read in the context of earlier revisions to DHS Delegation 00106, which is an administrative document that is periodically updated and meant to consolidate and maintain the orders of succession and delegations of authority for many senior positions in DHS. *See* Swartz Decl. ¶ 4. Plaintiffs rely on the structure of DHS Delegation 00106 in arguing that EO 13753 controlled the order of

succession when Ms. Nielsen resigned. That same structure and context of DHS Delegation 00106, as well as a congressional amendment to the HSA, makes clear that Ms. Nielsen did more than amend the delegation of authority in the event of a "catastrophic emergency" or "disaster."

As background, on December 15, 2016, then-Secretary Jeh Johnson signed Revision 8 to DHS Delegation 00106. *See* Blackwell Decl. ¶ 6; *id.* Ex. 5, DHS Orders of Succession And Delegations Of Authorities For Named Positions ("Revision 8"). This signed revision addressed two different kinds of orders: (1) an order of succession, meaning a list of officials who could become Acting Secretary in the event of a vacancy, and (2) an order for delegating authority, meaning a list of officials who could exercise the Secretary's authority during a disaster or catastrophic emergency. *Id.* at 1, § II.A-B.

*First*, § II.A of Revision 8 explained that, "[i]n case of the Secretary's death, resignation, or inability to perform the functions of the Office," the order of succession would be governed by EO 13753. Under the HSA that existed at that time, the Secretary had no authority to designate an order of succession. At that time, only the President had the authority (under the FVRA) to designate an order of succession. *See* 5 U.S.C. § 3345(a)(2)-(3) (allowing the President to designate an acting official). Section II.A thus expressly tracked the FVRA: it noted that the President's order of succession in EO 13753 would apply to a vacancy covered by the FVRA. Section II.A even listed the same triggering events as the FVRA. *Compare* 5 U.S.C. § 3345(a), *with* Revision 8 at 1, § II.A.

*Second*, in § II.B of Revision 8, Mr. Johnson separately exercised his own authority under 6 U.S.C. § 112(b)(1)—authority that the Secretary had possessed since the original enactment of the HSA in 2002 and creation of the Secretary's position, *see* Pub. L. No. 107-296, § 102(b)(1),

116 Stat. 2135, 2142 (Nov. 25, 2002)—and delegated the authorities of his office to a list of officials in the event that he was temporarily "unavailable to act during a disaster or catastrophic emergency." This action was not an order of succession. The circumstances addressed by § II.B are not the kind of vacancy that would trigger the FVRA, and the § II.B delegation would not make someone exercising that authority an Acting Secretary. *Cf. English v. Trump*, 279 F. Supp. 3d 307, 322 (D.D.C. 2018) ("Defendants argue, with some force, that [unavailability to act is] commonly understood to reflect a temporary condition, such as not being reachable due to illness or travel."), *appeal dismissed*, 2018 WL 3526296 (D.C. Cir. July 13, 2018).

Only *after* Mr. Johnson signed Revision 8 did Congress give the Secretary the power to designate an order of succession that would apply "[n]otwithstanding" the FVRA. *See* National Defense Authorization Act for Fiscal Year 2017, Pub. L. No. 114-328, § 1903, 130 Stat. 2000 (2016) (codified at 6 U.S.C. § 113(g) (Dec. 23, 2016)). Secretary Nielsen's April 2019 Order used this new power to set a "desired order of succession for the Secretary of Homeland Security" under § 113(g)(2). And it is unremarkable that, in exercising this new power for the first time, Secretary Nielsen chose to *harmonize* the relevant lists of priority for both (1) the order of succession in cases of vacancy, resignation, or inability to serve under § 113(g)(2); and (2) the delegation of authority under § 112(b)(1) for cases of catastrophic emergency or disaster. Plaintiffs' reliance on the prior structure of DHS Delegation 00106, before the Secretary first exercised her designation authority under § 113(g)(2), ignores this legislative context, the plain text of the April 2019 Order, and its undisputed purpose.

This context, along with the text of the April 2019 Order, shows that when then-Secretary Nielsen changed Annex A's list of officers, she also provided that Annex A would now perform

two separate roles. It would both (1) designate for the first time the agency's order of succession under § 113(g)(2) and (2) provide the list of officials in the order for delegation of authority.

As to the first role, Ms. Nielsen established for the first time an order of succession under § 113(g)(2) which would apply in the case of a vacancy that would otherwise have been covered by the FVRA. Before Ms. Nielsen's order, there was no order of succession under § 113(g)(2). Rather, as acknowledged by § II.A of Revision 8 and discussed above, *the President's* order of succession under EO 13753 governed when the Secretary's office was vacant, because then-Secretary Johnson lacked the authority to create an order of succession. Thus, when Ms. Nielsen *thrice* invoked § 113(g)(2) in the April 2019 Order, she exercised the Secretary's authority under that statute and designated an order of succession that applied "[n]otwithstanding" the FVRA. *See* 6 U.S.C. § 113(g)(2). As a matter of law, that order of succession superseded EO 13753's FVRA order. *See id.* Plaintiffs assert that, in order to set an order of succession, Ms. Nielsen needed to expressly amend § II.A of Revision 8. Pls.' Mot. at 21. But because § II.A simply repeated the controlling law at the time—the FVRA—there was no need to expressly amend it. Rather, to designate an order of succession for the Office of the Secretary, she only needed to exercise her authority under § 113(g)(2), which she did.

The text of Ms. Nielsen's order cited § 113(g)(2) and used that authority to "designate the order of succession for the Secretary of Homeland Security as follows." April 2019 Order at 2. The order that "follows" was the amended list of officials in Annex A. *Id.* Annex A was also introduced with another clause and title showing that it would simultaneously continue to serve its original function as an order for delegation of authority. *Id.* But Annex A's amended list was followed by a new provision that had not appeared in the prior version of Annex A. The new provision noted that "[n]o individual who is serving in an office herein listed in an acting

capacity, by virtue of so serving, shall act as Secretary pursuant to this designation." *Id.* That reference to a "*designation*"—rather than a "delegation"—is yet another textual and structural acknowledgment that the April 2019 Order's Annex A had executed the Secretary's new authority under § 113(g)(2). *See* 6 U.S.C. § 113(g)(2) (authorizing the Secretary to "designate such other officers . . . in further order of succession to serve as Acting Secretary").

As to the second role, Ms. Nielsen's order changed the order for delegation of authority in the case of a disaster or catastrophic emergency by issuing a new version of Annex A. To do so, Ms. Nielsen did not need to expressly invoke § 112(b)(1), any more than Mr. Johnson had, because Annex A (via § II.B) already was, by its terms, a delegation of authority. Thus, by changing the officials listed in Annex A, she changed the order of delegation. But, by her express invocation of § 113(g)(2), Ms. Nielsen made clear that Annex A's list would serve two different functions when she resigned: both the order of succession *and* the order for delegation of authority.

Thus, Ms. Nielsen's order designated the order of succession under 6 U.S.C. § 113(g)(2). That is the best reading of the order, which is buttressed by its context and DHS's contemporaneous understanding that Mr. McAleenan would serve as Acting Secretary upon Ms. Nielsen's resignation.[1] Secretary Nielsen changed the order of succession on April 9, 2019, and on the next day swore in Mr. McAleenan as Acting Secretary and issued a Department –wide press release indicating that Mr. McAleenan would serve as Acting Secretary. *See* Blackwell Decl., Ex. 4, "Farewell Message from Secretary Kirstjen M. Nielsen," April 10, 2019. Additionally, on April 10, DHS, through its General Counsel, sent a notice to the Senate as

---

[1] To the extent that the order is genuinely ambiguous, this Court should give significant weight to the Department's official contemporaneous understanding and implementation of the Order. *Cf. Kisor v. Wilkie*, 139 S. Ct. 2400, 2415-18 (2019).

required by the HSA, 6 U.S.C. § 113(g)(3), and the FVRA, 5 U.S.C. § 3345 *et seq.*, stating that

the Office of the Secretary position had become vacant and listing Kevin McAleenan as the

Acting Officer. *See* Swartz Decl. ¶ 7; *id.* Ex. 1, Letter from Neal J. Swartz, Associate General

Counsel for General Law, DHS, to Hon. Michael R. Pence, President of the Senate (Apr. 11,

2019). The notice listed the authority for the acting designation as 6 U.S.C. § 113(g)(2). *Id.* at 2.

Plaintiffs rely on *Casa de Maryland v. Trump*, No. 8:20-cv-02118-PX, 2020 WL

5500165, at *20-23 (D. Md. Sept. 11, 2020), and *Immigrant Legal Resource Center v. Wolf*, No.

20-cv-05883-JSW, 2020 WL 5798269, at *7-8 (N.D. Cal. Sept. 29, 2020), Pls.' Mot. at 20, 22,

which both concluded that by amending Annex A, Ms. Nielsen's order only amended § II.B of

DHS Delegation 00106. *See also Batalla Vidal v. Wolf*, Nos. 16-CV-4756 (NGG) (VMS), 17-

CV-5228 (NGG) (RER), 2020 WL 6695076, at *8–9 (E.D.N.Y. Nov. 14, 2020) (same); *Nw.

Immigrant Rts. Project v. USCIS* (*NWIRP*), No. CV 19-3283 (RDM), 2020 WL 5995206, at *14

(D.D.C. Oct. 8, 2020) ("assum[ing], without deciding," the same). But those courts failed to

appreciate the difference between orders of succession and delegations of authority. Delegations

of authority, which simply allow an official to exercise certain powers of the Office of the

Secretary, are different from orders of succession, which are lists of officials who may become

Acting Secretary in the event of a vacancy. As explained above, the HSA recognizes this basic

distinction. If Secretary Nielsen had intended only to amend the order for delegated authority

during an emergency, she would have had no reason to invoke § 113(g)(2). *Compare* 6 U.S.C. §

112(b)(1) (allowing Secretary to delegate authority), *with id.* § 113(g)(2) (allowing Secretary to

designate a further order of succession); *see also Stand Up for California! v. DOI*, 298 F. Supp.

3d 136, 141 (D.D.C. 2018) (explaining that certain duties of vacant office "[may] be delegated to

other appropriate officers and employees in the agency" even in absence of acting officer). These

decisions also overlook the context of DHS Delegation 00106—specifically, that § II.A was never an order of the Secretary—and misunderstand the relationship between the HSA and the FVRA—namely, that Ms. Nielsen's first-ever order of succession under § 113(g)(2) superseded EO 13753 as a matter of law.

Finally, Plaintiffs argue that if Secretary Nielsen's April 2019 Order indeed had the effect of changing Annex A to control the order of succession, Mr. McAleenan's revision in the November order would be superfluous. Pls.' Mot. at 22. To be sure, when Mr. McAleenan amended the order of succession, he expressly stated that Annex A would govern when a Secretary resigns. *See* November 2019 Order. However, this amendment was not superfluous. As an initial matter, it would not be "superfluous" for Mr. McAleenan to amend Secretary Nielsen's order as a precautionary matter to address the alleged deficiencies that are now in dispute in various lawsuits.  But even if this clarifying language were unnecessary, it would not change the legal effect of Ms. Nielsen's April 2019 order, which superseded EO 13753 as a matter of law. Plaintiffs' argument further ignores the fact that Mr. McAleenan's revision *changed the list of offices* in the order of succession previously set by Secretary Nielsen. *Compare* April 2019 Order at 2 *with* November 2019 Order at 2. Mr. McAleenan's November 2019 revision was therefore an independent alteration of the order of succession under Section 113(g)(2).

In sum, because Ms. Nielsen's order applied when she resigned, then-CBP Commissioner McAleenan properly assumed the position of Acting Secretary upon Ms. Nielsen's resignation. *See* April 2019 Order at 2; Swartz Decl. ¶ 5-6. As the properly serving Acting Secretary, Mr. McAleenan was authorized to exercise all of the Secretary's authority, *see infra.* This includes the rulemaking authority used to promulgate the Final Rule.  For the reasons elaborated above, Plaintiffs' FVRA claims fail as a matter of law and should be dismissed.

**B.    Even if the FVRA applies to Mr. McAleenan's service, the Final Rule is not void because it was properly ratified by Acting Secretary Wolf**

Even if Plaintiffs are right about the April 2019 Order, their claims would still fail, and Defendants would still be entitled to dismissal of Plaintiffs' FVRA and APA ultra vires claims.

As DHS has consistently explained, Mr. McAleenan lawfully served as Acting Secretary under the HSA and under the order of succession issued by Ms. Nielsen in April 2019. But DHS also recognized that ongoing challenges to former Acting Secretary McAleenan's (and current Acting Secretary Wolf's) service risked an unnecessary "distraction to the mission of the Department of Homeland Security." Swartz Decl., Ex. 2, Order Designating the Order of Succession for the Secretary of Homeland Security (Nov. 14, 2020). Thus, "out of an abundance of caution," the Senate-confirmed Administrator of the Federal Emergency Management Agency (FEMA), Peter T. Gaynor—who, upon the submission of Mr. Wolf's nomination and under the terms of Executive Order 13753, would be the officer next in line to serve as Acting Secretary— issued a new order of succession, relying on "any authority vested in [him] as Acting Secretary of Homeland Security." *Id.* In other words, although DHS disagrees with the legal theory advanced by plaintiffs in this and other cases, if that theory is correct, the result would be that Mr. Gaynor (not Mr. Wolf) would have been the proper Acting Secretary under the Executive Order's order of succession upon the submission of Mr. Wolf's nomination. Thus Mr. Gaynor would have been authorized under 6 U.S.C. § 113(g)(2) to alter the order of succession. As a result of *that* order approved by Mr. Gaynor—through which the FEMA Administrator and the Under Secretary for Strategy, Policy, and Plans would become sixth and fourth in line,

15

respectively—Mr. Wolf would then become Acting Secretary, as the most senior official now serving in the line of succession.

On November 16, 2020, Mr. Wolf specifically made an "affirmation and ratification" of, *inter alia*, Mr. McAleenan's promulgation of the Final Rule. Blackwell Decl. Ex. 7, "Ratification of Certain Actions Taken By Former Acting Secretary Kevin McAleenan and One Action taken by USCIS Deputy Director for Policy Joseph Edlow."[2] Although Defendants disagree that Mr. McAleenan acted without authority when he promulgated the Rule, that promulgation has now been explicitly ratified by another lawfully serving Acting Secretary. Thus, Plaintiffs' claims that the Rule was promulgated without authority under the FVRA, the APA, and the Declaratory Judgment Act are without merit, and as a matter of law Defendants are entitled to their dismissal.

These events are consistent with Plaintiffs' claim that the FVRA applies when there is no governing HSA order of succession. Any doubts Plaintiffs have raised about Mr. McAleenan's promulgation of the Rule are now gone in view of Mr. Wolf's lawful ratification. Plaintiffs'

---

[2] Mr. Gaynor initially signed a succession order on September 10, 2020, *see* Pls.' Ex. 12, pursuant to which Mr. Wolf ratified Mr. McAleenan's promulgation of the Rule, *see* Pls.' Ex. 13. However, Defendants are unable to confirm that the succession order was signed after the submission of Mr. Wolf's nomination. The precise timing of events on September 10, 2020, however, has no legal effect on the merits of Defendants arguments because Mr. Gaynor issued a new succession order on November 14, 2020, Swartz Decl. Ex. 2, and Mr. Wolf ratified Mr. McAleenan's promulgation of the Rule on November 16, 2020, Blackwell Decl. Ex. 7. In any event, under the plain language of the FVRA, Mr. Gaynor's September 10, 2020 succession order was validly issued, even if signed an hour before, because it was still signed on the same day as the submission of Mr. Wolf's nomination. The statutory provision that allows for acting service during the pendency of a nomination, 5 U.S.C. § 3346(a)(2), provides that an acting official may serve "once a first or second nomination for the office is submitted to the Senate, *from the date* of such nomination for the period that the nomination is pending in the Senate." In other words, once Mr. Wolf's nomination was submitted on September 10, 2020, Mr. Gaynor would have been permitted to serve as Acting Secretary "from th[at] date,"—*i.e.*, from September 10, 2020—while Mr. Wolf's nomination is pending before the Senate. And consistent with the long-established rule that unless required by "substantial justice," a governmental action is deemed effective from the first moment of the day in which it was enacted regardless of the precise time it was actually enacted, under § 3346(a)(2), Mr. Gaynor had the authority to issue the succession order from the first moment of September 10, 2020. *See, e.g.*, *Taylor v. Brown*, 147 U.S. 640, 645 (1893); *see also United States v. Norton*, 97 U.S. 164, 170 (1877) (proclamation "covers all the transactions" of date it was enacted); *Lapeyre v. United States*, 84 U.S. 191, 198 (1872) (statute "becomes effectual upon the day of its [enactment] date. In such cases it is operative from the first moment of that day")

16

attacks now on Mr. Gaynor's service under their *own theory* of succession depend on

misreadings of the FVRA that are easily set aside.

### i.     Acting Secretary Wolf's ratification of Mr. McAleenan's promulgation of the Rule cures any defect.

Mr. Wolf's ratification cures any alleged service-related defects on the merits. As courts

have repeatedly recognized, an agency head's "valid appointment, coupled with . . . ratification,

cures any initial" service-related deficiencies in a challenged action. *CFPB v. Gordon*, 819 F.3d

1179, 1190-92 (9th Cir. 2016); *see also Guedes v. ATF*, 920 F.3d 1, 13 (D.C. Cir. 2019) (the

D.C. Circuit has "repeatedly held" that a "properly appointed official's ratification of an

allegedly improper official's prior action . . . resolves the claim on the merits by 'remedy[ing]

[the] defect' (if any) from the initial appointment" (alterations in original and citations omitted)),

*cert. denied*, 140 S. Ct. 789 (2020). Mr. McAleenan was properly designated as Acting Secretary

under Secretary Nielsen's April 2019 Order. However, even if Plaintiffs' interpretation is

correct, the agency has now ratified its earlier actions out of an abundance of caution and in a

manner that courts have "repeatedly held" to be a proper curative. *See Guedes*, 920 F.3d at 13.

Such "ratification purges any residual taint or prejudice . . . from the allegedly invalid

appointment" based on an FVRA violation. *Id.*

Plaintiffs first argue that Mr. McAleenan's promulgation of the Rule cannot be ratified

regardless of whether the FVRA or the HSA controls his service because the FVRA prohibits

ratification of "duties of a vacant office [being] performed by an official serving in violation of

the statute." Pls.' Mot. at 25. The basis of Plaintiffs' claim is 5 U.S.C. § 3348(d), which provides

that an act is void and "may not be ratified," if performed by an officer who, acting in a manner

inconsistent with the FVRA, executed a "function or duty of a vacant office" under the FVRA. In

17

Plaintiffs' view, changing the implementation of the INA, through the Rule, is a "function or duty" as defined by the FVRA because it is "established by statute and required by statute to be performed by the applicable officer (and only that officer.)" *Id.* at 15-16.

The promulgation of the Rule is not a "function or duty," as those terms are narrowly defined in § 3348 because it is not the kind of action assigned by statute *exclusively* to the Office of the Secretary.  *NWIRP*, 2020 WL 5995206, at *16 (action was not in performance of function or duty where authority was not "exclusive[]" to Secretary).  The definition of "function or duty" in § 3348(d) of the FVRA applies only to non-delegable functions that are made exclusive to a particular office by statute or regulation. *See Guedes*, 920 F.3d at 12 (citing § 3348(d) as "only prohibiting the ratification of nondelegable duties"); *United States v. Harris Cty.*, No. 4:16-CV-2331, 2017 WL 7692396, at *3 n.5 (S.D. Tex. Apr. 26, 2017) (authorization of complaint by Principal Deputy Assistant Attorney General was not "function or duty" under FVRA because "the relevant duties of the [office are delegable"). That conclusion is compelled by the plain text. If a function or duty is lawfully delegable, then necessarily, the statute or regulation creating that function or duty does not "require" it to be performed only by the applicable officer. Rather, the statute or regulation permits other individuals to perform that function or duty by delegation.

That plain-text reading is confirmed by the Senate Committee Report accompanying the bill that became the FVRA. That Report, addressing a definition of "function or duty" materially identical to that now found in § 3348(a)(2), provides that "functions or duties of the office" are "defined as the non-delegable functions or duties of the officer." S. Rep. No. 105-250, at 18. The narrowness of that definition ensures that "[d]elegable functions of the [vacant] office could still be performed by other officers or employees," such that "[a]ll the normal functions of

government thus could still be performed." *Id.*; *accord id.* at 31 (views of supporting Senators); *id.* at 36 (views of opposing Senators).

Plaintiffs' argument that the rulemaking power established by the INA is a function or duty of the Secretary of Homeland Security because only the Secretary is named in 8 U.S.C. § 1103(a)(3), Pls.' Mot. at 16, does not accord with the law. The INA simply does not prohibit the Secretary from delegating that rulemaking authority to subordinate officers. Rather, Congress has explicitly authorized subdelegation of the Secretary's authority, 6 U.S.C. § 112(b)(1) (general authorization of delegations), except where statutes specify to the contrary, *see, e.g.*, 31 U.S.C. § 1344(d)(3) (specifying that a particular authority "may not be delegated"). Moreover, it is a bedrock principle of administrative law that, absent clear indication to the contrary, the authority vested in a particular officer may be delegated to her subordinates. *See Mobley v. C.I.A.*, 806 F.3d 568, 585 (D.C. Cir. 2015) ("Sub-delegation to a subordinate federal official is presumptively permissible, absent affirmative evidence in the original delegation of a contrary intent."); *Loma Linda Univ. v. Schweiker*, 705 F.2d 1123, 1128 (9th Cir. 1983) (upholding re-delegation of authority by Administrator of Health Care Financing Administration to Deputy Administrator); *see also Fleming v. Mohawk Wrecking & Lumber Co.*, 331 U.S. 111, 122-23 (1947) (requiring "all the various functions granted the [agency head] [to] be performed personally by him or under his personal direction . . . would be apt to end in paralysis"). "When a statute delegates authority to a federal officer or agency, subdelegation to a subordinate federal officer or agency is presumptively permissible absent affirmative evidence of a contrary congressional intent." *U.S. Telecom Ass'n v. FCC*, 359 F.3d 554, 565 (D.C. Cir. 2004).

The Court in *NWIRP* directly addressed this argument in relation to another rule promulgated by Mr. Wolf under the INA. That Court held "a 2003 delegation from the Secretary

19

. . . authorizes the Deputy Secretary to act for the Secretary 'to sign, approve, or disapprove any proposed or final rule, regulation or related document' . . . . [And] here, because the Secretary delegated the authority to issue Department rules in 2003, that power is not vested exclusively in the Secretary and is therefore not the type of action that is voided under the FVRA. 5 U.S.C. § 3348." *NWIRP* at *16; *see also* Pls.' Ex. 15 "Delegation to Deputy Secretary," ¶ II.G. Plaintiffs' attempts to undermine the analysis and conclusions of *NWIRP* on this point are illogical and unsupported by any precedent. Contrary to Plaintiffs' contention, *see* Pls.' Mot. at 17, § 3348(a)(2) does not turn on whether a specific officer is the only individual granted a particular authority under a statute or regulation, but whether that officer is the only individual *permitted to exercise* that authority. *See* 5 U.S.C. § 3348 (a)(2)(A)(ii) ("Any [f]unction or duty of the applicable office that…is required by statute to be performed by…*only* that officer." (emphasis added)); *see also NWIRP* at *16.

Although the Secretary of DHS is endowed with the original power to promulgate regulations under the INA, Plaintiffs' argument that the INA requires such power to be exercised only by the Secretary cannot be sustained. *See* Pls.' Ex. 15 ¶ II.G. Plaintiffs' related argument, *see* Pls.' Mot. at 19, that, despite the plain language of the FVRA, Congress cannot have intended to permit delegation alone to remove a broad range of official actions from the sweep of § 3348(d), is belied by numerous decisions to the contrary. *See, e.g., Guedes*, 920 F.3d at 12 (recognizing that "function or duty" applies "only" to "nondelegable duties"); *Schaghticoke Tribal Nation v. Kempthorne*, 587 F. Supp. 2d 389, 420 (D. Conn. 2008) ("[A]ny functions or duties not required by statute or regulation to be performed by the official occupying that position may be reassigned to another official within the agency or department."), *aff'd*, 587 F.3d 132 (2d Cir. 2009) *Stand Up*, 298 F. Supp. 3d at 150 ("functions and duties" do not encompass "non-exclusive responsibilities" that can be "delegated to other appropriate officers and employees" (citation

omitted)); *see also Harris Cty.*, 2017 WL 7692396, at *3 n.5 (authorization of complaint by

Principal Deputy Assistant Attorney General was not a "function or duty" under the FVRA

because "the relevant duties of the [office] are delegable"); Order at 5, *United States v. Vill. of*

*Tinley Park*, No. 1:16-cv-10848 (N.D. Ill. July 17, 2017), ECF No. 55 (holding that "function or

duty" under FVRA "does not include a delegable duty that could be performed by another

officer"). Plaintiffs' reliance on the analysis of the FVRA's intent in *L.M.-M.* is inapposite, as

that case concerns only the construction of functions and duties established by regulation for

subcabinet level officials which have not been delegated. *See L.M.-M. v. Cuccinelli*, 442 F. Supp.

3d 1, 31-33 (D.D.C. 2020); *cf. NWIRP*, 2020 WL 5995206, at *16 (authority of Secretary was

not "function or duty" where it had been delegated to another official).[3]

> ### ii. An Acting Secretary has authority to make changes to the succession order for acting officers.

Plaintiffs next contend that even if Mr. McAleenan's actions as Acting Secretary could be

ratified by a lawfully serving Acting Secretary, Mr. Gaynor did not possess authority under the

HSA to change the order of succession and consequently Acting-Secretary Wolf was not validly

designated and cannot ratify past actions.[4] Plaintiffs' argument is incorrect however, because it

has long been the law that "an acting officer is vested with the same authority that could be

exercised by the officer for whom he acts." *In re Grand Jury Investigation*, 916 F.3d 1047, 1055

---

[3] Indeed the discussion cited by Plaintiffs is mere dicta. *See L.M.-M.*, 442 F. Supp. 3d at 34 ("The Court's holding, moreover, is a narrow one: the Court merely concludes that where, as here, a statute assigns a function to a single PAS office, and where, as here, the department head did not reassign that function using his vesting-and-delegation authority or any other authority at least 180 days before the vacancy occurred, that function is a "function or duty" of the vacant PAS office within the meaning of § 3348, and it must be performed either by a properly serving acting official or by the department head.")

[4] Plaintiffs also suggest that Mr. McAleenan had no authority as Acting Secretary to issue the November 2019 order of succession under which Mr. Wolf has served. But Mr. Wolf's service under the November 2019 order of succession is irrelevant to whether Mr. McAleenan had the authority to issue the challenged Rule. Even so, Mr. McAleenan, as Acting Secretary, lawfully exercised his authority under § 113(g)(2) in designating the order of succession under which Mr. Wolf has served. *See In re Grand Jury Investigation*, 916 F.3d at 1055.

(D.C. Cir. 2019); *see also Ryan v. United States*, 136 U.S. 68, 81 (1890) ("[I]n the abs[e]nce of the secretary, the authority with which he was invested could be exercised by the officer who, under the law, became for the time acting secretary . . . ."). This includes the Secretary's authority under § 113(g)(2), which explicitly permits "the Secretary [to] designate such other officers of the Department in further order of succession to serve as Acting Secretary," "notwithstanding" the requirements of the FVRA. Consequently, under Plaintiffs' theory of succession, under the generally accepted bounds of the role of acting government officers, Mr. Gaynor would have had authority as Acting Secretary of DHS to designate an order of succession under § 113(g)(2).

Plaintiffs attempt to rely on the second holding of *NWIRP*, which reasoned that an Acting Secretary may not designate an order of succession under § 113(g)(2). But there are several flaws in that analysis.  *First*, the decision is at odds with controlling precedent within its own Circuit. In *In re Grand Jury Investigation*, the D.C. Circuit held that "an Acting Attorney General becomes the head of the Department when *acting in that capacity* because an acting officer is vested with the same authority that could be exercised by the officer for whom he acts." 916 F.3d at 1055 (emphasis added). The court held that the acting official is vested with any authority the vacant office has, including, specifically, authority under the Appointments Clause. *See id.* at 1054-55 ("Acting Attorney General Rosenstein was the 'Head of Department' under the Appointments Clause as to the matter on which the Attorney General was recused."). In so holding, the court relied upon two Supreme Court decisions standing for the basic proposition that an acting officer can exercise all of the authority of the office for which she acts. *Id.* at 1055 (citing *Ryan v. United States*, 136 U.S. 68, 81 (1890); *Keyser v. Hitz*, 133 U.S. 138, 145–46 (1890)). That same reasoning applies to an Acting Secretary under § 113(g)(2). Indeed, it would

be unusual if an acting principal officer is vested with every power that the vacant office has *except* the power to designate an order of succession.

*Second*, the district court concluded that reading § 113(g)(2) as allowing an Acting Secretary to designate an order of succession would be inconsistent with the FVRA. *NWIRP*, 2020 WL 5995206, at *19 (explaining the FVRA is the exclusive means for acting service unless "a statutory provision *expressly* . . . authorizes . . . the head of an Executive department to designate an officer or employee to perform the functions and duties of a specified officer temporarily in an acting capacity" (first alteration in original) (citation omitted)). The Court recognized that "acting officials are typically 'vested with the same authority that could be exercised by the officer for whom he acts,'" but concluded that with respect to just § 113(g)(2) an Acting Secretary cannot exercise that authority as there is no "statutory language that expressly vests the acting official with [the same] authority" held by the Secretary. *See id.* (citation omitted).

This, again, is inconsistent with D.C. Circuit precedent, which recognizes an "acting officer is vested with the same authority that could be exercised by the officer for whom he acts," "by virtue of becoming the [a]cting" official, not because of an independent grant of statutory authority. *See In re Grand Jury*, 916 F.3d at 1055-56; *cf. In re Grand Jury Investigation*, 315 F. Supp. 3d 602, 663 (D.D.C. 2018) (explaining that the language in 28 U.S.C. § 508(a), which allows the Deputy Attorney General to "exercise all the duties of" the Office of the Attorney General, "is of the sort recognized to authorize the service of acting officers"), *aff'd*, 916 F.3d 1047 (D.C. Cir. 2019). And the Court pointed to no other statutory textual or structural evidence indicating that references to duties of the Secretary in § 113 or elsewhere excluded anyone performing those duties in just an acting capacity. Indeed, under this reading, each reference in

23

the HSA to "Secretary" would mean only a Senate-confirmed Secretary. *See Azar v. Alina Health Serv.*, 139 S. Ct. 1804, 1811 (2019) ("This Court does not lightly assume that Congress silently attaches different meanings to the same term in the same or related statutes."). Thus, it would be unclear what, if any, authorities of the Secretary an Acting Secretary could exercise, which would undermine the entire point of acting service. There is no reason to believe Congress intended such an outcome.

Plaintiffs also rely on a concern expressed by the *NWIRP* court that allowing acting officials to designate other acting officials would be contrary to the purpose of the FVRA because "it would conflict with the FVRA's purpose to expand Congressional oversight over the assignment of duties to officers within the agency who were not subject to Senate confirmation." Pls.' Mot. at 27. However, Plaintiffs do not explain how this would be more constitutionally problematic than the appointment of any "low-ranking officer" by a confirmed secretary, which is expressly permitted by the HSA "notwithstanding" the FVRA. *See* 6 U.S.C. § 113(g)(2).

### iii.    If EO 13753 controls the order of succession, the Gaynor order lawfully amends the order of succession.

Finally, Plaintiffs' argue that Mr. Gaynor's Order is without effect because Mr. Gaynor could not have assumed the functions of Acting Secretary for several reasons that undermine their own theory of succession. First, they contend that Mr. Gaynor could not have assumed the role of Acting Secretary because "no vacancy triggering succession arose upon Wolf's nomination." Pls.' Mot. at 28. That is wrong: as all parties acknowledge, the office of Secretary remained vacant after Ms. Nielsen's resignation. Thus, under Plaintiffs' theory, the nomination of Mr. Wolf on September 10, 2020, would have triggered Section 3346(a)(2) of the FVRA, and created a permissible period for acting service by the *then* senior-most officer under the FVRA's order of succession: Mr. Gaynor. *See* Revision 8. Second, Plaintiffs contend that Mr. Gaynor

never assumed the role of Acting Secretary or the authority to perform the Secretary's duties or functions because the President did not specifically act under the authority of § 3345(a)(2) to designate him as such. Pls.' Mot. at 29. This argument too is explicitly belied by Plaintiffs' own theory of succession. As an executive order issued by the President, E.O. 13753 was an advance exercise of the President's authority under the FVRA to designate officials to "act as, and perform the duties and functions of the office of, the Secretary." E.O. 13753's succession order was therefore self-executing, and, as the senior-most successor under E.O. 13753, Mr. Gaynor would have become Acting Secretary *as a matter of law* upon Mr. Wolf's nomination, with no need for further action.[5]

Plaintiffs also may seek to rely on the decision in *Batalla Vidal*, which erroneously concluded that Mr. Wolf could not ratify any prior actions because Mr. Gaynor's succession order had "no legal effect" because Mr. Wolf and Mr. Gaynor could not "simultaneously exercise the Secretary's power." *Batalla Vidal*, 2020 WL 6695076, at *9. Contrary to that court's assumption, Defendants have *never* argued that Mr. Wolf and Mr. Gaynor could simultaneously exercise authority. Rather, Defendants have always argued, and continue to maintain, that Mr. Wolf was properly serving as Acting Secretary under the HSA because Mr. McAleenan was properly serving as Acting Secretary when he amended the order of succession

---

[5] Plaintiffs' additional arguments—that DHS failed to submit a Notice of Vacancy to Congress or the GAO and that neither the Gaynor nor Wolf Memos claimed that Gaynor ever assumed the role of Acting Secretary, Pls.' Mot. at 29, have no bearing, even if credited, on the question of whether Mr. Gaynor became the Acting Secretary by operation of the FVRA and EO 13753 as a matter of law. As a factual matter. DHS notified Congress of the vacancy created by Secretary Nielsen's resignation. *See* Swartz Decl. ¶ 7, Ex. 1, Letter from Neal J. Swartz, Associate General Counsel for General Law, DHS, to Hon. Michael R. Pence, President of the Senate (Apr. 11, 2019). And it is unremarkable that DHS did not submit any notice to Congress regarding Mr. Gaynor because Defendants at all times have believed that Mr. Wolf has been lawfully serving as Acting Secretary. Even if such notice was required for Mr. Gaynor, nothing in the HSA or FVRA conditions acting service upon such a notification. *See* 5 U.S.C. § 3349(a)(1). If Plaintiffs are correct that E.O. 13753 continued to control the order of succession through September 2020, then by operation of law Mr. Gaynor was the appropriate official to exercise the authority of Acting Secretary and he did so by issuing his order of succession under "any authority" he had as Acting Secretary.

in November 2019.  *See supra* 15-16.  But if Defendants are wrong on that point, then *under Plaintiffs' own theory* Administrator Gaynor became Acting Secretary under the FVRA when Mr. Wolf was nominated to serve as Secretary on September 10, 2020.  *See supra* 16-17.  That argument does *not* suggest that Mr. Wolf and Administrator Gaynor were ever "simultaneously" serving as Acting Secretary, as the *Batalla Vidal* court errantly concluded.  Rather it shows that only two possible outcomes stem from Secretary Nielsen's April 2019 Order—either that Mr. Wolf (and in turn, Mr. McAleenan) has lawfully been serving as Acting Secretary under the HSA *or* that Administrator Gaynor became Acting Secretary on September 10, 2020 under the FVRA.  And in either result the challenged agency action survives Plaintiffs' appointments-based challenge.  *See supra*.

### C. Plaintiffs' APA Ultra Vires and Declaratory Judgment Claims Fail for the Same Reasons as their FRVA Claims

Plaintiffs' claims that then-Acting Secretary McAleenan's promulgation of the Rule and Acting Secretary Wolf's ratification of that action are *ultra vires* under the APA, Pls.' Mot. 19-20, and that their acts should be declared void under the Declaratory Judgment Act are the same claim that these officers acted without authority because they were unlawfully serving as Acting Secretary.  Thus for all of the reasons stated above, these claims fail as a matter of law and Defendants are entitled to dismissal of these counts.

## V. Conclusion

For the foregoing reasons, Plaintiffs have not shown that they are entitled to summary judgment on their claims under the FVRA, APA, or Declaratory Judgment Act and their motion must be denied. For the same reasons, the Court should find that Plaintiffs have failed to state a claim on these counts and grant Defendants partial motion to dismiss.

Dated:  November 17, 2020                       Respectfully submitted,

 AUDREY STRAUSS                          JEFFREY BOSSERT CLARK
 Acting United States Attorney             Acting Assistant Attorney General

                                                ALEXANDER K. HAAS
                                                Director, Federal Programs Branch

                                                BRIGHAM BOWEN
                                                Assistant Director, Federal Programs Branch

                                                /s/ *Keri L. Berman*
                                                ERIC J. SOSKIN
                                                Senior Trial Counsel
                                                KUNTAL V. CHOLERA
                                                JOSHUA M. KOLSKY
                                                JASON LYNCH
                                                ALEXANDRA SASLAW
                                                KERI L. BERMAN
                                                U.S. Dept. of Justice, Civil Division,
                                                Federal Programs Branch
                                                1100 L Street, N.W., Rm. 12002
                                                Washington, DC 20001
                                                Phone: (202) 305-7664
                                                Fax: (202) 616-8470
                                                Email: Keri.L.Berman@usdoj.gov

                                                *Counsel for Defendants*