# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK, CITY OF NEW YORK, STATE OF CONNECTICUT, and STATE OF VERMONT,<br><br>                    Plaintiffs,<br><br>          v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY; CHAD F. WOLF, *in his official capacity as Acting Secretary of the United States Department of Homeland Security*; UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES; KENNETH T. CUCCINELLI II, *in his official capacity as Senior Official Performing the Duties of Director of the United States Citizenship and Immigration Services and of the Deputy Secretary of United States Department of Homeland Security*; and UNITED STATES OF AMERICA,<br><br>                    Defendants. | **CIVIL ACTION NO. 19 Civ. 07777 (GBD)** |
| MAKE THE ROAD NEW YORK, AFRICAN SERVICES COMMITTEE, ASIAN AMERICAN FEDERATION, CATHOLIC CHARITIES COMMUNITY SERVICES, and CATHOLIC LEGAL IMMIGRATION NETWORK, INC.,<br><br>                    Plaintiffs,<br><br>          v.<br><br>KEN CUCCINELLI, *in his purported official capacity as Senior Official Performing the Duties of the Director, United States Citizenship and Immigration Services*; UNITED STATES CITIZENSHIP & IMMIGRATION SERVICES; CHAD F. WOLF, *in his purported official capacity as Acting Secretary of Homeland Security*; and UNITED STATES DEPARTMENT OF HOMELAND SECURITY,<br><br>                    Defendants. | **CIVIL ACTION NO. 19 Civ. 07993 (GBD)** |

## PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ......................................................................................................................... 2

   A.  McAleenan's service as Acting Secretary was unlawful. ..................................... 3

     1.  Nielsen's April Delegation and Memorandum unambiguously limited Nielsen's changes to the order of succession set forth in Annex A of Delegation 00106. ...................... 3

     2.  Defendants' post-hoc rationalizations cannot overcome the plain language of the April Delegation and Memorandum. ............................................................................... 5

   B.  The FVRA's Enforcement Provision bars ratification because McAleenan was performing a duty of the Secretary when he issued the Rule. .......................................................... 9

   C.  The Rule must be set aside under the APA because it was issued in excess of statutory authority and has not been ratified by a lawfully appointed successor. ................................... 14

     1.  Gaynor never occupied the Acting Secretary position and therefore cannot exercise the powers of that office to change the order of succession to install Wolf as Acting Secretary. .. ...................................................................................................................... 16

     2.  Gaynor was not eligible to serve as Acting Secretary because Wolf's nomination did not displace Krebs as Nielsen's lawful successor. .............................................................. 17

     3.  Gaynor was never properly appointed pursuant to Section 3345(a)(2) of the FVRA and could thus not exercise the powers of the Secretary. ........................................................ 19

     4.  Neither McAleenan nor Gaynor had the authority to issue the modified order of succession that purported to install Wolf as Acting Secretary. ............................................. 22

   CONCLUSION ................................................................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Batalla Vidal v. Wolf*,
   Nos. 16-cv-4756, 2020 WL 6695076 (E.D.N.Y. Nov. 14, 2020) ................................... passim

*Casa de Md., Inc. v. Wolf*,
   No. 20-cv-02118, 2020 WL 5500165 (D. Md. Sept. 11, 2020) ....................................... passim

*Christopher v. SmithKline Beecham Corp.*
   567 U.S. 142 (2012) ................................................................................................................ 7

*Crowell v. IRS*,
   258 B.R. 885 (E.D. Tenn. 2001) ............................................................................................ 5

*Dep't Homeland Security v. Regents of Univ. of Cal.*,
   140 S. Ct. 1891 (2020) ........................................................................................................... 6

*D.S. ex rel. M.S. v. Trumbull Bd. of Educ.*,
   975 F.3d 152 (2d Cir. 2020) ................................................................................................... 5

*English v. Trump*,
   279 F. Supp. 3d 307 (D.D.C. 2018) ............................................................................... 21, 22

*Freytag v. Comm'r of Internal Revenue*,
   501 U.S. 868 (1991) .............................................................................................................. 24

*Guedes v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*,
   356 F. Supp. 3d 109 (D.D.C. 2019) ..................................................................................... 21

*Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
   920 F.3d 1 (D.C. Cir. 2019) ................................................................................................. 12

*Immigrant Legal Resource Ctr. v. Wolf*,
   No. 20-cv-05883, 2020 WL 5798269 (N.D. Cal. Sept. 29, 2020) ................................ passim

*In re Grand Jury Investigation*,
   916 F.3d 1047 (D.C. Cir. 2019) ........................................................................................... 21

*Keyser v. Hitz*,
   133 U.S. 138 (1890) .............................................................................................................. 21

*Kisor v. Wilkie*,
   139 S. Ct. 2400 (2019) ........................................................................................................ 6, 7

*La Clinica de la Raza v. Trump*,
    No. 19-cv-04980, 2020 WL 6940934 (N.D. Cal. Nov. 25, 2020) ........................................4, 5

*La Clinica de la Raza v. Trump*,
    No. 19-cv-04980, 2020 WL 7053313 (N.D. Cal. Nov. 25, 2020) ........................................5, 7

*L.M.-M. v. Cuccinelli*,
    442 F. Supp. 3d 1 (D.D.C. 2020) .................................................................. passim

*N.L.R.B. v. SW Gen., Inc.*,
    137 S. Ct. 929 (2017)..................................................................................................18

*Nw. Immigrant Rights Project v. USCIS*,
    No. 19-cv-3283, 2020 WL 5995206 (D.D.C. Oct. 8, 2020) ........................................ passim

*Ryan v. United States*,
    136 U.S. 68 (1890) ......................................................................................................21

*Schaghticoke Tribal Nation v. Kempthorne*,
    587 F. Supp. 2d 389 (D. Conn. 2008).......................................................................12

*Stand Up for California! v. United States Dep't of Interior*,
    298 F. Supp. 3d 136 (D.D.C. 2018)...........................................................................12

*United States v. Harris Cty.*,
    No. 16-CV-2331, 2017 WL 7692396 (S.D. Tex. Apr. 26, 2017) .............................12

*United States v. Mingo*,
    340 F.3d 112 (2d Cir. 2003)..........................................................................................5

*United States v. Valencia*,
    No. 17-cr-882, 2018 WL 6182755 (W.D. Tex. Nov. 27, 2018) ................................21

*United States v. Vill. of Tinley Park*,
    No. 16-cv-10848 (N.D. Ill. July 17, 2017), ECF No. 55 ..........................................12

*Weiss v. United States*,
    510 U.S. 163 (1994) ....................................................................................................24

**CONSTITUTION**

U.S. Const.
    art. II, § 3....................................................................................................................21

**FEDERAL STATUTES**

5 U.S.C.
    § 706(2)..................................................................................................................13, 19

§ 3345 .................................................................................................................17, 19
§ 3345 .................................................................................................................17, 19
§ 3346 .................................................................................................................18, 19
§ 3347 .................................................................................................................17, 23
§ 3348 ........................................................................................................9, 10, 11, 13

6 U.S.C.
§ 112 .............................................................................................................5, 7, 10, 14
§ 113 .......................................................................................................5, 7-8, 21, 23
§ 271 ........................................................................................................................12

Aviation and Transportation Security Act of 2001, Pub. L. 107-71, 115 Stat. 597 ......................10

Coast Guard and Maritime Transportation Act of 2006, Pub. L. 109-241, 120 Stat.
516 ...........................................................................................................................10

Coast Guard Authorization Act of 2010, Pub. L. 111-281, 124 Stat. 2905 ..................................10

Homeland Security Act of 2002, Pub. L. 107-296, 116 Stat. 2135 ..............................................10

Immigration and Nationality Act of 1965, Pub. L. 89-236, 79 Stat. 911 ..................................9, 10

Implementing Recommendations of the 9-11 Commission Act of 2007, Pub. L.
No. 110-53, 121 Stat. 266 ...........................................................................................10

Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108-458,
118 Stat. 3638 ...........................................................................................................10

Maritime Transportation Security Act of 2002, Pub. L. 107-295, 116 Stat. 2064 ........................10

Post-Katrina Emergency Management Reform Act of 2006, Pub. L. 109-925, 120
Stat. 1355 ..................................................................................................................10

Robert T. Stafford Disaster Relief and Emergency Assistance Act of 1988, Pub.
L. 100-707, 102 Stat. 4696 .........................................................................................10

Security and Accountability for Every Port Act of 2006, Pub. L. 109-347, 120
Stat. 1884 ..................................................................................................................10

**FEDERAL REGULATIONS**

Department of Homeland Security, Exec. Order No. 13753,
81 Fed. Reg. 90,667 (Dec. 9, 2016) ................................................................... passim

*Ratification of Actions Taken by the Acting Secretary of Homeland Security*, 85
Fed. Reg. 59,651 (Sept. 23, 2020) .............................................................................15

*Ratification of Department Actions*, 85 Fed. Reg. 65,653 (Oct. 16, 2020) ...................................15

## MISCELLANEOUS AUTHORITIES

S. Rep. No. 105-250 ....................................................................................................12, 19

*Designating an Acting Attorney General,*
    Office of Legal Counsel, Nov. 14, 2018 ................................................................21

## **PRELIMINARY STATEMENT**

Defendants' issuance of the Public Charge Rule (the "Rule") under the authority of then-purported Acting Secretary of Homeland Security, Kevin McAleenan ("McAleenan"), is unlawful and must be set aside under the Federal Vacancies Reform Act ("FVRA") and the Administrative Procedure Act ("APA"). Five district courts[1] and the Government Accountability Office ("GAO") have found that McAleenan's tenure as Acting Secretary violated the FVRA and the Homeland Security Act ("HSA") because McAleenan was not next in line to serve under the order of succession that Secretary Kirstjen Nielsen set before she resigned in April 2019. This Court should follow the weight of this unanimous authority.

Congress enacted the FVRA to prevent agencies from doing precisely what DHS seeks to do here: filling vacancies with a series of unlawfully appointed acting officials as a means to circumvent the Senate's mandate to advise and consent on the selection of the agency's leadership. Despite Defendants' lip service to the FVRA's and the HSA's constraints on vacancy appointments, they argue that they were entitled to ignore the plain language of the governing succession order when the vacancy for Acting Secretary arose. As all courts that have considered the issue have found, these assertions have no basis in the text, structure, or purpose of either the FVRA or the HSA.

The Court should likewise reject Defendants' arguments that they have cured the defects in the Rule's issuance. Defendants claim that they have found alternative means to install Chad Wolf ("Wolf"), the successor that McAleenan purportedly appointed, as Acting Secretary such

---

[1] *See Casa de Maryland, Inc. v. Wolf*, No. 20-cv-02118 (PX), 2020 WL 5500165 (D. Md. Sept. 11, 2020) ; *Immigrant Legal Res. Ctr.* ("*ILRC*") *v. Wolf*, No. 20-cv-05883 (JSW), 2020 WL 5798269 (N.D. Cal. Sept. 29, 2020); *Nw. Immigrant Rights Project v.* USCIS ("*Northwest*"), No. 19-cv-3283 (RDM), 2020 WL 5995206 (D.D.C. Oct. 8, 2020); *Batalla Vidal v. Wolf*, No. 16-cv-4756,  2020 WL 6695076 (E.D.N.Y. Nov. 14, 2020); *La Clinica de la Raza v. Trump*, No. 19-cv-04980, 2020 WL 7053313 (N.D. Cal. Nov. 25, 2020); *see also L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1 (D.D.C. 2020).

1

that Wolf could supposedly ratify all of McAleenan's actions. While Defendants continue to maintain that McAleenan and Wolf were both serving lawfully, they claim—purely in the hypothetical—that Wolf's nomination as Secretary of Homeland Security on September 10, 2020 *could have* permitted Federal Emergency Management Agency ("FEMA") Administrator Peter Gaynor ("Gaynor") to serve as Acting Secretary and that Gaynor *could have* handed power immediately back to Wolf. But the FVRA does not authorize DHS to avoid the established order of succession through use of a hypothetical frontman any more than the statute permits the agency to disregard the succession order altogether. The Court should not interpret the statute so as to render its detailed limitations on vacancy appointments meaningless.

Accordingly, Plaintiffs respectfully request that the Court grant their motion for partial summary judgment and deny Defendants' motion to dismiss.

## ARGUMENT

The Delegation that Nielsen issued in April 2019 expressly provided that, upon her resignation, the order of succession set forth in Executive Order 13753 would govern. See Declaration of Ming-Qi Chu dated Oct. 27, 2020, Exhibit (hereinafter "Ex.") 1 (Dep't of Homeland Security, DHS Orders of Succession and Delegations of Authorities for Named Positions, Delegation No. 00106, Revision No. 08.5 (Apr. 10, 2019)) ("April Delegation"); Ex. 4 (Amending the Order of Succession in the Department of Homeland Security, Exec. Order No. 13753, 81 Fed. Reg. 90,667 (Dec. 9, 2016) ("Executive Order 13753")). Under the plain language of this Executive Order, Christopher Krebs ("Krebs"), then-Director of Cybersecurity and Infrastructure Security Agency ("CISA")—and not McAleenan—was next in line to serve as Acting Secretary. Accordingly, McAleenan was not Nielsen's lawful successor and the Rule that

he issued under his purported authority as Acting Secretary was made without authority under the FVRA and the APA.

Defendants' alternative argument that the Rule has been recently ratified by Wolf does not avoid this result. Defendants' theories regarding ratification are not only illogical and contradictory, but also transparently designed to subvert the governing succession order—and the fundamental statutory purposes animating the FVRA—once again.

**A. McAleenan's service as Acting Secretary was unlawful.**

Defendants urge this Court to adopt a conclusion that five district courts and GAO have unanimously rejected. Defendants argue that Nielsen's April Delegation does not mean what it says and thus McAleenan was properly appointed. *See* Defs.' Mem. at 5-14. Every authority has rightly found this argument unpersuasive; Defendants proffer no reason for this Court to reach a different conclusion.

> *1. Nielsen's April Delegation and Memorandum unambiguously limited Nielsen's changes to the order of succession set forth in Annex A of Delegation 00106.*

Under the plain language of the governing documents, Krebs—not McAleenan—became Acting Secretary when Nielsen resigned. As Plaintiffs explained, *see* Pls.' Mem. at 14-15, 20-24, Nielsen's April 9, 2019 Memorandum, by its terms, amended only Annex A to Delegation 00106, and no other portion of Delegation 00106. *See* Pls.' Mem. at 21; *see also* Ex. 16 (Memorandum for the Secretary from John M. Mitnick, General Counsel, U.S. Dep't of Homeland Security (Apr. 9, 2019)) ("April Memorandum") at 2 ("Annex A . . . is hereby amended by striking the text of such Annex in its entirety and inserting the following in lieu thereof."). In turn, Annex A applied only when the Secretary "is unavailable to act during a disaster or catastrophic emergency." Delegation 00106 separately stated that Executive Order 13753 "governed" "[i]n case of the Secretary's death, resignation, or inability to perform the

3

functions of the office." Ex. 1 (April Delegation) at 1; Ex. 4 (Executive Order 13753). Consistent

with the April Memorandum, when Delegation 00106 was amended on April 10 to implement

Nielsen's order of the previous day, Delegation 00106 retained this distinction. *See* Ex. 1 (April

Delegation). Defendants do not and cannot dispute that the Secretary position became vacant due

to Nielsen's resignation rather than her unavailability to act during a disaster or catastrophic

emergency. *See* Pls.' Mem. at 6-8. Accordingly, Executive Order 13753 governed the

designation of Acting Secretary when Nielsen resigned, and under that order, Krebs was

Nielsen's lawful successor. *See* Ex. 4 (Executive Order 13753).

Although the April Memorandum only amends Annex A, Defendants argue that the April

Memorandum—in which Nielsen announced that she was "designat[ing] the order of succession

for the Secretary of Homeland Security"— means that the changes to the order of succession

"appl[y] to all vacancies regardless of reason." Defs.' Mem. at 7. But, as GAO and numerous

courts have found in rejecting this exact argument, the text of April Memorandum and

Delegation by their express terms amended only the order of succession that applied in the case

of disaster or catastrophic emergency and not the order of succession that applied upon her

resignation. As GAO emphasized:

> [T]he plain language of the delegation controls, and it speaks for itself. When
> Secretary Nielsen issued the April Delegation, she only amended Annex A . . . .
> She did not change the ground for which Annex A would apply.

Ex. 3 (*Decision from the U.S. Government Accountability Office*, File B-331650 (Aug. 14,

2020)) ("GAO Report") at 9. The Court need not look beyond the plain language of the

directives that Secretary Nielsen executed. *See also Casa de Md.*, 2020 WL 5500165, at *20

("Delegation Order 00106 is plain, and the Government provides no support for this Court to

look beyond the Order itself."); *ILRC*, 2020 WL 5798269, at *7-8; *Batalla Vidal*, 2020 WL

6695076, at *9 ("On the plain text, Secretary Nielsen amended the order of officials in Annex A

4

but did nothing to change when Annex A applied . . . ."). As the court reasoned in *La Clinica de la Raza v. Trump*, "[h]ad Secretary Nielsen intended to modify the order of succession applicable in case of the Secretary's death, resignation, or inability to perform the functions of the Office, then her order could have so stated."[2] 2020 WL 6940934, at *14 (N.D. Cal. Nov. 25, 2020).

The decisions of these courts and GAO are consistent with the settled interpretive principle that the plain language of a regulatory document controls. *See United States v. Mingo*, 340 F.3d 112, 114 (2d Cir. 2003) (explaining that "the plain language controls" in interpreting the U.S. Sentencing Guidelines); *D.S. ex. rel. M.S. v. Trumbull Bd. of Educ.*, 975 F.3d 152, 167 (2d Cir. 2020) (rejecting Department of Education interpretation that "ignores the plain text of the statute and regulations"). This principle applies equally in the present context of administrative orders delegating authority. *See La Clinica de la Raza*, 2020 WL 7053313, at *6 n.3 (citing *Crowell v. IRS*, 258 B.R. 885, 889 (E.D. Tenn. 2001) ("Administrative orders delegating authority . . . and statutes share enough characteristics to warrant the Court's employing similar rules of construction.")).

 2. *Defendants' post-hoc rationalizations cannot overcome the plain language of the April Delegation and Memorandum.*

Attempting to circumvent the clear text of the April Delegation and Memorandum, Defendants resort to what they claim is evidence of Nielsen's alleged intent in approving the order. First, Defendants emphasize Nielsen's invocation of her authority to set an "order of succession" under Section 113(g)(2) of the HSA instead of her authority to issue "delegations of

---

[2] Defendants' argument regarding McAleenan's supposed change to the order of succession in November 2019 misses the point. *See* Defs.' Mem. at 14. The relevant change is not, as Defendants suggest, the further amendment that McAleenan made to the list in Annex A of Delegation 00106, but rather the changes he made to Section II.A. In stark contrast to Nielsen's April Delegation and Memorandum, which made no changes to Section II, McAleenan explicitly sought to amend Section II.A of the Delegation to state that Annex A would govern the order of succession "in the event of the Secretary's death, resignation or inability to perform the functions of the [o]ffice." Ex. 8 (Amendment to the Order of Succession for the Secretary of Homeland Security (Nov. 8, 2019) ("November 8 Amendment"). *See ILRC*, 2020 WL 5798269, at *8; *La Clinica de la Raza*, 2020 WL 6940934, at *14.

authority" under Section 112(b)(1). Second, Defendants assert that Plaintiffs "overlook the context of DHS Delegation 00106" by refusing to consider the April Memorandum as the operative order and ignoring Nielsen's contemporaneous public statements prior to her departure. Both of these arguments—which are unmoored from the plain language of Nielsen's April 2019 directives and have been universally rejected by courts and GAO—fail.

As a preliminary matter, the Court may not disregard the plain language of the April Delegation and Memorandum in favor of what Defendants allege is Nielsen's unstated intent. Courts and GAO have all found that the text governs over Defendants' "contemporaneous understanding and implementation" of Nielsen's April amendment to the order of succession. Defs.' Mem. at 12 n.1. *See Batalla Vidal*, 2020 WL 6695076, at *9 ("The court credits the text of the law over *ex post* explanations that the text means something other than what it says."); *Casa de Md.*, 2020 WL 5500165, at *22 ("[T]he Government provides no authority for this Court to eschew the plain meaning of Nielsen's order and divine her intent as meaning something else."). As GAO concluded:

> We are mindful that the timing of Secretary Nielsen's resignation the next day and the subsequent actions and statements of officials . . . may suggest that she intended for Mr. McAleenan to become the Acting Secretary upon her resignation. However, it would be inappropriate, in light of the clear express directive of the April Delegation, to interpret the order of succession based on post-hoc actions.

Ex. 3 (GAO Report) at 9. The positions now taken by Defendants were not set forth in the April Delegation itself, and therefore constitute no more than impermissible *post hoc* rationalizations for agency action. *See Casa de Md.*, 2020 WL 5500165, at *22 (citing *Dep't Homeland Security v. Regents of Univ. of Cal.*, 140 S. Ct. 1891, 1908 (2020) (agency action "must be viewed

critically to ensure that [it] is not upheld on the basis of impermissible *post hoc* rationalization")).[3]

The courts assessing the April Delegation have also consistently rejected the precise arguments that Defendants urge here. First, courts have rejected Defendants' primary argument that Nielsen's invocation of her authority under 6 U.S.C. § 113(g)(2) to set an "order of succession" in the April Memorandum meant to cover all possible circumstances, not just those expressly covered by Annex A. Defs.' Mem. at 5–8; *see also id.* at 9-10. Section 113(g)(2) permits the Secretary to change the order of succession due to *either* the Secretary's temporary "disability" or "absence" *or* the office's permanent "vacancy." *See ILRC*, 2020 WL 5798269, at *8. Thus, Nielsen's invocation of her Section 113(g)(2) authority is entirely consistent with the interpretation that the April Delegation and Memorandum changed the order of succession only in the first of those scenarios, where the Secretary is temporarily "absen[t]" due to disaster or emergency. *See Casa de Md.*, 2020 WL 5500165, at *22; *Batalla Vidal*, 2020 WL 6695076, at *9. *See also* Pls.' Mem. 22-23.

Nor is it meaningful that Nielsen chose not to invoke her authority to delegate her duties under Section 112(b)(1), DHS's general delegation-and-vesting statute. *See* Defs.' Mem. at 7. The general grant of authority under Section 112(b)(1) authorizing Nielsen to delegate her duties to another officer for any reason does not displace her specific authority under Section 113(g)(2) to delegate her duties during a temporary absence. Pls.' Mem. 22-23; *ILRC*, 2020 WL 5798269,

---

[3] Defendants' reliance on *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019) is misplaced. *See* Defs. Mem. at 14 n.1. In that case, the court merely reaffirmed the long-standing principle that an agency is afforded deference in interpreting its own regulation when the agency rule is "genuinely ambiguous"—which, as discussed above, *supra* at 3-5, the April Delegation is not. The *Kisor* court emphasized, by contrast, "that a court should decline to defer to a merely 'convenient litigating position' or '*post hoc* rationalizatio[n] advanced' to 'defend past agency action against attack,'" such as Defendants' arguments in this case. *Kisor*, 139 S. Ct. at 2417 (quoting *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012)). *See La Clinica de la Raza*, 2020 WL 7053313, at *6 (rejecting Defendants' invocation of *Kisor* to request that "the court to defer to their interpretation of the order offered in the context of this litigation, not [DHS]'s contemporaneous explanation").

at *8. Both Section 112(b)(1) and Section 113(g)(2) permit Nielsen to make the changes that she made in the April Delegation and Memorandum. Defendants are also wrong in asserting that an "order of succession" and a "delegation of authority" are mutually exclusive. Even McAleenan's November 2019 order, which attempted to modify Delegation 00106 to state that Annex A governed the "order of succession" in the case of both temporary and permanent vacancies pursuant to McAleenan's alleged Section 113(g)(2) authority, retained Annex A's title as an "Order for Delegation of Authority." Ex. 8 (November 8 Amendment).

Defendants' attempt to manufacture a conflict between the April Memorandum and the April Delegation—which Defendants claim is a mere "administrative document," Defs'. Mem. at 6, 8—falls flat. *See* Pls.' Mem. 21-22. As discussed *supra* at 3-5, like the April Delegation, the April Memorandum explicitly limited the changes that Nielsen made to Annex A of Delegation 00106. The April Delegation implemented what Nielsen's April Memorandum expressly required—namely, it amended Annex A to Delegation 00106, and did no more.

Defendants' observation that Delegation 00106 was originally signed by a different Secretary also does not compel a different result. When Secretary Johnson first issued Revision 8 to Delegation 00106, he created two tracks for succession: one track in the event of the Secretary's death, resignation, or inability to perform the functions of the office, and one in the event of the Secretary's inability to serve during disaster or emergency. Although, at the time of Revision 8 was initially issued, Johnson did not have the authority to set the order of succession, it is undisputed that Nielsen *did* have that authority when she re-issued Delegation 00106 multiple times from 2017 to 2019 and chose to preserve the two tracks for succession. *See Casa de Md.*, 2020 WL 5500165, at *20; Pls.' Mem. at 24. There is no support for Defendants' contention that the April Memorandum—which explicitly referenced Delegation 00106—meant

to abandon this established framework. *See Casa de Md.*, 2020 WL 5500165, at *20 (Nielsen

"left in place the framework set by Secretary Johnson"); *Batalla Vidal*, 2020 WL 6695076, at *2.

Defendants further misplace their reliance on DHS's statements to the public around the

time of Nielsen's resignation. Defs.' Mem. at 12. These "contemporaneous public statements and

DHS press releases" cannot overcome the language of the legally binding directive that Nielsen

issued. *Casa de Md.*, 2020 WL 5500165, at *20.

This Court should reach the same conclusion as GAO and every other court that has

considered the issue, and find that McAleenan never lawfully served as Acting Secretary.

**B. The FVRA's Enforcement Provision bars ratification because McAleenan was performing a duty of the Secretary when he issued the Rule.**

Because McAleenan was serving unlawfully, the Rule is void ab initio and may not be

ratified under Section 3348 of the FVRA. *See* 5 U.S.C. § 3348(d)(1) (the "Enforcement

Provision"). Defendants incorrectly contend that the FVRA's Enforcement Provision does not

apply because McAleenan was not performing a "function or duty" of the Secretary within the

meaning of Section 3348 when he promulgated the Rule. Defs.' Mem. at 17-21. Not so. As

Plaintiffs explained, *see* Pls.' Mem. at 15-16, Section 3348 defines a "function or duty" to

include any responsibility of the applicable office "that is established by statute and is required

by statute to be performed by the applicable officer (and only that officer)." 5 U.S.C. §

3348(a)(2)(A). That provision simply "require[s] that the statute or regulation at issue provide

that the function or duty at issue is assigned to one particular office." *L.M.-M.*, 442 F. Supp. 3d at

31. Because the INA assigns the responsibility to issue regulations to the Secretary, and no other

officer, *see* 8 U.S.C. 1103(a)(3), that responsibility satisfies the definition of "function or duty"

under the statute's Enforcement Provision. Accordingly, the Rule may not be ratified.

Defendants' contention that the term "function or duty" in Section 3348 includes only duties that may not be delegated or reassigned is inconsistent with the FVRA's statutory purpose and leads to the absurd result that the Secretary has virtually *no* "functions or duties." *See* Defs.' Mem. 20-21; *Northwest*, 2020 WL 5995206, at *16 (rejecting that argument). Citing DHS's general delegation statute, 6 U.S.C. § 112(b)(1), Defendants argue that there is no function that is assigned "only" to the Secretary under 5 U.S.C. § 3348(a)(2)(A)(ii). And because the statute also permits the Secretary to perform "[a]ll functions of all officers, employees, and organizational units of the Department," there is likewise no function assigned "only" to any sub-officer. 6 U.S.C. § 112(a)(3). Thus, under Defendants' reading, no action executed by a DHS official could ever be voided under the FVRA because virtually every duty can be reassigned. Defendants do not identify a single example of statutory or regulatory text specifying that a particular duty within DHS may not be delegated or reassigned; nor do any of the statutes establishing the primary duties of officers within DHS contain such a provision.[4]

More broadly, because "vesting and delegation statutes can be found throughout the Executive Branch . . . the logic of Defendants' position would cover all (or almost all) departments subject to the FVRA," effectively removing any means for enforcing the FVRA in

---

[4] *See* Homeland Security Act of 2002, Pub. L. 107-296, 116 Stat. 2135 (providing only that the Secretary may not delegate acquisition authority to an officer of the Department not appointed by the President with the advice and consent of the Senate); Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108-458, 118 Stat. 3638 (providing only limitations on the Director's authority to delegate the duty and authority to establish and implement guidelines for the intelligence community); Implementing Recommendations of the 9-11 Commission Act of 2007, Pub. L. No. 110-53, 121 Stat. 266; Robert T. Stafford Disaster Relief and Emergency Assistance Act of 1988, Pub. L. 100-707, 102 Stat. 4696 (indicating that the Secretary may delegate any of her functions "except as otherwise provided by this chapter"); Post-Katrina Emergency Management Reform Act of 2006, Pub. L. 109-925, 120 Stat. 1355; Immigration and Nationality Act of 1965, Pub. L. 89-236, 79 Stat. 911 (containing only narrow restrictions on the power of the Attorney General to delegate duties to certain specified parties, or within a specific period of time); Maritime Transportation Security Act of 2002, Pub. L. 107-295, 116 Stat. 2064; Coast Guard and Maritime Transportation Act of 2006, Pub. L. 109-241, 120 Stat. 516; Security and Accountability for Every Port Act of 2006, Pub. L. 109-347, 120 Stat. 1884; Coast Guard Authorization Act of 2010, Pub. L. 111-281, 124 Stat. 2905 (containing only the stipulation that the Commandant may not delegate to the Chief Acquisition Officer the authority to establish, approve, and maintain technical requirements); Aviation and Transportation Security Act of 2001, Pub. L. 107-71, 115 Stat. 597.

most federal agencies. *L.M.-M.*, 442 F. Supp. 3d at 31. This reading would severely undermine Congress's intent in passing the FVRA, given that "[i]t was the pervasive use of [] vesting-and-delegation statutes, along with the lack of an effective enforcement process" for enforcing the plain terms of the prior Vacancies Act, "that convinced Congress of the need to enact the FVRA." *Id.* at 34 (quotation marks omitted).

Moreover, DHS's reading of Section 3348 to exclude all delegable functions does not cohere with the FVRA's text and structure. Multiple other provisions of the statute make clear that—contrary to DHS's contention—functions or duties within the meaning of Section 3348 may be reassigned. First, under Section 3348(a), "[u]nless an officer or employee is performing the functions and duties of the vacant office in accordance with the FVRA's appointment requirements, time limitations, and exclusivity provision, the office shall remain vacant," and, in the case of a subcabinet office, "only the heads of such Executive agency may perform any function or duty of such office." *Id.* (citing 5 U.S.C. §§ 3345, 3346, 3347, 3348(b)). For example, if the CBP Commissioner were serving in violation of the FVRA's appointment requirements, under the FVRA's enforcement provisions, the Secretary (and only the Secretary) of DHS "may perform any function or duty of" the CBP Commissioner in his place. *See* 5 U.S.C. § 3348(b)(2). "[T]his fallback provision presupposes that the head of the department will have authority to discharge the functions and duties of the vacant, subcabinet office." *L.M.-M.*, 442 F. Supp. 3d at 32. But under DHS's view of "functions or duties," "the fallback would be rendered meaningless" because it "would apply only to cases, if any, where the relevant subcabinet office is the sole office permitted to perform the 'functions or duties' at issue *and* where the department head's vesting-and-delegation authority is insufficient to overcome that exclusive assignment of

authority." *Id*. Contrary to DHS's view, therefore, the FVRA's Enforcement Provision must apply even when an officer's functions or duties can be entirely delegated to another officer.

Similarly, the definition of regulatorily assigned functions or duties under Section 3348 also contemplates that some functions or duties established by regulation may be reassigned. *Id*. at 33 (citing 5 U.S.C. § 3348(a)(2)(B)(ii)). That provision "defines the functions or duties of a vacant office to include those that were established by regulation and are 'in effect at any time during the 180-day period preceding the date on which the vacancy occurs.'" *Id*. (citing 5 U.S.C. § 3348(a)(2)(B)(ii)). As the *L.M.-M.* court observed, "the [180-day] lookback provision contemplates that agencies may and will use their organic authorities to issue rules reassigning duties and that duties subject to that authority may, at least at times, fall within the statutory definition of 'functions or duties.'" *Id*. Indeed, the Senate Report on which Defendants rely, Defs.' Mem. 18, acknowledges that, prior to a vacancy, an official may assign a regulatorily established function or duty to another officer. *See* S. Rep. No. 105-250, at 18. The lookback provision thus further undermines DHS's argument that the phrase "function or duty" includes only duties that may not be reassigned.[5]

---

[5] The cases that Defendants cite for the proposition that only responsibilities that may not be delegated are considered functions and duties under the FVRA do not address these textual arguments. They either discuss the definition of functions and duties only in passing, *see Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1, 12 (D.C. Cir. 2019) (no dispute between parties as to definition of functions or duties); *United States v. Harris Cty.*, No. 16-CV-2331, 2017 WL 7692396, at *3 n.5 (S.D. Tex. Apr. 26, 2017) (FVRA argument "has been waived . . . because it wasn't raised until its reply brief"); or they address the definition of a function or duty established by regulation, *see Schaghticoke Tribal Nation v. Kempthorne*, 587 F. Supp. 2d 389, 420 (D. Conn. 2008) (no statute "even mention[ed]" the duties at issue); *Stand Up for California! v. United States Dep't of Interior*, 298 F. Supp. 3d 136, 148 (D.D.C. 2018) (authority assigned by regulation to the Secretary was not a function or duty under FVRA after delegation); Order, *United States v. Vill. of Tinley Park*, No. 16-cv-10848 (N.D. Ill. July 17, 2017), ECF No. 55 (discussing duty assigned to Assistant Attorney General by regulation). And contrary to Defendants' contentions, the *L.M.-M* court did not address "only the construction of functions and duties established by regulation," Defs.' Mem. at 21. The court interpreted the USCIS Director's statutory duties under 6 U.S.C. § 271. *See L.M.-M.*, 442 F. Supp. 3d at 30.

Defendants' reliance on *Northwest*[6] for the proposition that rulemaking is not a "function or duty" of the Secretary, *see* Defs.' Mem. at 19-20, misunderstands the difference between a duty established by statute and one established by regulation. The *Northwest* court found that because rulemaking authority had been delegated to the Deputy Secretary in 2003, before "the 180-day window proceeding the vacancy," it was not a function or duty required to be performed by the Secretary within the meaning of the FVRA. *Northwest*, 2020 WL 5995206, at *16. As Plaintiffs explained, however, rulemaking—a function or duty established by *statute* and required by statute to be performed by the Secretary—does not cease to be a function or duty merely because it has been delegated. *See* Pls.' Mem. 17-18; 5 U.S.C. § 3348(a)(2)(A). In other words, a subsequent delegation does not change the nature of a statutorily established duty.

Section 3348(a)(2)(B)(ii), by contrast, permits DHS to modify the functions and duties *established by regulation* before "the 180-day period preceding the date on which the vacancy occurs." 5 U.S.C. § 3348(a)(2)(B)(ii); *see supra* at 12. While this definition contemplates that functions and duties initially established by regulation may no longer be "in effect" by the time of the vacancy, *id.*, Section 3348(a)(2)(A) contains no comparable provision . Defendants and the *Northwest* court read an exception into the definition of functions and duties established by statute that simply does not exist. In view of Congress's intent in enacting the FVRA to limit the rampant use of delegation within agencies as a means to circumvent the appointment process for a vacant office, *see L.M.-M.*, 442 F. Supp. 3d at 34, it is implausible that agencies would be permitted to avoid the FVRA's Enforcement Provision altogether through delegation of nearly any responsibility. *See* Pls.' Mem. at 18-20.

---

[6] Defendants do not acknowledge that *Northwest* rejected their principal argument that all duties that could be delegated fall outside the Enforcement Provision. *See Northwest*, 2020 WL 5995206, at *16.

Defendants' contention that the definition of function or duty "turns on" whether a specific "officer is the only individual *permitted to exercise* [a particular] authority," not "whether a specific officer is the only individual granted [that] authority" by statute or regulation, is likewise untenable. Defs.' Mem. at 20 (emphasis in original). As discussed *supra* at 11*,* the HSA authorizes the Secretary to exercise the authority of all subordinate officers. 6 U.S.C. § 112(a)(3) ("All functions of all officers, employees, and organizational units of the Department are vested in the Secretary"). Defendants' strained interpretation of Section 3348(a)(2) would mean that any function that may be performed by more than one officer—that is, all functions of all DHS officers—fall entirely outside of the FVRA's Enforcement Provision. The definition of functions and duties cannot be circumscribed to such an extreme. The *L.M.-M.* court thus concluded that the "fact that a department head is also vested with all functions specifically vested in other department officers and employees cannot, standing alone, defeat the enforcement mechanisms found in the FVRA's vacant-office provision." 442 F. Supp. 3d at 32. In other words, the fact that a lawfully serving Deputy Secretary may also be permitted by delegation to issue regulations does not remove rulemaking authority from the functions and duties of the Secretary.[7]

McAleenan's unauthorized issuance of the Rule thus may not be subsequently ratified.

**C.  The Rule must be set aside under the APA because it was issued in excess of statutory authority and has not been ratified by a lawfully appointed successor.**

[7] Additionally, at the time of McAleenan's and Wolf's alleged tenures as Acting Secretary, the position of Deputy Secretary was vacant. Since the Deputy Secretary Elaine Duke's departure on April 15, 2018, the President has not nominated another candidate for the Deputy position and any acting officer's service pursuant to the FVRA expired on November 11, 2018, 210 days after the vacancy arose.

Even if rulemaking authority does not constitute a function or duty of the Secretary, McAleenan issued the Rule in excess of his statutory authority, in violation of the APA. *See* Pls.' Mem. at 19-20, 26. The Rule must also be set aside as unlawful on this separate basis. *Id.*

Defendants argue that, even if McAleenan's actions violated the APA, those defects were cured by Wolf's recent actions, which they contend amounts to subsequent ratification. Defs.' Mem. at 17. Defendants claim that even in the "alternative scenario" that both McAleenan and Wolf were serving unlawfully, Gaynor was eligible to become Nielsen's successor and change the order of succession immediately to re-install Wolf as Acting Secretary. *See* Exs. 11 (*Ratification of Actions Taken by the Acting Secretary of Homeland Security*, 85 Fed. Reg. 59,662 (Sep. 23, 2020) ("September 17 Memorandum") at 3; 13 (*Ratification of Certain Actions Taken by Former Acting Secretary Kevin McAleenan*, 85 Fed. Reg. 65,653 (Oct. 7, 2020) ("October 7 Memorandum") at 3; Defs.' Mem. at 15-16. But Defendants cannot cure Wolf's unlawful service solely by orchestrating a sham process to displace Nielsen's proper successor in favor of their own preferred candidate.

Since Plaintiffs filed their opening memorandum, Defendants have admitted that the September 10, 2020 order in which Gaynor purported to amend the order of succession for Acting Secretary was issued *before* the President submitted Wolf's nomination to the Senate— although the nomination is the event that, according to Defendants, triggered Gaynor's eligibility to serve as Acting Secretary in the first place. *See* Defs.' Letter dated Nov. 13, 2020, *State of New York, et al. v. Trump, et al.*, No. 17-cv-5228 (E.D.N.Y. Nov. 13, 2020), ECF No. 303. Despite this "self-made thicket," *Batalla Vidal*, 2020 WL 6695076, at *9 n.11, Gaynor sought to amend the order of succession yet again on November 14, 2020 to designate Wolf as next in line for Acting Secretary. Defs.' Mem. at 16 n.3. And Wolf then purported to ratify the Rule on

15

November 16, 2020. *Id*. Defendants' hasty efforts to amend the order of succession for the fourth time fare no better than their prior botched attempts.

First, Defendants have never even claimed that Gaynor served as Acting Secretary, and therefore cannot permissibly rely upon actions that Gaynor took in furtherance of a job he never actually held. Second, Krebs—not Gaynor—was Nielsen's lawful successor and Wolf's nomination to the Senate did not create another vacancy for Gaynor to fill. Third, Gaynor was never properly appointed by the President pursuant to the FVRA—the only source of authority that Defendants invoke for Gaynor's potential service as Acting Secretary. Fourth, even if Gaynor's service were proper, he lacked the authority as Acting Secretary to amend the HSA's order of succession to install Wolf as his successor.

Every court considering Defendants' ratification-related arguments has rejected them. *See ILRC*, 2020 WL 5798269, at *9 (enjoining final rule promulgated by Wolf that increased immigration-related fees as likely unlawful under the APA); *Northwest*, 2020 WL 5995206, at *24 (same); *Batalla Vidal*, 2020 WL 6695076, at *9 (vacating Wolf's changes to the DACA program as unlawful under the APA). This Court should do the same.

1. *Gaynor never occupied the Acting Secretary position and therefore cannot exercise the powers of that office to change the order of succession to install Wolf as Acting Secretary.*

As an initial matter, Gaynor never occupied or purported to occupy the Acting Secretary position, and therefore cannot exercise the powers of that office. Gaynor's September 10 and November 14 orders do not assert that he served as Acting Secretary. Instead, those orders state that he was exercising "any authority [he] may have been granted by the FVRA to designate the order of succession" if Wolf was not properly serving as Acting Secretary. Ex. 12 (Order Designating the Order of Succession for the Secretary of Homeland Security signed by Peter T.

Gaynor (Sept. 10, 2020) ("Gaynor Order")); Declaration of Neal J. Swartz  in support of Defs.'
Mot. to Dismiss, Ex. 2. Even now, Defendants continue to argue that Gaynor's authority was
purely hypothetical. *See* Defs.' Mem. at 25-26.

But Defendants cannot have it both ways: an official may not exercise the powers of a
vacant office without actually occupying that office. As a court in the Eastern District of New
York recently observed: "[A]lthough litigants can make arguments in the alternative, the court is
not aware of any authority that would allow a government official to take administrative action
in the alternative." *Batalla Vidal*, 2020 WL 6695076, at \*9. Rejecting Defendants' identical
argument, the court explained:

> There is no indication that Administrator Gaynor has ever been empowered by the
> agency to exercise the powers of the Acting Secretary, and there is every indication to the
> contrary. Even if Administrator Gaynor should be Acting Secretary, DHS cannot
> recognize his authority only for the sham purpose of abdicating his authority to DHS's
> preferred choice, and only in the alternative.[8]

*Id.* Defendants have proffered no authority to the contrary. Gaynor cannot exercise the powers of
the Secretary to change the order of succession where it is undisputed that he never served in a
bona fide capacity as Acting Secretary. The Court may hold on this basis alone that the Rule has
not been properly ratified and must be set aside under the APA. *See Batalla Vidal*, 2020 WL
6695076, at \*9.

   2.   *Gaynor was not eligible to serve as Acting Secretary because Wolf's nomination did
        not displace Krebs as Nielsen's lawful successor.*

Defendants are wrong that "under Plaintiffs' theory" of succession, Gaynor would be
eligible to assume the Acting Secretary position upon Wolf's nomination. *See* Defs.' Mem. at 26.

---

[8] Contrary to Defendants' assertions, Defs.' Mem. at 26, the court in *Batalla Vidal* correctly understood Defendants'
position that Gaynor was exercising the Secretary's authority solely in the alternative, during a time then DHS was
claiming that Wolf was Acting Secretary—and the *Batalla Vidal* court directly rejected this theory. 2020 WL
6695076, at \*9.

The FVRA permits an acting officer to perform the duties of a vacant office only when the prior officer "dies, resigns, or is otherwise unable to perform the functions and duties of the office." 5 U.S.C. § 3345(a). When Nielsen resigned and a vacancy arose under Section 3345, the order of succession under the HSA—which incorporated Executive Order 13753—determined her lawful successor. *See* 5 U.S.C. § 3347; Exs. 1 (April Delegation); 3 (GAO Report) at 9; *supra* at 3-4. Defendants do not dispute that the HSA's succession order governed in April 2019. *See* Defs.' Mem. at 3. Under that succession order, Krebs, then-Director of CISA, was the only officer eligible to serve as Acting Secretary. *See* Ex. 3 (GAO Report) at 8 n.11.

DHS's contention that Wolf's nomination created a new vacancy for the Secretary's office under Section 3346 is meritless. DHS has argued previously that Section 3346 of the FVRA does not govern the length of service permitted for acting officials designated under the HSA. *See Batalla Vidal*, 2020 WL 6695076, at *9; *Casa de Maryland*, 2020 WL 5500165, at *17; *ILRC*, 2020 WL 5798269, at *10-11. Under this argument, the proper successor to the Acting Secretary position in April 2019 would not be subject to Section 3346, and Wolf's nomination would have had no effect on that Acting Secretary's tenure. Defendants should not be permitted to take a contrary position now that it is advantageous for them to admit that Section 3346 applies.

In any event, DHS's position is inconsistent with the FVRA's time limitation provision. Section 3346 provides that "the person serving as an acting officer as described under section 3345 may serve in the office [when the President submits a nomination for the position to the Senate]" beyond the statute's 210-day time limit. 5 U.S.C. § 3346(a)(2). As the D.C. Circuit has observed, this provision "lengthen[s] the term of permissible acting service . . . with a tolling period while a nomination is pending." *N.L.R.B. v. SW. Gen., Inc.*, 137 S. Ct. 929, 936 (2017).

18

The provision thus extends the tenure of the person serving pursuant to Section 3345 by tolling the time limitation. It does not, as Defendants contend, create a new vacancy or authorize DHS to displace a lawfully serving Acting Secretary with another person of its choosing. Thus, while Wolf's nomination perhaps would have permitted Krebs's continued service as Acting Secretary in spite of the FVRA's time limitation provision, it did not create another vacancy that would allow DHS to swap in a new Acting Secretary.[9]

Defendants fail to cite any support for their position that Wolf's nomination triggered a vacancy "for acting service by the *then* senior-most officer." Defs.' Mem. at 24 (emphasis in original). Indeed, the Senate Report on which Defendants rely undermines Defendants' efforts to expand the number of vacancies. That Report explains that Congress intended that its extension of the time period for acting service pending nomination under Section 3346(a)(2) would "lead to a *reduction* in the number of acting officials, a goal the Committee finds highly desirable." S. Rep. No. 105-250, at 14 (emphasis added). Reading Section 3346 to allow designation of yet another acting official whenever the President submits a new nomination would produce the opposite effect, by increasing—not decreasing—the number of acting officials eligible to serve. Section 3346 does not, as Defendants suggest, *see* Defs.' Mem. at 24-25, open the door to a new acting official each time a nomination is submitted.

3. *Gaynor was never properly appointed pursuant to Section 3345(a)(2) of the FVRA and could thus not exercise the powers of the Secretary.*

Nor was Gaynor appointed by the President pursuant to Section 3345(a)(2) of the FVRA because the President never invoked this authority to designate Gaynor as Acting Secretary. *See*

---

[9] Krebs's recent firing does not change this analysis. There is no dispute that Gaynor purported to issue his order attempting to change the order of succession under the HSA before any potential vacancy created by Krebs's departure on November 17, 2020. When Gaynor allegedly exercised his "authority" as Acting Secretary—first on September 10, 2020 and then on November 14, 2020—Krebs was still rightful successor to the Acting Secretary position.

5 U.S.C. § 3345(a)(2) (the President "may direct a person . . . to perform the functions and duties of the vacant office temporarily in an acting capacity subject to the time limitations of section 3346"). As Plaintiffs explained, *supra* at 3-4, 18, Nielsen's successor served pursuant to the HSA's succession order set forth in Delegation 00106, not pursuant to Presidential direction.[10] Delegation 00106, in turn, incorporates Executive Order 13753 in establishing the succession order in circumstances when the Secretary has died or resigned from office. *See* Ex. 1 (April Delegation).

Contrary to Defendants' assertions, Executive Order 13753 does not constitute an ongoing exercise of the President's authority under the FVRA. Defendants contend that each time a vacancy in the Secretary's office arises, the most senior person in the Executive Order is considered to be appointed by the President pursuant to Section 3345(a)(2). But this characterization squarely conflicts with Defendants' own position that, at the time of the vacancy that Wolf supposedly filled, the "[HSA] alone govern[ed] which official shall serve as Acting Secretary." Ex. 11 (September 17 Memorandum) at 2; Ex. 13 (October 7 Memorandum).

Defendants cannot choose to rely on the HSA's succession order only when convenient for them. If the Executive Order constitutes an exercise of the President's FVRA authority that continues to operate automatically upon each vacancy, the Executive Order would supplant the HSA's succession order and Wolf would not be next in line to serve as Acting Secretary. Alternatively, if the HSA's succession order controls because the Executive Order is not an ongoing exercise of presidential authority under the FVRA, Gaynor would not have been

---

[10] To the extent Defendants suggest that there was no HSA succession order in place at the time of Gaynor's ascension, that argument must be rejected. Defendants cannot claim to address an alternative scenario in which "Defendants are wrong" and Plaintiffs' theory of succession is correct, *see* Defs.' Mem. at 15, 26, but then fail to accept the fundamental premise of Plaintiffs' argument: that Nielsen did set a succession order under the HSA and her successor served pursuant to that order. *See supra* at 3-5. Every court and GAO have all found that the HSA's succession order under Delegation 00106 governed at the time of Nielsen's resignation. *See id.*

designated Acting Secretary pursuant to Section 3345(a)(2). Under both circumstances, Wolf's service and subsequent ratification orders are unlawful.

Defendants' position that the HSA "alone governed" the succession order after Gaynor's alleged tenure can only be true only if the President *was not* continuing to exercise his FVRA authority. Courts have consistently held that the succession order set under the agency's organic statute does not displace the President's FVRA authority. In *United States v. Valencia*, the Department of Justice argued that the agency-specific organic statute "does not limit the President's authority to invoke the Vacancies Reform Act to designate an Acting [Official]." No. 17-cr-882, 2018 WL 6182755, at *4 (W.D. Tex. Nov. 27, 2018) (citing *Designating an Acting Attorney General, Office of Legal Counsel*, Nov. 14, 2018, Slip Op. at *5-8). The court found on this basis that the order of succession set by the Department Head pursuant to its organic statute "provides an internal mechanism for succession *in the absence of presidential appointment*." *Id.* (emphasis added). *See Guedes v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 356 F. Supp. 3d 109, 139 (D.D.C. 2019) (when an "agency-specific statute designates a successor . . . the President may choose to invoke the FVRA . . . or the President may permit the [designated successor under the agency-specific statute] to assume the responsibilities of Attorney General"); *English v. Trump*, 279 F. Supp. 3d 307, 319 (D.D.C. 2018) (the President's choice in appointment of Director of Consumer Protection Financial Bureau superseded succession order under agency-specific statute).

Otherwise, the Secretary would be able to override the President's choice of acting official, despite the President's constitutional authority of "appointing, overseeing, and controlling those who execute the laws." *English v. Trump*, 279 F. Supp. 3d 307, 327 (D.D.C. 2018) (citing U.S. Const. art. II, § 3). As the court in *Northwest* observed, it would be an

21

"oddity" if "an order from an Acting Secretary" could "supplant a presidential designation." 2020 WL 5995206, at *14 n.1; *see also English*, 279 F. Supp. 3d at 327 (given President's constitutional authority to make appointments, it would raise constitutional concerns if courts interpreted agency-specific statutes to give agencies unilateral authority to appoint acting officials "no matter whom the President would prefer in that role").[11] By arguing that the HSA succession order—the basis for Wolf's purported ascension—governed, Defendants necessarily argue that Executive Order 13753 was not an ongoing exercise of the President's power under the FVRA.

    *4.   Neither McAleenan nor Gaynor had the authority to issue the modified order of succession that purported to install Wolf as Acting Secretary.*

       Even if Gaynor was properly appointed Acting Secretary, he lacked authority change the order of succession under the HSA to install Wolf as his sucessor. *See* Pls.' Mem. at 26-28. Defendants' reliance on cases addressing different statutes to argue otherwise is misplaced, and ignores the text and purpose of the FVRA and the HSA. Specifically, each of the cases that Defendants cite in support of their interpretation of "generally accepted bounds of the role of acting government officers," Defs.' Mem. at 22 (citing *In re Grand Jury Investigation*, 916 F.3d 1047, 1055-56 (D.C. 2019); *Ryan v. United States*, 136 U.S. 68, 81 (1890); *Keyser v. Hitz*, 133 U.S. 138, 145-46 (1890)), involved other statutes which "*expressly* vested the first assistants at issue with the authority to exercise the duties and functions of the vacant office." *Northwest*, 2020 WL 5995206, at *23 (emphasis in original). These cases do not address whether an inferior officer—i.e. an acting secretary other than a first assistant—may change the order of succession

---

[11] Nor does the HSA's language that the agency-specific statute applies "notwithstanding" the FVRA mean that the Secretary's choice of successor necessarily supersedes that of the President. 6 U.S.C. § 113(g). *See* Defs.' Mem. at 6. As the *Northwest* court suggested, this "notwithstanding" language clarifies that the FVRA is not the exclusive means for vacancy appointments. 2020 WL 5995206, at *18 (D.D.C. Oct. 8, 2020) (the "the HSA establishes an exception to the FVRA framework").

under the HSA. *See id.* Instead, as the Court in *Northwest* correctly explained, the cases at most support the proposition that "an acting official must take on [ ] authority either by implication or by virtue of statutory language that expressly vests the acting official with that authority." *Id.*, at *19.

Here, the FVRA provides that any statutory exemption from its coverage must "*expressly*" authorize "the President, a court, or the head of an Executive Department, to designate an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity" *or* designate "an officer or employee" to "perform the functions and duties of a specified office temporarily in an acting capacity." 5 U.S.C. § 3347(a)(1) (emphasis added). Accordingly, only express language "is sufficient to create an exception to the FVRA." *Northwest*, 2020 WL 5995206, at *19. The HSA, in turn, explicitly distinguishes between "Secretary" and "Acting Secretary," and expressly authorizes the Secretary (i.e. the "head of [the] Executive Department," 5 U.S.C. § 3347(a)(1))—and only the Secretary—to amend the order of succession. *See* 6 U.S.C. § 113(g)(2). The express command of the FVRA and the plain text of the HSA, therefore, make clear that the HSA explicitly limits the authority to change the succession order solely to the Secretary —and not to an Acting Secretary or any other official. *See* Pls.' Mem. at 26 (citing *Northwest*, 2020 WL 5995206, at *17-18).

Contrary to Defendants' arguments, there is nothing "unusual" in excepting the power of succession from an acting secretary, nor does it mean that an acting secretary cannot perform other duties of the secretary. Defs.' Mem. at 22-23. Rather, such exception comports entirely with Congress's objective, when enacting the FVRA, to "reclaim its Apportionments Clause power," and to limit the "frequent use of organic vesting and delegation statutes to assign the duties of [presidentially appointed, Senate-confirmed] offices to officers and employees, with

23

little or no check from Congress." *L.M.-M.*, 442 F. Supp. 3d at 29 (alterations and internal

quotation marks omitted).

Additionally, Defendants' reading of the HSA is "constitutionally problematic," *see*

Defs.' Mem at 24, because it would mean that an inferior officer could perform the

responsibilities that the Constitution reserve only for the President and the Heads of

Departments. If each inferior officer serving as Acting Secretary could "set a new order of

succession, effectively designating the next Acting Secretary—the 'few potential recipients of

the appointment power specified in the Appointments Clause' would arguably expand beyond

constitutional limits." *Northwest*, 2020 WL 5995206, at *22 (quoting *Weiss v. United States*,

510 U.S. 163, 196 (1994) (Scalia, J., concurring)). By contrast, construing the HSA only to

permit the Head of a Department to select her replacement does not raise comparable

constitutional concerns. *See* Defs.' Mem at 24. Like the President, the Heads of Departments

"possess a reputational stake in the quality of the individuals they appoint . . . they are directly

answerable to the President, who is responsible to his constituency for their appointments and

has the motive and means to assure faithful actions by his direct lieutenant." *See Northwest*, 2020

WL 5995206, at *20 (quoting *Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 878 (1991)

(Scalia, J., concurring). The Court should thus avoid resolving this "unaddressed constitutional

problem," *id.* at *20, and adopt the more logical reading that the HSA prohibits an Acting

Secretary to amend the order of succession.

## CONCLUSION

For the reasons set forth above, the Court should grant Plaintiffs' motion for partial

summary judgment, deny Defendants' motion to dismiss, and vacate the Rule in its entirety as

void because it is without force or effect and may not be ratified under the FVRA, and is in

excess of statutory authority under the APA.

DATED: December 10, 2020

Respectfully submitted,

**LETITIA JAMES**
*Attorney General of the State of New York*

By: */s/ Ming-Qi Chu*
Ming-Qi Chu,
   *Section Chief, Labor Bureau*
Matthew Colangelo
   *Chief Counsel for Federal Initiatives*
Elena Goldstein,
   *Deputy Bureau Chief, Civil Rights Bureau*
Amanda Meyer, *Assistant Attorney General*
Abigail Rosner, *Assistant Attorney General*
Office of the New York State Attorney
General
New York, New York 10005
Phone: (212) 416-8689
ming-qi.chu@ag.ny.gov

*Attorneys for the State of New York*

**JAMES JOHNSON**
*Corporation Counsel of the City of New York*

By: */s/ Tonya Jenerette*
Tonya Jenerette
   Deputy Chief for Strategic Litigation
Cynthia Weaver, Senior Counsel
Doris Bernhardt, *Senior Counsel*
Melanie Ash, *Senior Counsel*
Hope Lu, *Senior Counsel*
100 Church Street, 20th Floor
New York, NY 10007
Phone: (212) 356-4055
tjeneret@law.nyc.gov

*Attorneys for the City of New York*

**WILLIAM TONG**
*Attorney General of Connecticut*

By: */s/ Joshua Perry*
Joshua Perry
   *Special Counsel for Civil Rights*
165 Capitol Avenue
Hartford, CT 06106-0120
(860) 808-5318
Joshua.perry@ct.gov

*Attorneys for the State of Connecticut*

**THOMAS J. DONOVAN, JR.**
*Attorney General of Vermont*

By: */s/ Benjamin Battles*
Benjamin Battles, *Solicitor General*
Eleanor Spottswood, *Assistant Attorney General*
Julio Thompson,* *Assistant Attorney General*
Office of the Attorney General
109 State Street
Montpelier, VT 05609-1001
(802) 828-5500
benjamin.battles@vermont.gov

*Attorneys for the State of Vermont*

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

By: */s/ Jonathan H. Hurwitz*
Andrew J. Ehrlich
Jonathan H. Hurwitz
Elana R. Beale
Robert J. O'Loughlin
Daniel S. Sinnreich
Amy K. Bowles
Leah Park

1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000
aehrlich@paulweiss.com
jhurwitz@paulweiss.com
ebeale@paulweiss.com
roloughlin@paulweiss.com
dsinnreich@paulweiss.com
abowles@paulweiss.com
lpark@paulweiss.com

**CENTER FOR CONSTITUTIONAL RIGHTS**
Ghita Schwarz
Baher Azmy

666 Broadway
7th Floor
New York, New York 10012
(212) 614-6445
gschwarz@ccrjustice.org
bazmy@ccrjustice.org

**THE LEGAL AID SOCIETY**
Susan E. Welber
Kathleen Kelleher
Susan Cameron
Julie Dona
Hasan Shafiqullah

199 Water Street, 3rd Floor
New York, New York 10038
(212) 577-3320
sewelber@legal-aid.org
kkelleher@legal-aid.org
scameron@legal-aid.org
jdona@ legal-aid.org
hhshafiqullah@legal-aid.org

*Attorneys for Plaintiffs Make the Road New York, African Services Committee, Asian American Federation, Catholic Charities Community Services (Archdiocese of New York), and Catholic Legal Immigration Network, Inc.*