**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| MAKE THE ROAD NEW YORK, *et al.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> KENNETH CUCCINELLI, *et al.*, <br><br> *Defendants*. | No. 19-07993 (GBD) |
| STATE OF NEW YORK, *et al.* <br><br> *Plaintiffs*, <br><br> v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.* <br><br> *Defendants*. | No. 19-cv-07777 (GBD) |

**REPLY IN SUPPORT OF DEFENDANTS'**
**PARTIAL MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

ARGUMENT .............................................................................................................. 1

I.      Mr. McAleenan lawfully served as Acting Secretary ......................................... 1

II.     Mr. McAleenan's actions may be ratified........................................................... 4

III.    Acting Secretary Wolf's ratification of Mr. McAleenan's promulgation of the Rule
        cures any defect.................................................................................................. 7

CONCLUSION ......................................................................................................... 14

## TABLE OF AUTHORITIES

### CASES

*Hooks v. Kitsap Tenant Support Servs., Inc.*,
   816 F.3d 550 (9th Cir. 2016) ........................................................................................ 10, 11

*In re Grand Jury Investigation*,
   916 F.3d 1047 (D.C. Cir. 2019) ............................................................................................ 12

*L.M.-M. v. Cuccinelli*,
   442 F. Supp. 3d 1 (D.D.C. 2020) ................................................................................... 5, 6, 7

*Myers v. United States*,
   272 U.S. 52 (1926) ................................................................................................................. 12

*NLRB v. Southwest General, Inc.*,
   137 S. Ct. 929 (2017) ................................................................................................... 9, 10, 11

*Nw. Immigrants Rts. Project v. USCISC (NWIRP), No. CV 19-3283 (RDM)*,
   2020 WL 5995206 (D.D.C. Oct. 8, 2020) ............................................................. 4, 5, 6, 7, 14

*Palisades Collections LLC v. Shorts*,
   552 F.3d 327 (4th Cir. 2008) ................................................................................................... 6

*Ryan v. United States*,
   136 U.S. 68 (1890) ................................................................................................................. 12

*Sandifer v. U.S. Steel Corp.*,
   571 U.S. 220 ............................................................................................................................ 6

*United States v. Pellicci*,
   504 F.2d 1106 (1st Cir. 1974) ................................................................................................ 12

*United States v. Smith*,
   962 F.3d 755 (4th Cir. 2020) .................................................................................................. 11

*Weiss v. United States*,
   510 U.S. 163 (1994) ............................................................................................................... 14

### STATUTES

5 U.S.C. App. 3 § 3(a) ................................................................................................................ 13

5 U.S.C. § 3345 ....................................................................................................................... 8, 10

5 U.S.C. § 3346(a)(2) ........................................................................................ 8, 9, 10

5 U.S.C. § 3347(a) ............................................................................................ 11, 12, 13

5 U.S.C. § 3348 .................................................................................................. 4, 5, 6, 7

6 U.S.C. § 112 ...................................................................................................... 3, 6, 13

6 U.S.C. § 113 ......................................................................................................... *passim*

12 U.S.C. § 5491(b)(5) ............................................................................................. 11

14 U.S.C. § 302 ........................................................................................................ 13

28 U.S.C. § 508(a) ................................................................................................ 11, 13

31 U.S.C. § 901(a)(1)(A) ......................................................................................... 13

31 U.S.C. § 1344(d)(3) .............................................................................................. 6

35 U.S.C. § 202(f)(1) ................................................................................................. 6

44 U.S.C. § 353(h)(3)(B) .......................................................................................... 6

## OTHER AUTHORITIES

Amending the Order of Succession in the Department of Homeland Security,
   Executive Order No. 13753, 81 Fed. Reg. 90,667, 2016 WL 7211093 (Dec. 9, 2016) ..... *passim*

Plaintiffs' attempt to invalidate the promulgation of the Final Rule: Inadmissibility on Public Charge Grounds (the "Rule") on the basis of the allegedly unlawful service of former Acting Secretary McAleenan is contrary to both the text and the obvious intent of the Department of Homeland Security's ("DHS") controlling order of succession. However, even if Plaintiffs' claim that the order of succession continued to be controlled by Executive Order 13753 is correct, Mr. McAleenan's promulgation of the Rule was properly ratified by Acting Secretary Wolf.

## I.      Mr. McAleenan lawfully served as Acting Secretary

As explained in Defendants' opening memorandum, *New York v. DHS*, 19-cv-7777, Defs.' Partial Mot. to Dismiss and Opp. to Pls.' Partial Mot. for Sum. J. ("Defs.' Mem."), ECF No. 249 at 5-14, in April 2019, then-Secretary of Homeland Security Kirstjen Nielsen exercised her power under the Homeland Security Act ("HSA"), 6 U.S.C. § 113(g)(2), to designate a new order of succession in the event of a vacancy. *See New York v. DHS*, 19-cv-7777, Decl. of Juliana Blackwell ("Blackwell Decl."), ECF No. 250, Ex. 1, Designation of an Order of Succession for the Secretary (Apr. 9, 2019) ("April 2019 Order"). Her signed order states *five times* that she designated a succession order for the Office of the Secretary, without any qualification as to the reason for the vacancy. *Id.* The April 2019 Order supplied a single list of offices in Annex A to control the "order of succession." *Id.* That order created an order of succession under §113(g)(2) that made the Commissioner of U.S. Customs and Border Protection ("CBP") third in line to serve as Acting Secretary of Homeland Security. *See id.* at 2; *see also* Defs.' Mem. at 6. That is why, under her own signed order, Ms. Nielsen swore in then-CBP Commissioner Kevin McAleenan as Acting Secretary upon her resignation. Plaintiffs' counterarguments fail to overcome the plain text of Secretary Nielsen's April 2019 Order.

Plaintiffs now acknowledge that Ms. Nielsen did in fact exercise her § 113(g)(2) authority in the April 2019 Order but claim that she made changes to the order of succession only in the event of disaster or catastrophic emergency. *See* Pls.' Reply and Opp. to Defs.' Mot. to Dismiss, *New York v. DHS*, 19-cv-7777, ECF No. 255-2, ("Pls.' Opp.") at 3-5. However, that argument ignores the text of the April 2019 Order. The April 2019 Order itself makes no mention of either

"disaster" or "catastrophic emergency." *See* April 2019 Order.  Likewise, Annex A has never included the words "catastrophic emergency" or "disaster." *See* Blackwell Decl., Ex. 5 at 5 ("Revision 8").

The reference to "catastrophic emergency" or "disaster" in § II.B of Delegation 00106 does not help Plaintiffs. That provision is expressly a *delegation* of authority, and not an *order of succession*.  Defs.' Mem. at 7.  Thus, Plaintiffs' reading of the April 2019 Order is contradicted by the plain text of Delegation 00106 itself.  It is also belied by the context of Delegation 00106. Revision 8 of Delegation 00106 distinguished between vacancies in § II.A, identifying Executive Order ("EO") 13753 as the document that controlled the order of succession, and disasters and catastrophic emergencies in § II.B, which would be governed by a delegation of authority. *See* Revision 8 at 1. As Plaintiffs recognize, when then-Secretary Jeh Johnson created that distinction, he "did not have the authority to set the order of succession" for the Office of the Secretary. Pls.' Opp. at 8. Thus § II.B could not have been an order of succession for disasters or emergencies because Secretary Johnson only had authority to set an order of delegation. *See* Defs.' Mem. at 9-10.

Plaintiffs argue that Secretary Nielsen did have authority to alter the line of succession when Delegation 00106 was revised several times prior to April 2019, *see* Pls.' Opp. at 8, but that is a red herring.  As explained, in each case Ms. Nielsen did nothing more than issue an order of succession and delegation for sub-Cabinet office; she never signed these revisions of Delegation 00106 nor endorsed any order of succession for the Office of the Secretary.  *See* Defs.' Mem. 13-14.  It was only in the April 2019 Order, one day before her resignation took effect, that she first exercised her congressionally delegated authority to designate an order of succession under §113(g)(2) of the HSA. The fact that Ms. Nielsen could have, but did not, previously exercise her authority under § 113(g)(2) sheds no light on the meaning of § II.B.  Plaintiffs' related claim that Revision 8.5 of Delegation 00106 should be read as incorporating EO 13753 as an order of succession under § 113(g)(2), *see* Pls.' Opp. at 2; *id.* at 20 & n.10, fails for similar reasons. Plaintiffs cannot point to anything that Secretary Nielsen signed to that effect.  Indeed, Plaintiffs'

2

argument conflicts with their subsequent claim that the April 2019 Order and Revision 8.5 "by their express terms amended only the order of succession that applied in the case of disaster or catastrophic emergency *and not* the order of succession that applied under her resignation." *Id.* at 4; *see also id.* at 7.

Plaintiffs also suggest that because §113(g)(2) permits the Secretary to set an order of succession *either* in the event of a resignation *or* when the Secretary has not resigned but is absent or unable to serve, the April 2019 Order must have done only the latter but not the former. *See* Pls.' Opp. at 7. That argument misreads the plain text of the April 2019 Order, contending that Ms. Nielsen's *unqualified* order of succession was in fact only meant to apply in *limited* circumstances. If Ms. Nielsen intended to designate an order of succession for limited circumstances, she would have said so. The argument further requires the baseless assumption that Ms. Nielsen implicitly invoked § 113(g)'s references to "absence" and "disability" in reference to "catastrophic emergency" or "disaster" specifically. But, as explained, none of these words appear in the April 2019 Order.

Plaintiffs next argue that orders of succession and delegations of authority are not "mutually exclusive" and that former Acting Secretary McAleenan's November 2019 order of succession "retained Annex A's title" as a delegation order. Pls.' Opp. at 8. Defendants have never argued that the same list of officials cannot govern both an order of succession and delegation of authority; indeed, they have argued that the April 2019 Order does just that. *See* Defs.' Mem. at 10. However, orders of succession and delegations of authority are *legally* distinct. *See id.* at 13. By reading the April 2019 Order to have amended Annex A solely to change the order of delegation for purposes of § II.B of Delegation 00106, Plaintiffs have no explanation for why Ms. Nielsen would have invoked her authority under § 113(g)(2) to designate an order of succession.[1]

---

[1] Plaintiffs contend that it is not "meaningful" that Secretary Nielsen did not "invoke her authority" under § 112(b)(1), *see* Pls.' Opp. at 7, but they misread Defendants' argument. The key point is not that Secretary Nielsen should have invoked § 112(b)(1) in the April 2019 Order; it is that she did invoke *§ 113(g)(2)*—not § 112(b)(1).

Finally, Plaintiffs curiously suggest that Defendants' arguments are "impermissible *post hoc* rationalizations" that should be disregarded. Pls.' Opp. at 6. Even if that principle has any application outside of arbitrary-and-capricious review under the Administrative Procedure Act, Plaintiffs acknowledge that DHS has always interpreted the April 2019 Order to designate an order of succession that applied to all vacancies, as evidenced by its execution of the Order after it was signed. *See id.* at 9. It is not a post hoc rationalization for Defendants to explain the textual and contextual bases for that contemporaneous understanding.

## II.    Mr. McAleenan's actions may be ratified

Plaintiffs do not dispute that administrative actions taken by agency appointees in excess of statutory authority can be subsequently ratified by individuals with proper authority. Instead, they argue that the Rule at issue cannot be ratified by any subsequent Secretary or Acting Secretary, pursuant to the FVRA, 5 U.S.C. § 3348, *see* Pls.' Opp. at 9-14, and that even if ratification were possible, Acting Secretary Chad Wolf could not ratify the promulgation of the Rule because he is serving without authority, *see id.* at 15-24 . These arguments are meritless.

Plaintiffs' proposed reading of § 3348 is both an untenable interpretation of the plain text and contrary to the expressed intent of Congress in enacting the FVRA. Section 3348 defines a "function or duty" as an action that is established by statute and "is required by statute to be performed by the applicable officer (and only that officer)." 5 U.S.C. § 3348(a)(2)(A). Thus, § 3348 plainly states that only an action *prohibited* from being performed by any other officer is considered a function or duty of that office. It is undisputed that the rulemaking authority relied upon by Mr. McAleenan has long been available to be exercised by an officer other than the Secretary of DHS. *See* Defs.' Mem. at 19-20. By definition, then, that rulemaking authority is not a function or duty. The fact that the delegation of that authority was made by regulation and not by statute is irrelevant, because the INA permitted that authority to be delegated by regulation and thus did not *require* rulemaking to be done *only* by the Secretary. *See Nw. Immigrants Rts Project v. USCIS (NWIRP)*, No. CV 19-3283 (RDM), 2020 WL 5995206, at *16 (D.D.C. Oct. 8, 2020)

(concluding that Secretary's rulemaking authority under the INA was not "function or duty" of office because it had been delegated).

Plaintiffs' reading of § 3348 is not only contradicted by the section's unambiguous language, it is also contrary to numerous decisions defining "functions or duties" as only non-delegable duties as under § 3348. *See* Defs.' Mem. 18-21. Plaintiffs rely heavily on the decisions in *L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1 (D.D.C. 2020) and *NWIRP*, *see* Pls.' Opp. at 9-14, but ignore that under the reasoning of both cases, the issuance of the Rule was not a function or duty of the Office of the Secretary. *See* Defs.' Mem. 19-21; *see also NWIRP*, 2020 WL 5995206, at *16 (Moss, J.); *L.M.-M.*, 442 F. Supp. 3d at 34 (Moss, J.). Their argument—that when a statute assigns a duty to a particular officer, it means that the duty "is required" to be performed by "only that officer"—would also overturn decades of precedent governing delegations of statutory authority. *See* Defs.' Mem.. at 19.

Even if the statutory language were ambiguous, contrary to Plaintiffs' arguments about the FVRA's intent and structure, the Senate Committee Report makes clear that the limitation on ratification applies only to non-delegable duties. *See* S. Rep. No. 105-250 at 18 ("The functions or duties of the office that can be performed only by the head of the executive agency are therefore defined as the non-delegable functions or duties of the officer…."); *id.* at 19 ("For example, the successor in the office . . . may not ratify the actions of a person . . . who, not being the agency head, performed nondelegable duties of the office."). Plaintiffs complain that, notwithstanding the text and the clear legislative history, the natural reading of this statutory provision would lead to an "absurd result" where the Secretary has few if any functions or duties and virtually no agency actions could be voided under the FVRA. Pls.' Opp. at 10. However, Congress clearly contemplated this concern about evasion of the enforcement provision and still adopted the limited language in the FVRA. *See* S. Rep. No. 105-250 at 18 (noting that "so many executive agency positions filled with the advice and consent of the Senate lack any meaningful statutory duties"); *see id*. at 18-19; *see also* 5 U.S.C. § 3348(a)(2); S. Rep. No. 105-250 at 19 (narrow definition of "function or duty" intended to ensure that "[a]ll the normal functions of government thus could

5

still be performed"). Though Plaintiffs may disagree with how Congress chose to enforce the FVRA, that is not a reason for the Court to rewrite the statute. *See Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 231 (2014) ("The role of [Courts] is to apply the statute as written – even if [they] think some other approach might accord with good policy.") (citation omitted);  *Palisades Collections LLC v. Shorts*, 552 F.3d 327, 336 (4th Cir. 2008) (court must "interpret the statute as it was written, not [] rewrite it as [plaintiffs] believe Congress *could have* intended to write it"). Moreover, the HSA, whose provisions grant all authorities of DHS to the Secretary, 6 U.S.C. § 112(a)(3), and also permit the Secretary to delegate all of those powers that are not explicitly non-delegable, 6 U.S.C. § 112(b)(1), was enacted against the background of the pre-existing FVRA.[2]

Plaintiffs' claim that the "fallback" provision of § 3348(b)(2) could be rendered superfluous under Defendants' reading, Pls.' Opp. at 11 (citing *L.M.-M.*, 442 F. Supp. 3d at 32), is not a meaningful basis to depart from the plain meaning of § 3348(a)(2).  The *L.M-M.* court only concluded that where a "subcabinet office is the sole office permitted to" exercise an authority, the existence of a department head's general vesting-and-delegation authority "standing alone" does not mean the subcabinet official's authority cannot be a function or duty of that office.  *L.M.-M.*, 442 F. Supp. 3d at 32.  That has no bearing on an authority vested in a department head.  Moreover, as explained above, under *L.M.-M.*'s reasoning, the issuance of the Rule is not a function or duty of the Office of the Secretary.  *See L.M.-M.*, 442 F. Supp. 3d at 34 ("function or duty" only includes duties that have not been "reassigne[d] . . . using [the department head's] vesting-and-delegation authority or any other authority"); *accord NWIRP*, 2020 WL 5995206, at *16.

Plaintiffs also attempt to distinguish *NWIRP* on the basis that *NWIRP* "misunderstands" the distinction between statutory duties and regulatory duties.  *See* Pls.' Opp. at 13.  Specifically, they point to the 180-day "lookback" provision in § 3348(a)(2)(B)(ii) to suggest that the FVRA does not allow DHS to "modify" statutory functions or duties.  *See id.*  This argument has no basis

---

[2] Contrary to Plaintiffs' assertion, *see* Pls.' Opp. at 10, Congress is quite clear when it intends to preclude the reassignment or delegation of a particular statutory duty.  *See, e.g.*, 31 U.S.C. § 1344(d)(3);  35 U.S.C. § 202(f)(1); 44 U.S.C. § 353(h)(3)(B).
.

in the statutory text.  Per § 3348(a)(2), a function or duty—whether it be statutory or regulatory—is one that *must* be performed "only by" the applicable officer, and, by definition, a duty that has been delegated is not one that must be performed only by a single officer.  *See NWIRP*, 2020 WL 5995206, at *16.  The 180 day "lookback" provision defines a "function or duty" conferred by regulation as any function or duty of a particular office that existed 180-days prior to the vacancy, even if the agency reassigned that function or duty to other officers prior to the vacancy.  *L.M.-M.*, 442 F. Supp. 3d at 33.  The purpose of the provision is to prevent an agency from altering a regulatory grant of authority on the eve of a vacancy.  Because agencies can always change their own regulation, without a lookback provision, an agency could issue a regulation that requires only one officer to exercise a particular duty, but once aware of an upcoming vacancy, amend the regulation to eliminate the prohibition on the exercise of that authority by other officers.  *See* S. Rep. No. 105-250 at 18 (discussing need to "freeze" duties of applicable office because "in many instances, the administration will know of an upcoming vacancy").  The absence of any such provision for statutory duties merely reflects the fact that an agency would lack authority to eliminate any similar prohibition found in a statute. That does not mean that a lawfully delegable statutory duty—much less a lawfully *delegated* one—is a "function or duty" under § 3348.

## III.    Acting Secretary Wolf's ratification of Mr. McAleenan's promulgation of the Rule cures any defect.

Plaintiffs also argue that ratification is unavailable for Mr. McAleenan's actions even if not prohibited by the FVRA.  However, as explained in Defendants' opening brief, either Mr. McAleenan (and subsequently Mr. Wolf) must have been properly serving, or Federal Emergency Management Agency Administrator Peter Gaynor would have assumed the authority of Acting Secretary upon the nomination of Mr. Wolf, even under Plaintiffs' reading of the April 2019 Order and Delegation 00106.  Defs.' Mem. at 24-26.  Plaintiffs' counterarguments are meritless.

*First*, Plaintiffs argue that Mr. Gaynor could not issue a succession order because he never was the Acting Secretary.  *See* Pls.' Opp. at 16-17.  Defendants maintain that Mr. Wolf is lawfully the Acting Secretary by operation of the April 2019 and November 2019 succession orders.  *See*

7

Defs.' Mem. at 5-14.  But if Plaintiffs are correct that the April 2019 Order did not set an order of succession that applied when Secretary Nielsen resigned, then by the self-executing operation of EO 13753, Mr. Gaynor would become Acting Secretary upon the submission of Mr. Wolf's nomination to the Senate.  *See* EO 13753 ("[T]he officers named in subsection (a)…*shall act* as and perform the functions and duties of the office of, the Secretary of Homeland Security…during any period in which the Secretary has died, resigned, or otherwise become unable to perform the functions and duties of the office….") (emphasis added).[3] It cannot be the case both that EO 13753 controlled the order of succession and that Mr. Gaynor, the most senior official in the order of succession at the time of Mr. Wolf's nomination, did not assume the authority of Acting Secretary. The concern expressed by Plaintiffs and the *Batalla Vidal* court that Mr. Gaynor was acting "hypothetically" or "in the alternative" is illusory. Mr. Wolf and Mr. Gaynor took the same action to change the order of succession using the authority of the Acting Secretary under 6 U.S.C. § 113(g). Under Plaintiffs' theory of the case, one of the two must have been Acting Secretary.[4]

*Second*, Plaintiffs contend that Mr. Gaynor could not lawfully serve as Acting Secretary because Mr. Wolf's nomination did not create a "new vacancy" that could be filled.  *See* Pls.' Opp. at 18-19.  This is incorrect, it is undisputed that the Office of the Secretary has remained vacant since the resignation of Ms. Nielsen.  *See* Pls.' Opp. at 18-19.  The nomination of Mr. Wolf on September 10, 2020, thus did not need to create a "new vacancy" to trigger § 3346(a)(2) of the FVRA and create a permissible period for acting service by the *then* senior-most officer under the FVRA's order of succession: Mr. Gaynor.  *See* EO 13753 (the Senate-confirmed Administrator of FEMA "shall" serve third in the line of succession); *see also* 5 U.S.C. § 3346(a)(2) (providing that

---

[3] EO 13753 is an Executive Order issued by the President of the United States on this precise subject, as an advance exercise of the President's authority under the FVRA to designate officials to act in vacant offices.  As the notes to § 3345 of the FVRA show, there are numerous such Executive Orders that operate automatically when vacancies arise.  That the President did not specifically point to Mr. Gaynor by name is immaterial—that is the very purpose of the Executive Order.

[4] Plaintiffs' claim that it would be improper under the FVRA for Mr. Gaynor to briefly serve as Acting Secretary in order to establish a new order of succession under the HSA is also baseless.  Section 113(g)(2), specifically applies "[n]otwithstanding" the FVRA, and because the roles of Secretary, Deputy Secretary, and Under Secretary for Management were vacant at the time of Mr. Wolf's nomination, succession was triggered immediately. *See* 6 U.S.C. § 113(g)(1)-(2).  At any point at which Mr. Gaynor could have set an order of succession under § 113(g)(2), his own basis for service under the FVRA would have then been superseded.

an acting Secretary "may serve in the office . . . once a first or second nomination for the office is submitted to the Senate, from the date of such nomination for the period that the nomination is pending in the Senate"); *see also* S. Rep. No. 105-250 at 14 (explaining that "[u]nder new section 3346(a)(2)," an acting officer may serve "even if the nomination is submitted" after the period of time prescribed in Section 3346(a)(1) and "may serve while that nomination is pending from the date the nomination is submitted").[5]

Plaintiffs contend that § 3346(a)(2) does not apply because, as DHS has argued, the FVRA's time limits do not apply to designations under the HSA. *See* Pls.' Opp. at 18. To be sure, if, as Defendants have argued, Mr. Wolf was designated under the HSA by operation of the April 2019 and November 2019 succession orders, then § 3346 does not apply. But if Plaintiffs are correct that the April 2019 Order's line of succession only applied to disasters or catastrophic emergencies and not to resignations, then there was no § 113(g)(2) order that displaced the FVRA when Secretary Nielsen resigned. Thus, under Plaintiffs' own theory, EO 13753, which they admit is an exercise of the President's authority to make appointments under the FVRA, Pls.' Opp. at 20, would govern. *See infra* p. 11-12.

Plaintiffs argue that under § 3346(a)(2), only Christopher Krebs—who would have been the senior-most officer under EO 13753 at the time of Ms. Nielsen's resignation—could serve as Acting Secretary after Mr. Wolf's nomination. *See* Pls.' Opp. at 18-19. This argument places undue reliance on a reference in *dicta* from *NLRB v. Southwest General, Inc.*, 137 S. Ct. 929, 936 (2017), which explained as general background that the time period in § 3346(a) is "tolled" during a nomination. But as explained, Congress intended § 3346(a)(2) to provide for acting service even when the time limit set in § 3346(a)(1) had expired, which would be impossible if § 3346(a)(2) merely "tolled" the FVRA's time limit. And the text of § 3346(a)(2) is not as limited as Plaintiffs

---

[5] Plaintiffs selectively quote the Senate Report to suggest that § 3346(a)(2) should be read to "*reduc[e]* [] the number of acting officials." Pls.' Opp. at 19 (quoting S. Rep. No. 105-250 at 14). However, when read in context, the passage explains that § 3346(a)(2) and (b) allow for further acting service upon the submission of a nomination even when the FVRA's time limits have expired because Congress wanted to "create an incentive for the President to submit a nomination." S. Rep. No. 105-250 at 14. It is thus through incentivizing nominations to the permanent office, and not through strained readings of the statutory language, that Congress intended § 3346(a)(2) to "lead to a reduction in the number of acting officials." *Id.*

9

suggest. Section 3346(a) broadly allows "the person" serving as an acting officer under the FVRA to serve for 210 days (subsection (a)(1)) or while a nomination is pending (subsection (a)(2)). *See Sw. Gen.*, 137 S. Ct. at 938 (recognizing that "person[]' . . . has a naturally expansive meaning"). For purposes of subsection (a)(1), "the person" clearly does not mean, as Plaintiffs claim, that only the initial person designated as an acting officer can serve for 210 days. An acting officer serving under 5 U.S.C. § 3345(a)(2) or (a)(3) would still be able to serve up to 210 days even if she displaced a previously designated acting officer. *See, e.g.*, *Hooks v. Kitsap Tenant Support Servs., Inc.*, 816 F.3d 550, 557 (9th Cir. 2016) (The President can "override the automatic" designation of first assistant). There is no basis, then, to read "the person" for purposes of subsection (a)(2) to refer to only the initially-designated officer.[6]

Moreover, Plaintiffs' argument conflicts with the language of EO 13753, which mandates that the officers identified "*shall act*" as Secretary "in the order listed" in the EO "during *any period* in which the Secretary has died, resigned, or otherwise become unable to perform." EO 13753 (emphases added). The only caveat to this mandate is that the officials must be "eligible to act as Secretary under the provisions of the [FVRA]." *Id.* Plaintiffs do not claim that Mr. Gaynor, as Administrator of FEMA and third in the line of succession behind two vacant offices, was ineligible to serve as the Acting Secretary. Thus, under the EO, Mr. Gaynor not only could assume but was obligated to assume the authority of Acting Secretary until an HSA designation was made.

*Third*, Plaintiffs argue that Mr. Gaynor could not serve as Acting Secretary because he was never designated under the FVRA. *See* Pls.' Opp. at 19-21. Plaintiffs curiously assert that the President could not have designated Mr. Gaynor under the FVRA because the "fundamental premise of Plaintiffs' argument" is that the April 2019 Order "set a succession order under the

---

[6] Indeed, Plaintiffs' constrained reading of "the person" would also create broader conflicts with the text and purpose of the FVRA. For one, if an initially designated acting officer died or resigned prior to the submission of a nomination, then, under Plaintiffs' reading, no one would be eligible to serve as the acting officer, whether during the pendency of the nomination or upon rejection of the nomination under § 3346(b). There is no basis to believe that Congress intended to limit the President's authority in such circumstances. Moreover, the FVRA also restricts certain acting officers from serving in that capacity if they are nominated to the permanent position. *See* 5 U.S.C. § 3345(b)(1). But, under Plaintiffs' reading, those acting officers would be the *only* individuals that §3346(a)(2) would permit to serve during the pendency of any nomination. This conflict further counsels against adopting an unduly limited interpretation of § 3346(a)(2).

10

HSA and [Secretary Nielsen's] successor served pursuant to that order." *Id.* at 20 n.10. Plaintiffs appear to be confused about their own argument, which posits that the April 2019 Order only set an order of succession under the HSA that applied to emergencies, not to resignations. *See supra* p. 2-3; Pls.' Opp. at 3-5, 20 & n.10. Thus, if Plaintiffs are correct that EO 13753 applies, it is self-executing, and therefore the most senior official on EO 13753's list would assume the role of Acting Secretary. As Plaintiffs note, Pls.' Opp. at 20, EO 13753 is an exercise of the President's authority under the FVRA.

Plaintiffs next claim that if EO 13753 applied, it would supersede any order of succession set under the HSA. *See id.* at 20-21. However, an order of succession established under §113(g)(2) expressly applies "notwithstanding" the FVRA. *See Sw. Gen.*, 137 S. Ct. at 939 ("The ordinary meaning of 'notwithstanding' is 'in spite of,' or 'without prevention or obstruction from or by.'"). Plaintiffs cite cases for the general proposition that office-specific vacancy statutes do not displace the President's FVRA authority, Pls.' Opp. at 21, but none of the office-specific statutes identified in those cases applied "notwithstanding" the FVRA or contained any similar language. *See* 28 U.S.C. § 508(a); 12 U.S.C. § 5491(b)(5); *see also United States v. Smith*, 962 F.3d 755, 763 n.1 (4th Cir. 2020) (distinguishing § 113(g) and 28 U.S.C. § 508(a) on this basis).[7]

Plaintiffs also argue that giving effect to the "notwithstanding" clause would create a constitutional concern by enabling the Secretary to "override the President's choice of acting official." Pls.' Opp. at 21. However, Congress has the authority to establish offices "by Law" and therefore has the authority to establish the terms by which such offices can be filled, consistent with the Appointments Clause. *See* U.S. Const. art. II, § 2, cl. 2. Congress is thus free to create an alternative mechanism for establishing succession other than the FVRA. Moreover, any concern about inadequate Presidential control is illusory, as any Secretary (or Acting Secretary)

---

[7] Plaintiffs suggest that the "notwithstanding" clause merely "clarifies that the FVRA is not the exclusive means for vacancy appointments." Pls.' Opp. at 22 n.11. But, as the cases they rely on demonstrate, *see id.* at 21, the FVRA itself provides that office-specific vacancy statutes are exceptions to the FVRA's exclusivity, whether or not they include a "notwithstanding" clause. *See* 5 U.S.C. § 3347(a)(1); *see also Smith*, 962 F.3d at 763 n.1 (office-specific statutes and FVRA are "alternative[s]"); *Hooks*, 816 F.3d at 556 (same). Plaintiffs' interpretation of the clause, therefore, renders it surplusage.

11

necessarily serves at the pleasure of the President.  *See Myers v. United States*, 272 U.S. 52, 117 (1926).

*Fourth*, Plaintiffs contend that neither Acting Secretary Wolf nor Mr. Gaynor had authority to change the order of succession because they were only acting in the role of Secretary. Pls.' Opp. at 22. This argument contradicts well-established law. The Acting Secretary may perform all of the functions and duties of the Secretary's office, for "an acting officer is vested with the same authority that could be exercised by the officer for whom he acts." *In re Grand Jury Investigation*, 916 F.3d 1047, 1055 (D.C. Cir. 2019); *see also United States v. Pellicci,* 504 F.2d 1106, 1107 (1st Cir. 1974) ("There is no basis for concluding that one 'acting' as Attorney General has fewer than all the powers of that office."); *Ryan v. United States*, 136 U.S. 68, 81 (1890) ("It is equally clear that, in the absence of the secretary, the authority with which he was invested could be exercised by the officer who, under the law, became for the time acting secretary of war."). There is no textual basis in the HSA for treating the Secretary's authority under § 113(g)(2) differently in this regard from the countless other authorities conferred on the Secretary by the HSA.  If an Acting Secretary may not prescribe an order of succession under § 113(g)(2) because that section refers to "the Secretary," then under Plaintiffs' logic, an Acting Secretary may not exercise any of the authority that the HSA assigns to "the Secretary." That cannot be what Congress intended when it authorized officers to serve as the "Acting Secretary." 6 U.S.C. § 113(g).

Plaintiffs' reliance on the text of the FVRA's exclusivity provision, 5 U.S.C. § 3347(a), to limit the operation of § 113(g)(2), *see* Pls.' Opp. at 23, likewise fails. Plaintiffs argue that § 3347(a) makes the FVRA's provisions exclusive unless another statute "expressly" authorizes "the head of an Executive department" to designate an order of succession, and that an Acting Secretary therefore may not proceed under § 113(g)(2) because that provision does not "expressly" refer to an Acting Secretary.  But Congress provided that the designation authority in § 113(g)(2) operates "notwithstanding" the FVRA.  Section 113(g)(2) contrasts in this respect with other agency-specific succession statutes, which empower the agency head to designate an order of succession but do not provide that the designation authority is conferred "notwithstanding" the FVRA.  *See,*

12

*e.g.*, 28 U.S.C. 508(b).  Accordingly, the provisions of the FVRA, including the exclusivity rule in § 3347(a), do not limit the authority conferred by § 113(g)(2).

Even if § 113(g)(2) were subject to the limitations of the FVRA's exclusivity provision, Plaintiffs' argument would still fail. Plaintiffs complain that § 113(g)(2) does not "expressly" authorize the Acting Secretary to designate an acting official, Pls.' Opp. at 23, but § 113(g)(2) expressly authorizes the "head of an Executive department," the Secretary of Homeland Security, to designate an acting official. That is all that is required for § 113(g)(2) to come within the exception to the FVRA's exclusivity. The FVRA does not require statutes that authorize the designation of acting officials to expressly enumerate each of the functions that such acting officials will be authorized to perform.

The constitutional problems Plaintiffs ascribe to permitting acting secretaries to change the order of succession are also unfounded.  Regardless of whether the designation power is exercised by the Secretary or the Acting Secretary, it is confined to an officer who is serving as the head of the Department.  Allowing other officers who serve as Acting Secretary to change the order of succession does not impermissibly expand the appointment power or any other power of the Secretary because § 113 applies only to other officer positions within the Department, all of which are to be filled through Presidential appointment. *See* 6 U.S.C. § 113(a)-(e).[8]  When § 113(g)(2) then authorizes the Secretary to designate "such other officers of the Department" to serve as Acting Secretary, it is referring to the "other officers" whose offices are created and enumerated in § 113.[9] As a result, only those officers are eligible for designation under § 113(g)(2), and all of them are appointed by the President. The designation authority under § 113(g)(2) therefore

---

[8] Subsections (a) and (d) provide that the officers specified in those subsections are to be "appointed by the President." Subsections (b), (c), and (e), provide for the appointment of certain other officers in accordance with other statutes, each of which in turn provides for Presidential appointment.  *See* 5 U.S.C. App. 3 § 3(a) (Inspector General); 14 U.S.C. § 302 (Coast Guard Commandant); 31 U.S.C. § 901(a)(1)(A) (Chief Financial Officer).

[9] Section 113(g)(2) contrasts in this regard with § 112(b)(1), which permits the Secretary to delegate functions to "*any* officer, employee, or organizational unit of the Department" (emphasis added).  To the extent that Secretary Nielsen's revision of Annex A included officers who are not listed in § 113, those officers were eligible only for delegations of authority under § 112(b)(1), not for service as Acting Secretary under § 113(g)(2). Mr. McAleenan, as Customs and Border Protection Commissioner, held an office enumerated in § 113 and therefore was eligible to serve as Acting Secretary.

13

confines the exercise of the Secretary's powers to Presidentially appointed officers and obviates the concern raised by the Plaintiffs and the *NWIRP* court. *See* Pls.' Opp. at 24. Furhter, the *NWIRP* court's constitutional concerns stem from the Appointments Clause. *See* 2020 WL 5995206, at \*19. However, the designation of an acting officer does not involve an "appointment" in the constitutional sense, but rather the assignment of additional duties to someone who already enjoys an appointment to a constitutional office. *See Weiss v. United States*, 510 U.S. 163, 176 (1994) (Senate-confirmed commissioned officers could serve as military judges without second confirmation because they acquired duties in their official capacity that were germane to those of their underlying office).

## IV.    Conclusion

For the reasons stated above and in Defendants' opening brief, the Court should deny Plaintiffs' partial motion for summary judgment and grant Defendants' partial motion to dismiss.

Dated:  December 18, 2020                    Respectfully submitted,

AUDREY STRAUSS                            JEFFREY BOSSERT CLARK
Acting United States Attorney              Acting Assistant Attorney General

                                          ALEXANDER K. HAAS
                                          Director, Federal Programs Branch

                                          BRIGHAM BOWEN
                                          Assistant Director, Federal Programs Branch

                                          /s/ *Keri L. Berman*
                                          ERIC J. SOSKIN
                                          Senior Trial Counsel
                                          KUNTAL V. CHOLERA
                                          JOSHUA M. KOLSKY
                                          JASON LYNCH
                                          ALEXANDRA SASLAW
                                          KERI L. BERMAN
                                          U.S. Dept. of Justice, Civil Division,
                                          Federal Programs Branch
                                          1100 L Street, N.W., Rm. 12002
                                          Washington, DC 20001

Phone: (202) 305-7664
Fax: (202) 616-8470
Email: Keri.L.Berman@usdoj.gov

*Counsel for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served on all counsel of record by operation of the court's electronic filing system and can be accessed through that system.

DATED: December 18, 2020

/s/ *Keri L. Berman*
KERI L. BERMAN
Trial Attorney
United States Department of Justice
Civil Division,
Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Telephone: (202) 353-4537
Facsimile: (202) 616-8470
Email: keri.l.berman@usdoj.gov